UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IEP Technologies, LLC <br><br>                    Plaintiff, <br><br>          v. <br><br> KPM Analytics, Incorporated f/k/a Statera Analytics, Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation, <br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION<br>NO. 1:21-cv-10417 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff IEP Technologies, LLC ("Plaintiff" or "IEP") for its complaint against Defendant KPM Analytics, Incorporated f/k/a Statera Analytics, Incorporated ("KPM") and its wholly owned subsidiary KPM Analytics North America Corporation f/k/a Process Sensors Corporation ("KPMNA") (collectively, "Defendants"), hereby alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for trademark infringement, false designation of origin, cancellation of Defendants' U.S. Trademark Registration No. 5,633,755, unfair competition, and unfair and deceptive business practices arising under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), Chapter 93A of the Massachusetts General Laws, and the common law of Massachusetts.

2.     Plaintiff hereby seeks, *inter alia*, a permanent injunction against Defendants' continued unauthorized, improper and willful commercial use and exploitation of Plaintiffs' trademarks and all damages and profits arising from Defendants' past, present, and future infringement and unfair competition, including all statutory damages, as well as Plaintiff's attorneys' fees and costs for having to bring this suit to enforce its rights, and pre- and post-

judgment interest.

## PARTIES

3.     Plaintiff IEP is a Delaware Corporation with its principal place of business at 417-1 South Street, Marlborough, MA 01752.

4.     Upon information and belief, Defendant KPM is a Delaware Corporation with its principal place of business at 113 Cedar Street, Milford, MA 01757.

5.     Upon information and belief, Defendant KPMNA is a wholly owned subsidiary of KPM with its principal place of business at 113 Cedar Street, Milford, MA 01757.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over Plaintiff's federal claims relating to trademark infringement and false designation of origin under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).

7.     This Court has supplemental jurisdiction over Plaintiff's common law and state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because these claims are so related to Plaintiffs' federal claims that they form a part of the same case or controversy. The Court's authority to award the requested equitable relief can be found at least in 15 U.S.C. § 1116(a), 28 U.S.C. § 1651(a), and this Court's inherent equitable power.

8.     This Court has personal jurisdiction over Defendants by virtue of their systematic and continuous contacts with this forum, and because Defendants have purposely availed themselves of the privileges of this forum at least by (1) having their principal place of business in this forum, (2) offering their goods and services under an infringing trademark throughout this forum, (3) committing tortious acts within the state, and (4) having a website accessible to consumers in this forum.

9.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) at least because a substantial part of the wrongful events giving rise to this action took place in this District, Plaintiff has suffered harm in this District, and Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

**A.      Plaintiff and Its Trademarks.**

10.      IEP is a company based in Marlborough, Massachusetts. IEP is a worldwide leading provider of explosion protection systems and services and a leading producer of active and passive explosion protection solutions for combustible dust and vapor threats. IEP and its predecessor companies have been dedicated to enhancing safety in process industries since 1956, operating under a simple principle that every employee has the right to work in a safe environment. IEP offers safety equipment for suppression, isolation and venting of explosions, safety hardware systems, computer hardware and software, installation and maintenance of safety equipment, and research and development services related to the same. IEP operates through locations in the U.S., Germany, Switzerland, U.K., France, Turkey, Brazil, China, and Singapore designing and servicing systems with a dedicated team of application engineers, regional sales managers, and field engineers.

11.      IEP owns federal and common law rights in several trademarks, including its  trademark, for which it also owns a federal trademark registration, namely U.S. Trademark Registration No. 4,648,573 ("the '573 registration"). *See* **Exhibit A** for a true and correct copy of the '573 registration, which is incorporated herein by reference.

12.      IEP's federal registration and common law mark in the  trademark are

individually and collectively referred to as Plaintiff's Mark and/or the ⬡ trademark.

13.    IEP first used the ⬡ trademark in commerce at least as early as July 31, 2013.

14.    Color is not a claimed feature of IEP's ⬡ trademark.

15.    IEP's ⬡ trademark is registered in:

International Class 009 for safety equipment for suppression, isolation and venting of explosions, namely, explosive containment vessels and structural parts therefor; safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives; computer hardware, software, and peripherals for operating explosion safety equipment;

International Class 037 for installation and maintenance of safety equipment for detection, prevention, and abatement of explosions; and

International Class 042 for new product research and design services in the field of safety equipment and hardware.

