# EXHIBIT 5

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

- - -

```
IEP TECHNOLOGIES, LLC,     ) CIVIL ACTION NO.
                           ) 1:21-cv-10417-RWZ
           Plaintiff,      )
                           )
                           )
      -vs-                 )
                           )
                           )
                           )
                           )
KPM ANALYTICS,             )
INCORPORATED f/k/a         )
STATERA ANALYTICS          )
INCORPORATED and KPM       )
ANALYTICS NORTH AMERICA    )
CORPORATION f/k/a          )
PROCESS SENSORS
CORPORATION,

           Defendants.
```

MEET & CONFER

December 22, 2021

Reported by:

Rachael M. Syska

Job no: 3881

Page 2

```
 1        A meet-and-confer phone conference,
 2   called by the Plaintiff, taken pursuant to the
 3   Federal Rules of Civil Procedure, by and before
 4   Rachael M. Syska, a Court Reporter and a Notary
 5   Public in and for the Commonwealth of
 6   Pennsylvania, via telephone conference, on
 7   Wednesday, December 22, 2021, at 2:04 p.m.
 8   COUNSEL PRESENT:
 9   For the Plaintiff:
         Whitmyer IP Group, LLC
10       600 Summer Street
         Stamford, Connecticut 06901
11       by Robert D. Keeler, Esq.
         Rkeeler@whipgroup.com
12
     For the Defendants:
13       Thomas Horstemeyer, LLP
         3200 Windy Hill Road SE
14       Suite 1600E
         Atlanta, Georgia 30339
15       by Andrew Crain, Esq.
         Robert D. Gravois, Esq.
16       A.crain@thip.law
         R.gravois@thip.law
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1            P R O C E E D I N G S
 2            MR. KEELER:  Okay.  Great.
 3   Thank you.  This is Rob Keeler, and thank you,
 4   Andrew and Robert, for taking the call today.
 5   I appreciate it.  I received your letter this
 6   morning that went through some of the issues
 7   raised in our letter of December 15th.
 8            So maybe the best thing to do is
 9   start with that and sort of walk through some
10   of the issues there, unless you guys have any
11   objections.
12            MR. CRAIN:  Just as a
13   clarification, I think your letter of -- I may
14   have the wrong date -- was December 7th said
15   that you only wanted to talk about the request
16   for admission, but now you want to talk about
17   some other things, too; is that correct?
18            MR. KEELER:  I thought our
19   December 15th letter was in general about a
20   meet and confirm, but we could -- I just wanted
21   to quickly go through some of these issues you
22   raised today.  If you're not ready, we can
23   always schedule another meet and confirm.
24            MR. CRAIN:  Well, I'm happy
25   for you to walk through them.  I mean,
```

Page 4

```
 1   certainly, if we need to circle back with you
 2   on something with regard to any question you
 3   raise, we may have to do that.  But I just
 4   wanted to understand what the agenda is for the
 5   meeting.
 6            MR. KEELER:  Yeah.  Of course.
 7   So the first issue raised in your letter was
 8   that our letter of November 24th about the
 9   Chubb insurance policy where we had raised a
10   question regarding the potential for coverage.
11   And we understand that your position is that
12   your amended initial disclosures comply with
13   Rule 26.
14            However, we believe our question
15   should be answered, at least, because if there
16   is a duty to supplement the initial disclosures
17   under Rule 26E, it would be appropriate to do
18   so.
19            MR. CRAIN:  Okay.  So I think
20   I understand you to say that our Rule 26
21   supplemented -- let's see -- our second amended
22   initial disclosure that identifies an insurance
23   policy, you have a question about.  I think the
24   rule is that we have to provide for inspection
25   a copy of the insurance agreement under which
```

