# Exhibit B

```
                        UNCERTIFIED ROUGH DRAFT
 1
        The following transcript represents a realtime
 2

 3   version of the deposition of JOHN SHEA taken on January 27,

 4   2022.

 5        The realtime/rough draft text is unedited and

 6   uncertified and may contain untranslated stenographic

 7   symbols, an occasional reporter's note, a misspelled proper

 8   name, and/or nonsensical word combinations.  All such

 9   entries will be corrected on the final certified

10   transcript, which we will delivered to you in accordance

11   with our standard delivery terms or on an expedited basis,

12   should you desire faster delivery.  This will serve as

13   notification that the final certified transcript will have

14   differences from the realtime/rough draft version,

15   including differing page and line number references.

16        Due to the need to proof and correct entries prior

17   to certification, you agree to use this realtime/rough

18   draft text only for the purpose of augmenting counsel's

19   notes and not to use or cite it in any court proceeding or

20   to distribute it to any other parties.                    08:51

21                                                             09:25

22

23

24

25
```

1      Q      What do you understand this document to be?          11:00

2                  ATTORNEY KEELER:  Counsel, for the record        11:00

3      was this produced with a Bates number.                       11:00

4                  ATTORNEY GRAVOIS:  It is.  Thank you for          11:00

5      reminding me.  This is a printout of native document IEP     11:00

6      000047.                                                      11:00

7                  ATTORNEY KEELER:  Thank you.                      11:01

8                  THE WITNESS:  I believe this is a 2018            11:01

9      marketing budget or plan for IEP Technologies.               11:01

10     BY ATTORNEY GRAVOIS:                                         11:01

11     Q      Have you reviewed this document to determine          11:01

12     whether it's accurate?                                       11:01

13     A      Well, it's accurate as provided.                      11:01

14     Q      What does that mean?                                  11:01

15     A      It means that it's a plan budget, which we work       11:01

16     from throughout the year or we plan our year for.  So        11:01

17     accuracy from the standpoint of specific results doesn't     11:01

18     come into play.  It's accurate that it's what we had         11:01

19     provided as part of the discovery.                           11:02

20     Q      Okay.  If you can go back to page 9 of Exhibit 4,     11:02

21     Interrogatory Number 5?                                      11:02

22     A      Page 9?                                               11:02

23     Q      Yes, sir.                                             11:02

24     Q      It says identify and fully describe all channels     11:02

25     through which plaintiff markets, advertises or promotes its  11:02

UNCERTIFIED ROUGH DRAFT

```
 1   goods and/or services under plaintiff's mark including        11:02

 2   without limitation all trade shows.  Are the trade shows      11:02

 3   identified in Exhibit 5 all trade shows that IEP attended in  11:02

 4   2018?                                                         11:02

 5        A    I don't know.                                       11:02

 6        Q    Are you aware of any of these trade shows           11:03

 7   identified in Exhibit 5 that IEP did not attend?              11:03

 8        A    That, I can't say.                                  11:03

 9        Q    You don't know?                                     11:03

10        A    I don't know.                                       11:03

11             (Exhibit # was marked for identification.)          11:04

12   BY ATTORNEY GRAVOIS:                                          11:04

13        Q    Mr. Shea, you've been handed what has been marked   11:04

14   as Exhibit 6.  For the record this is a printout of native    11:04

15   document IEP 00065.  Do you recognize this document?          11:04

16        A    Yes, I do.                                          11:04

17        Q    What do you understand this document to be?         11:04

18        A    A version of a 2018 marketing budget for IEP        11:04

19   Technologies.                                                 11:04

20        Q    At the bottom of Exhibit 6, there's a list of       11:04

21   trade shows.  Do you know whether IEP attended all of those   11:04

22   trade shows?                                                  11:04

23        A    I do not.                                           11:04

24        Q    Do you have any knowledge as to whether IEP did     11:05

25   not attend any of those trade shows?                          11:05
```

