**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IEP TECHNOLOGIES, LLC,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>KPM ANALYTICS, INCORPORATED F/K/A STATERA ANALYTICS, INCORPORATED AND KPM ANALYTICS NORTH AMERICA CORPORATION F/K/A PROCESS SENSORS CORPORATION,<br>　　　　　Defendants. | Civil Action File No.:<br>1:21-cv-10417-RWZ |

**BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION FOR LEAVE TO AMEND ANSWER TO COMPLAINT**
**TO ASSERT COUNTERCLAIMS AND TO EXTEND DISCOVERY**

**TABLE OF CONTENTS**

1. BACKGROUND ..................................................................................................................1

2. RECENT DISCOVERY REVEALED THAT IEP MADE KNOWINGLY FALSE REPRESENTATIONS ABOUT IEP'S '573 REGISTRATION CONSTITUTING FRAUDULENT PROCUREMENT WARRANTING CANCELLATION.................................2

    2.1. Mr. Shea Admittedly Doubts that He Signed a Declaration Bearing His Name and Submitted to the USPTO in Direct Violation of USPTO Rules............ 2

    2.2. In 2020, IEP Knowingly Resubmitted a Six-Year Old Specimen from 2014 and Falsely Claimed It to Show *Current* Use of the Mark of the '573 Registration ................................................................................................................ 3

    2.3. In Declarations Submitted to the USPTO in 2014 and Again in 2020, IEP Falsely Claimed Use of the Mark of the '573 Registration on Goods and with Services that IEP Knew It Did Not Sell or Provide ........................................ 4

3. RECENT DISCOVERY ALSO REVEALED THAT IEP DOES NOT USE ITS MARK FOR MANY GOODS AND SERVICES RECITED IN THE REGISTRATION, WHICH FURTHER WARRANTS CANCELLATION ................................................................7

4. DEFENDANTS' MOTION TO AMEND SHOULD BE GRANTED......................................8

    4.1. Defendants' Motion to Amend Should be Granted Under Rule 15........................ 8

    4.2. Alternatively, Defendants' Motion to Amend Should be Granted Under Rule 16. ...................................................................................................................... 9

5. A 60-DAY EXTENSION OF DISCOVERY IS NECESSARY TO ASCERTAIN FACTS RELEVANT TO THE VALIDITY OF THE ASSERTED MARK ......................................10

6. CONCLUSION ................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. Woods Hole Oceanographic Inst.*,
  553 F.3d 114 (1st Cir. 2009) ................................................................................................ 8

*Chutter, Inc. v. Great Management Group, LLC*,
  21 USPQ2d 1001 (Trademark Trial and Appeal Board Sept. 30, 2021) .................................. 6

*Foman v. Davis*,
  371 U.S. 178 (1962) ............................................................................................................ 8

*HCC Specialty Underwriters, Inc. v. Woodbury*,
  No. 16-cv-501-LM, 2017 U.S. Dist. LEXIS 198469 (D.N.H. Dec. 4, 2017) ............................ 9

*In re Dr. Pepper Co.*,
  836 F.2d 508 (Fed. Cir. 1987) .............................................................................................. 7

*Macaulay v. Anas*,
  321 F.3d 45 (1st Cir. 2003) .................................................................................................. 9

*Moore v. Eli Lilly and Co.*,
  626 F. Supp. 365 (D. Mass. 1986) ........................................................................................ 8

*O'Connell v. Hyatt Hotels of Puerto Rico*,
  357 F.3d 152 (1st Cir. 2004) ................................................................................................ 9

*Steir v. Girl Scouts of the U.S.A.*,
  383 F.3d 7 (1st Cir. 2004) .................................................................................................... 9

**Statutes**

15 U.S.C. § 1058 ..................................................................................................................... 4

15 U.S.C. § 1119 ..................................................................................................................... 7

**Other Authorities**

37 C.F.R. § 2.161 .................................................................................................................... 4

Fed. R. Civ. P. 15 .................................................................................................................... 8

Fed. R. Civ. P. 16 .................................................................................................................... 9

**Rules**

Trademark Manual of Examining Procedure § 1301.1 (2021) ................................................... 7

Trademark Manual of Examining Procedure § 1604.12 (2021) ................................................. 4

