**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IEP Technologies, LLC, <br><br>    Plaintiff,<br><br>    v.<br><br>KPM Analytics, Incorporated f/k/a Statera Analytics Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation,<br><br>    Defendants. | Civil Action No.<br>1:21-cv-10417-RWZ |

**IEPS' OPPOSITION TO DEFENDANTS'
MOTION FOR LEAVE TO AMEND ANSWER TO COMPLAINT
TO ASSERT COUNTERCLAIMS AND TO EXTEND DISCOVERY**

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. KPM'S MOTION IS UNTIMELY .................................................................................... 1

III. KPM'S NEW CLAIMS ARE BASELESS AND FUTILE ................................................ 3

    A. KPM Lacks Factual Bases for Each of its New Counterclaims............................ 3

        1. John Shea Never Stated He Did Not Sign His Declaration ....................... 3

        2. The Specimen Submitted with Mr. Shea's Declaration Was Proper .......... 4

        3. The Goods and Services Listed in IEP's Registration are Accurate........... 5

    B. KPM Fails to Overcome the Presumption that IEP's Trademark is Valid ........... 11

    C. KPM Fails to Plead Fraud with Particularity......................................................... 11

    D. KPM's Second Counterclaim is Futile Because the Court Cannot Provide the Requested Relief ................................................................................................................ 12

IV. CONCLUSION.................................................................................................................. 12

## **TABLE OF AUTHORITIES**

**Cases**

*Bay State Sav. Bank v. Baystate Fin. Servs., LLC*,
   484 F. Supp. 2d 205 (D. Mass. 2007) ....................................................................................... 11
*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
   469 U.S. 189 (1985) .................................................................................................................. 11
*Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*,
   730 F.3d 23 (1st Cir. 2013) ......................................................................................................... 2
*SoClean, Inc. v. Sunset Healthcare Sols., Inc.*,
   No. 1:20-cv-10351-IT, 2021 U.S. Dist. LEXIS 153233 (D. Mass. Aug. 13, 2021) ........... 11, 12
*Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*,
   714 F.3d 62 (1st Cir. 2013) ......................................................................................................... 3

**Statutes**

15 U.S.C. § 1058(b)(1)(C) ................................................................................................................ 4
15 U.S.C. § 1115(b) ........................................................................................................................ 11

**Rules**

Fed. R. Civ. P. 15(a) ......................................................................................................................... 2
Fed. R. Civ. P. 16(b) ......................................................................................................................... 2
Fed. R. Civ. P. 9(b) ........................................................................................................................ 11

Plaintiff IEP Technologies LLC ("IEP") submits this opposition to Defendants' KPM Analytics, Incorporated f/k/a Statera Analytics Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation ("KPM") Motion for Leave to Amend Answer to Complaint to Assert Counterclaims and to Extend Discovery ("the Motion," Dkt. 28.).

## I.    INTRODUCTION

KPM should not be allowed to restart this case to assert baseless counterclaims. Even if KPM's proposed counterclaims were not legally barred, they are futile and KPM cannot meet the standard for amendment. Perhaps more importantly, they are based on factual misrepresentations. Since the beginning of this dispute KPM has asserted that there is no likelihood of confusion because IEP sells goods "for detecting explosives." Now it takes the opposite position, that IEP does not sell those goods and so is not entitled to its trademark rights. Meanwhile, KPM has started advertising goods on its website for eliminating fire and explosion hazards.

In any event, KPM failed to diligently bring its counterclaims pursuant to the parties' stipulations, the Court's scheduling order, and the Federal Rules. KPM has not shown good cause as to why it should be allowed to turn back the clock and start over, particularly given its misconduct in this case. Massachusetts law, Federal Rules, and the principles of equity preclude KPM's new requested relief.

IEP respectfully requests that the Court deny KPM's Motion to assert unfounded and retaliatory counterclaims and defenses against IEP.

## II.   KPM'S MOTION IS UNTIMELY

IEP filed its complaint on March 10, 2021, and KPM answered with no counterclaims on May 11, 2021. (Dkts. 1, 8.) The parties stipulated that discovery opened in June 2021, that the deadline for amended pleadings was in September 2021, and that discovery was scheduled to

1

close on February 25, 2022. (Dkt. 14 at 6.) The Court adopted the parties' deadlines. (See Dkt. 21; Fed. R. Civ. P. 16(b).) KPM's motion to amend comes many months after the deadline for amended pleadings, after the scheduled completion of discovery, and is untimely. (Dkts. 14, 21.)

