**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IEP TECHNOLOGIES, LLC, | Civil Action File No.: |
| Plaintiff/Counter-Defendant, | 1:21-cv-10417-RWZ |
| v. | |
| KPM ANALYTICS, INCORPORATED F/K/A STATERA ANALYTICS, INCORPORATED AND KPM ANALYTICS NORTH AMERICA CORPORATION F/K/A PROCESS SENSORS CORPORATION, | |
| Defendants/Counter-Claimants. | |

**DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS**
**[LEAVE TO FILE GRANTED ON MARCH 29, 2022 IN DOC. 37]**

Defendants KPM Analytics, Incorporated ("KPM") and KPM Analytics North America Corporation ("KPMNA") (collectively, "Defendants") hereby amends its answer to the Complaint [Doc. 1] of Plaintiff IEP Technologies, LLC ("Plaintiff" or "IEP") in accordance with the numbered paragraphs thereof as follows and further adds counterclaims thereafter.

**NATURE OF THE ACTION**

1.      Paragraph 1 of the Complaint contains allegations and/or conclusions of law to which no response is required. To the extent a response is required, Defendants admit only that the Complaint purports to state an action for trademark infringement, false designation of origin, cancellation of Defendants' U.S. Trademark Registration No. 5,633,755, unfair competition, and unfair and deceptive trade practices arising under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* ("the Lanham Act"), Chapter 93A of the Massachusetts General Laws, and the common law of Massachusetts.

2.      Paragraph 2 of the Complaint contains allegations and/or conclusions of law to which no response is required. To the extent a response is required, Defendants admit only that the Complaint seeks a permanent injunction against Defendants and damages from and profits of Defendants.

## PARTIES

3.      Defendants lack sufficient information to admit or deny the allegations in paragraph 3 of the Complaint and, on that basis, deny those allegations.

4.      Defendants admit only that KPM is a Delaware corporation with its principal place of business at 113 Cedar Street, Milford, MA 01757. Defendants deny any remaining allegations or legal conclusions contained in paragraph 4 of the Complaint.

5.      Defendants admit only that KPMNA is a wholly owned subsidiary of KPM with its principal place of business at 113 Cedar Street, Milford, MA 01757. Defendants deny any remaining allegations or legal conclusions contained in paragraph 5 of the Complaint.

## JURISDICTION AND VENUE

6.      Defendants admit only that the Court has subject matter jurisdiction over Plaintiff's trademark infringement and false designation of origin claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1338(b). Defendants deny any remaining allegations or legal conclusions contained in paragraph 6 of the Complaint.

7.      Defendants admit only that the Court has supplemental jurisdiction over Plaintiff's common law and state law claims under 28 U.S.C. § 1338(b) and 1367(a). Defendants deny any remaining allegations or legal conclusions contained in paragraph 7 of the Complaint.

8.      Defendants admit only that the Court has personal jurisdiction over Defendants for this action. Defendants deny any remaining allegations or legal conclusions contained in paragraph 8 of the Complaint.

9.      Defendants admit only that venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c). Defendants deny any remaining allegations or legal conclusions contained in paragraph 9 of the Complaint.

## FACTUAL ALLEGATIONS

**A.      Plaintiff and Its [Alleged] Trademarks.**

10.      Defendants lack sufficient information to admit or deny the allegations in paragraph 10 of the Complaint and, on that basis, deny those allegations.

11.      Defendants lack sufficient information to admit or deny the allegations in paragraph 11 of the Complaint and, on that basis, deny those allegations.

12.      Paragraph 12 of the Complaint contains allegations and/or conclusions of law to which no response is required. To the extent a response is required, Defendants admit only that the Complaint refers to Plaintiff's purported marks as "Plaintiff's Mark" and/or the "✿ trademark."

13.      Defendants lack sufficient information to admit or deny the allegations in paragraph 13 of the Complaint and, on that basis, deny those allegations.

14.      Defendants lack sufficient information to admit or deny the allegations in paragraph 14 of the Complaint and, on that basis, deny those allegations.

15.      Defendants admit only that U.S. Trademark Registration No. 4,648,573 (hereinafter "the '573 Registration") is registered in International Classes 009, 037, and 042.

Defendants deny any remaining allegations or legal conclusions contained in paragraph 15 of the Complaint.

16.     Defendants lack sufficient information to admit or deny the allegations in Paragraph 16 of the Complaint and, on that basis, deny those allegations.

17.     Defendants lack sufficient information to admit or deny the allegations in Paragraph 17 of the Complaint and, on that basis, deny those allegations.

18.     Defendants lack sufficient information to admit or deny the allegations in Paragraph 18 of the Complaint and, on that basis, deny those allegations.

19.     Defendants lack sufficient information to admit or deny the allegations in paragraph 19 of the Complaint and, on that basis, deny those allegations.

20.     Defendants lack sufficient information to admit or deny the allegations in paragraph 20 of the Complaint and, on that basis, deny those allegations.

