**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IEP Technologies, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>KPM Analytics, Incorporated f/k/a Statera Analytics Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation,<br><br>Defendants. | Civil Action No.<br>1:21-CV-10417-RWZ |

**IEP'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSE**

**Table of Contents**

I.   INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT ..................................................................................................................... 2

    A.  KPM's Requests for Production Nos. 70 and 71 ("Email Requests") are Facially Incompatible with the Court's ESI Order and Irrelevant to Its Counterclaims. ............... 2

        1.  KPM Has Failed to Direct Any of The Email Requests to a Specific Legal Issue. .... 2

        2.  IEP Has Properly Responded to KPM's Email Requests. .......................................... 7

        3.  KPM Has Not Shown How its Email Requests are Important to Resolving its Counterclaims. ............................................................................................................ 8

    B.  KPM's Interrogatory No. 4 (the "Financial Information Request") is Unduly Burdensome and Irrelevant to the Case. ........................................................................ 9

        1.  Further Production of KPM's Financial Information Request is Unduly Burdensome to IEP. ..................................................................................................... 9

        2.  KPM Has Not Shown How the Financial Information Request is Relevant and Proportional to Resolving its Counterclaims. .......................................................... 10

III. CONCLUSION ................................................................................................................ 11

## Table of Authorities

**Cases**

*Bourne v. Arruda*,
  No. 10-cv-393-LM, 2012 WL 1570831 (D.N.H. May 3, 2012) ............................................. 10

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009) ........................................................................................ 2, 7

*Greenwood Trust Co. v. Com. of Mass.*,
  971 F.2d 818 (1st Cir. 1992) ................................................................................................ 3

*In re Bose Corp.*,
  580 F.3d 1240 (Fed. Cir. 2009) .................................................................................... 2, 4, 6

*Katz v. Liberty Power Corp. LLC*,
  No. 18-cv-10506-ADB, 2020 WL 3492469 (D. Mass. June 26, 2020) ................................. 7

*Koninklijke Philips N.V. v. Wangs All. Corp*,
  No. 14-12298-DJC, 2018 WL 283893 (D. Mass. Jan. 2, 2018) ......................................... 8, 11

*Koppel v. Moses*,
  No. 20-cv-11479-LTS, 2022 WL 1568444 (D. Mass. May 18, 2022) ................................... 2

*MAZ Partners LP v. Shear*,
  208 F.Supp.3d 384 (D. Mass. 2016) ..................................................................................... 2

**Rules**

Fed. R. Civ. P. 26(b)(1) ................................................................................................... 2, 8, 10
Fed. R. Civ. P. 26(c)(1) ............................................................................................................ 10

Plaintiff IEP Technologies, LLC ("IEP") hereby submits its opposition to Defendants' KPM Analytics, Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation (collectively, "KPM") Motion to Compel Documents and Interrogatory Response (Dkt. 45) ("Motion to Compel").

## I. INTRODUCTION

This action has always been about KPM's willful trademark infringement of IEP's incontestable mark. To avoid these issues, KPM has manufactured exceptional counterclaims that IEP perpetrated some acts of fraud on the USPTO. To make matters worse, these counterclaims directly contradict statements previously made by KPM's own counsel.[1] Now, KPM has mischaracterized deposition testimony to raise the present discovery dispute, with burdensome eDiscovery and financial requests, despite the fact that an already extended discovery period is at its end.

The nature of explos*ion* protection means that it involves things that may explode—i.e., explo*sives*. As IEP's representatives have testified, industrial processes allow nearly everything to become explosive, and IEP is in the business of mitigating these possibilities. Yet KPM believes otherwise, resting its theory on a manufactured semantical difference and misrepresented deposition testimony.

What began as a trademark infringement case concerning IEP's ⬢ mark (⬢ in color) and KPM's ⬢ mark (⬢ in color) has now morphed into a series of dilatory discovery abuses and delay by KPM. It should come as no surprise that KPM has failed to provide a satisfactory legal basis for any of its allegations—KPM cannot point to a *single case* to support its current

---

[1] *See infra* Part II.A.1.c.

demands for production of emails or financial information.

For at least the reasons stated herein, KPM's Motion should be denied.