16.    IEP uses the ⬡ trademark in conjunction with the sale of electronic sensors and related services.

17.    New, innovative products and services are regularly added to IEP's growing product line and offerings.

18.    IEP possesses all rights, titles, and interests in and to the '573 registration based on the continuous use of the mark in U.S. and worldwide commerce. IEP's use of the ⬡ trademark has continued uninterrupted since as early as July 31, 2013. IEP has never abandoned its use of the ⬡ trademark for the mark's registered goods and services.

4

19.     The '573 registration is valid and subsisting, in full force and effect, and constitutes *prima facie* evidence of the validity of and IEP's exclusive right to use the registered mark in commerce in the United States in connection with the goods and services specified in the registration.

20.     IEP maintains an active website located at www.ieptechnologies.com and has done so since at least as early as 2013. IEP's use of its ⬡ trademark includes use on IEP's website. *See* **Exhibit B** for a screenshot of IEP's website homepage.

21.     IEP's ⬡ trademark is an inherently distinctive trademark to both the public and those in the trade in connection with IEP's products and services. IEP's ⬡ trademark serves as a designator of origin of products and services originating from, sponsored by, or licensed by IEP.

22.     Over the years, IEP has spent significant money and resources on advertising and promoting its goods and services under the ⬡ trademark.

23.     As a result of IEP's longstanding, widespread, and continuous use, marketing and promotion of its products and services under the ⬡ trademark, both the public and those in the trade use the ⬡ trademark to identify and refer to IEP's products and services. The ⬡ trademark is widely recognized as a designation of source for IEP's high-quality products and services.

24.     As a result of IEP's longstanding, widespread, and continuous use, marketing and promotion of its products and services under the ⬡ trademark, the ⬡ trademark is incontestable under 15 U.S.C. § 1065.

**B.      Defendants' Intentional and Willful Infringing Activities and Bad Faith Conduct.**

25.    Upon information and belief, long after IEP's adoption and first use of the

trademark, in or around February 2018, Defendants commenced use of the trademarks      and

**PROCESS SENSORS** CORPORATION ("Defendants' Marks" or "Infringing Marks").

26.    Defendants' use of the Infringing Marks in the manner described herein creates the wrongful impression that Defendants or their goods or services are authorized, sponsored, or approved by IEP even though they are not. This confusion causes irreparable harm and damage to IEP and unjustly enriches Defendants.

27.    Upon information and belief, Defendants have been unjustly enriched by the illegal use and misappropriation of Plaintiff's Mark for Defendants' own financial gain. Additionally, upon information and belief, Defendants have unfairly benefited and profited from IEP's outstanding reputation, as well as its significant advertising and promotion of its goods and services and Plaintiff's Mark.

28.    Upon information and belief, Defendants commenced use of the Infringing Marks in connection with certain goods that are scientific instruments, namely, Radio Frequency Moisture Gauge, electronic near infrared, NIR, transmitters for the measurement of moisture, fats, proteins and other constituents in wood, tobacco, paper, food, feed, bulk solids and other industrial products, IR pyrometers and Thermal Imaging Cameras.

29.    Upon information and belief, Defendants commenced use of the Infringing Marks in connection with certain services for installation and repair of laboratory and at-line analytical equipment including Radio Frequency Moisture Gauge, NIR Transmitters, IR Pyrometers and Thermal Imaging Cameras, and training in the use of laboratory and at-line analytical equipment including Radio Frequency Moisture Gauge, NIR Transmitters, IR Pyrometers and Thermal

Imaging Cameras.

30.     Defendant KPMNA applied to register and ultimately registered Defendants' Marks with the United States Patent and Trademark Office ("USPTO") on December 18, 2018 in connection with the goods and services above. *See* **Exhibit C** for a true and correct copy of U.S. Trademark Registration No. 5,633,755 ("the '755 Registration").

31.     Upon information and belief, Defendants began transitioning to Defendants' Marks for Defendants' use in commerce in or around February 2018.

32.     Upon information and belief, Defendants began transitioning to and adopted Defendants' Marks with knowledge of Plaintiff and Plaintiff's use of Plaintiff's Mark.