Page 5

```
 1   the insurance and the insurance business may be
 2   liable to satisfy all or part of a possible
 3   judgment in an action or to identify or
 4   reimburse payments made to satisfy the
 5   judgement.
 6            I think we've complied with that, so
 7   I don't know the basis for your question.  It
 8   sounds like the initial discovery.  I'm just
 9   having trouble understanding how that applies
10   to the obligation that a party has under
11   Rule 26 of initial disclosures.
12            MR. KEELER:  Yeah.  So we're
13   just questioning whether that is an insurance
14   policy or is that some kind of payment under a
15   judgement that may actually be paid out under.
16   So that's the basis for our question is if it's
17   not -- if the insurance policy is not one that
18   needs to be identified under the rules, we
19   believe it should be removed from the initial
20   disclosures.
21            MR. CRAIN:  Okay.  KPM is
22   going to stand by its response to initial
23   disclosures as it pleases, it complies and
24   satisfies the rule.  And I would commend you to
25   the documents that have been produced in
```

2 (Pages 2 to 5)

Page 6

1  discovery if there's more specific information
2  that you may, you know, want to know about.
3         I don't think I'm going to be able
4  to answer those specific questions about what
5  the policy may or may not cover on the phone.
6         MR. KEELER:  So I understand
7  it's KPM's position that they won't look into
8  the question that we've posed.
9         MR. CRAIN:  Well, what's the
10 basis?  I still don't understand the basis for
11 your question.  Is it a discovery request?
12        MR. KEELER:  We are trying to
13 understand -- we, as IEP, are trying to
14 understand whether the insurance policy
15 identified by KPM is one that is properly
16 identified under Rule 26 A(1)(a4).
17        MR. CRAIN:  Okay.  We believe
18 that it is.  If you want to serve an
19 interrogatory or a document request, if you
20 have further questions about it or you want to
21 take a deposition, I suppose you can do that.
22        But I don't know that this dialogue
23 on a call regarding the substance issues about
24 a policy is the appropriate avenue for that.  I
25 think we've complied with our rule and

Page 7

1  obligation.  If you feel otherwise, let me
2  know.
3         MR. KEELER:  We do because we
4  believe we've raised an issue that would
5  require supplementation under Rule 26E.
6         MR. CRAIN:  Okay.  I don't
7  know that we agree with that.  I will go back
8  and take another look at that and see if
9  there's something that would require
10 supplementation, and if so, we'll certainly
11 supplement.  I'm not aware that there's
12 anything at this time, but we'll go back and
13 take another look at it.
14        MR. KEELER:  Okay.  Thank you.
15 Regarding the second issue in your letter
16 today, you confirmed that KPM is not
17 withholding any documents of responses to
18 Request 3, 6, 7, or 8 on the basis of
19 privilege, and you ask whether IEP is
20 withholding any documents.
21        IEP is not at this time withholding
22 any documents on the basis of privilege.  Is
23 KPM withholding any documents regarding any
24 other requests on the basis of privilege at
25 this time?

Page 8

1         MR. CRAIN:  Not to my
2  knowledge, no.
3         MR. KEELER:  Then the third
4  issue in your letter today states that not
5  withstanding IEP's recent serve request, KPM
6  has produced all of the responsive documents in
7  possession, custody, and control, and you ask
8  if IEP will state -- will confirm whether it
9  has done so as well.  IEP has produced those
10 documents, so --
11        MR. CRAIN:  So we're going to
12 have an issue with that, but I mean, I don't
13 think -- I'm sorry.  Go ahead.  I'm sorry, Rob.
14 Go ahead and finish what you were saying.
15        MR. KEELER:  I was just saying
16 so we can still confirm.
17        MR. CRAIN:  Yeah.  Okay.  So I
18 think we are probably going to have an issue
19 with that with regard to financial documents,
20 but I don't think this is the call for that
21 because we're still going through your
22 discoveries that you've recently produced.
23        But I want to go ahead and flag for
24 you that I think that's a point of disagreement
25 between the parties.