UNCERTIFIED ROUGH DRAFT

| | | |
|---|---|---|
| 1 | A      I do not. | 11:05 |
| 2 | Q      If you compare Exhibit 5 to Exhibit 6.  At the | 11:05 |
| 3 | top, they both say IEP Technologies 2018 marketing budget; | 11:05 |
| 4 | correct? | 11:05 |
| 5 | A      Yes. | 11:05 |
| 6 | Q      And they both identify trade shows; correct? | 11:05 |
| 7 | A      That's correct. | 11:05 |
| 8 | Q      And if you look closely, it's not the same trade | 11:05 |
| 9 | shows; right? | 11:05 |
| 10 | A      There are differences between the two lists. | 11:05 |
| 11 | Q      Can you tell me, Mr. Shea, how KPM is to determine | 11:05 |
| 12 | what trade shows IEP attended in 2018 from these documents | 11:05 |
| 13 | that IEP produced and that you swore under penalty of | 11:05 |
| 14 | purgery were truthful and accurate? | 11:06 |
| 15 | ATTORNEY KEELER:  Objection.  Form. | 11:06 |
| 16 | THE WITNESS:  I cannot. | 11:06 |
| 17 | BY ATTORNEY GRAVOIS: | 11:06 |
| 18 | Q      You would agree with me that KPM and its attorneys | 11:06 |
| 19 | are unable to ascertain which trade shows IEP attended in | 11:06 |
| 20 | 2018; correct? | 11:06 |
| 21 | ATTORNEY KEELER:  Objection.  Form. | 11:06 |
| 22 | BY ATTORNEY GRAVOIS: | 11:06 |
| 23 | Q | 11:06 |
| 24 | A      Can you repeat the question? | 11:06 |
| 25 | Q      Yeah.  Let me rephrase that one. | 11:06 |

UNCERTIFIED ROUGH DRAFT

```
1        You would agree with me that KPM and its attorneys    11:06

2   are unable to ascertain from Exhibits 5 and six which trade    11:06

3   shows IEP attended in 2018; correct?    11:06

4        A    11:06

5             ATTORNEY KEELER:  Objection.  Form.    11:06

6             THE WITNESS:  From these two specific    11:06

7   documents, correct.    11:06

8        Q    Why did you sign this verification statement under    11:06

9   penalty of perjury when you were unable to identify whether    11:07

10  these documents accurately identify the trade shows that IEP    11:07

11  attended?    11:07

12             ATTORNEY KEELER:  Objection to form.    11:07

13             THE WITNESS:  I believe the intent with    11:07

14  these two documents were to show the IEP planning process,    11:07

15  and these two documents are part of that planning process.    11:07

16  We do establish every year a plan.  We have to put in some    11:07

17  degree of budget, but that plan is fluid throughout the    11:07

18  year.  Some opportunities arise that we take advantage of, a    11:07

19  show or a market that we haven't been into before.  We take    11:08

20  advantage of that.  Others we look at and perhaps we    11:08

21  determine others have arisen throughout the year and we    11:08

22  can't afford to do that one.  But these are two versions    11:08

23  of -- or two revisions of our planning process.  And I do    11:08

24  believe they fit within the answer of the interrogatory or I    11:08

25  would not have signed them as being accurate to my belief.    11:08
```

UNCERTIFIED ROUGH DRAFT

```
 1   BY ATTORNEY GRAVOIS:                                    11:08

 2        Q    Did you review Exhibit 5 and Exhibit 6 to     11:08

 3   determine whether they factually responded to Interrogatory  11:08

 4   Number 5?                                                11:08

 5        A    Yes, I did.                                    11:08

 6               (Exhibit # was marked for identification.)   11:09

 7   BY ATTORNEY GRAVOIS:                                     11:09

 8        Q    Mr. Shea, you've been handed what has been marked  11:09

 9   as Exhibit 7.  Do you recognize this document?  And for the  11:10

10   record this is a printout of native document IEP 000066.  11:10

11        A    Yes, I do.                                     11:10

12        Q    What do you understand this document to be?   11:10

13        A    It is a plan for our 20 -- or what was our 2020  11:10

14   trade show activities that we had planned for the year.  11:10

15        Q    Do you know if IEP attended all of these trade  11:10

16   shows that's on this list?                              11:10

17        A    I know for a fact we did not because of COVID.  11:10

18        Q    That's what I figured.  Can you identify which  11:10

19   ones you did not attend or that IEP did not attend?    11:10

20               ATTORNEY KEELER:  Objection.  Form.         11:11

21               THE WITNESS:  I cannot.                      11:11

22   BY ATTORNEY GRAVOIS:                                     11:11

23        Q    Are you able to identify which ones IEP did   11:11

24   attend?                                                 11:11

25        A    I cannot.                                     11:11
```