**EXHIBIT LIST**

| | |
|---|---|
| Ex. A | Proposed Amended Answer and Counterclaims |
| Ex. B | Excerpts of File History for '573 Registration |
| Ex. C | Excerpts of Rough Transcript of January 27, 2022 Deposition of John Shea[1] |
| Ex. D | Excerpts of Rough Transcript of January 26, 2022 Deposition of David Grandaw |
| Ex. E | Plaintiff's Second Supplemental Objections and Responses to Defendants' First Set of Interrogatories (Nos. 2-6, and 13) to Plaintiff |

---

[1] On February 14, 2022 and pursuant to the Court's Standing Order regarding the Filing of Confidential Documents (Doc. 15-2), KPM's counsel informed IEP's counsel that KPM intended to publicly file Exhibits C and D, which contain testimony that IEP had designated as Confidential Information. IEP's counsel indicated that it objected to the filing of rough transcripts but did not object to their public filing on the basis of confidentiality.

Both of Plaintiff IEP Technologies' ("IEP") Co-President and its Senior Vice President of Sales recently revealed facts in their depositions conducted in late-January 2022 confirming that IEP is not entitled to the federal trademark registration asserted in this case against Defendants (collectively referred to as "KPM"). More specifically, KPM recently discovered that IEP's employees have made several knowingly false representations to the U.S. Patent & Trademark Office (USPTO) with the intent to both procure and maintain the very federal trademark registration that IEP asserts against KPM in this case. However, IEP is not entitled to this trademark registration because of IEP's acts of fraudulent procurement before the USPTO, upon which the USPTO relied, which has resulted in damage to KPM as a result.

Additionally, these recent depositions revealed that IEP has not used in commerce many of the goods and services recited in IEP's trademark registration. Consequently, IEP's registration is invalid and should be cancelled by the Court.

Accordingly, KPM moves pursuant to Rules 13 and 15 of the Federal Rules of Civil Procedure to amend its Answer to add counterclaims for cancellation of IEP's trademark registration due to IEP's fraudulent conduct and non-use of the mark. KPM's proposed Amended Answer incorporating the counterclaim is attached as Exhibit A.

**1.    BACKGROUND**

IEP filed its Complaint on March 10, 2021, alleging (1) infringement of IEP's federally registered trademark, (2) federal unfair competition and false designation of origin, (3) common law trademark infringement and unfair competition, and (4) unfair and deceptive acts or practices under M.G.L. c. 93A, §§ 2, 11. *See* Doc. 1. IEP's trademark claims are based on U.S. Trademark Registration No. 4,648,573 ("the '573 Registration"). *See* Doc. 1-1.

On May 11, 2021, Defendants filed their Answer to the Complaint, denying the claims asserted. *See* Doc. 8. The parties filed their Joint Scheduling Conference Statement on July 8, 2021, in which the parties proposed that the deadline to amend pleadings would fall on September 17, 2021. *See* Doc. 14. As of the Scheduling Conference on September 7, 2021, discovery was set

to close on February 25, 2022, with an additional Scheduling Conference to be conducted on March 9, 2022. *See* Doc. 21. However, no Scheduling Order has been entered in this case to date.

**2.   RECENT DISCOVERY REVEALED THAT IEP MADE KNOWINGLY FALSE REPRESENTATIONS ABOUT IEP'S '573 REGISTRATION CONSTITUTING FRAUDULENT PROCUREMENT WARRANTING CANCELLATION**

KPM has recently obtained new information regarding the trademark registration underlying this action—the '573 Registration—which materially affects IEP's Claims and provides the basis for the Counterclaims that KPM now seeks to add and assert. Recently, on January 26 & 27, 2022, KPM deposed IEP's Senior Vice President of Sales, David Grandaw, and IEP's Co-President of Explosion Protection, John Shea. Their testimony exposed several separate acts of fraud on the USPTO with regard to IEP's '573 Registration, which individually and unquestionably collectively warrant cancelation of the registration, since the USPTO relied upon IEP's false representations in issuing and/or maintaining the '573 Registration to KPM's detriment.

### 2.1.   Mr. Shea Admittedly Doubts that He Signed a Declaration Bearing His Name and Submitted to the USPTO in Direct Violation of USPTO Rules

During Mr. Shea's deposition, Mr. Shea testified about a Declaration that IEP submitted to the USPTO on or about November 23, 2020 in support of IEP's Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration and, more specifically, his signature on that Declaration. *See* Ex. B at IEP004257 - 4259 (declaration) Upon being presented with that Declaration with the electronic signature bearing his name, Mr. Shea not only admitted that he did not recall signing the Declaration or attesting to (*i.e.,* checking off) the required statements of the Declaration, but Mr. Shea also went further and testified that he had specific reasons to affirmatively doubt that he even signed the Declaration:

> Q.   Do you remember signing that?
> A.   *I don't.*
> Q.    Do you have any reason to doubt that you signed that?
> A.   *I do.*

Ex. C at 123:21-125:3 (emphasis added).