KPM cannot meet its burden for showing entitlement to amend. Federal Rule of Civil Procedure 15 provides that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). However, the liberal standard of Rule 15 is limited in time. Rule 16(b) provides that modifications to scheduled deadlines are only permissible when the party seeking modification demonstrates "good cause." Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Once a deadline has passed, a party seeking an extension must also meet the "excusable neglect" standard. *See Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*, 730 F.3d 23, 26–27 (1st Cir. 2013) (litigant must show, after expired deadline, that failure to request an extension in a timely manner constitutes excusable neglect).

The deadlines for amended pleadings and discovery completion have passed. KPM has no excuse as to why it did not pursue its new counterclaims until the very end of discovery. KPM did not seek the depositions of IEP employees John Shea and David Grandaw until the end of discovery. KPM first asked for Mr. Shea's deposition on October 15, 2021, four months into discovery, and subsequently withdrew its request. On December 1, 2021, six weeks later, KPM served deposition notices for both John Shea and David Grandaw, with the dates noticed for January 19 and 20, 2022 – only about one month before the close of discovery. The depositions ultimately occurred on January 26 and 27. (*See* Exs. A, B.) KPM's failure to take these depositions sooner led to its untimely motion, and it should not be rewarded for its lack of diligence.

In addition, KPM's lack of diligence prejudices IEP. KPM's Motion seeks to increase litigation costs and complicate the issues in what is otherwise a straightforward case of trademark infringement between IEP's ⬡ mark (⬡ in color) and KPM's ⬡ mark(⬡ in color). Notably, KPM has the option of seeking to cancel IEP's mark at the USPTO in a cancellation proceeding, which would not impact the substantive test for trademark infringement given IEP's common law rights (also infringed and misappropriated by KPM). Accordingly, KPM's requested amendment and delay is improper.

### III. KPM'S NEW CLAIMS ARE BASELESS AND FUTILE

KPM has put forth no new claim that is theoretically viable or solidly grounded in the record. "It is clearly established that the proposed amendment must be not only theoretically viable but also solidly grounded in the record. Therefore, an amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence." *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013) (internal quotations omitted).

KPM's fraud and cancellation claims are based on three theories: (1) that John Shea did not sign a declaration associated with a Statement of Use and Incontestability; (2) that the trademark specimen submitted with Mr. Shea's declaration was improper; and (3) that IEP does not use its mark on certain goods and services. Each of these theories is demonstrably false and indicates no wrongdoing, and certainly cannot support a claim for fraud as KPM contends.

As such, KPM's Motion should be denied.

### A. KPM Lacks Factual Bases for Each of its New Counterclaims

1. *John Shea Never Stated He Did Not Sign His Declaration*

KPM warps the deposition testimony of John Shea to suit its narrative. In truth, Mr. Shea did not remember signing a declaration submitted to the USPTO in 2020. This does not mean that he did not sign it, much less that the declaration was fraudulently signed – Mr. Shea testified that he signs "a number" of declarations for maintaining trademark registrations. (Ex. A, Shea Tr. at 128:15-18). When asked if Mr. Shea signed his declaration, his response was that he did not recall. (Ex. A, Shea Tr. at 131:1-3 ("Q. Do you have any reason to doubt that you signed this declaration? A. I don't recall signing this declaration.").) Nevertheless, KPM proceeds with its baseless theory that Mr. Shea did not sign his declaration.

To resolve any doubt, submitted herewith is a declaration from Mr. Shea stating that "I have no reason to believe that I did not sign [the declaration]."[1] (Shea Decl. ¶ 3.)

2. *The Specimen Submitted with Mr. Shea's Declaration Was Proper*

The trademark specimen submitted with John Shea's declaration in November 2020 was also proper. The Lanham Act requires submittal of a specimen "showing current use of the mark in commerce." 15 U.S.C. § 1058(b)(1)(C). IEP's submitted specimen shows a product bearing IEP's mark that has been continuously sold and used in commerce by IEP for years. (Shea Decl. ¶ 4 ("IEP has sold the EX Control Panel product since before it adopted the IEP Technologies name and ⬢ logo in 2013.").) A simple review of IEP's website or IEP's document production establishes that IEP's use of its mark has not changed since the ⬢ mark was adopted:

---

[1] IEP notes that even if Mr. Shea did not sign his declaration, this would not be fraud on the USPTO, and the declaration is factually accurate. (Dkt. 28-3 at 3-13.)