21.     Defendants deny the allegations in paragraph 21 of the Complaint.

22.     Defendants lack sufficient information to admit or deny the allegations in paragraph 22 of the Complaint and, on that basis, deny those allegations.

23.     Defendants lack sufficient information to admit or deny the allegations in paragraph 23 of the Complaint and, on that basis, deny those allegations.

24.     Defendants lack sufficient information to admit or deny the allegations in paragraph 24 of the Complaint and, on that basis, deny those allegations.

**B.     Defendants' [Alleged] Intentional and Willful Infringing Activities and Bad Faith Conduct.**

25.     Defendants lack sufficient information to admit or deny the allegations in paragraph 25 of the Complaint and, on that basis, deny those allegations.

26.     Defendants deny the allegations in paragraph 26 of the Complaint.

27.     Defendants deny the allegations in paragraph 27 of the Complaint.

28.     Defendants deny the allegations in paragraph 28 of the Complaint.

29.     Defendants deny the allegations in paragraph 29 of the Complaint.

30.     Defendants admit only that Process Sensors Corporation applied to register and ultimately registered with the U.S. Patent and Trademark Office the mark identified in U.S. Registration No. 5,633,755 (hereinafter "the '755 Registration"). Defendants deny any remaining allegations or legal conclusions contained in paragraph 30 of the Complaint.

31.     Defendants admit only that Processor Sensors Corporation began using the mark of the '755 Registration at least as early as February 2018. Defendants deny any remaining allegations or legal conclusions contained in paragraph 31 of the Complaint.

32.     Defendants deny the allegations in paragraph 32 of the Complaint.

33.     Defendants deny the allegations in paragraph 33 of the Complaint.

34.     Defendants deny the allegations in paragraph 34 of the Complaint.

35.     Defendants deny the allegations in paragraph 35 of the Complaint.

36.     Defendants deny the allegations in paragraph 36 of the Complaint.

37.     Defendants admit only that Plaintiff sent the March 27, 2020 letter referenced in paragraph 37 of the Complaint. Defendants deny any remaining allegations or legal conclusions contained in paragraph 37 of the Complaint.

38.     Defendants admit only that it sent a responsive letter to Plaintiff on May 6, 2020 denying the allegations raised in Plaintiff's March 27, 2020 letter. Defendants deny any remaining allegations or legal conclusions contained in paragraph 38 of the Complaint.

39.     Defendants deny the allegations in paragraph 39 of the Complaint.

40.    Defendants admit only that they display and use its marks on certain websites, social media, products, and marketing and promotional materials. Defendants deny any remaining allegations or legal conclusions contained in paragraph 40 of the Complaint.

41.    Defendants admit only that Exhibit E to the Complaint includes screenshots of what appears to possibly relate to Defendants' Facebook and Twitter pages. Defendants deny any remaining allegations or legal conclusions contained in paragraph 41 of the Complaint.

42.    Defendants admit only that Exhibit F to the Complaint appears to include at least a portion of a copy of a brochure of Defendants. Defendants deny any remaining allegations or legal conclusions contained in paragraph 42 of the Complaint.

43.    Defendants admit only that Exhibit G to the Complaint appears to include at least one or more excerpts of Defendants' websites. Defendants deny any remaining allegations or legal conclusions contained in paragraph 43 of the Complaint.

44.    Defendants deny the allegations in paragraph 44 of the Complaint.

45.    Defendants deny the allegations in paragraph 45 of the Complaint.

46.    Defendants deny the allegations in paragraph 46 of the Complaint.

47.    Defendants deny the allegations in paragraph 47 of the Complaint.

48.    Defendants lack sufficient information to admit or deny the allegations in paragraph 48 of the Complaint and, on that basis, deny those allegations.

49.    Defendants deny the allegations in paragraph 49 of the Complaint.

50.    Defendants deny the allegations in paragraph 50 of the Complaint.

51.    Defendants lack sufficient information to admit or deny the allegations in paragraph 51 of the Complaint and, on that basis, deny those allegations.

52.    Defendants deny the allegations in paragraph 52 of the Complaint.

53.     Defendants lack sufficient information to admit or deny the allegations in paragraph 53 of the Complaint and, on that basis, deny those allegations.

54.     Defendants lack sufficient information to admit or deny the allegations in paragraph 54 of the Complaint and, on that basis, deny those allegations.

55.     Defendants deny the allegations in paragraph 55 of the Complaint.

56.     Defendants deny the allegations in paragraph 56 of the Complaint.

57.     Defendants deny the allegations in paragraph 57 of the Complaint.

58.     Defendants deny the allegations in paragraph 58 of the Complaint.

59.     Defendants deny the allegations in paragraph 59 of the Complaint.

60.     Defendants deny the allegations in paragraph 60 of the Complaint.

61.     Defendants deny the allegations in paragraph 61 of the Complaint.

62.     Defendants deny the allegations in paragraph 62 of the Complaint.

**C.      KPMNA's '755 Registration [Allegedly] Further Shows Defendants' Willfulness.**

63.     Defendants admit only that KPMNA is the owner of U.S. Trademark Registration No. 3,004,020 (hereinafter "the '020 Registration") for the mark identified therein. Defendants deny any remaining allegations or legal conclusions contained in paragraph 63 of the Complaint.