## II. ARGUMENT

From the outset, KPM's counterclaims have lacked merit. (*See* Dkt. 31 (IEP's Opposition to KPM's Motion to Amend Answer to Complaint).) KPM alleges that IEP acquired its mark through acts of fraud on the USPTO—severe allegations that require mountains of evidence to plead, let alone to prove. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009); *see also In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) ("[T]he very nature of the charge of fraud requires that it be proven 'to the hilt' with *clear and convincing* evidence. *There is no room for speculation, inference or surmise . . . .*") (emphasis added).

Now KPM demands disclosure of emails and financial information bearing no apparent relation to its allegations and despite the limited scope of the present discovery extension. Discovery has "ultimate and necessary boundaries." *MAZ Partners LP v. Shear*, 208 F.Supp.3d 384, 387 (D. Mass. 2016) (internal citations omitted). As such, the scope of discovery is purposely limited to "matter which is relevant" that is also "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Court "must limit the frequency or extent of the proposed discovery . . . if it is outside the scope permitted by Rule 26(b)(1)." *Koppel v. Moses*, No. 20-cv-11479-LTS, 2022 WL 1568444, at *2 (D. Mass. May 18, 2022) (quoting Fed. R. Civ. P. 26(b) advisory committee's note to the 2015 amendment).

A. KPM's Requests for Production Nos. 70 and 71 ("Email Requests") are Facially Incompatible with the Court's ESI Order and Irrelevant to Its Counterclaims.

  1. <u>KPM Has Failed to Direct Any of The Email Requests to a Specific Legal Issue.</u>

KPM's Email Requests fly in the face of this Court's ESI Order of August 17th, 2021.

2

(*See* Dkt. 19.) The ESI Order unambiguously states that "E-mail production requests shall only be propounded for *specific issues, rather than general discovery of a product or business*." (*Id.* at ¶ 4 (emphasis added).) Despite this, KPM's Email Requests are exhaustive, demanding all emails, including "unsent drafts and deleted emails," over more than a seven-year period using broad search terms. (Dkt. 45-1 at 3–4.) These requests are directly antithetical to the ESI Order, as KPM has not directed the requests to any specific issues.

At the outset of this litigation, both parties were aware that email discovery had the potential to be especially burdensome. As such, the parties jointly agreed to terms in the ESI Order specifically outlining email discovery. (*See* Dkt. 19 at ¶¶ 4–6.) The most fundamental of said terms is the requirement that email production requests "only be propounded for specific issues." (*Id.* at ¶ 4.) The "specific" modifier is to be interpreted according to its plain meaning, as neither the agreement is ambiguous nor has either party put forth any material which would suggest otherwise. *See Greenwood Trust Co. v. Com. of Mass.*, 971 F.2d 818, 825–26 (1st Cir. 1992) (explaining the general limitations of the plain meaning rule).

As discussed below, each of the five search strings propounded by KPM for both of IEP's witnesses are not related to "specific" issues in this case.

  a) <u>The time frames for the Email Requests reflect a general discovery intent.</u>

KPM demands email production for a lengthy timespan: from January 1, 2014, to March 10, 2021. (Dkt. 45-1 at 3.) This timespan is applied to both Mr. Davis and Mr. Shea's emails, even though Mr. Davis and Mr. Shea have different backgrounds and responsibilities within IEP. Mr. Davis is President and CEO, while Mr. Shea is Co-President of the Explosion Protection Business Unit. Despite their manifest differences, KPM treats them identically for purposes of the Email Requests, even though it brings different allegations for each. (*See* Dkt. 38 at ¶¶ 12–

20, 22–27 (allegations naming Mr. Davis); 30–40, 42, 45, 52 (allegations naming Mr. Shea).) Treating Mr. Davis and Mr. Shea alike—especially for a period covering more than seven years—represents a baseline failure to implement the ESI Order's required specificity.

While KPM noted that its counsel "proposed further reducing the time periods of [the Email Requests]" during a June 10, 2022 meet-and-confer, KPM failed to provide express terms. (Dkt. 45-10.)

      b)  <u>Demands for emails with the words "trademark" and "sign" are not directed to any specific legal issues.</u>