33.     As depicted below, Defendants' Marks closely mirror Plaintiffs' Mark:

| Plaintiff's Mark | Defendants' Marks |
|:---:|:---:|
|  |  |
|  |  |

34.     Defendants' Marks even closely mirror the color scheme used in conjunction with Plaintiff's Mark:

| Plaintiff's Mark as Used in Commerce | Defendants' Marks as Used in Commerce |
|---|---|
|  |  |
|  |  |

35.     Plaintiff does not consent, and has never consented, to Defendants' unauthorized adoption and commercial use of Plaintiff's Mark.

36.     Defendants' use of the Infringing Marks is likely to cause and/or has actually caused confusion as to the affiliation, connection, or association of Defendants or their products or services with Plaintiff or its products or services, and/or as to the origin, sponsorship, or approval of Defendants' products by Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill, and sales and the unjust enrichment of Defendants.

37.     On March 27, 2020, IEP, through its attorneys, sent Defendants a letter placing them on notice of IEP's rights and long-term use and ownership of Plaintiff's Mark, as well as demanding that Defendants cease and desist from all use of the Infringing Marks in any infringing manner. *See* **Exhibit D** for a true and correct copy of Plaintiff's March 27, 2020 letter.

38.     On May 6, 2020, Defendants refused in writing to comply with Plaintiff's demands.

39.     In July 2020, Plaintiff reiterated its demand that Defendants cease use of the Infringing Marks. Defendants refused to do so, necessitating the filing of this complaint.

40.     Upon information and belief, today Defendants display and use the Infringing Mark on their websites, social media, products, and in other marketing and promotional materials.

41.     Select examples of Defendants' social media appears in **Exhibit E**, which comprises a compilation of true and correct screenshots of Defendants' Facebook and Twitter accounts.

42.     An example of Defendants' advertising appears in **Exhibit F**, which is a true and correct copy of a brochure associated with Defendants.

43.     Select examples of Defendants' websites are depicted below and excerpted from **Exhibit G**, which comprises a compilation screenshots of Defendants' websites:











# Industries & Applications

Home / Industries

Rapid product analysis is critical in all manufacturing processes to maintain consistent product quality, increase yield and minimize costs. With an extensive applications library built by our experts over twenty years and thousands of installations across six continents, Process Sensors supports industries that directly impact the daily lives of billions of people. Food production, wood products manufacture, power generation, metal processing and dozens of other crucial industries rely on Process Sensors instrumentation every day.

Not all industries and applications are listed below. Our applications Lab is constantly conducting feasibility testing for new applications. Contact us to discuss your application with an expert today. Our deep industry knowledge and straightforward partnership approach ensures you receive the best product for your specific application and full support when you need it during and after installation.

### Paper & Converting

Moisture and coat weight thickness measurements of paper, film, foil, textiles, labels, release liners and other substrates

### Food

Human and animal food products including snack chips, popcorn, powders, coffee and cereals

### Wood

Wood-based products including oriented strand board (OSB), particleboard, fiberboard (MDF), panelboard, sawdust, wood pellets and hog fuel

### Tobacco

All stages of leaf tobacco and primary tobacco processing

### Biofuels

NIR is used to control and monitor the nutrient-rich by-products of biofuel production to ensure product consistency quality and shelf life, as well as production efficiency.

### Steel

Molten pouring streams, ladle shell and torpedo car, continuous caster, spray chamber, cutting operations, rolling mill, and laminar cooling line

### Metals

Metals processing including automotive and aircraft component manufacture, tool making, vacuum melting, electric motor manufacture, tube forming and pipe casting

### Cement & Lime

Kilns and clinker coolers used in cement & lime processing

### Power

Fossil fuel boilers, biomass boilers and recovery boilers

44.     Plaintiff's Mark and Defendants' Marks are highly similar.

45.     Plaintiff and Defendants work in similar industries. For example, Plaintiff and Defendants each work in industrial processing.

46.     Plaintiff and Defendants provide similar goods. For example, Plaintiff and Defendants each provide process sensors, electronic sensors, and/or products that specialize in detection.