Page 9

1         MR. KEELER:  Okay.  Yeah.
2  We'll wait to hear from you on that.
3         MR. CRAIN:  Okay.
4         MR. KEELER:  The next issue in
5  your letter today was regarding the 33D of the
6  U.S. Trademark Registration Prosecution
7  Records.  We understand KPM's position.
8         And the final thing in your letter
9  today was regarding Interrogatory No. 8 in
10 which KPM states that its response to
11 interrogatory is correct at this time.  And
12 unless you have anything else to add on those
13 issues, we can jump into the RFAs.
14        MR. CRAIN:  No.  I think the
15 letters speak for themselves.
16        MR. KEELER:  So in our letter
17 of December 7th, we had a couple questions on
18 the RFA responses that KPM served.  The first
19 one being to RFA No. 1 in which -- and correct
20 me if I'm misstating this -- you know, KPM
21 basically responded that it cannot respond to
22 RFA No. 1 in part because of IEP's response to
23 Interrogatory No. 3.
24        Interrogatory No. 3 was recently
25 supplemented.  And though we disagree with your

3 (Pages 6 to 9)

Page 10

1  characterization that IEP refused to adequately
2  respond to it before, is it KPM's position that
3  it still does not have the information it needs
4  to respond to this RFA?
5         MR. GRAVOIS:  Andrew, this is
6  Robert.  I can take this.
7         MR. CRAIN:  Yeah.  We'll let
8  Robert respond.  Yeah.  Go ahead.
9         MR. GRAVOIS:  So, Rob, I have
10  not had the opportunity to look at the
11  supplemental interrogatory responses that you
12  served, but I'll go take a look.  But part of
13  our problem with this RFA is that KPM does not
14  have knowledge of what all of Plaintiff's goods
15  are.
16         And so, we'll take a look at the
17  interrogatory response to see if that cures
18  that problem.  We'll have to get back to you on
19  that because we have not had the opportunity to
20  look at that.
21         MR. KEELER:  Okay.  And I'll
22  just let you know right now that our response,
23  we 33'd a bunch of documents regarding the
24  products which include, you know, user manuals
25  and things like that.

Page 11

1         And thank you for bringing up the
2  whole issue of understanding what IEP's goods
3  are because IEP doesn't understand at this
4  point what all of KPM's goods are either.  And
5  I wanted to propose maybe an exchange of some
6  sort of list of the goods if that would just
7  make it easier for everyone, rather than
8  having, you know, these 33Ps (sic) of a bunch
9  of user manuals and alike.  Would that be
10  something that KPM would be interested in?
11         MR. GRAVOIS:  Andrew and I
12  will go back and talk about that, but I think
13  that the rules for discovery already provide
14  for any of that type of information.  We've
15  asked for that information, and we'll take a
16  look at the supplemental response.  But
17  initially, IEP refused to provide that
18  information.
19         MR. KEELER:  We disagree with
20  that characterization.  And what I'm asking now
21  is for the benefit of both parties.  You know,
22  if there was some document that we could each
23  agree to and generate on both sides that would
24  include a more simple list then that would --
25  you know, containing part numbers or maybe a

Page 12

1  description, that would be helpful for both
2  sides.  And I'm hearing that that's not
3  something that KPM wants to do; is that
4  correct?
5         MR. GRAVOIS:  That's not what
6  I said.  We're going to go back and look at
7  that.  We'll look at the information that you
8  provided in your supplemental response, and
9  we'll get back to you on that.
10         MR. KEELER:  Okay.  Thank you.
11  So for RFA No. 1, whether KPM will supplement,
12  its response is still outstanding?
13         MR. GRAVOIS:  Yes.  That's
14  correct.
15         MR. KEELER:  Okay.  RFA No. 3
16  was the next one we brought up.  And RFA No. 3
17  says, admit the Defendants sell goods and/or
18  services beyond those described in Reg.
19  5633755.
20         And Defendants stated that they can
21  neither admit nor deny this request because
22  undefined ambiguous and cannot be understood.
23  My question for KPM is:  Why is that ambiguous
24  and cannot be understood nor defined?
25         MR. GRAVOIS:  So the major