1    Q    If you go back to Exhibit 4, which is the second    11:11

2    supplemental objections and responses to defendant's first    11:11

3    set of interrogatories on page 10, you can see that IEP    11:11

4    000048, which is Exhibit 7, is sited?    11:11

5    A    I'm sorry.  What page was it?    11:11

6    Q    Look at page 10.    11:11

7    A    Yes.    11:11

8    Q    Do you see there's a list of numbers and it is    11:11

9    one, two, three, four, five lines down.  Do you see IEP    11:11

10   000047?    11:12

11   A    Yes.  I do.    11:12

12   Q    And 48?    11:12

13   A    Yes, I do.    11:12

14   Q    So those are Exhibits 5 and six.  Those were sited    11:12

15   in response to five.  If you look at two lines further down,    11:12

16   IEP 000066, that's Exhibit 7.    11:12

17   A    Okay.    11:12

18   Q    Do you know why Exhibit 7 was cited as being    11:12

19   responsive to Interrogatory Number 5?    11:12

20   A    My belief for Exhibit 7 in its response to    11:12

21   Interrogatory Number 5 is that as part of the entire    11:12

22   submittal, not as a stand alone document, but as part of the    11:13

23   entire submittal, it is intended to provide an overview of    11:13

24   our typical targeted trade shows as part of our process that    11:13

25   we go through every year to identify all areas, all markets,    11:13

1    all exhibitions that support them, and then we lay out our          11:13
2    plan.  Every year, the majority of those do occur and we do        11:13
3    attend and every year typically some may not occur or we may       11:14
4    not attend or others are added.  This is not intended to be        11:14
5    a document which, as a standalone, answers all of                  11:14
6    Interrogatory Number 5.                                            11:14
7        Q    Tell me, Mr. Shea, if you're unable to determine         11:14
8    from Exhibit 7 which trade shows IEP did and did not attend,       11:14
9    how is KPM or its attorneys supposed to be able to determine       11:14
10   that information from Exhibit 7?                                    11:14
11       A    Exhibit 7 is not intended to be a stand alone            11:14
12   document to, on its own, answer number five in its entirety.       11:14
13   It's intended to be taken along with all of the other             11:15
14   documentation to support the information that IEP                  11:15
15   Technologies was sharing with the defendant to show our --        11:15
16   as a whole, our activities in marketing through exhibitions.      11:15
17       Q    Are you aware of any other information in IEP's          11:15
18   responses to Interrogatory Number 5 that would allow KPM or       11:15
19   its attorneys to determine which trade shows IEP did and did      11:15
20   not attend in 2020?                                                11:15
21       A    IEP Technologies does not track post fact.  It is       11:15
22   our structure for trade show, exhibition, and how we use          11:16
23   trade shows or exhibitions to support our marketing               11:16
24   activities.  It is intended as a planning tool, a planning        11:16
25   process, and then ultimately executing.  It is not -- that        11:16

UNCERTIFIED ROUGH DRAFT

| | | |
|---|---|---|
| 1 | information is not retained.  It was never intended to be | 11:16 |
| 2 | retained after the fact as part of discovery, if you will. | 11:16 |
| 3 | So the only thing that we can provide is and as part of this | 11:16 |
| 4 | response, this interrogatory, in searching for documentation | 11:16 |
| 5 | is what we had been able to gather from our budgeting and | 11:17 |
| 6 | planning processes.  And Exhibit Number 7, in my opinion, | 11:17 |
| 7 | together with the other documentation listed supports that | 11:17 |
| 8 | intent. | 11:17 |
| 9 | Q     Is KPM able to identify which trade shows IEP did | 11:17 |
| 10 | or did not attend through its response to Interrogatory | 11:17 |
| 11 | Number 5? | 11:17 |
| 12 | ATTORNEY KEELER:  Objection. Form. | 11:17 |
| 13 | BY ATTORNEY GRAVOIS: | 11:17 |
| 14 | Q     Do you believe it's possible? | 11:17 |
| 15 | ATTORNEY KEELER:  Same objection. | 11:17 |
| 16 | THE WITNESS:  I cannot speak to KPM's | 11:17 |
| 17 | resources. | 11:17 |
| 18 | BY ATTORNEY GRAVOIS: | 11:17 |
| 19 | Q     Are you aware that KPM has filed a motion to | 11:17 |
| 20 | compel alleging that IEP has answered discovery requests | 11:17 |
| 21 | untruthfully and that those discovery requests would require | 11:18 |
| 22 | KPM -- let me start that over again. | 11:18 |
| 23 | Are you aware that IEP has filed a motion to | 11:18 |
| 24 | compel, alleging that KPM has answered discovery requests | 11:18 |
| 25 | untruthfully and that in order for KPM to respond to those | 11:18 |