First, Mr. Shea pointed out that the all-lowercase styling of his name (*i.e.,* "john shea") on the Declaration was a foreign and atypical format for him. *Id.* at 124:17-24. Also, Mr. Shea testified that the phone number listed as the signatory's phone number was not his phone number and that he did not recognize it. *Id.* at 124:5-124:10 ("A. It's not my phone number. ... Q. Do you recognize that phone number? A. Not off the top of my head I don't.").

Pursuant to 37 C.F.R. § 2.193(c), John Shea, as the identified signatory for the Declaration for the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020, was required to "*[p]ersonally enter* any combination of letters, numbers, spaces and/or punctuation marks that the signer has adopted as a signature, placed between two forward slash ("/") symbols in the signature block on the electronic submission" for his electronic signature (emphasis added). And the fact that John Shea admittedly doubts that he personally signed the Declaration submitted to the USPTO that bears his name directly undercuts the veracity of that Declaration and its incorporated assertions, since they were not actually attested to by IEP's John Shea despite being provided to the USPTO by IEP with the intention to induce the USPTO to maintain the '573 Registration.

**2.2. In 2020, IEP Knowingly Resubmitted a Six-Year Old Specimen from 2014 and Falsely Claimed It to Show *Current* Use of the Mark of the '573 Registration**

With this same Declaration that Mr. Shea doubts he personally signed, IEP also provided to the USPTO a specimen allegedly showing the mark of the '573 Registration as currently used in commerce as of November 23, 2020. *See* Ex. B at IEP004260. However, Mr. Shea testified in deposition that the specimen of use filed with the USPTO on November 23, 2020 with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration was actually the same image of a specimen submitted to the USPTO over five years earlier in 2014. Ex. C at 125:19-22 ("It appears to be the same image."); 126:5-7 ("It's the same image."); 127:8-14 ("Q. It couldn't have been taken in 2019 or 2018 or 2020; correct? A. I don't believe so."); *Compare* Ex. B at IEP004260 (November 2020 specimen) *with* IEP004304 (April 2014

3

specimen).

This too is impermissible under the Trademark Act because the specimen required to be included with the Section 8 declaration must "show[ ] *current* use of the mark in commerce." 15 U.S.C. § 1058(b)(1)(c) (emphasis added); *see also* Trademark Manual of Examining Procedure (TMEP) § 1604.12(a) (2021) ("The specimen must show use of the mark within the time period specified [§ 1058]. If the specimen does not show use of the mark within the time period specified in [§ 1058], it is unacceptable to show current use of the mark in commerce. An affidavit or declaration that does not include a specimen that shows current use of the mark in commerce is deficient.")

IEP's knowing submission to the USPTO of an out-of-date image from six years prior fails to comply with 15 U.S.C. § 1058(b) and was knowingly filed with the intent for the USPTO to rely on the specimen in order to maintain the '573 Registration, which was successful. IEP provided no other specimens showing use of the mark on claimed goods corresponding to International Class 009 except the knowingly out-of-date specimen from 2014. Accordingly, IEP fraudulently induced the USPTO to accept IEP's Declaration in order to maintain the '573 Registration, thereby rendering it invalid.

**2.3.    In Declarations Submitted to the USPTO in 2014 and Again in 2020, IEP Falsely Claimed Use of the Mark of the '573 Registration on Goods and with Services that IEP Knew It Did Not Sell or Provide**

A Section 8 declaration pursuant to 15 U.S.C. § 1058 requires an affirmative statement that "the mark is in use in commerce" and must further "set forth the goods and services recited in the registration on or in connection with which the mark is in use in commerce." Under USPTO Rule 2.161(a)(6), the Section 8 declaration requires a registrant to, inter alia, "state that the registered mark is in use in commerce; or *if the registered mark is not in use in commerce or in connection with **all** the goods, services, or classes specified in the registration, set forth the date when such use of the mark in commerce stopped*[.]" 37 C.F.R. § 2.161 (emphasis added).