(Left, specimen from declarations dated April 11, 2014, and November 23, 2020 (Dkt. 28-3 at 10, 15); middle, picture of product from user manual dated December 10, 2020; right, picture from IEP's website (https://www.ieptechnologies.com/whats-the-solution/components)).

As confirmed by Mr. Shea, "[t]he use of the  logo on the EX Control Panel has not changed since IEP filed for its trademark application on April 11, 2014." (Shea Decl. ¶ 4.) As such, using the specimen from 2014 showed "current" use of the mark as required by the Lanham Act. The Trademark Office reviewed and accepted the filing without exception.

3. *The Goods and Services Listed in IEP's Registration are Accurate*

IEP's asserted mark is registered for the following goods and services:

Class 9: Safety equipment for suppression, isolation and venting of explosions, namely, explosive containment vessels and structural parts therefor; safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives; computer hardware, software, and peripherals for operating explosion safety equipment.
Class 37: Installation and maintenance of safety equipment for detection, prevention, and abatement of explosions.
Class 42: New product research and design services in the field of safety equipment and hardware.

5

Despite the USPTO's examination of IEP's application, specimens, and declaration, KPM now claims that IEP does not sell or offer "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives" or "New product research and design services in the field of safety equipment and hardware." KPM cherry-picks out-of-context deposition testimony and ignores the evidence.

        *i.*    *IEP's Specimens, Public Website and Document Production Show "Safety Hardware Systems... For Use In Detecting Explosives,"* **Which KPM Previously Admitted**

As an initial matter, KPM's counsel (Andrew Crain) – the same counsel representing KPM in this matter – wrote to IEP on September 30, 2020, and tried to differentiate the parties' goods/services by emphasizing that IEP's products are used in "detecting explosives":

> The only detection products advertised on the IEP components webpage referenced in your letter are, similarly, explosion detectors, flame and spark detectors, and static pressure detectors specifically designed to detect the "pressure rise which occurs in the brief moment before an explosion, in order to initiate active explosion protection measures[. . .]" (Explosion Pressure Detector Product Information Sheet). These highly specific goods fall squarely within the associated goods and services identified in the registration for IEP's Mark, namely, "safety equipment for <u>suppression, isolation, and venting of explosions</u>" and "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit <u>for use in detecting explosives</u>."

(Ex. C at 2 (emphasis original).) IEP notes that KPM is now advertising products for eliminating a fire and explosion hazard. (*See, e.g.,* Dkt. 27-1 at 29-30, KPM website screenshot ("the sensor's condition monitoring can eliminate a fire and explosion hazard due to the dust associated with the process").) More importantly, ***by its own admission, KPM previously reviewed publicly available information and concluded that IEP sells the very products it now***

6

*claims it doesn't*. KPM is talking out of both sides of its mouth[2] and its motion to amend is pure gamesmanship.

IEP's document production and public website show that different materials, under the right conditions, can be explosive. Put another way by John Shea, "IEP's products detect explosives, or materials that can explode in given conditions." (Shea Decl. ¶ 5.)

**Where Can An Explosion Strike?**

**Explosive Materials**

As a rule, if a material can burn, under the right conditions, it can and will explode. Any facility that handles, stores or processes flammable gases, liquids or solids has some degree of explosion risk.

Dust explosions happen regularly and with products you may not expect. Cellulose, Fungicides, Plastics and Resins to name a few but Chocolate, Flour, Paper and Starch can be dusts at risk as well.

Vapors at risk cover a broad spectrum from Acetone to Toluene with many in-between.

**Explosive Environments**

Conveying, processing, pulverizing or storing of combustible materials can provide the containment needed to elevate a fire risk to an explosion risk within your facility.