64.     Defendants admit only that the '020 Registration is for goods and services in International Class 009 for "electronic sensors, namely, devices for electronically sensing moisture, temperature, oil-content, coating characteristics and thickness" and that the '020 Registration is valid and subsisting. Defendants deny any remaining allegations or legal conclusions contained in paragraph 64 of the Complaint.

65.     Defendants admit only that a specimen submitted for the '020 Registration depicts an NIR transmitter and that the '755 Registration includes in its identified good and services

"Scientific instruments, namely, Radio Frequency Moisture Gauge, electronic near infrared, NIR, transmitters for the measurement of moisture, fats, proteins and other constituents in wood, tobacco, paper, food, feed, bulk solids and other industrial products, IR pyrometers and Thermal Imaging Cameras." Defendants deny any remaining allegations or legal conclusions contained in paragraph 65 of the Complaint.

66.     Defendants deny the allegations in paragraph 66 of the Complaint.

67.     Defendants deny the allegations in paragraph 67 of the Complaint.

68.     Defendants deny the allegations in paragraph 68 of the Complaint.

69.     Defendants deny the allegations in paragraph 69 of the Complaint.

70.     Defendants deny the allegations in paragraph 70 of the Complaint.

71.     Defendants deny the allegations in paragraph 71 of the Complaint.

72.     Defendants admit only that KPMNA's President signed a declaration for U.S. Trademark Application Serial No. 87/471,579 on September 24, 2018 that stated: "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, authorized users, members, and/or concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services/collective membership organization of such other persons, to cause confusion or mistake, or to deceive." Defendants deny any remaining allegations or legal conclusions contained in paragraph 72 of the Complaint.

73.     Defendants deny the allegations in paragraph 73 of the Complaint.

74.     Defendants deny the allegations in paragraph 74 of the Complaint.

## COUNT I

## Federal Trademark Infringement – 15 U.S.C. § 1114

75.     Defendants repeat and incorporate by reference the responses provided above as though fully set forth herein.

76.     Defendants lack sufficient information to admit or deny the allegations in paragraph 76 of the Complaint and, on that basis, deny those allegations.

77.     Defendants deny the allegations in paragraph 77 of the Complaint.

78.     Defendants deny the allegations in paragraph 78 of the Complaint.

79.     Defendants deny the allegations in paragraph 79 of the Complaint.

80.     Defendants deny the allegations in paragraph 80 of the Complaint.

81.     Defendants deny the allegations in paragraph 81 of the Complaint.

82.     Defendants deny the allegations in paragraph 82 of the Complaint.

83.     Defendants deny the allegations in paragraph 83 of the Complaint.

## COUNT II

### Federal Unfair Competition and False Designation of Origin – 15 U.S.C. § 1125(a)

84.     Defendants repeat and incorporate by reference the responses provided above as though fully set forth herein.

85.     Defendants lack sufficient information to admit or deny the allegations in paragraph 85 of the Complaint and, on that basis, deny those allegations.

86.     Defendants deny the allegations in paragraph 86 of the Complaint.

87.     Defendants deny the allegations in paragraph 87 of the Complaint.

88.     Defendants deny the allegations in paragraph 88 of the Complaint.

89.     Defendants deny the allegations in paragraph 89 of the Complaint.

90.     Defendants deny the allegations in paragraph 90 of the Complaint.

91.     Defendants deny the allegations in paragraph 91 of the Complaint.

## COUNT III

### Cancellation of U.S. Trademark Registration No. 5,633,755

92.     Defendants repeat and incorporate by reference the responses provided above as though fully set forth herein.

93.     Defendants admit only that KPMNA owns the '755 Registration. Defendants deny any remaining allegations or legal conclusions contained in paragraph 93 of the Complaint.

94.     Defendants deny the allegations in paragraph 94 of the Complaint.

95.     Defendants deny the allegations in paragraph 95 of the Complaint.

## COUNT IV

### Common Law Trademark Infringement and Unfair Competition

96.     Defendants repeat and incorporate by reference the responses provided above as though fully set forth herein.

97.     Defendants lack sufficient information to admit or deny the allegations in paragraph 97 of the Complaint and, on that basis, deny those allegations.

98.     Defendants deny the allegations in paragraph 98 of the Complaint.

99.     Defendants admit only that they have engaged in trade and commerce in the Commonwealth of Massachusetts. Defendants lack sufficient information to admit or deny the remaining allegations in paragraph 99 of the Complaint and, on that basis, deny those allegations.

100.     Defendants deny the allegations in paragraph 100 of the Complaint.

101.     Defendants deny the allegations in paragraph 101 of the Complaint.

102.     Defendants deny the allegations in paragraph 102 of the Complaint.

103.     Defendants deny the allegations in paragraph 103 of the Complaint.

## COUNT V

### Violation of M.G.L. c. 93A

104.    Defendants repeat and incorporate by reference the responses provided above as though fully set forth herein.

105.    Defendants admit only that it has engaged in trade or commerce within the Commonwealth of Massachusetts. Defendants deny any remaining allegations or legal conclusions contained in paragraph 105 of the Complaint.