Search string #1 demands all emails relating to terms "trademark" and "sign" (and variations of the latter). These are facially overbroad terms. KPM justifies this by reiterating its counterclaims and misrepresenting Mr. John Shea's deposition testimony. KPM argues that Mr. Shea "had specific reason to doubt that he actually signed the declaration [of November 23, 2020]." (Dkt. 45-1 at 4.) When asked if he remembered signing it, Mr. Shea testified "Not specifically, but I sign a number of them, so --." (Ex. A Shea Tr. at 128:15-18.) He further testified that the "specific reason" for any doubt was because "[the phone number on said declaration was] not my phone number, so I'm not sure if it was signed by counsel on my behalf." (Ex. A Shea Tr. at 129:15–16 (emphasis added).) KPM provides no legal basis to support its conclusion the alleged misrepresentation would be material even if it were true, a cornerstone requirement for proving fraud on the USPTO. *See Bose*, 580 F.3d at 1243. Because there has been no baseline showing of materiality, there is no legal issue present with regards to the allegedly disputed USPTO declaration of November 23, 2020. Further, KPM ignores Mr. Shea's declaration of March 2, 2022, in which he expressly stated "I have no reason to believe that I did not sign it." (Dkt. 31-1 (Shea Decl. Mar. 2, 2022) at ¶ 3.) Mr. Shea has ratified the appropriateness of the filing, and so the overbroad search string cannot pertain to a specific issue.

4

      c) <u>Demands for emails with the words "detect" and "explosive" are not directed to any specific legal issues.</u>

Search string #2 demands all emails relating to terms "detect" and "explosive" (and variations of both). No specific issue is raised at least because IEP has already produced evidence that its products detect and mitigate against generally non-explosive materials which become explosive due to industrial processes. (*See, e.g.*, Dkt. 31-4 at 58:18–61:9 (testimony of Mr. Grandaw explaining that "IEP provides equipment that senses for a deflagration or a potential ignition source . . ..")); Dkt. 31-6 (IEP promotional brochure showcasing some of its products and explaining that "[a]ny facility that handles, stores or processes flammable gases, liquids or solids has some degree of explosion risk").) Yet again, KPM simply ignores Mr. Shea's declaration of March 2, 2022 that states "Accordingly, IEP's products detect explosives, or materials that can explode in given conditions." (Dkt. 31-1 (Shea Decl. Mar. 2, 2022) at ¶ 5.) KPM has already affirmed that IEP sells products which detect explosives, the very issue on which it bases its current fraud claims. In a September 30, 2020 letter, KPM's counsel stated that IEP's advertised detection components "*fall squarely within the associated goods and services identified in the registration for IEP's Mark*, namely . . . 'safety hardware systems comprised of [components] sold as a unit for use in detecting explosives.'" (Dkt. 31-5 (Sept. 30, 2020, letter from KPM's counsel to IEP) at 2 (emphasis added).) The terms "detect" and "explosive" are common words, particularly in IEP's business, and it is not at all clear how these overbroad search terms, standing together with nothing more, are directed to any specific legal issue.

      d) <u>Demands for emails with the words "trademark" and "specimen(s)" are not directed to any specific legal issues.</u>

Search string #3 demands all emails relating to terms "trademark" and "specimen(s)." These are also overbroad search terms. No specific issue is raised at least because KPM has

5

failed to show how this manufactured argument would be material to proving fraud on the USPTO. *See Bose*, 580 F.3d at 1243. Because there has been no baseline showing of materiality, there is no legal issue present with regards to the specimen submitted with the allegedly disputed USPTO declaration of November 23, 2020. Further, Mr. Shea's declaration of March 2, 2022 nullifies any potential issue. "The use of [IEP's] logo on the EX Control Panel *has not changed* since IEP filed for its trademark application on April 11, 2014. The EX Control Panel product *is still sold today*." (Dkt. 31-1 ( Shea Decl. Mar. 2, 2022) at ¶ 4 emphasis added).)

      e)   <u>Demands for emails with the term "TEAS" are not directed to any specific legal issues.</u>

Search string #4 demands all emails relating to the term "TEAS," an acronym for the USPTO's online application system. As applied, there is no indication of which, if any, purportedly specific legal issue this is directed to. Searching for a single term is the broadest possible search a user can make. KPM provides nothing on this front, instead merely stating which sorts of emails are "calculated" to fall from this term without more. Thus, this search term is manifestly a general discovery request and unrelated to a specific issue.

      f)   <u>Demands for emails with the term "incontestability" are not directed to any specific legal issues.</u>

Search string #5 demands all emails relating to the term "incontestability." KPM justifies this by arguing that the word is not commonly used and "pertains to a well-known term in trademark parlance." (Dkt. 45-1 at 6.) Nonetheless, this request is inconsistent with the Court's ESI Order for the same reasons that search string #4 is—a sole term cannot possibly relate to a specific issue and KPM has provided nothing but "targeted" or "calculated" returns.