47.     Upon information and belief, Plaintiff and Defendants' products and services serve a similar function. For example, Plaintiff and Defendants' products and services serve the similar functions of the "preven[tion of] damage to processing equipment and avoid[ance of] dangerous equipment failures that jeopardize worker safety," *see* **Exhibit G** at 4, dust control, process safety, and manufacturing safety.

48.     Upon information and belief, the products of Plaintiff and Defendants are each on the same processing lines of their customers, plausibly within feet from each other, with both parties' products prominently displaying their respective marks on the products.

49.     Plaintiff and Defendants offer their products to the same and/or highly similar consumers through the same and/or highly similar channels of trade, including on the Internet.

50.     Plaintiff and Defendants advertise, promote, and market their respective products and services in the same manner.

51.     Plaintiff and Defendants exhibit at the same or similar trade shows. For example, both Plaintiff and Defendants have exhibited at the International Powder Bulk & Solids Conference & Exhibition. *See* **Exhibit H** for a true and correct copy of a website associated with the conference.

52.     Plaintiff and Defendants serve customers in the same or similar business fields,

including biofuels, power, food, wood, and paper, and converting steel, metals, cement, and tobacco. Further, Plaintiff continually expands its product offerings in these fields, all of which are within its zone of natural expansion. Thus, in addition to the overlap in Plaintiff and Defendants' commercial activities today, the overlap is certain to grow in imminently in the future.

53.     Upon information and belief, the person involved in making purchasing decisions for Plaintiff and Defendants' goods and services, including purchase agents, as well as Process Engineers, Project Engineers, Plant Managers, and/or System Integrators, are the same or highly similar.

54.     Plaintiff and Defendants are physically located only a few miles from each other and both have displayed and/or continue to display their respective marks on the outside of their respective buildings.

55.     The foregoing factual circumstances have caused and/or are likely to actually cause confusion and deceive consumers into thinking that Defendants' products and/or services are sold by or affiliated, connected or otherwise associated with Plaintiff, when they are not.

56.     Additionally, at least because of the confusion and/or likelihood of confusion resulting from Defendants' use of the Infringing Marks, any defect, objection to, or fault found with Defendants' goods and/or services sold or provided under the Infringing Marks would necessarily reflect on and seriously injure the reputation Plaintiff has established for its mark and business.

57.     Upon information and belief, at all times relevant to this action, including when Defendants first commenced use of Plaintiff's Mark, Defendants knew of the prior adoption and widespread commercial use of Plaintiff's Mark by Plaintiff, and Defendants knew of the valuable goodwill and reputation acquired by Plaintiff in connection with Plaintiff's Mark. Defendants'

infringement of Plaintiff's Mark is therefore willful.

58.     Upon information and belief, Defendants intentionally and willfully adopted the Infringing Mark to confuse consumers and trade off Plaintiff's well-known brand and good will.

59.     Defendants' use of the Infringing Mark is unauthorized and intentionally designed to mimic Plaintiff's Mark so as to cause confusion regarding Defendant' affiliation, association and/or sponsorship by Plaintiff and likely to cause confusion that Defendants' goods and services are approved by Plaintiff, all to the detriment of Plaintiff.

60.     Upon information and belief, Defendants intentionally and willfully adopted the Infringing Mark to trade of Plaintiff's well-known brand and good will because Plaintiff and Defendants (i) work in similar industries, (ii) provide similar goods and/or goods serving similar functions, (iii) to the same or similar customers, (iv) in the same or similar business fields, (v) who use the same or similar purchasing agents, (vi) who attend the same or similar trade shows.

61.     Upon information and belief, Defendants intentionally and willfully adopted the Infringing Marks to confuse consumers at trade shows and in Plaintiff and Defendants' customers' own facilities, at which, upon information and belief, Plaintiff and Defendants' products are near in proximity.

62.     Upon information and belief, Defendants intentionally and willfully adopted the Infringing Marks in February 2018, mere weeks before the 2018 International Powder Bulk & Solids Conference and Exhibition held in April 2018 and at which Defendants knew Plaintiff was exhibiting, to confuse consumers and trade off Plaintiff's well-known brand and good will.

**C.     KPMNA's '755 Registration Further Shows Defendants' Willfulness.**

63.     Defendant KPMNA is also the owner of U.S. Trademark Registration No. 3,004,020 ("the '020 Registration") for  . *See* **Exhibit I** for a true and correct

copy of the '020 Registration.