Page 13

1  problem with this RFA is the language.  Beyond
2  those described in Reg. No. 755, we have no
3  idea what this RFA is intending to mean.
4  Beyond those -- the word "beyond" refers to
5  directional or temporal proximity, so this RFA
6  just doesn't make sense.
7         MR. KEELER:  So one of the
8  definitions of the word "beyond," as I just
9  Googled it, is apart from or except.  Does that
10  change KPM's response?
11         MR. GRAVOIS:  No, it doesn't.
12  It's still ambiguous and unclear.  What is --
13  let me ask you this:  What is this RFA -- in
14  plain English, what are you asking for?
15         MR. KEELER:  Whether Defendant
16  sells goods or services beyond those described
17  in the registration.  I mean, it's clear that
18  the registration describes good or services.
19  So we're asking Defendants to admit that there
20  are goods or services that are sold beyond
21  those.
22         MR. GRAVOIS:  It doesn't make
23  sense.
24         MR. KEELER:  Why does that not
25  make sense?

4 (Pages 10 to 13)

Page 14

1  MR. GRAVOIS: Because the
2  phrase "beyond that" doesn't make sense. It's
3  misused in this RFA.
4  MR. KEELER: I don't believe
5  it's misused. I think it's a proper use of the
6  word "beyond."
7  MR. GRAVOIS: We disagree with
8  you on that.
9  MR. KEELER: If we amended the
10 language to be "besides those", would that
11 help?
12 MR. GRAVOIS: Sorry. Can you
13 repeat the phrase?
14 MR. KEELER: Besides those
15 described in Reg. 755.
16 MR. GRAVOIS: Are you
17 referring to -- "besides" also is referring to
18 proximity. Are you talking about selling goods
19 together with those described in the
20 registration?
21 MR. KEELER: No. I would say
22 additional goods.
23 MR. GRAVOIS: Okay. So that's
24 not the way that I read this RFA. And if
25 you're asking if Defendants sell goods and/or

Page 15

1  services in addition to those described in that
2  registration, that's a different question.
3  And I think that if you want that
4  information, that would have to be pursued in a
5  different RFA.
6  MR. KEELER: I disagree. I
7  think it's a perfectly reasonable
8  interpretation of the RFA. And if we could
9  agree right now that that's the interpretation,
10 Defendants could respond to this.
11 MR. GRAVOIS: No, because an
12 RFA is viewed as evidence in a trial. And so,
13 we can't just agree on what this would mean
14 because when it's presented to the jury, they
15 need to know exactly what the RFA states, so --
16 MR. KEELER: I disagree.
17 Sorry. Go ahead.
18 MR. GRAVOIS: I think probably
19 the thing that makes sense is a new RFA with
20 the information that you're asking.
21 MR. KEELER: I disagree
22 because this is a perfectly reasonable
23 interpretation of it, and Defendants didn't
24 even try to respond to this RFA. They simply
25 rejected with a clarifying response. They have

Page 16

1  exactly what they want, and that's provided for
2  in the rule for the RFA.
3  MR. GRAVOIS: We disagree. We
4  believe in line with the rules, we fully
5  answered this RFA to the extent required. If
6  you're asking for different information, you
7  need to admit a different RFA.
8  MR. KEELER: Okay. So we
9  understand that the parties are at an impasse,
10 so they will have to move to compel. Moving on
11 for RFA No. -- I'm sorry.
12 MR. CRAIN: I was just -- the
13 silence. I was wondering if we were going to
14 move on or not.
15 MR. KEELER: Yeah. Of course,
16 we can.
17 MR. CRAIN: Okay. Thanks.
18 MR. KEELER: For RFA No. 4,
19 which states that admit Defendants sell goods
20 and/or services under Defendant marks that are
21 beyond those described in Reg. 5633755.
22 It appears to be a similar issue.
23 Are we going to be at an impasse on that as
24 well?
25 MR. GRAVOIS: Yeah. And I can