| | | |
|---|---|---|
| 1 | discovery requests, it would actually have to understand all | 11:18 |
| 2 | of the trade shows that IEP had attended? | 11:18 |
| 3 | ATTORNEY KEELER:  Objection to form. | 11:18 |
| 4 | BY ATTORNEY GRAVOIS: | 11:18 |
| 5 | Q     Are you aware? | 11:18 |
| 6 | A     I'm not familiar with the -- | 11:18 |
| 7 | Q     Are you aware that intellectual property has filed | 11:18 |
| 8 | a motion to compel in this case? | 11:18 |
| 9 | A     I would have to defer to counsel.  I'm not | 11:18 |
| 10 | familiar with that. | 11:19 |
| 11 | Q     Do you still stand by your verification statement | 11:19 |
| 12 | that you signed on January 24th? | 11:19 |
| 13 | A     I do. | 11:19 |
| 14 | (Exhibit # was marked for identification.) | 11:20 |
| 15 | BY ATTORNEY GRAVOIS: | 11:20 |
| 16 | Q     Mr. Shea you have been handed what has been marked | 11:20 |
| 17 | as Exhibit 8.  Do you recognize this document? | 11:20 |
| 18 | A     Yes, I believe so. | 11:20 |
| 19 | Q     And this is one of the documents that identified | 11:21 |
| 20 | in your verification response; correct?  Exhibit 8 is | 11:21 |
| 21 | identified in your verification; correct? | 11:21 |
| 22 | A     Exhibit 8?  I'm sorry.  Oh, that's this document. | 11:21 |
| 23 | I believe so.  I just don't see the date on it, but I | 11:22 |
| 24 | believe so.  Yes. | 11:22 |
| 25 | Q     Can you please turn to page 23 of Exhibit 8? | 11:22 |

UNCERTIFIED ROUGH DRAFT

```
 1      A    I just don't know.                              02:02
 2      Q    Have you ever heard of Label Expo not that I    02:02
 3  recall are you aware of IEP ever attending Label Expo.   02:02
 4      A    Not that I recall.                              02:02
 5      Q    Are you aware of IEP ever attending SNAXPO?     02:02
 6      A    Not that I recall.                              02:02
 7      Q    At iPBS, do you have an estimate of how many    02:03
 8  exhibitors there are at the show?                        02:03
 9      A    I don't.  That's something I'd have to look up at 02:03
10  the expo.                                                02:03
11      Q    Do you have an idea how many competitors of IEP 02:03
12  attend the show?                                         02:03
13      A    I'm not sure if you're using interchangeably the 02:03
14  term exhibiting or aattending because to me they mean two 02:04
15  different things.                                        02:04
16      Q    So I'm -- what do you understand exhibiting to  02:04
17  mean?                                                    02:04
18      A    Exhibiting at an exhibition to me would be having 02:04
19  a physical -- physical space, physical presence as an    02:04
20  exhibitor.  The entity itself being on the exhibit floor. 02:04
21      Q    Okay.  I think we're using that term nothing the 02:04
22  same.  Sometimes people call it a booth?                 02:04
23      A    A booth, sure.                                  02:04
24      Q    So approximately how many of your competitors have 02:04
25  a booth at iPBS?                                         02:04
```