IEP's '573 Registration expressly recites "safety hardware systems comprised of detectors,

4

electronic control units, suppressors, isolation valves, and vents sold as a unit *for use in detecting explosives*" for Class 009. Doc. 1-1 (emphasis added). In the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on November 23, 2020, IEP submitted a Declaration bearing the electronic signature of John Shea (that he admittedly doubts that he signed, as discussed above), expressly stating that "[t]he mark has been in continuous use in commerce for five consecutive years after the date of registration, or the date of publication under 15 U.S.C. § 1062(c), and is still in use in commerce on or in connection *with all goods/services*…." Ex. B at IEP004259.

However, Mr. Shea recently testified that IEP actually does *not* make or sell any systems or devices *for use in detecting explosives*. *See* Ex. C at 131:1-3. Similarly, IEP's Senior Vice President of Sales, David Grandaw, also confirmed that IEP does not sell or provide any systems or devices *for use in detecting explosives*. *See* Ex. D at 57:19-21. Moreover, when responding to KPM's interrogatory that asked IEP to "[i]dentify and fully describe each and every good or service ever sold or offered for sale in connection with or relation to Plaintiff's Mark," IEP did *not* identify anything that constitutes safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives, confirming the testimony of Messrs. Grandaw and Shea. *See* Ex. E at 4-7.

The '573 Registration also expressly recites "new product research and design services in the field of safety equipment and hardware" for International Class 042, and the declaration submitted by IEP and purportedly signed by Mr. Shea attests that "[t]he mark has been in continuous use in commerce for five consecutive years after the date of registration, or the date of publication under 15 U.S.C. § 1062(c), and is still in use in commerce on or in connection *with all goods/services*…." Doc. 1-1; Ex. B at IEP004259 (emphasis added). However, during the recent deposition of IEP's Senior Vice President of Sales, Mr. Grandaw testified that IEP does not provide such new product research and design services for others. *See* Ex. D at 63:8-11 ("Does IEP provide any R and D services to other companies? A. None that I'm aware of.").

This clear falsity of the November 23, 2020 Declaration purportedly signed by Mr. Shea

supports Mr. Shea's testimony that he doubts that he personally signed it, as discussed above. Irrespective of who actually signed it, however, IEP's submission of the Declaration was knowingly false, which constitutes yet another basis of fraud upon the USPTO. *See Chutter, Inc. v. Great Management Group, LLC*, 21 USPQ2d 1001 (TTAB Sept. 30, 2021) (precedential) ("it is well-settled that the inclusion of false statements in a Section 15 affidavit/declaration is material, and if made with the relevant degree of intent constitutes fraud warranting cancelation of the involved registration").

Similarly, when IEP applied to the USPTO for its trademark registration in 2014, IEP also falsely represented to the USPTO that it was using the mark on goods "for use in detecting explosives" and for "new product research and design services in the field of safety equipment and hardware." Specifically, IEP's CEO, Randy Davis, signed a declaration submitted to the USPTO representing that IEP was using the mark of the '573 Registration on goods "for use in detecting explosives" and "for new product research and design services in the field of safety equipment and hardware." *See* Ex. B at IEP004301 - 4302. But what Mr. Shea and Mr. Grandaw confirmed on January 26 & 27, 2022 as true now was also true back in 2014—that is, that IEP did not use the mark on (1) goods that constitute safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit *for use in detecting explosives* or (2) services that constitute "new product research and design services in the field of safety equipment and hardware." IEP knows what goods and services it provides and upon which it does and does not use the mark of the '573 Registration. Accordingly, IEP also submitted a knowingly false and material misrepresentation to the USPTO in 2014 when it applied for the '573 Registration for the purpose of obtaining the '573 Registration for goods and services for which it was not so entitled. The USPTO relied on IEP's knowingly false and material misrepresentation, thereby resulting in damage to KPM at least by virtue of IEP's assertion of an invalid and/or fraudulently obtained trademark registration and uses thereof in commerce.

3.   **RECENT DISCOVERY ALSO REVEALED THAT IEP DOES NOT USE ITS MARK FOR MANY GOODS AND SERVICES RECITED IN THE REGISTRATION, WHICH FURTHER WARRANTS CANCELLATION**

IEP's '573 Registration recites "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives" in Class 009. Doc. 1-1. However, as discussed above, IEP's Senior Vice President of Sales, David Grandaw, and IEP's Co-President of Explosion Protection, John Shea, both testified that IEP does not use the mark of the '573 Registration on or in connection with safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives. *See* Ex. C at 131:1-3; Ex. D at 57:19-21. And, as also discussed above, IEP did not identify anything that constitutes safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives when IEP responded to KPM's interrogatory that asked IEP to "[i]dentify and fully describe each and every good or service ever sold or offered for sale in connection with or in relation to Plaintiff's Mark." *See* Ex. E at 4-7.