(Ex. D, IEP brochure at 5; *see also id.* at 2, 4, 5, 6.) Nevertheless, KPM is improperly parsing the term "explosive" and relies on two out-of-context deposition quotes from John Shea and David Grandaw.[3]

---

[2] In addition, IEP's registration also provides for "Safety equipment for suppression, isolation and venting of explosions, namely, explosive containment vessels." There, the term "explosive" is used in the same way as in "for use in detecting explosives." However, KPM does not challenge the recitation of "explosive containment vessels," evidencing that KPM understands the term.

[3] IEP's response to KPM's Interrogatory No. 3 states that IEP is "the worldwide leading provider of explosion protection systems and services" and sells a variety of related equipment. (Dkt. 28-6 at 6.) In addition, IEP identified a number of documents showing exemplary products, including in the following categories: "explosion protection (including explosion vents, isolation devices, and explosion suppressors), spark detection and extinguishing, and engine explosion detection." (*Id.* at 7-8.) KPM never questioned IEP's witnesses regarding these interrogatory responses, which were verified by John Shea.

As Mr. Grandaw testified, phrases such as "detect gases," "detect solids," and "detect the presence of dust"[4] and by extension – "detect explosives" require context. This is because IEP's products detect when otherwise non-explosive materials become explosive due to industrial processes. (*See* Shea Decl. ¶ 5.) As explained by Mr. Grandaw:

> [I]n some processes, the explosion hazard is the dust itself, which is a byproduct of moving materials.· The solids is the potential for solid larger particle-size materials through attrition, attrition meaning products rubbing against each other as they're mechanically or pneumatically being conveyed from one part of the facility to another part.· Through attrition, you find dust particles that churn from a larger solid piece to a fine enough particle size in which they become an explosion hazard.· And then the gas would be combustible liquids or combustible gases – combustible liquids -- the vapor from combustible liquids or gases themselves that can be explosion protection hazards.

(Ex. B Grandaw Tr. at 58:5-17 *see also id.* at 58:18-61:9 (explaining that "IEP provides equipment that senses for a deflagration or a potential ignition source . . ..").)[5]

As explained by John Shea, IEP's products detect explosives. (Shea Decl. ¶ 5 ("IEP's products do not detect the presence of inherently explosive material, such as TNT. However, IEP's products detect and mitigate against generally non-explosive materials, such as dust, which become explosive due to industrial processes. Accordingly, IEP's products detect explosives, or materials that can explode in given conditions.").)

    ii. *IEP's Specimens, Public Website, and Document Production Show "New product research and design services in the field of safety equipment and hardware"*

---

[4] An IEP product called the IsoFlap valve has an "accumulation sensor that detects the presence of dust and will send a fault signal if a certain threshold or accumulation of dust is reached/exceeded." (Shea Decl. ¶ 7.)

[5] Despite seemingly understanding that these qualifications were necessary during the deposition (Grandaw Tr. at 58:22-23 ("Q. Sounds like the answer is it depends based on what the means of detecting a gas is."); 60:10-12 ("Q. Is it the same sort of issue where IEP is not detecting the solid -- a solid?· It is detecting a deflagration event?"); 61:2 ("Same issue as we've been previously discussing?"), KPM still brings their counterclaim based on statements taken out of context.

IEP submitted multiple screenshots of its website to the USPTO showing its research and design services as part of its trademark registration. Each was accepted by the USPTO as showing these services:



(Dkt. 28-3 at 24, Specimen from Application ("Development of customized system drawings, manuals and after-market support are performed daily by [a] team of professionals.")).



(Dkt. 28-3 at 18, Specimen from statement of use and incontestability ("Understanding the characteristics of your material is the first step in designing a suitable protection solution.")).

In addition, IEP's documents show and describe the criticality of IEP's materials testing and system design services:

9



(*See, e.g.,* Ex. D at 11.)[6]

KPM again takes deposition testimony out of context, where Mr. Grandaw discussed the "research and design" that IEP performs in the sense of "expand[ing] the limits" of IEP's product lines and "develop[ing] new products." When asked if IEP provides these "R and D services to other companies," Mr. Grandaw answered IEP does not design products sold by other companies. Instead, IEP provides research and design services for their customers through their materials testing and custom system design processes. (*See* Shea Decl. ¶ 6.)