106.    Defendants deny the allegations in paragraph 106 of the Complaint.

107.    Defendants deny the allegations in paragraph 107 of the Complaint.

108.    Defendants deny the allegations in paragraph 108 of the Complaint.

109.    Defendants deny the allegations in paragraph 109 of the Complaint.

### PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any relief and objects to the relief requested in subparagraphs A through O of Plaintiff's Prayer for Relief.

### AFFIRMATIVE DEFENSES

Defendants submit the following affirmative defenses to the allegations and claims Plaintiff asserts in the Complaint and each purported claim therein and reserves the right to assert other defenses or claims when and if they become appropriate and/or available:

1.    Plaintiff's Complaint fails to state a claim upon which relief may be granted.

2.    Plaintiff does not have protectable rights in its alleged marks.

3.    There is no confusion or likelihood of confusion resulting from Defendants' use of its marks.

4.      Plaintiff's claims are barred by the weakness and narrow scope of its purported marks.

5.      Plaintiff's claims are barred by the doctrines of laches, waiver, estoppel and/or acquiescence.

6.      Plaintiffs' claims are barred by unclean hands at least due to Plaintiff's intentional, unreasonable, and inexcusable delay in bringing its Complaint, which delay actually prejudiced Defendants, and Plaintiff's fraudulent procurement and/or maintenance of the '573 Registration.

7.      Plaintiff has not suffered damage of any kind from the allegations in its Complaint.

8.      Defendants do not knowingly or voluntarily waive any applicable affirmative defenses. Defendants reserve all rights to add such other affirmative defenses as may become known to them through the court of its discovery and/or investigation in this matter.

**WHEREFORE**, having fully responded to the allegations set forth in the Complaint, Defendants respectfully request as follows:

A.      A trial by jury on all issues so triable;

B.      That the Court deny Plaintiff's request for relief, including any injunctive relief;

C.      That the Court deny Plaintiff's claims for damages;

D.      That the action be dismissed, with prejudice;

E.      That Defendants be awarded its costs herein, including reasonable attorneys' fees to the extent authorized by law; and

F.      Any and all other relief to which Defendants shall be entitled.

## COUNTERCLAIMS

Defendant/Counterclaimant KPM Analytics, Inc. and KPM Analytics North America Corporation (collectively "KPM") file its counterclaims against Plaintiff/Counter-Defendant IEP Technologies, LLC ("IEP") and in support thereof alleges as follows:

### PARTIES

1.      IEP is a Delaware Corporation with its principal place of business at 417-1 South Street, Marlborough, MA 01752.

2.      KPM Analytics, Inc. is a Delaware Corporation with its principal place of business at 113 Cedar Street, Milford, MA 01757.

3.      KPM Analytics North America is a wholly owned subsidiary of KPM Analytics, Inc. with its principal place of business at 113 Cedar Street, Milford, MA 01757.

### JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a) and under 15 U.S.C. §§ 1119, 1120 and 1121 as these counterclaims arise under the Lanham Act, 15 U.S.C. § 1051 et seq.

5.      This Court has personal jurisdiction over IEP because IEP is the Plaintiff in this action and thus consented to jurisdiction in this District such that this Court's exercise of personal jurisdiction complies with due process requirements.

6.      Venue is proper pursuant to 28 U.S.C. § 1391.

7.      An actual case or controversy exists by way of IEP's allegations in the Complaint that KPM is violating IEP's purported rights in the claimed trademark by KPM using certain marks in connection with its goods and services in the market.

**FACTS**

8.      On April 11, 2014, IEP filed a trademark application with the United States Patent and Trademark Office (hereinafter "USPTO") to register the following mark, for which the USPTO later issued Registration No. 4,648,573 on December 2, 2014 (hereinafter "the '573 Registration").



9.      IEP applied for the '573 Registration in International Class 009 for "safety equipment for suppression, isolation and venting of explosions; namely, explosive containment vessels and structural parts therefor; safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves and vents sold as a unit for use in detecting explosives; computer hardware, software and peripherals for operating explosion safety equipment."

10.      IEP also applied for the '573 Registration in International Class 037 for "installation and maintenance of safety equipment for detection and prevention, and abatement of explosions."

11.      IEP also applied for the '573 Registration in International Class 042 for "new product research and design services in the field of safety equipment and hardware."

12.      IEP's CEO, Randy Davis, signed the following declaration on or about April 11, 2014:

> The signatory believes that: if the applicant is filing the application under 15 U.S.C. Section 1051(a), the applicant is the owner of the trademark/service mark sought to be registered; ***the applicant or the applicant's related company or licensee is using the mark in commerce on or in connection with the goods/services in the application***, and such use by the applicant's related company or licensee inures to the benefit of the applicant; the specimen(s) shows the mark as used on or in connection with the goods/services in the application; and/or if the applicant filed an application under 15 U.S.C. Section 1051(b), Section 1126(d), and/or Section

1126(e), the applicant is entitled to use the mark in commerce; the applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the goods/services in the application. The signatory believes that to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion or mistake, or to deceive. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of the application or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

(Emphasis added).