In sum, KPM has failed to provide any specific issue to which the Email Requests would be used to further, instead deferring to broad portions of its counterclaim and making

6

unsupported arguments. Considering that KPM is alleging fraud on the USPTO, this is especially telling, as merely pleading fraud "requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327.

    2. <u>IEP Has Properly Responded to KPM's Email Requests.</u>

Much of KPM's reasoning in support of the Email Requests is based on a legal fiction that IEP has an affirmative duty to "run the search terms" comprising the requests. (*See* Dkt. 45-1 at 1–7 ("IEP has not even bothered to run the search terms in either request"; "IEP admits it has not even bothered to perform the searches recited in [the Email Requests]").) This is a faulty proposition for at least two reasons: 1) IEP *has* responded to KPM's requests and explained why they are overbroad and inappropriate; and 2) IEP has no legal duty to entertain discovery requests that are facially incompatible with Court orders. It should come as no surprise that KPM fails to cite a single case which would support this notion. KPM's lone case, *Katz v. Liberty Power Corp. LLC*, No. 18-cv-10506-ADB, 2020 WL 3492469, at *5 (D. Mass. June 26, 2020), recites the general understanding that "the party resisting discovery must show specifically how each [sought request] is not relevant or how each question is overly broad, burdensome, or oppressive." IEP does not challenge this settled rule.

IEP responded to the Email Requests with objections and agreed to meet and confer to discuss each, as required by the ESI Order. (Dkt. 19 at ¶ 4.) In particular, IEP objected to the search terms contained in both requests because they all "amount[ed] to general discovery rather than [being] propounded for a specific issue," in direct reference to the ESI Order. IEP maintains all objections. During the parties' meet-and-confer of June 10, 2022, IEP was unable to reach an agreement with KPM regarding an appropriate scope for the Email Requests. KPM's counsel

7

warranted that it would provide narrowing proposals in writing, but has failed to do so to date. (*See* Dkt. 45-10.)

IEP has already explained why KPM's Email Requests are facially incompatible with the Court's ESI Order. *See supra* Part II.A.1. Here, neither party is disputing the enforceability or validity of the ESI Order, but KPM now waits until *the very end of an already-extended discovery* to seek burdensome eDiscovery of material which is inconsistent with said Order.

3. <u>KPM Has Not Shown How its Email Requests are Important to Resolving its Counterclaims.</u>

KPM has failed to show how its Email Requests are relevant for resolving its particularly serious counterclaims of fraud on the USPTO. One of the considerations when determining the proper scope of discovery is "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). Instead of providing even the scantest legal basis for how the Email Requests might help it succeed on its counterclaims, KPM could only muster conclusory statements. (*See* Dkt. 45-1 at 3–8) ("This Court should compel . . . because [the emails] . . . are highly relevant to the trademark cancelation claims and defenses").) In fact, KPM did not bother to cite a *single* case in this circuit or any other in support of the Email Requests. (*See id.*) It is difficult to understand how a discovery request can be "highly relevant" to resolving or merely furthering an action absent any authoritative support. With allegations as severe as fraud on the USPTO, authoritative support is a minimal obligation.

KPM does, however, attempt to provide an explanation for each "search string" contained in the Email Requests. As KPM noted, it held the "initial burden of showing that the discovery requested is relevant." (Dkt. 45-1 at 3 (quoting *Koninklijke Philips N.V. v. Wangs All. Corp*, No. 14-12298-DJC, 2018 WL 283893, at *1 (D. Mass. Jan. 2, 2018) (internal citations omitted)).) Despite this burden, KPM offered no grounded reasoning for how or why the overbroad search

terms are appropriate, instead merely deferring to its counterclaims and informing the Court of its respective "target" emails. The Court is then given the impermissible burden of guessing how these emails might help KPM succeed on its counterclaims or even move this action forward. This is improper.

For the foregoing reasons, KPM has failed to show that the Email Requests are important to resolving its counterclaims.