64.     Defendants obtained the '020 Registration on October 4, 2005 in International Class 009 for "electronic sensors, namely, devices for electronically sensing moisture, temperature, oil-content, coating characteristics and thickness." *See id.* The '020 Registration is currently valid and subsisting.

65.     The "electronic sensors" registered in the '020 Registration include some of the same goods covered by the '755 Registration. For example, Defendants submitted a specimen for the '020 Registration showing an NIR transmitter. *See* **Exhibit J** for a true and correct copy of the specimen submitted by Defendants on October 30, 2014. NIR transmitters are also listed in the '755 Registration. *See* **Exhibit C.**

66.     Upon information and belief, Defendants are using Defendants' Marks on "electronic sensors," broadly speaking, but described the goods in the '755 Registration and the application that matured into the '755 Registration (U.S. Application No. 8,7471,579 ("the '579 Application")) more narrowly. Specifically, Defendants described the goods in the '579 Application as "[s]cientific instruments, including Radio Frequency Moisture Gauge, NIR Transmitters, IR Pyrometers and Thermal Imaging Cameras" rather than "electronic sensors" like in Defendants' '020 Registration, which was filed earlier in time. *Compare* **Exhibit K** (a true and correct copy of the '579 Application) *with* **Exhibit J**.

67.     Upon information and belief, Defendants did not describe the goods in the '579 Application simply as "electronic sensors" because Defendants knew the application would be rejected in view of Plaintiff's Mark for being confusingly similar to Plaintiff's Mark.

68.     However, upon information and belief, Defendants' use of Defendants' Marks is for "electronic sensors," broadly speaking and like the description provided in the '020

Registration. Defendants' use of Defendants' Marks is not just for "scientific instruments" and "laboratory" and "at-line" analytical equipment.

69.     Upon information and belief, Defendants' use of Defendants' Marks for "electronic sensors," broadly speaking, is what compels Defendants to attend trade shows like the International Powder Bulk & Solids Conference & Exhibition.

70.     Had Defendants accurately described the goods and service as relating to "electronic sensors" in the '579 Application, the '755 Registration would not have issued in view of Plaintiff's Mark.

71.     The '755 Registration never should have issued in view of Plaintiff's Mark due to a likelihood of confusion with Plaintiff's Mark.

72.     Defendant KPMNA's President, Brian Davies, signed a declaration on September 24, 2018 in conjunction with the '579 Application providing that "[t]o the best of [his] knowledge and belief, no other persons, except, if applicable, authorized users, members, and/or concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services/collective membership organization of such other persons, to cause confusion or mistake, or to deceive."

73.     When Mr. Davies signed his declaration, he knew about Plaintiff and Plaintiff's Mark and the likelihood of confusion between Plaintiff's Mark and Defendants' Marks.

74.     The '755 Registration would not have issued without the submission of Mr. Davies' declaration.

## COUNT I
### Federal Trademark Infringement – 15 U.S.C. § 1114

75.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

76.     Plaintiff's Mark and the goodwill of the business associated therewith in the United States are of great and significant value to Plaintiff and are highly distinctive of the services associated with Plaintiff's Mark.

77.     Defendants, without the consent of Plaintiff, has made use in interstate commerce of the Infringing Marks in connection with the sale, offering for sale, distribution and/or advertising of Defendants' goods and services.

78.     Defendants' use of Plaintiff's Mark trades upon the goodwill associated with Plaintiff and Plaintiff's Mark.

79.     Defendants' use of the Infringing Marks is likely to cause and/or has actually caused confusion as to the affiliation, connection, or association of Defendants or their products or services with Plaintiff or its products or services, and/or as to the origin, sponsorship, or approval of Defendants' products by Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill, and sales and the unjust enrichment of Defendants.

80.     Defendants' actions complained of herein constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, the full extent of which is presently unknown but is substantial.

81.     Defendants' actions complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause Plaintiff to suffer irreparable harm, including harm to Plaintiff and the substantial business and goodwill symbolized by Plaintiff's Mark; Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to and seeks injunctive relief pursuant to 15 U.S.C. § 1116.