Page 17

1  probably speed this up. I think all of the
2  RFAs that use the phrase "beyond those" seem to
3  have the same fundamental problem. There are
4  some other RFAs that have additional problems,
5  but No. 4 --
6  MR. KEELER: Okay. So that's
7  No. 4. No. 5 uses "beyond those" language.
8  No. 6 uses the "beyond those" language. I
9  believe that's all the ones that use the
10 "beyond those" language.
11 Regarding RFA No. 7, that states
12 that admit that Defendants offer goods and/or
13 services in the same channels of trade as
14 Plaintiff. And then subject to the objection,
15 Defendants denied that RFA. Is that denial
16 based on the objection, or is it just a flat
17 denial?
18 MR. CRAIN: It kind of stated.
19 MR. KEELER: Well, I guess my
20 question is: Is there -- is it the language
21 "in the same channels of trade as Plaintiff"
22 that's the issue here, or is there a different
23 reason why Defendants are denying this RFA?
24 MR. CRAIN: I don't understand
25 what you're asking. Robert, can you speak to

Page 18

```
 1   that?
 2           MR. GRAVOIS:  I'm struggling
 3   there, too.  I'm not sure I'm understanding
 4   what you're asking, but we're denying it
 5   because it's incorrect.
 6           MR. KEELER:  Okay.  So it's
 7   not because of the objection for the ambiguity?
 8           MR. CRAIN:  Are you asking
 9   because it's ambiguous -- we're denying it
10   because it's so ambiguous that we can't answer
11   so we're denying it?  Is that what you mean?
12           MR. KEELER:  Yeah.  That's --
13   we're wondering if that's KPM's position.
14           MR. CRAIN:  I don't believe it
15   is.  Robert?
16           MR. GRAVOIS:  We're denying it
17   because -- not true.
18           THE COURT REPORTER:  I'm
19   sorry.  I couldn't get the end of what you
20   said.
21           MR. GRAVOIS:  I'm sorry.
22   We're denying it because it's just not true.
23           THE COURT REPORTER:  Thank
24   you.
25           MR. KEELER:  Okay.  Regarding
```

Page 19

```
 1   RFA No. 8, that one said, admit in the next
 2   five years, Defendants intend to expand the
 3   channels of trade they market goods and/or
 4   services.
 5           And Defendants responded saying they
 6   couldn't admit or deny this request because the
 7   meaning of the phrase "intend to expand the
 8   channels of the trade they market goods or
 9   services" is unclear, ambiguous and cannot be
10   understood.
11           Is this another one where Defendants
12   are just going to take the position that we
13   need to serve another RFA?
14           MR. GRAVOIS:  I suppose that
15   is an option that you can -- that you have.
16   We're just unable to understand this RFA as
17   drafted.
18           MR. KEELER:  Why is that?
19           MR. GRAVOIS:  We don't know
20   what the phrase "intend to expand the channels
21   of trade".  That's one reason.  In addition,
22   it's unclear if you're asking for, at this
23   point, does KPM have that intent, or do they
24   believe they're going to have that intent at
25   some point within the next five years?  This is
```

Page 20

```
 1   another example of an unclear RFA.
 2           MR. KEELER:  IEP believes it's
 3   perfectly clear as drafted.  And, you know, at
 4   a minimum, the rules provide that, you know, if
 5   the matter is not admitted, the answer must
 6   specifically deny it or state in detail why it
 7   cannot truthfully admit or deny it here.  We
 8   don't believe you've done that.
 9           So if this is just another one where
10   for some reason you believe it's completely
11   unclear what this means when we view it as
12   pretty clear, I believe it's another one that
13   we might be at an impasse on.
14           MR. GRAVOIS:  That may be the
15   case.  We don't understand this RFA.
16           MR. KEELER:  Okay.  Then yeah,
17   parties are at an impasse.  Regarding RFA No.
18   9, is this a case again where that -- which I
19   belive was RFA No. 7, where the denial is not
20   based upon the ambiguous objection, but you
21   belive it's a truthful denial?
22           MR. GRAVOIS:  I belive it is a
23   truthful denial.  Correct.
24           MR. KEELER:  And that brings
25   us to RFA No. 10, I believe.  Is this the same
```