1   lawsuit?                                                   03:54

2        A     I do not.                                       03:54

3        Q     If KPM calls you to testify at the trial for this   03:54

4   lawsuit, do you agree to make yourself available to testify   03:54

5   at trial in person?                                        03:54

6        A     I do if I'm available.                          03:54

7        Q     Do you have any changes or corrections to the   03:54

8   testimony you've given today?                              03:54

9        A     I don't believe so.                             03:54

10             ATTORNEY GRAVOIS:  Mr. Shea, thank you for      03:54

11   your time.  We have no further questions at this time.    03:54

12             THE WITNESS:  Thank you.                        03:54

13             ATTORNEY KEELER:  I just have one small         03:54

14   thing.  I wanted to mark an exhibit -- I think it was two,   03:54

15   highly confidential.  If you can give it back to the court   03:55

16   reporter.                                                 03:55

17             ATTORNEY CRAIN:  And I have a highly.           03:55

18             ATTORNEY GRAVOIS:  We can go off the video,     03:55

19   but I wanted to clean the cord.                           03:55

20             THE VIDEOGRAPHER:  The time is 3:55 p.m.        03:55

21   we're off the video record.                               03:55

22             ATTORNEY CRAIN:  In view of Mr. Shea's          03:55

23   testimony earlier about trade shows, defendants ask is that   03:55

24   plaintiffs withdraw their motion to compel with respect to I   03:55

25   think it's sections 3-B and three C.  If you don't, we're   03:55

| | | |
|---|---|---|
| 1 | going to ask for fees based on the testimony today if we | 03:55 |
| 2 | have to respond to it, so you don't have to tell me right | 03:55 |
| 3 | now.  You can if you want to.  If you need some time to | 03:55 |
| 4 | think about it and you want to get back to me that's fine. | 03:55 |
| 5 | We'll just ask for a couple days extra if we have to respond | 03:55 |
| 6 | if that's what we have to do.  In view of his testimony | 03:56 |
| 7 | about trade shows, I don't think we should have to respond | 03:56 |
| 8 | to this.  I think it should be withdrawn.  Let me know your | 03:56 |
| 9 | position.  If you don't withdraw it that's fine.  We'll seek | 03:56 |
| 10 | fees. | 03:56 |
| 11 | ATTORNEY KEELER:  We'll consider it. | 03:56 |
| 12 | ATTORNEY CRAIN:  Okay.  I need to know soon | 03:56 |
| 13 | because I think we only have to pretty short time.  Will you | 03:56 |
| 14 | agree to an extension. | 03:56 |
| 15 | ATTORNEY KEELER:  No.  I don't know how much | 03:56 |
| 16 | time you. | 03:56 |
| 17 | ATTORNEY CRAIN:  We have a week left. | 03:56 |
| 18 | ATTORNEY KEELER:  There's (I of time.  We | 03:56 |
| 19 | will consider it and we will let you know if we agree to an | 03:56 |
| 20 | extension if necessary.) | 03:56 |
| 21 | ATTORNEY CRAIN:  Okay.  If you do not -- | 03:56 |
| 22 | what is today?  When is it due. | 03:56 |
| 23 | ATTORNEY GRAVOIS:  It's due a week from | 03:56 |
| 24 | tomorrow. | 03:56 |
| 25 | ATTORNEY CRAIN:  If we don't hear from you | 03:56 |

UNCERTIFIED ROUGH DRAFT

| | |
|---|---|
| 1 | by -- can you let us know by close of business tomorrow. | 03:56 |
| 2 | ATTORNEY KEELER:  I don't know. | 03:56 |
| 3 | ATTORNEY CRAIN:  Why not? | 03:56 |
| 4 | ATTORNEY KEELER:  I have to consider your | 03:56 |
| 5 | request and I have to look at the testimony. | 03:56 |
| 6 | ATTORNEY CRAIN:  So you don't think you can | 03:56 |
| 7 | get it before the close of business tomorrow. | 03:56 |
| 8 | ATTORNEY KEELER:  I don't know. | 03:57 |
| 9 | ATTORNEY CRAIN:  If you don't tell us by | 03:57 |
| 10 | close of business tomorrow, we will either -- we'll assume | 03:57 |
| 11 | that you're not an we'll go ahead and seek the fees. | 03:57 |
| 12 | ATTORNEY KEELER:  If that's KPM's position, | 03:57 |
| 13 | that's KPM's position. | 03:57 |
| 14 | ATTORNEY CRAIN:  All right.  I think that's | 03:57 |
| 15 | all I have. | 03:57 |
| 16 | ATTORNEY KEELER:  Can you put that in | 03:57 |
| 17 | writing for me so I know which sections. | 03:57 |
| 18 | ATTORNEY CRAIN:  You're still -- it's | 03:57 |
| 19 | sections 3-B about the channels of trade and you | 03:57 |
| 20 | specifically reference trade shows as a basis for the | 03:57 |
| 21 | response.  Section 3 C specifically RFA's ten and 11 are the | 03:57 |
| 22 | ones where you moved to compel with respect to trade shows. | 03:57 |
| 23 | ATTORNEY KEELER:  So it's just the portions | 03:57 |
| 24 | for RFAs ten and 11. | 03:57 |
| 25 | ATTORNEY CRAIN:  For Section 3 C it would | 03:57 |

UNCERTIFIED ROUGH DRAFT

```
 1   be.  I think the others go into something.                03:57
 2                   ATTORNEY KEELER:  RFA 3-B three C.          03:57
 3                   ATTORNEY CRAIN:  I think 3-B is about a     03:57
 4   different set.  It's about -- it would be about all of the 03:57
 5   RFA's in Section 3-B that deal with channels of trade      03:58
 6   because at the very end, you have statements about discovery 03:58
 7   has shown that KPM and IEP operate in the same channels of 03:58
 8   trade.  For example, both market on the internet and at the 03:58
 9   same trade shows.  Based on that, it should be withdrawn.  03:58
10   Or if you want to revise it.  I mean, you do what you want 03:58
11   with it.  If you don't, I've told you what we're going to  03:58
12   do.                                                        03:58
13                   ATTORNEY KEELER:  Okay.                     03:58
14                   ATTORNEY CRAIN:  Anything else.             03:58
15                   ATTORNEY KEELER:  I have nothing.           03:58
16                   ATTORNEY CRAIN:  I think that's it.  Thank  03:58
17   you.                                                       03:58
18
19
20
21
22
23
24
25
```