The '573 Registration further recites "new product research and design services in the field of safety equipment and hardware" in Class 042. Doc. 1-1. A "basic principle" of trademark law is "that the service for which registration is sought must be rendered *to others*." *In re Dr. Pepper Co.*, 836 F.2d 508, 509 (Fed. Cir. 1987) (emphasis in original). Under this principle, the Trademark Manual of Examining Procedure explains: "Performing research and development, or other routine or expected activities, in the production or sale of one's own goods, and not for the benefit of others, are not services for purposes of service-mark registration." TMEP § 1301.1(a)(ii) (2021). Thus, in order for IEP's mark to be properly registrable, IEP must provide "new product research and design services in the field of safety equipment and hardware" *for others.*

However, the recent deposition testimony revealed that IEP does *not* provide such services for others. Specifically, when IEP's Senior Vice President of Sales was asked "Does IEP provide any R and D services to other companies?," Mr. Grandaw responded: "None that I'm aware of." Ex. D at 63:8-11.

Accordingly, recent discovery has shown that IEP does not provide many of the goods and services that are expressly recited in the '573 Registration. The '573 Registration is therefore invalid and should be cancelled by this Court. *See* 15 U.S.C. § 1119 ("In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.").

### 4. DEFENDANTS' MOTION TO AMEND SHOULD BE GRANTED

#### 4.1. Defendants' Motion to Amend Should be Granted Under Rule 15

Under Fed. R. Civ. P. 15, where leave to amend is sought more than twenty-one days after service of a pleading, a party may amend its pleading by obtaining leave of court, which should be freely given when justice so requires. FED. R. CIV. P. 15(a)(2).  If the movant has at least colorable grounds for relief, justice requires allowing amendment unless the movant is guilty of undue delay or bad faith, or if permission to amend would unduly prejudice the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In *Foman*, the Supreme Court noted that the express direction in Rule 15 providing that "leave to amend 'shall be freely given when justice so requires' [is a] mandate [that] is to be heeded." *Id*. Thus, if the "underlying facts or circumstances" cited by the movant "may be a proper subject of relief, [the movant] ought to be afforded an opportunity to test his claim on the merits." *Id*. "The leave sought should be granted unless the amendment would be futile or reward undue delay." *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 117 (1st Cir. 2009). An amendment is futile if "the new assertions would fail to withstand a motion to dismiss." *Moore v. Eli Lilly and Co.*, 626 F. Supp. 365, 366 (D. Mass. 1986).

Here, as discussed above, KPM identified sufficient underlying facts and circumstances which necessitate this new assertion of counterclaims of fraud and cancellation of the '573 Registration. There is no undue delay, bad faith, or dilatory motive by KPM, no undue prejudice to IEP, and KPM's amendment is not futile. KPM only learned of this new information on January

26 & 27, 2022, and this newly-discovered information is highly relevant to the validity of IEP's '573 Trademark Registration underlying this action. KPM should be afforded an opportunity to litigate their counterclaims on their merits.

### 4.2. Alternatively, Defendants' Motion to Amend Should be Granted Under Rule 16.

Because no Scheduling Order has been entered in this case, Rule 15 controls KPM's present Motion. However, if the Joint Scheduling Conference Statement filed by the parties on July 8, 2021 were viewed as tantamount to a Scheduling Order, then Rule 16 applies instead. And even then, the facts and circumstances also support granting KPM's leave to file their Amended Answer. Specifically, pursuant to Rule 16(b)(4), a schedule may be modified for good cause and with the judge's consent. FED. R. CIV. P. 16(b)(4). The Rule 16 "good cause" standard "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Steir v. Girl Scouts of the U.S.A.*, 383 F.3d 7, 12 (1st Cir. 2004); s*ee also O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004) ("Prejudice to the opposing party remains relevant but is not the dominant criterion.").

Here, KPM diligently and promptly pursued leave to amend their Answer upon learning of the relevant information during the January 26 & 27, 2022 depositions of IEP's employees. The information obtained in these depositions was not public or otherwise available to KPM prior to the depositions. Likewise, Mr. Grandaw confirmed facts that could not be publicly verified. Courts in the First Circuit have found good cause in cases based on recent discovery even where such information was technically already within the moving party's possession. *See HCC Specialty Underwriters, Inc. v. Woodbury*, No. 16-cv-501-LM, 2017 U.S. Dist. LEXIS 198469 *13 (D.N.H. Dec. 4, 2017) (good cause exists for amendment of pleadings out of time based on moving party's recent discovery of documents in its own possession.). KPM should therefore be permitted to file their Amended Answer in this matter to assert its new counterclaims.