As explained by John Shea, "IEP's explosion protection systems are specific to the application in which they are used, so IEP provides new product research and design services to its customers. For instance, IEP provides materials testing services, which allow IEP to better understand the explosion risks associated with its clients' materials and industrial processes. Knowing the risks allows IEP to provide custom explosion protection system design services to its customers." (Shea Decl. ¶ 6.)

---

[6] IEP's response to KPM's Interrogatory No. 3 states that IEP is "the worldwide leading provider of explosion protection systems and services" and sells a variety of related equipment and services. (Dkt. 28-6 at 6.) KPM never questioned IEP's witnesses regarding these interrogatory responses, which were verified by John Shea.

10

### B. KPM Fails to Overcome the Presumption that IEP's Trademark is Valid

IEP's registered and incontestable trademark is entitled to a presumption of validity. Where a mark is on the principal register with the PTO, the mark enjoys a statutory presumption of validity and thus is presumed to be used in commerce, non-functional, and distinctive. *See* 15 U.S.C. § 1115(b) (an incontestable "registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark . . . Such conclusive evidence shall relate to the exclusive right to use the mark on or in connection with the goods or services specified in the affidavit."); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 200 n.6 (1985). KPM cannot overcome the presumption of validity, especially when the weight of the evidence shows that IEP uses its mark for the registered goods and services.

### C. KPM Fails to Plead Fraud with Particularity

KPM fails to meet the heightened pleading standard for fraud. Fed. R. Civ. P. 9(b) ("a party must state with particularity the circumstances constituting fraud or mistake."). As stated by Courts in this district:

> In order to establish a claim of fraud in the procurement [or maintenance] of a federal registration, plaintiff must prove the following by clear and convincing evidence: (1) that [the mark owner] made a false representation to the PTO regarding a material fact; (2) that [the mark owner] knew that the representation was false; (3) that [the mark owner] intended to induce the PTO to act in reliance on the misrepresentation; and (4) the PTO was thereby deceived into registering [or maintaining] the mark.

*SoClean, Inc. v. Sunset Healthcare Sols., Inc.*, No. 1:20-cv-10351-IT, 2021 U.S. Dist. LEXIS 153233, at *9 (D. Mass. Aug. 13, 2021) (quoting *Bay State Sav. Bank v. Baystate Fin. Servs., LLC*, 484 F. Supp. 2d 205, 220 (D. Mass. 2007)). KPM's fraud claim is pure conjecture and flies against the weight of the evidence, as explained above. KPM cannot meet this high burden, and its motion is futile.

Even if the facts were in KPM's favor, there it still not fraud – fraud would require that IEP received a benefit it was not entitled to. *See SoClean,* 2021 U.S. Dist. LEXIS 153233, at *9 (requiring registration or maintenance of mark based on deception). At most, KPM is complaining about procedural issues that do not affect IEP's trademark rights.[7]

### D. KPM's Second Counterclaim is Futile Because the Court Cannot Provide the Requested Relief

In addition, KPM's Second Counterclaim should be denied at least because the Court cannot provide the relief requested by KPM – that the entire '573 Registration be cancelled. KPM does not challenge that IEP sells other goods/services which are covered by the '573 Registration, so cancellation of the entire registration is improper.

### IV. CONCLUSION

Pursuant to the foregoing, IEP respectfully requests that the Court deny Defendants' Motion.

Dated: March 2, 2022

Respectfully submitted,

/s/ *Stephen F.W. Ball, Jr.*
Stephen F.W. Ball, Jr. (BBO # 670092)
Robert D. Keeler (*pro hac vice*)
600 Summer Street
Stamford, CT 06901
Tel: 203-703-0800
Fax: 203-703-0801
Email: litigation@whipgroup.com
sball@whipgroup.com
rkeeler@whipgroup.com

*Attorneys for Plaintiff*
*IEP Technologies, LLC*

---

[7] IEP is also asserting its common law rights in its trademarks and violations of M.G.L. c. 93A.

## **CERTIFICATE OF SERVICE**

This is to certify that on this 2nd day of March 2022, true and correct copies of the foregoing IEPS' OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND ANSWER TO COMPLAINT TO ASSERT COUNTERCLAIMS AND TO EXTEND DISCOVERY and accompanying documents were filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

<u>March 2, 2022</u>                                        */s/ Stephen F.W. Ball, Jr.*
Date