13.     IEP's CEO, Randy Davis, executed the declaration above on or about April 11, 2014, which was submitted by IEP to the USPTO for the purpose and with the intention of inducing the USPTO to rely upon the declaration in order to register the mark that was ultimately registered in the '573 Registration.

14.     The declaration recited above executed by IEP's CEO, Randy Davis, and filed with the USPTO on or about April 11, 2014 is itself material and further contains and relates to material facts related to the application that became the '573 Registration, including without limitation goods and services associated with the trademark application ultimately registered as the '573 Registration.

15.     On information and belief, at the time that IEP's CEO, Randy Davis, executed the declaration above on or about April 11, 2014, IEP did not make or sell goods constituting "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves and vents sold as a unit for use in detecting explosives."

16.     On information and belief, at the time that IEP's CEO, Randy Davis, executed the declaration above on or about April 11, 2014, Randy Davis and IEP had knowledge of IEP's goods

and services and, thus, were aware and knew that IEP did not make or sell goods constituting "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves and vents sold as a unit for use in detecting explosives."

17.     On information and belief, the declaration recited above and executed by IEP's CEO, Randy Davis, on or about April 11, 2014 is false at least because IEP was not using the mark in commerce on or in connection with any goods constituting "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves and vents sold as a unit for use in detecting explosives."

18.     On information and belief, the declaration recited above and executed by IEP's CEO, Randy Davis, on or about April 11, 2014 is knowingly false at least because both IEP and IEP's CEO, Randy Davis, knew that IEP was not using the mark in commerce on or in connection with any goods "for use in detecting explosives," or, more specifically, any goods constituting "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves and vents sold as a unit for use in detecting explosives."

19.     The USPTO reasonably relied upon the declaration recited above and executed by IEP's CEO, Randy Davis, on or about April 11, 2014 in issuing the '573 Registration and the facts provided in conjunction therewith.

20.     KPM has suffered harm and damages in an amount to be proven at trial, including without limitation, detriment to good will, as a result of IEP's use in commerce of its mark associated with IEP, on information and belief, having knowingly submitted the declaration recited above and executed by IEP's CEO, Randy Davis, on or about April 11, 2014 containing the materially false facts described above resulting in registration of a trademark to which IEP is not otherwise entitled.

21.     With regard to service marks, the USPTO's Trademark Manual of Examining Procedure states as follows in § 1301.01(a)(ii): "To be a service, an activity must be primarily for the benefit of someone *other* than the applicant. ... Performing research and development, or other routine or expected activities, in the production or sale of one's own goods, and not for the benefit of others, are not services for purposes of service-mark registration." (citations omitted and emphasis added).

22.     On information and belief, at the time that IEP's CEO, Randy Davis, executed the declaration above on or about April 11, 2014, IEP did not provide the services in International Class 042 of "new product research and design services in the field of safety equipment and hardware" for others.

23.     On information and belief, at the time that IEP's CEO, Randy Davis, executed the declaration above on or about April 11, 2014, IEP and/or IEP's CEO, Randy Davis, knew that IEP did not provide "new product research and design services in the field of safety equipment and hardware" for others.

24.     On information and belief, the declaration recited above and executed by Randy Davis on or about April 11, 2014 is false at least because IEP was not using the mark in commerce on or in connection with the services in International Class 042 of "new product research and design services in the field of safety equipment and hardware" for others.

25.     On information and belief, IEP had knowledge that the declaration recited above and executed by IEP's CEO, Randy Davis, on or about April 11, 2014 is false at least because IEP and/or IEP's CEO, Randy Davis, knew that IEP was not using the mark in commerce on or in connection with the services in International Class 042 of "new product research and design services in the field of safety equipment and hardware" for others.

26.     IEP submitted the declaration recited above and executed by Randy Davis to the USPTO on or about April 11, 2014 regarding the services in International Class 042 of "new product research and design services in the field of safety equipment and hardware" for others for the purpose and with the intention of inducing the USPTO to issue the '573 Registration, and the USPTO relied on said representations and declaration.

27.     KPM has suffered harm and damages in an amount to be proven at trial, including without limitation, detriment to good will, as a result of IEP's use in commerce of its mark associated with IEP having knowingly submitted the declaration recited above and executed by IEP's CEO, Randy Davis, on or about April 11, 2014 containing the materially false facts described above resulting in registration of a trademark to which IEP is not otherwise entitled.

28.     On or about November 23, 2020, IEP filed a Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration with the USPTO.