B. KPM's Interrogatory No. 4 (the "Financial Information Request") is Unduly Burdensome and Irrelevant to the Case.

1. Further Production of KPM's Financial Information Request is Unduly Burdensome to IEP.

KPM's Financial Information Request is unduly burdensome to IEP, irrespective of whether its scope is "limited" according to KPM's demands. There is substantial evidence in the record to support a finding that IEP's products detect and mitigate when materials become explosive due to industrial processes. (*See, e.g.*, Dkt. 31-4 at 58:18–61:9 (testimony of Mr. Grandaw explaining that "IEP provides equipment that senses for a deflagration or a potential ignition source . . . ."); Dkt. 31-6 (IEP promotional brochure explaining that "[a]ny facility that handles, stores or processes flammable gases, liquids or solids has some degree of explosion risk" and showcasing IEP's solutions); Dkt. 31-1 ( Shea Decl. Mar. 2, 2022) at ¶ 5 ("IEP's products detect explosives, or materials that can explode in given conditions.").) Thus, even under KPM's "limited" Financial Information Request, KPM is demanding financial information from *all* goods and services produced by IEP. Mr. Shea's attached declaration clarifies this burden, which would require days of labor and weeks for delivery. (Shea Decl. July 15, 2022.) Further, any efforts expended by IEP would be in vain; KPM has made no showing that any material discovered by such a meticulous process would help it succeed on its claims.

What's more, KPM confuses "possible" with "burdensome." Of course, a discovery

request may simultaneously be *possible* to fulfill yet *unduly burdensome* to satisfy, just as it may be *possible* to send humans to Mars but technologically *burdensome*. *See* Fed. R. Civ. P. 26(c)(1) ("[t]he court may, for good cause, issue an order to protect a party [from whom discovery is sought] from . . . undue burden . . ."); *Bourne v. Arruda*, No. 10-cv-393-LM, 2012 WL 1570831, at *5–6 (D.N.H. May 3, 2012) (denying a motion to compel overbroad discovery requests). KPM points to a supposed inconsistency between a misrepresentation of a statement made by IEP's counsel and a statement made by Mr. Shea during his deposition.[2] Regardless, that alleged inconsistency—KPM's entire justification—is completely irrelevant; it is only with regards to the *possibility* of producing the demanded information and has nothing to do with the corresponding *burden* that would be borne by IEP in complying.

   2. <u>KPM Has Not Shown How the Financial Information Request is Relevant and Proportional to Resolving its Counterclaims.</u>

KPM has failed to show how the Financial Information Request is relevant to resolving its counterclaims of alleged fraud on the USPTO. One of the considerations when determining the proper scope of discovery is "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). As with its reasoning for compelling the Email Requests, *see supra* Part II.A.3, KPM relies almost exclusively on conclusory statements. (*See* Dkt. 45-1 at 9–10) ("This Court should compel . . . because [the sought financial] information is highly relevant to KPM's new defenses and counterclaims.").) Because complying with the Financial Information Request is a burden, the request is also not proportional to KPM's counterclaims. *See supra* Part II.B.1.

   Further, KPM's sole justification is unsupported by any legal authority. KPM states that the Financial Information Request "will likely confirm that IEP has failed to sell or advertise

---

[2] KPM misrepresents *its own letter*. KPM's brief in support of the present motion to compel states that, "IEP's counsel <u>claimed it was not possible</u> for IEP to provide the requested information . . . ." Dkt. 45-1 at 9. However, the very letter it references states that, "[IEP's counsel] indicated that [he] <u>*believed* it would not be possible</u> for IEP to supplement its response . . . ." (Dkt. 45-9, at 1 (emphasis added).)

these two goods or services that are recited in the '573 Registration." (Dkt. 45-1 at 9.) Yet again, KPM cannot point to a *single* case in this circuit or any other where similar information was used to cancel a mark or support a finding of fraud on the USPTO. (*See id.*) Of course, KPM held the "initial burden of showing that the discovery requested is relevant." *Koninklijke Philips N.V.*, 2018 WL 283893, at *1. KPM apparently attempted to imply that this relevance was self-evident, yet it is difficult to understand how such information could be relevant to a claim absent any support.

For the foregoing reasons, KPM has failed to show that the Financial Information Request is important to resolving its counterclaims.

### III. **CONCLUSION**

For the foregoing reasons, KPM's Motion to Compel should be denied.

Respectfully submitted,

DATED: July 15, 2022

/s/ *Robert D. Keeler*
Stephen F.W. Ball, Jr.,
Robert D. Keeler,
Whitmyer IP Group LLC
600 Summer Street
Stamford, CT 06901
tel: 203-703-0800
fax: 203-703-0801
email: litigation@whipgroup.com
　　sball@whipgroup.com
　　rkeeler@whipgroup.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that on this 15th day of July, 2022, a true and correct copy of the foregoing IEP'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

DATED: July 15, 2022                     */s/ Robert D. Keeler*
                                          Robert D. Keeler