82.     Plaintiff has also sustained damages as a direct and proximate result of Defendants' actions complained of herein in an amount to be proven at trial, including without limitation all

Defendants' profits and/or gains of any kind, including intangible gains, resulting from Defendants' unlawful acts.

83.     Defendants' actions complained of herein have been willful, intentional, and made in bad faith. Plaintiff is therefore entitled to enhanced and exemplary damages, including treble its actual damages, an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**COUNT II**
**Federal Unfair Competition and False Designation of Origin – 15 U.S.C. § 1125(a)**

84.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

85.     Plaintiff's Mark is entitled to protection under Section 43(a) of the Lanham Act.

86.     Defendants' actions complained of herein are likely to cause and have actually caused confusion as to the affiliation, connection, or association of Defendants or their products or services with Plaintiff or its products or services, and/or as to the origin, sponsorship, or approval of Defendants' products by Plaintiff.

87.     Upon information and belief, Defendants have used, are using, and intend to continue using now and in the future in commerce Plaintiff's Mark for the offer and provision of goods and services in such a way that has and will continue to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

88.     Defendants' actions complained of herein constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

89.     Defendants' actions complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause Plaintiff to suffer irreparable harm; Plaintiff has no adequate

remedy at law. Plaintiff is therefore entitled to and seeks injunctive relief pursuant to 15 U.S.C. § 1116.

90.     Plaintiff has also sustained damages as a direct and proximate result of Defendants' actions complained of herein in an amount to be proven at trial, including without limitation Defendants' profits and/or gains of any kind, including intangible gains, resulting from Defendants' unlawful acts.

91.     Defendants' actions complained of herein have been willful, intentional, and made in bad faith. Plaintiff is therefore entitled to enhanced and exemplary damages, including treble its actual damages, an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT III
## Cancellation of U.S. Trademark Registration No. 5,633,755

92.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if set forth fully herein.

93.     Defendant KPMNA owns U.S. Trademark Registration No. 5,633,755.

94.     In light of Plaintiff's prior rights in Plaintiff's Mark, the '755 registration is likely to cause confusion or mistake or to deceive potential consumers and others into believing mistakenly that Defendants or their goods and/or services are affiliated with, related to, or sponsored by Plaintiff or its goods and/or services.

95.     Accordingly, the '755 registration should be cancelled pursuant to 15 U.S.C. §§ 1119 and 1052(d).

## COUNT IV
## Common Law Trademark Infringement and Unfair Competition

96.     Plaintiff incorporates by reference the allegations contained in the foregoing

paragraphs as if set forth fully herein.

97.    For many years, Plaintiff has made exclusive use of Plaintiff's Mark on a wide variety of goods or goods and services.

98.    In addition to the federal registration owned by Plaintiff, as set forth above, Plaintiff's Mark enjoys common law rights in Massachusetts and throughout the United States. These rights are senior and superior to any rights which Defendants may claim.

99.    Both Plaintiff and Defendants are engaged in trade and commerce in the Commonwealth of Massachusetts.

100.    Defendants' use of the Infringing Marks has caused and/or is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods or services have the sponsorship, endorsement, or approval of Plaintiff.

101.    Defendants, by virtue of their acts as alleged above, has willfully, knowingly, maliciously and intentionally engaged in acts of unfair competition and trademark infringement under the common law of the Commonwealth of Massachusetts.

102.    Defendants' actions complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause Plaintiff to suffer irreparable harm; Plaintiff has no adequate remedy at law. Plaintiff is therefore entitled to and seeks injunctive relief.

103.    Plaintiff has also sustained damages as a direct and proximate result of Defendants' actions complained of herein in an amount to be proven at trial, including without limitation Defendants' profits and/or gains of any kind, including intangible gains, resulting from Defendants' unlawful acts.

**COUNT V**
**Violation of M.G.L. c. 93A**

104.    Plaintiff incorporates by reference the allegations contained in the foregoing

paragraphs as if set forth fully herein.

105.    At all times relevant hereto, Defendants were engaged in trade or commerce within the meaning of M.G.L. c. 93A, §§ 2, 11.

106.    Defendants' conduct complained of herein constitutes unfair and deceptive acts or practices within the meaning of M.G.L. c. 93A, §§ 2, 11.