Page 21

```
 1   case where KPM believes this is a truthful
 2   denial?
 3           MR. CRAIN:  Hey, Rob, as I'm
 4   thinking about this and I'm listening to your
 5   question -- and I'm sorry to interrupt you.
 6   You know, you're asking these questions with
 7   regard to is this a truthful denial, or is it
 8   basically an objection?  You know, we're
 9   denying this based upon the way it's being
10   understood.
11           I don't want you to have a takeaway
12   here that we're somehow removing our
13   objections.  I mean, I think, you know, the
14   objections that we have do color the
15   Defendants' understanding of these RFAs.  So,
16   you know, I think Robert's answer is correct,
17   but you know, in no way do I think that we're
18   abandoning that.  I don't want you to think
19   that we're abandoning these objections because
20   I think the objections, you know, do inform and
21   color our understanding that leads to our
22   response.
23           MR. KEELER:  Okay.  So going
24   back to RFA No. 9, Defendants say that the
25   phrase "the same channels of trade as
```

Page 22

1   Plaintiff" is ambiguous.  Why is that?
2           MR. CRAIN:  I don't want to
3   speak to -- go ahead, Robert.
4           MR. GRAVOIS:  I'm sorry.  I
5   just couldn't hear the last part of what you
6   said, Rob.  It kind of faded out.
7           MR. KEELER:  Okay.  I asked
8   why Defendants believe that the term "same
9   channels of trade as Plaintiff" is ambiguous or
10  rather unclear as it's stated in the response
11  of RFA No. 9.
12          MR. GRAVOIS:  We don't know
13  what "channels of trade" is intended to mean.
14  It has different meanings to different people.
15          MR. CRAIN:  And again, and
16  just to tag on to that, Rob, while the
17  discovery is ongoing, and we're trying to
18  understand what the parties' respective
19  channels of trade are, to the extent that does,
20  you know, come to have an understanding later
21  in this case that may be different.
22          I mean, it is ambiguous to us, and
23  we think that not withstanding that, we're able
24  to answer it in respective, but to the extent
25  we were to have a clarity or meaning at some

Page 23

1   point in time later, it could very well, you
2   know, impact the response here.
3           We think that denial probably
4   remains, but you know, because, as Robert has
5   said, this phrase "same channels of trade as
6   Plaintiff" is somewhat unclear, you know, it
7   has created an issue, and it is indeed
8   objection, and we're not removing that.
9           MR. KEELER:  I don't
10  understand because "the same channels of trade
11  as Plaintiff," I mean, that seems to have one
12  definition under English.  And if there's
13  multiple definitions, I think, under Rule 36,
14  KPM should have fairly responded to the
15  substance of the RFA with whatever different --
16          MR. CRAIN:  I think we did.
17          MR. KEELER:  --
18  interpretations it has.
19          MR. CRAIN:  I think that's
20  been done.  I mean, you seem to want to argue
21  an RFA that's been answered, and you almost
22  seem to be wanting us to remove objections.
23  And we're not going to do that.  You know, we
24  stand by the response.  I mean, I don't know
25  what else to tell you.