**5.  A 60-DAY EXTENSION OF DISCOVERY IS NECESSARY TO ASCERTAIN FACTS RELEVANT TO THE VALIDITY OF THE ASSERTED MARK**

The Court has "broad discretion" in administering its docket and in granting motions to extend deadlines. *Macaulay v. Anas*, 321 F.3d 45, 49 (1st Cir. 2003). As discussed above, KPM has acted diligently with respect to seeking this extension of time for discovery, upon learning for the first time on January 26 & 27, 2022 that IEP made knowingly false and material representations to the USPTO to procure and maintain IEP's asserted '573 Registration, which it would not otherwise be entitled to own absent IEP's misconduct.

KPM contemplates that as a result of IEP's newly discovered fraudulent conduct, KPM needs, as an example, to depose IEP's CEO, Randy Davis, with respect to his April 11, 2014 declaration that falsely alleges that IEP used the mark of the '573 Registration on devices "for use in detecting explosives" as well as in conjunction with services allegedly provided by IEP for others. As another example, KPM needs discovery regarding the circumstances surrounding how Mr. Shea's name was entered into the signatory block for his November 23, 2020 Declaration submitted to the USPTO with IEP's Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration. KPM also needs discovery to reveal the identity of the person that actually signed Mr. Shea's name on the November 23, 2020 Declaration. KPM additionally needs targeted written discovery regarding what goods and services IEP does and does not provide for others in comparison to those recited in the '573 Registration and in conjunction with Mr. Shea's November 23, 2022 Declaration, as related to the false claim of using the mark on goods "for use in detecting explosives," which IEP does not do.

Discovery is currently set to close on February 25, 2022. Doc. 21. Accordingly, upon entry of KPM's requested Amended Answer and Counterclaim, discovery on KPM's counterclaim will directly relate to the validity of IEP's '573 Registration at the heart of this litigation. KPM has not sought any previous extensions for discovery deadlines in this case. Thus, for the above reasons, KPM respectfully requests that discovery be extended to the date that is 60 days after entry of KPM's Amended Answer and Counterclaim to permit targeted written and deposition discovery.

10

**6.	CONCLUSION**

Defendants have articulated good cause for their request to file an Amended Answer asserting counterclaims against IEP. Defendants have promptly and diligently sought leave to do so, which will not cause undue prejudice to IEP. Accordingly, the Court should Grant Defendants' Motion to Amend their Answer to assert their counterclaims. A proposed order accompanies Defendants' Motion.

Respectfully submitted this 16th day of February, 2022.

/s/ N. Andrew Crain
Michael J. Lambert (BBO No. 632053)
*mlambert@sheehan.com*
**SHEEHAN PHINNEY BASS & GREEN PA**
28 State Street
22nd Floor
Boston, Massachusetts 02109
Telephone: 617.897.5637
Facsimile: 617.439.9363

Peter A. Nieves (*pro hac vice*)
*pnieves@sheehan.com*
**SHEEHAN PHINNEY BASS & GREEN PA**
1000 Elm Street
17th Floor
Manchester, New Hampshire 03101
Telephone: 603.627.8134
Facsimile: 603.641.2353

N. Andrew Crain (*pro hac vice*)
*a.crain@thip.law*
Robert D. Gravois (*pro hac vice*)
*r.gravois@thip.law*
Andrea P. Nguyen (pro hac vice pending)
*a.nguyen@thip.law*
**THOMAS HORSTEMEYER LLP**
3200 Windy Hill Rd SE
Suite 1600E
Atlanta, Georgia 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

*Attorneys for Defendants*

12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IEP TECHNOLOGIES, LLC,<br>     Plaintiff,<br><br>   v.<br><br>KPM ANALYTICS, INCORPORATED F/K/A STATERA ANALYTICS, INCORPORATED AND KPM ANALYTICS NORTH AMERICA CORPORATION F/K/A PROCESS SENSORS CORPORATION,<br>     Defendants. | Civil Action File No.:<br>1:21-cv-10417-RWZ |

### **CERTIFICATE OF SERVICE**

  I hereby certify that on February 16, 2022, the foregoing was filed using the Court's ECF system, which will automatically send electronic notice of such filing to all attorneys of record.

            */s/ Robert D. Gravois*
            Robert D. Gravois

            *Attorney for Defendants*