29.     In the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration with the USPTO, IEP made the following representation to the USPTO for purposes of inducing the USPTO to accept the Combined Declaration of Use and Incontestability under Sections 8 & 15:

> For International Class 009, the mark is in use in commerce on or in connection with **all** of the goods/**all** of the services, or to indicate membership in the collective membership organization, listed in the existing registration for this specific class: SAFETY EQUIPMENT FOR SUPPRESSION, ISOLATION AND VENTING OF EXPLOSIONS, NAMELY, EXPLOSIVE CONTAINMENT VESSELS AND STRUCTURAL PARTS THEREFOR; SAFETY HARDWARE SYSTEMS COMPRISED OF DETECTORS, ELECTRONIC CONTROL UNITS, SUPPRESSORS, ISOLATION VALVES, AND VENTS SOLD AS A UNIT FOR USE IN DETECTING EXPLOSIVES; COMPUTER HARDWARE, SOFTWARE, AND PERIPHERALS FOR OPERATING EXPLOSION SAFETY EQUIPMENT; **and** the mark has been continuously used in commerce for five (5) consecutive years after the date of registration, or the date of publication under Section 12(c), and is still in use in commerce on or in connection with **all** goods/**all** services, or to indicate membership in the collective membership

organization, listed in the existing registration for this class. Also, no final decision adverse to the owner's claim of ownership of such mark for those goods/services, or to indicate membership in the collective membership organization, exists, or to the owner's right to register the same or to keep the same on the register; and, no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or the courts exists.

(Emphasis in original).

30.     The Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020 includes an electronic signature of IEP's then-Vice President, John Shea, for a declaration representing to the USPTO that "[t]he mark [of the '573 Registration] has been in continuous use in commerce for five years after the date of registration [December 2, 2014], or the date of publication under 15 U.S.C. § 1062(c) [September 16, 2014], and is still in use in commerce on or in connection with *all* goods/services … listed in the existing registration" constituting the '573 Registration. (Emphasis in original).

31.     Upon information and belief, John Shea did not himself sign the declaration in the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020.

32.     On January 26, 2022, John Shea testified that he had specific reason to doubt that he actually personally signed the declaration submitted to the USPTO in conjunction with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020.

33.     For the "Signatory's Name" portion of the Declaration of John Shea submitted to the USPTO in conjunction with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020,

neither the "J" in John nor the "S" in Shea is capitalized. Both are reflected in lowercase form in Mr. Shea's purported signature as follows: "john shea."

34.     On January 26, 2022, John Shea testified that he does not typically type his name with the first letters (*i.e.,* "J" and "S") uncapitalized.

35.     Upon information and belief, someone other than John Shea knowingly forged John Shea's name for the Declaration in the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020.

36.     The "Signatory's Phone" number associated with the Declaration in the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020 is as follows: "203-703-0800."

37.     The "Signatory's Phone" number associated with the Declaration in the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020—203-703-0800—is not John Shea's or IEP's phone number.

38.     Pursuant to 37 C.F.R. § 2.193(c), John Shea, as the identified signatory for the Declaration for the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020, was required to "*[p]ersonally enter* any combination of letters, numbers, spaces and/or punctuation marks that the signer has adopted as a signature, placed between two forward slash ("/") symbols in the signature block on the electronic submission" for his electronic signature. (Emphasis added.)

39.     Upon information and belief, someone other than IEP's then-Vice President, John Shea knowingly electronically signed John Shea's name in conjunction with the Declaration submitted to the USPTO in conjunction with the Combined Declaration of Use and Incontestability

under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020 for the purpose and with the intention of inducing the USPTO to rely on the Declaration in order to accept the Section 8 and 15 declarations and knowing said submission to be false

40.     Upon information and belief, IEP submitted the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020 knowing the Declaration to have not been signed by John Shea.

41.     The USPTO relied upon the Declaration submitted to the USPTO in conjunction with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration in maintaining the '573 Registration.

42.     KPM has suffered harm and damages in an amount to be proven at trial, including without limitation detriment to good will, as a result of IEP's use in commerce of its mark associated with IEP having knowingly submitted a declaration bearing the name of John Shea as the signatory that was not signed by John Shea resulting in a false declaration having been submitted to the USPTO and the USPTO having issued approval and maintaining the '573 Registration that would not have otherwise occurred had the USPTO been aware that John Shea did not sign the Declaration associated with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration.

43.     At the time that IEP submitted the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020, IEP did not make or sell all of the goods recited in the '573 Registration for International Class 009.

44.     At the time that IEP submitted the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about

November 23, 2020, IEP did not make or sell "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves and vents sold as a unit for use in detecting explosives," which is a material fact.

45.     The Declaration purportedly signed by John Shea and submitted with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020 is false and contains material facts.

46.     Upon information and belief, IEP knowingly submitted a false Declaration to the USPTO with the purpose and the intention of inducing the USPTO to accept the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020 at least because IEP knew that IEP did not use the mark in commerce on or in connection with "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves and vents sold as a unit for use in detecting explosives."

47.     In maintaining the '573 Registration, the USPTO relied upon the Declaration submitted to the USPTO in conjunction with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration in maintaining the '573 Registration, including the assertion that IEP was currently using the mark in commerce on or in connection with "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves and vents sold as a unit for use in detecting explosives."