107.    Defendants committed their unfair and deceptive acts and practices knowingly and willfully.

108.    Defendants' unfair and deceptive conduct occurred primarily and substantially within the Commonwealth of Massachusetts.

109.    As a result of Defendants' unfair and deceptive conduct, Plaintiff has suffered, and continue to suffer, injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgement against Defendants on each and every count in this Complaint as follows:

A.    adjudging that Defendants have violated Section 32 of the Lanham Act, 15 U.S.C. § 1114 and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and has engaged in common law unfair competition;

B.    enjoining Defendants, their successors, agents and employees, and anyone acting in active concert or participation with or at the behest or direction of any of them, from using the Infringing Marks or any trademark that is confusingly similar to Plaintiff's Mark, including the enjoining Defendants from:

i.    advertising, marketing, promoting, selling, offering for sale or authorizing any third party to advertise, market, promote, sell and offer for sale any goods or

services bearing Plaintiff's Mark, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Mark;

ii.  engaging in any activity that infringes IEP's rights in Plaintiff's Mark;

iii. engaging in any activity that constitutes unfair competition with IEP;

iv.  using or authorizing any third party to use any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' products or activities are in any way sponsored, licensed or authorized by or affiliated or connected with IEP;

v.   making or displaying any statement, representation, or depiction that is likely to lead the public or those in the trade to believe that the products or services promoted, offered, or sponsored by Defendants are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with IEP, or that IEP's products and services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants;

vi.  registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating Plaintiff's Mark or any other mark that infringes or is likely to be confused with Plaintiff's Mark, or any products of IEP; and

vii. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs, or

22

effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in above subparagraphs;

C.      ordering Defendants to file with the Court and serve on Plaintiff's counsel within 30 days after service of any injunction, a written report, sworn under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

D.      ordering Defendants to deliver up for destruction any and all products, circulars, price lists, labels, brochures, business cards, signs, prints, packages, wrappers, pouches, advertising matter, promotional materials, and other materials in the possession or control of Defendants bearing Plaintiff's Mark, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from Plaintiff's Mark;

E.      ordering Defendants to remove and/or permanently disable and/or destroy all Internet websites, domain names, social media posts, keyword advertisements, other online marketing or promotions, and all other materials bearing or displaying the Infringing Marks or any trademark that is confusingly similar to Plaintiff's Mark;

F.      ordering the United States Patent and Trademark Office to cancel U.S. Trademark Registration No. 5,633,755 pursuant to 15 U.S.C. §§ 1119 and 1052(d);

G.      declaring that Defendants' false advertising, trademark infringement, unfair competition and other unfair and deceptive acts were knowing, intentional, and willful;

H.      awarding Plaintiff compensation for any and all damages, injury or harm incurred as a result of Defendants' unlawful conduct, including without limitation full restitution and/or disgorgement of all profits and benefits that may have been obtained by Defendants as a result of its wrongful conduct and unjust enrichment;

I.      declaring that this is an exceptional case under 15 U.S.C. § 1117;

J.      awarding Plaintiff treble and/or enhanced damages resulting from Defendants' willful and intentional conduct under at least 15 U.S.C. § 1117;

K.      awarding Plaintiff punitive and exemplary damages under at least 15 U.S.C. § 1117;

L.      assessing Plaintiff's costs of this action and Plaintiff's attorneys' fees against Defendants under at least 15 U.S.C. §§ 1114, 1117, and 1125;

M.      awarding Plaintiff treble damages and attorneys' fees under M.G.L. c. 93A, §§ 2, 11.

N.      awarding Plaintiff pre-judgment and post-judgment interest on each and every monetary award; and

O.      ordering or awarding any other such relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issue and claims so triable.

Dated: March 10, 2021                    Respectfully submitted,

*/s/ Stephen F.W. Ball, Jr.*
Stephen F.W. Ball, Jr. (BBO # 670092)
Benjamin N. Luehrs (*pro hac vice* forthcoming)
Whitmyer IP Group LLC
600 Summer Street
Stamford, CT 06901
Tel: 203-703-0800
Fax: 203-703-0801
Email: litigation@whipgroup.com
sball@whipgroup.com
bluehrs@whipgroup.com

*Attorneys for Plaintiff IEP Technologies, LLC*