Page 24

1           MR. KEELER:  Okay.  Yeah.  And
2   I've never asked you to remove your objections
3   or to argue with you.  I'm literally just
4   trying to understand right now because the
5   responses are very unclear.
6           MR. CRAIN:  "Denied" is
7   unclear?
8           MR. KEELER:  We just went over
9   how there are all of these "subject tos" and
10  "without waiving," so yes, the "denied" is
11  unclear.
12          MR. CRAIN:  Okay.  We
13  disagree.  Go ahead.
14          MR. KEELER:  Regarding RFA No.
15  10, I understand that Defendants have objected
16  as ambiguous and have denied -- the RFA, denied
17  that Defendants have marketed goods and/or
18  services at the same trade shows attended by
19  Plaintiff.
20          But I believe we have at least one,
21  Powder Bulk & Solids, that both companies have
22  attended, so we just don't understand this
23  response.
24          MR. GRAVOIS:  This is a
25  correct and truthful denial of the RFA.

Page 25

1           MR. KEELER:  Okay.  Same thing
2   for RFA No. 11, is it KPM's position that this
3   is a correct and truthful denial?
4           MR. GRAVOIS:  Subject to our
5   objections, yes, as previously stated.
6           MR. KEELER:  And I assume
7   that's your response for RFA No. 12 as well.
8           MR. GRAVOIS:  I mean, the
9   responses speak for themselves here.  So I'm
10  not sure what you're asking exactly.
11          MR. KEELER:  Well, we're just
12  a little confused because we looked at the
13  customers that KPM identified in their
14  interrogatories.  They point to KPM 002063.
15          And in IEP's interrogatory
16  responses, we pointed to IEP 004224, and it
17  seems that there are customers in common.  So
18  we don't understand this denial to RFA No. 12.
19          MR. GRAVOIS:  We fully and
20  truthfully complied with our obligation in
21  responding to this RFA.
22          MR. CRAIN:  Hey, Rob, would
23  you recite back those document numbers again
24  that you looked at?
25          MR. KEELER:  Sure.  KPM 002063

Page 26

1  and IEP 004224.
2      MR. CRAIN:  Thank you.
3      MR. KEELER:  Does KPM need
4  time to go look at those after this call and
5  inform us of their position?
6      MR. CRAIN:  I think our
7  position is as stated, as Robert has already
8  said.  Whether or not we, you know, go back and
9  make a change, we'll let you know.  But the
10 response is what the response is.
11     MR. KEELER:  Okay.  And then
12 just jumping ahead to 14 and 15 since those
13 seem to be a little more in common with 12,
14 which we were just talking about.  I assume the
15 response is the same there as well?
16     MR. GRAVOIS:  Responses are as
17 stated for the respective RFAs.
18     MR. KEELER:  And going back to
19 RFA No. 13, is this -- this is one where
20 Defendants state they can neither admit or deny
21 this request because the meaning of the phrase
22 "intent to expand the customers and/or
23 potential customers to whom they market goods
24 and services" is unclear, ambiguous and cannot
25 be understood.  Why does KPM take the position

Page 27

1  that that phrase is ambiguous?
2      MR. GRAVOIS:  "Intent to
3  expand the customers and/or potential
4  customers" is unclear and ambiguous because it
5  doesn't make any sense.
6      MR. KEELER:  Why is that?  It
7  seems pretty clear.
8      MR. GRAVOIS:  Are you asking
9  why we're denying this or -- sorry -- why we're
10 not able to answer this?  That might be the
11 subject of -- I really don't know how much more
12 to explain than "intent to expand the customers
13 and potential customers" just doesn't make any
14 sense.
15     MR. KEELER:  Okay.  We
16 disagree.  This is another one where we're at
17 an impasse, I believe.
18    And then the last two, 16 and 17, I
19 assume KPM's position is that the denials stand
20 and speak for themselves?
21     MR. GRAVOIS:  Set forth in --
22 RFAs.
23     THE COURT REPORTER:  I'm
24 sorry.  Can you say that answer one more time?
25     MR. GRAVOIS:  It's set forth