48.     KPM has suffered harm and damages in an amount to be proven at trial, including without limitation detriment to good will, as a result of IEP knowingly submitting a false declaration in conjunction with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020

related to IEP not using the mark in commerce on or in connection with "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves and vents sold as a unit for use in detecting explosives" to maintain a registration to which IEP is not entitled.

49.     The Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO by IEP on or about November 23, 2020 contains material facts regarding the '573 Registration.

50.     At the time that IEP submitted the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020, IEP did not provide the services recited in International Class 042, including without limitation, of "new product research and design services in the field of safety equipment and hardware" for others.

51.     As of November 23, 2020, IEP was aware that IEP did not provide the services in International Class 042 of "new product research and design services in the field of safety equipment and hardware" for others.

52.     The Declaration purportedly signed by John Shea and submitted with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020 is knowingly false at least because IEP did not at the time the Declaration was submitted to the USPTO provide the services in International Class 042 of "new product research and design services in the field of safety equipment and hardware" for others and knew that it did not provide such services for others.

53.     Upon information and belief, IEP knowingly submitted a false Declaration to the USPTO claiming to provide the services in International Class 042 of "new product research and design services in the field of safety equipment and hardware" for others with the purpose and the

intention of inducing the USPTO to accept the Combined Declaration of Use and Incontestability under Sections 8 & 15.

54.    In maintaining the '573 Registration, the USPTO relied upon the Declaration submitted to the USPTO in conjunction with the Combined Declaration of Use and Incontestability under Sections 8 & 15 by IEP with respect to the claim of IEP providing the services in International Class 042 of "new product research and design services in the field of safety equipment and hardware" for others.

55.    KPM has suffered harm and damages in an amount to be proven at trial, including without limitation detriment to good will, as a result of IEP knowingly submitting a false declaration in conjunction with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020 at least in relation to IEP claiming to provide the services in International Class 042 of "new product research and design services in the field of safety equipment and hardware" for others and thereby maintaining a registration for which IEP is not entitled.

56.    On or about April 11, 2014, when IEP filed its trademark application that became the '573 Registration, IEP submitted the specimen shown below to the USPTO for the purpose of inducing the USPTO to accept the specimen and register the mark for the '573 Registration:



57.     Years later, when IEP submitted to the USPTO the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration on or about November 23, 2020,  IEP submitted the specimen shown below to the USPTO, which is the exact same image previously submitted by IEP on or about April 11, 2014, as shown in the preceding paragraph, for the purpose of inducing the USPTO to accept the Combined Declaration of Use and Incontestability under Sections 8 & 15.



58.     Pursuant to 15 U.S.C. § 1058(b), when IEP submitted specimens in conjunction with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020, IEP was required to submit an affidavit to the USPTO "accompanied by such number of specimens or facsimiles showing the *current use* of the mark in commerce…." (Emphasis added).

59.     With regard to 15 U.S.C. § 1058(b), the USPTO's Trademark Manual of Examining Procedure states as follows in § 1612.04(a) regarding Section 8 affidavits or declarations: "The specimen must show use of the mark within the time period specified in §8 of the Act. If the specimen does not show use of the mark within the time period specified in §8, it is unacceptable to show current use of the mark in commerce. An affidavit or declaration that does not include a specimen that shows current use of the mark in commerce is deficient."

60.     Upon information and belief, IEP's specimen submitted in conjunction with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration

filed with the USPTO on or about November 23, 2020 regarding International Class 009 does not show current use of the mark of the '573 Registration in commerce at that time.

61.     Upon information and belief, IEP's specimen submitted in conjunction with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020 regarding International Class 009 does not show current use of the mark of the '573 Registration in commerce at that time at least because IEP provided the exact same image of an "EX Control Panel" product previously submitted to the USPTO as a specimen years earlier on or about April 11, 2014.

62.     Upon information and belief, with respect to the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020, IEP knowingly submitted a false specimen that did not depict current use of the mark of the '573 Registration in commerce at that time with respect to International Class 009.

63.     IEP submitted no other specimen allegedly depicting use of the mark on goods corresponding to International Class 009 other than the one depicted above and contained in IEP's Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020.

64.     IEP's specimen submitted in conjunction with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020 regarding International Class 042 does not show current use of the mark of the '573 Registration in commerce at that time.

65.     IEP's specimen submitted in conjunction with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020 regarding International Class 042 does not show current use of the mark

of the '573 Registration in commerce at that time at least because the specimen does not show the services in International Class 042 of "new product research and design services in the field of safety equipment and hardware" for others.

66.     IEP submitted no other specimen allegedly depicting use of the mark on goods corresponding to International Class 042 in IEP's Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020.

67.     The USPTO relied upon the specimen submitted in conjunction with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020 in maintaining the '573 Registration.