Page 28

1  in the responses to the respective RFAs.
2      THE COURT REPORTER:  Thank
3  you.
4      MR. GRAVOIS:  And what numbers
5  were those for, Rob?
6      MR. KEELER:  It was to 16 and
7  17.  That's all I had on the RFAs, unless you
8  guys have anything.
9      MR. CRAIN:  On the RFAs?  No.
10 Robert?
11     MR. GRAVOIS:  No.  Not on the
12 RFAs.
13     MR. KEELER:  Okay.  And the
14 only other thing left in my notes here is that
15 in my December 15th letter, I noted that we
16 were producing IEP 004247, but I left out that
17 we also produced pages bearing Bates numbers
18 through IEP 004314 as well at that time.  So I
19 just wanted to make that clear.
20     MR. CRAIN:  Can you repeat
21 that, please?
22     MR. KEELER:  Yeah.  It went
23 through IEP 004314 is the total range that you
24 should have gotten from us.
25     MR. CRAIN:  -4314?

Page 29

1      MR. KEELER:  Correct.  And I
2  believe that's all from our side.
3      MR. CRAIN:  Yeah.  I don't
4  know that I have anything else, other than I
5  think you should be in receipt of them.  I
6  think we had some amended deposition notices
7  now that we got the dates established.  You
8  should be in receipt of those.
9     Other than that, I don't know that I
10 have anything else at this time.  But we will
11 probably be circling back.  I think you have a
12 statement in one of your prior letters with
13 regard to IEP's intentions that its discovery
14 responses were complete.  That may not be the
15 correct statement you have there, but we're
16 still looking at that, probably circling back
17 to you in a couple of days.
18     MR. KEELER:  Okay.  Yeah. And
19 just about the deposition notices, just so you
20 know, our mayor here in Stamford last night, we
21 imposed mask mandate.  So I don't know when
22 that will be taken away, but just to give you a
23 heads up.
24     MR. CRAIN:  Sure.  How large
25 of a -- I don't know if you're at the location

8 (Pages 26 to 29)

Page 30

1  now, but how large is the room that we'll be
2  in?
3          MR. KEELER: A standard size
4  conference room, I would say. I don't really
5  know the dimensions of it.
6          MR. CRAIN: Okay. How many
7  people or how many seats or chairs or whatever?
8  Give me some ballpark here.
9          MR. KEELER: Let me think.
10 Probably about six on each side of the table
11 and one at each end.
12         MR. CRAIN: Okay. So it
13 should allow for some sufficient spacing as
14 well.
15         MR. KEELER: Yeah. There
16 should be a bit of room in there.
17         MR. CRAIN: Okay. That's all
18 I have. Robert?
19         MR. GRAVOIS: Nothing else
20 from me.
21         MR. CRAIN: All right.
22         MR. KEELER: Thank you
23 everyone for your time today.
24         THE COURT REPORTER: And then
25 before we hop off, Mr. Keeler, you did want an

Page 31

1  original copy of the transcript; right?
2          MR. KEELER: Correct.
3          THE COURT REPORTER: Okay.
4  And then, Mr. Crain, did you want a copy?
5          MR. CRAIN: So I understand
6  since Rob believes there to be a discovery
7  impasse, that we'll probably have a motion to
8  compel, so let's go ahead and get a copy of
9  that, please.
10         THE COURT REPORTER: Okay.
11 You got it. And then, Mr. Gravois, did you
12 want a copy?
13         MR. GRAVOIS: No. I don't
14 want a separate copy.
15         THE COURT REPORTER: Okay.
16 That is all that I needed.
17         MR. CRAIN: Thank you.
18         MR. KEELER: Thank you,
19 everyone. Have a happy holiday.
20         (This discussion was concluded at
21 2:42 p.m.)
22
23
24
25

Page 32

1                CERTIFICATE
2                   - - -
3          I hereby certify that the proceedings
4  and evidence are contained fully and accurately
5  in the stenographic notes taken by me on the
6  hearing of the within cause, and that this is a
7  correct transcript of the same.
8
9
10
11
12     _____
       Rachael M. Syska, Notary Public
13     Court Reporter
14
15
16
17
18
19
20
21
22
23
24
25

9 (Pages 30 to 32)