68.     KPM has suffered harm and damages in an amount to be proven at trial, including without limitation detriment to good will, as a result of IEP knowingly submitting a false declaration in conjunction with the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020 at least in relation to IEP knowingly submitting the same specimen previously submitted to the USPTO in 2014 for International Class 009 and submitting no specimen corresponding to International Class 042, thereby resulting in a registration to which IEP is not otherwise entitled.

### COUNT I

**Cancellation of U.S. Registration No. 4,648,573
for Fraud in Obtaining and Maintaining the Registration**

69.     KPM repeats and realleges each of the forgoing paragraphs as though fully set forth herein.

70.     IEP claims ownership of the '573 Registration.

71.    IEP has knowingly made one or more false, material representations of fact in connection with an application to register a trademark at the USPTO, or a post-registration document, with the intent of obtaining or maintaining a trademark registration from the USPTO to which it is otherwise not entitled.

72.    IEP's registration should be cancelled pursuant to 15 U.S.C. §§ 1064 and/or 1119 because the registration issued and was maintained as a result of fraud on the USPTO. Specifically, in its trademark application that ultimately became the '573 Registration, IEP made misleading and fraudulent assertions and material omissions that it knew to be false or otherwise demonstrated reckless disregard for truth or falsity.

73.    IEP's false representations and omissions were material to the USPTO's decision to grant IEP the '573 Registration and to accept IEP's Section 8 and 15 Declaration.

74.    KPM has suffered harm and damages in an amount to be proven at trial as a result of IEP's use in commerce of its mark associated with its fraudulently-obtained '573 Registration at least by representing to the public that its mark is entitled to registration and to the extent that there exists similarities in the goods or services or channels of trade or advertising between the parties and their respective marks.

75.    In light of the forgoing, IEP's '573 Registration should be cancelled pursuant to 15 U.S.C. §§ 1064 and/or 1119.

## COUNT II

### Cancellation of U.S. Registration No. 4,648,573
### for Non-Use of Goods and Services Identified in the Registration

76.    KPM repeats and realleges each of the forgoing paragraphs as though fully set forth herein.

29

77.     The '573 Registration recites "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives" in International Class 009.

78.     IEP does not and/or has not used the mark of the '573 Registration in commerce in connection with safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives.

79.     The '573 Registration further recites "new product research and design services in the field of safety equipment and hardware" in International Class 042.

80.     IEP has not used the mark of the '573 Registration in connection with providing new product research and design services in the field of safety equipment and hardware to others.

81.     Accordingly, the '573 Registration is invalid and should be cancelled pursuant to 15 U.S.C. §§ 1064 and/or 1119.

**WHEREFORE**, KPM respectfully requests that this Court grant the following relief:

A.     Final Judgment cancelling IEP's '573 Registration in whole or in part and directing the Director of the United States Patent and Trademark Office to remove such canceled registration in whole or in part from the Principal Register pursuant to 15 U.S.C. § 1119;

B.     Final Judgment for damages that KPM has sustained and continues to sustain as a result of IEP's fraudulent procurement of the '573 Registration;

C.     An award of KPM's costs and disbursements incurred in this action, as well as and including reasonable attorneys' fees and investigatory fees pursuant to 15 U.S.C. § 1117; and

D.     Any and all other relief to which KPM shall be entitled as the Court deems just and proper.

Respectfully submitted this 30th day of March, 2022.

/s/ N. Andrew Crain
Michael J. Lambert (BBO No. 632053)
*mlambert@sheehan.com*
**SHEEHAN PHINNEY BASS & GREEN PA**
28 State Street
22nd Floor
Boston, Massachusetts 02109
Telephone: 617.897.5637
Facsimile: 617.439.9363

Peter A. Nieves (*pro hac vice*)
*pnieves@sheehan.com*
**SHEEHAN PHINNEY BASS & GREEN PA**
1000 Elm Street
17th Floor
Manchester, New Hampshire 03101
Telephone: 603.627.8134
Facsimile: 603.641.2353

N. Andrew Crain (*pro hac vice*)
*a.crain@thip.law*
Robert D. Gravois (*pro hac vice*)
*r.gravois@thip.law*
Andrea Nguyen (*pro hac vice*)
*a.nguyen@thip.law*
**THOMAS HORSTEMEYER LLP**
3200 Windy Hill Rd SE, Suite 1600E
Atlanta, Georgia 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

*Attorneys for Defendants/Counter-Claimants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IEP TECHNOLOGIES, LLC,<br><br>    Plaintiff/Counter-Defendant,<br><br>        v.<br><br>KPM ANALYTICS, INCORPORATED<br>F/K/A STATERA ANALYTICS,<br>INCORPORATED AND KPM ANALYTICS<br>NORTH AMERICA CORPORATION F/K/A<br>PROCESS SENSORS CORPORATION,<br><br>    Defendants/Counter-Claimants. | Civil Action File No.:<br>1:21-cv-10417-RWZ |

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2022, the foregoing was filed using the Court's ECF system, which will automatically send electronic notice of such filing to all attorneys of record.

*/s/* N. Andrew Crain
N. Andrew Crain

*Attorney for Defendants/Counter-Claimants*

32