**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IEP TECHNOLOGIES, LLC,<br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>KPM ANALYTICS, INCORPORATED<br>F/K/A STATERA ANALYTICS,<br>INCORPORATED AND KPM<br>ANALYTICS NORTH AMERICA<br>CORPORATION F/K/A PROCESS<br>SENSORS CORPORATION,<br>　　　　　　　Defendants. | Civil Action File No.:<br>1:21-cv-10417-RWZ |

**<u>BRIEF IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO COMPEL</u>**

**TABLE OF CONTENTS**

1.  INTRODUCTION ................................................................................................... 1

2.  FACTUAL BACKGROUND ................................................................................. 3

3.  ARGUMENT & CITATION OF AUTHORITIES. ........................................... 6

    3.1.  Whether or Not John Shea Personally Signed the Declaration Bearing His
          Name is a Critical Issue that Impacts Plaintiff's Trademark Registration.............. 6

    3.2.  The Federal Rules Permit Defendants to Conduct Discovery on Their Claim
          that John Shea Did Not Sign the Declaration Bearing His Name.......................... 8

    3.3.  The Court Should Compel Plaintiff, IEP to Produce the Emails Responsive
          to Request for Production Nos. 70 and 71. ........................................................ 8

        3.3.1.  Search String #1: ("trademark and (sign OR signed OR signature
                OR signatory"). .............................................................................. 9

        3.3.2.  Search String #2: ("detect OR detector OR detects OR detecting)
                AND (explosive OR explosives"). ................................................. 10

        3.3.3.  Search String #3: ("trademark AND (specimen OR specimens")........... 13

        3.3.4.  Search String #4: ("TEAS")............................................................ 13

        3.3.5.  Search String #5: ("Incontestability")............................................. 14

        3.3.6.  Plaintiff has not even looked for responsive documents and, thus,
                cannot claim undue breadth/burden ............................................. 14

    3.4.  Plaintiff Attempts to Improperly Use the Attorney-Client Privilege as a
          Both a Sword and a Shield by Providing Four Heavily Redacted and
          Cherry-Picked Emails in Defense of Defendants' Counterclaims....................... 14

    3.5.  Plaintiff Has Not Provided *All* the Electronic Communications Related to
          the Signing of the Declaration of Incontestability ............................................. 16

    3.6.  Defendants' Computer Forensic Expert Found Several Irregularities in
          Plaintiff's Cherry-Picked Email Strings, But Plaintiff Refuses to Produce
          Native Digital Versions of the Emails in Violation of the Court's ESI Order. .... 17

    3.7.  The Court has Already Recognized that Additional Limited Discovery
          Remains Pending Outcome of Outstanding Motions to Compel.......................... 19

4.  CONCLUSION ..................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Continental W. Ins. Co. v. Opechee Constr. Co.*,
   No. 15-CV-006-JD, 2016 U.S. Dist. LEXIS 54716 (D.N.H. Apr. 25, 2016) ........................... 8

*Ex parte Hipkins*, 20 USPQ2d 1694, 1696-97 (BPAI 1991) ......................................................... 7

*In re Bang-er Shia*, Proceeding No. D2014-31, at *10-12 (USPTO Apr. 22, 2015).................... 7

*In re Cowan*, 18 USPQ2d 1407 (Comm'r Pats. 1990) ............................................................... 6, 7

*In re Dermahose Inc.*, 82 USPQ2d 1793 (TTAB 2007) ................................................................. 6

*In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16,
   24 (1st Cir. 2003) ..................................................................................................................... 15

*In re Lantus Direct Purchaser Antitrust Litig.*, 578 F. Supp. 3d 211, 215 (D. Mass. 2021) ........ 15

*In re Lou*, Proceeding No. D2021-04, at *9-12 (USPTO May 12, 2021)...................................... 7

*In re Yusha Zhang*, 2021 TTAB LEXIS 465, 12-13 (Trademark Trial and Appeal Board
   Dec. 10, 2021) ........................................................................................................................ 6, 7

*Koninklijke Philips Elecs. N.V. v. Zoll Med. Corp.*, No. 10-11041-NMG, 2013 U.S. Dist.
   LEXIS 28862, at *8 (D. Mass. Mar. 4, 2013) ........................................................................... 15

*Mini Melts v. Reckitt Benckiser*, U.S. Dist. LEXIS 148588, at *6-8 (E.D. Tex. Feb. 26,
   2009)......................................................................................................................................... 6, 7

*Santander Holdings USA, Inc. v. United States*, 2012 U.S. Dist. LEXIS 109148, at *2 (D.
   Mass. Aug. 6, 2012) .................................................................................................................. 16

*Sax v. Sax*, 136 F.R.D. 542, 543-44 (D. Mass. 1991) ................................................................. 15

*Thuma v. PolyMedica Corp. Liberty Med. Supply, Inc. (In re PolyMedica Corp. Sec.
   Litig.)*, 235 F.R.D. 28, 32 (D. Mass. 2006) ............................................................................. 14

*United States v. Mierzwicki,* 500 F. Supp. 1331, 1335 (D. Md. 1980)........................................ 15

**Statutes**

15 U.S.C. § 1051 ............................................................................................................................. 6

15 U.S.C. § 1058 ............................................................................................................................. 13

15 U.S.C. § 1064............................................................................................................................. 8

15 U.S.C. § 1065 ............................................................................................................ 8, 14

15 U.S.C. § 1119 ................................................................................................................ 8

**Rules**

37 C.F.C. § 11.18(b)…, ..................................................................................................... 7

37 C.F.R. § 2.193 .............................................................................................................. 6

37 C.F.R. § 2.33 ................................................................................................................ 6

Fed. R. Civ. P. 26(b)(1) ..................................................................................................... 8

TMEP § 611.01(c) ......................................................................................................... 6, 7

TMEP § 804.04 .................................................................................................................. 7

## LIST OF EXHIBITS

Ex. A      *In re Lou*, Proceeding No. D2021-04, at *9-12 (USPTO May 12, 2021).

Ex. B      *In re Bang-er Shia*, Proceeding No. D2014-31, at *10-12 (USPTO Apr. 22, 2015)

Ex. C      Excerpts from January 27, 2022 Deposition Transcript of John Shea *(under seal)*

Ex. D      Excerpts from January 26, 2022 Deposition Transcript of David Grandaw *(under seal)*

Ex. E      https://www.ieptechnologies.com/whats-the-solution/explosion-protection

Ex. F      Excerpt from Plaintiff's PowerPoint, IEP000188 *(under seal)*

Ex. G      Declaration of Greg Kelley *(under seal)*

           Ex. G-1 – C.V. of Greg Kelley

           Ex. G-2 – IEP004585 FILED UNDER SEAL[40].pdf

           Ex. G-3 – IEP004589 FILED UNDER SEAL.pdf

           Ex. G-4 – IEP004601 FILED UNDER SEAL.pdf

           Ex. G-5 – IEP004618 FILED UNDER SEAL.pdf

           Ex. G-6 - Export_4648573_SN0815_submission *(under seal)*

           Ex. G-7 - Export_4648573_SN0815_signature *(under seal)*

Ex. H      Dec. 30, 2022 Letter to Stephen Ball

Ex. I      Jan. 17, 2023 Email from Stephen Ball

1.   **INTRODUCTION**

Defendants renew their motion to compel the production of select emails relating to Defendant's counterclaims because the four cherry-picked and highly redacted email string documents that Plaintiff has produced to date only *support* Defendants' contention that Plaintiff, IEP's President (John Shea) did not sign a Declaration of Use and Incontestability ("the Declaration") that was submitted to the U.S. Patent & Trademark Office ("USPTO"). The USPTO would not have accepted the forged declaration in accord with applicable trademark laws and rules had it known it was forged. But the USPTO relied on Plaintiff's false representation embodied in the forged Declaration. And now, because the statutory time for Plaintiff to submit a proper Section 8 Declaration of Use for its trademark registration has expired pursuant to 15 U.S.C § 1058, the forged declaration renders Plaintiff's trademark registration subject to cancellation for fraud.[1]

Regarding the forged Declaration, the USPTO has produced records establishing that the Declaration was electronically signed from the *same* Internet Protocol (IP) address where Plaintiff's counsel/paralegal created the declaration—meaning that the declarant, Mr. Shea, either traveled from Massachusetts to Connecticut to type in his electronic signature at the same location where Plaintiff's counsel/paralegal created the Declaration to be signed, or that the Declaration was signed by someone other than Mr. Shea. There is no evidence to suggest that Mr. Shea traveled from Massachusetts to Connecticut just to type his name on an electronic declaration, which he easily could have done from Massachusetts. That leaves the alternative—that someone else signed

---

[1] Although somewhat academic in view of Plaintiff's violation of § 1058, Plaintiff's forged Declaration also eliminates any benefits of Incontestability afforded by 15 U.S.C. § 1065.

the Declaration. If true, as suspected, the Declaration is void *ab initio*, because trademark laws and USPTO Rules prohibit acceptance of declarations not signed by the named declarant.

In attempt to diffuse the USPTO's records indicating that the Declaration was not signed by Mr. Shea, Plaintiff recently made a limited production of four cherry-picked and highly-redacted PDFs containing emails that Plaintiff alleges "prove without a shadow of a doubt that John Shea signed his declaration." Dec. 7, 2022 Hearing Recording, 2:43:43-2:43:47. However, the PDFs prove no such thing. For starters, Plaintiff claims that the four PDFs "show an IP address for the signer" of the Declaration. *See id.* at 2:43:26-2:43:36. But that claim too is false. The four PDFs appear to contain a string of emails; however, the PDFs contain no sender or recipient IP address information, no Internet Header information, and no metadata, as Defendants' computer forensic expert testifies in his declaration offered in support of this motion.

Defendants asked Plaintiffs to provide the native digital version of those emails pursuant to this Court's ESI Order (Doc. 19) so as to enable a comparison with IP address information produced by the USPTO regarding the signature of the Declaration, but Plaintiff refused without explanation. Accordingly, part of this motion seeks to compel production of the native digital version of all such emails relevant the signature of the Declaration.

In addition to the email strings being cherry-picked, they are also highly redacted on basis of privilege. Plaintiff uses privilege as a sword in provisionally waiving it for some content to assert that the PDFs "prove beyond a shadow of a doubt that John Shea signed his declaration." *See supra.* But Plaintiff also redacts several complete pages of other content on the basis of privilege to hide content that might contradict Plaintiffs' position, thereby using privilege as a shield. This Court's jurisprudence on privilege does not permit Plaintiff to have it both ways.

Plaintiff has also refused to produce and is withholding additional emails related to the signing of the Declaration that are responsive to Defendant's Document Request Nos. 70 and 71. Production of all responsive emails would complete the *partial* picture that Plaintiff presents thus far and will corroborate the USPTO's records reflecting that the Declaration was signed by someone *other than* Mr. Shea, thus making the Declaration void *ad initio* and rendering Plaintiff's trademark registration subject to cancellation.

## 2.   FACTUAL BACKGROUND

Plaintiff commenced this action asserting infringement of U.S. Trademark Registration No. 4,648,573 ("the '573 Registration") and other related claims. *See* Doc. 1 at ¶¶ 75-83. On April 17, 2021, the Court entered the parties' Stipulated Order Regarding Discovery for Electronically Stored Information ("the ESI Order"), which permits the discovery of e-mails and proscribes specific procedures for document requests targeting e-mails. *See* Doc. 19 at ¶¶ 4-6.

The Court's ESI Order provides that if a party produces emails in a printable format, (*e.g.*, PDF), the receiving party may request production in native format. *See* Doc. 19 at ¶ 8. The Court's ESI Order directs that production of such ESI data for emails must also include available metadata (*i.e.,* date, time, author, recipients, attachments, etc.), specifically stating:

> Metadata field information showing the date and time that the document was created or modified (and in the case of e-mail was sent and received), as well as the author (and in the case of e-mail the complete list of recipients and any relevant e-mail attachments), where such metadata information is present in the document(s) being produced.

Doc. 19 at ¶ 9.

Defendants' counterclaims assert that (1) Plaintiff acquired and maintained the '573 Registration through multiple repeated instances of fraud on the USPTO involving one or more

3

declarations purportedly signed by Plaintiff's CEO, Randy Davis, and then-Vice President, John Shea; (2) the specimen submitted with the declaration purportedly signed by Mr. Shea was fraudulent; and (3) Plaintiff has not used the mark of the '573 Registration in connection with at least two goods and services recited in the registration. *See* Doc. 38 at Counterclaims ¶¶ 8-81.

The counterclaims are based in part on the testimony of Mr. Shea, who testified that not ███████████████████████████████████████ (Doc. 28-3) bearing his name and submitted to the USPTO on November 23, 2020, but that he also had █████████████████████████████████ ██. Upon being presented with the Declaration, Mr. Shea testified:

███████████████████████████
███████████████████████████████
████████

Doc. 28-4, John Shea Dep. Tr. at 123:21-125:3 (emphasis added).

As reasons for his doubt, Mr. Shea pointed out that the all-lowercase styling of his name (*i.e.,* "john shea") on the Declaration was a foreign and atypical format for him. *Id.* at 124:17-24. Also, Mr. Shea testified that the phone number listed as the signatory's phone number was not his phone number and that he did not recognize it. *Id.* at 124:5-124:10 ("A. ████████████████████. ... Q. ████████████████████? A. ████████████████████")[2].

Mr. Shea's testimony is also supported by records produced by the USPTO regarding the signature of a Declaration. *See* Doc. 71-2; *see also* Ex. G-6 & G-7 to Greg Kelley Declaration (Ex. G). The USPTO's records are the result of an investigation by the USPTO and indicate that instead

---

[2] The phone number inserted for "Signatory's Phone: 2037030800" in the declaration (*See* Doc. 28-3 at CM/ECF page 9 of 32) appears to be the telephone number assigned to Plaintiff, IEP's counsel, Whitmyer IP Group. *See* https://www.whipgroup.com.

of there being ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ associated with the Declaration—one for the

attorney/paralegal who created the Declaration on the USPTO's web site from their computer (*e.g.,*

in Connecticut), and the other for the declarant who actually signed the Declaration from the

declarant's computer (*e.g.,* in Massachusetts)—there is only ▆▆▆▆▆▆ for *both* actions. Ex.

71-3, USPTO Letter (explaining USPTO Investigative Tool Record, Doc 71-2). The USPTO's

investigation record states that the Declaration ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, specifically stating:



Doc. 71-2 (emphasis added).

Defendants first filed this motion to compel on June 24, 2022 explaining why Request Nos.

70 and 71 are targeted to the Declaration signature issue and to Defendants' other fraud related

counterclaims. *See* Doc. 45-1. On August 12, 2022 (about four days after the USPTO produced its

investigative records), Plaintiff conspicuously offered to produce four allegedly privileged emails.

Doc. 63-2. Plaintiff's offer was expressly contingent on Defendants agreeing beforehand and sight

unseen "that any waiver of privilege is limited to the produced portions" and further that Plaintiff

could redact other portions it claimed—without substantiation—to be privileged. *Id.* Defendants

rejected Plaintiff's unreasonable demand that Defendants blindly agree to the scope of waiver.

In the December 7, 2022 hearing on Defendants' motion to compel on Request Nos. 70 &

71 (Doc. 45), the Court instructed Plaintiff to produce those four email string documents to

Defendants with provisional redactions for privilege to permit assessment of whether or not the

emails resolved the signature issue. *See* Dec. 7, 2022 Hearing Recording, 2:54:41-2:56:15, 3:11:52-

3:13:15; Doc. 93. The Court permitted Defendants to renew their motion to compel if warranted, which is this motion. *See* id. at 3:11:52-3:13:15; Doc. 93.

**3.**    **ARGUMENT & CITATION OF AUTHORITIES.**

**3.1.    Whether or Not John Shea Personally Signed the Declaration Bearing His Name is a Critical Issue that Impacts Plaintiff's Trademark Registration**

"The U.S. trademark laws and the USPTO Rules require that an application for U.S. registration of a trademark must be supported by a verified statement, signed by the mark owner or a person properly authorized to sign on behalf of the owner." *In re Yusha Zhang*, 2021 TTAB LEXIS 465, 12-13 (TTAB Dec. 10, 2021) (citing 15 U.S.C. §§ 1051(a)(3), (b)(3); *see also* 37 C.F.R. §§ 2.33, 2.193(e)). "The Trademark Manual of Examining Procedure [TMEP] makes clear that the declarant must personally sign his or her own name to a declaration." *Mini Melts v. Reckitt Benckiser*, U.S. Dist. LEXIS 148588, at *6-8 (E.D. Tex. Feb. 26, 2009). "That is, the signature must be either handwritten in permanent ink by the person named as the signatory or ***the signatory must be the one who enters his or her electronic signature on the document*** (*i.e.*, personally enter the combination of letters, numbers, spaces and/or punctuation that the signatory has adopted as a signature directly in the signature block on the electronic form)." *In re Yusha Zhang*, 2021 TTAB LEXIS 465, 12-13 (citing 37 C.F.R. §§ 2.193(a) and (c)) (emphasis added).

"***Another person (e.g., paralegal, legal assistant, secretary) may not sign the name of an attorney or other authorized signatory***." TMEP § 611.01(c) (emphasis added) (citing *In re Dermahose*, 82 USPQ2d 1793 (TTAB 2007); *In re Cowan*, 18 USPQ2d 1407 (Comm'r Pats. 1990)). Indeed, "[a] person may not delegate the authority to sign trademark-related submissions, and no one may sign the name of another, electronically or otherwise." *In re Yusha Zhang*, 2021 TTAB LEXIS 465, 12-13 (citing *In re Dermahose*, 82 USPQ2d at 1796; *In re Cowan*, 18 USPQ2d

6

1407 ("[S]igning someone else's name to a document is not sanctioned by the Trademark Act or Rules."); *In re Lou*, Proceeding No. D2021-04, at *9-12 (USPTO May 12, 2021)[3]; *In re Bang-er Shia*, Proceeding No. D2014-31, at *10-12 (USPTO Apr. 22, 2015)[4]; *see also* TMEP § 611.01(b)-(c). It is well settled that "the declarant must personally sign his or her own name to a declaration." *Mini Melts*, U.S. Dist. LEXIS 148588, at *6-8 (citing TMEP § 804.04). The reason for this requirement is that "[t]he USPTO relies on declarations signed under penalty of perjury in trademark applications in the course of examining trademark applications and issuing registrations." Ex. A at *3(¶ 23).

Thus, "[i]f a declaration or verification is improperly executed as a result of being signed by a person other than the named signatory or a person determined to be an unauthorized signatory, ***it is invalid and the averments cannot be relied upon to support registration***." *In re Yusha Zhang*, 2021 TTAB LEXIS 465, 12-13 (citing *Ex parte Hipkins*, 20 USPQ2d 1694, 1696-97 (BPAI 1991)) (emphasis added). Indeed, "[t]he presentation to the Office (whether by signing, filing, submitting, or later advocating) of any document by any person, whether a practitioner or non-practitioner constitutes a certification under [37 C.F.R.] § 11.18(b)…, and [v]iolations of § 11.18(b) may jeopardize the validity of the application or registration." 37 C.F.R. § 2.193(f).

Thus, whether or not a declarant signs the declarant's declaration matters. Validity of the trademark registration hangs in the balance.

---

[3] Attached as Ex. A.
[4] Attached as Ex. B.

### 3.2.    The Federal Rules Permit Defendants to Conduct Discovery on Their Claim that John Shea Did Not Sign the Declaration Bearing His Name

Parties may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense unless otherwise ordered by the court. Fed. R. Civ. P. 26(b)(1). "The party seeking an order compelling discovery bears the initial burden of showing that the discovery requested is relevant," but "the objecting party bears the burden of showing that a discovery request is improper." *Koninklijke Philips N.V. v. Wangs All. Corp.*, No. 14-12298-DJC, 2018 U.S. Dist. LEXIS 607, at *4–5 (D. Mass. Jan. 2, 2018) (citations omitted).

Count I of Defendant's Amended Answer and Counterclaims seeks cancellation of Plaintiff's '573 Registration for fraud in obtaining and maintaining the registration pursuant to 15 U.S.C. §§ 1064 and/or 1119 due to the forged and, thus, invalid declaration of John Shea submitted by Plaintiff to the USPTO to maintain the '573 Registration and to claim the benefits of Incontestability pursuant to 15 U.S.C. § 1065. *See* Doc. 38 at ¶¶ 31-42 & 69-75. Count I also seeks cancellation of the '573 Registration for fraud due to Plaintiff knowingly submitting a false declaration to the USPTO claiming use the mark on goods and services upon which Plaintiff does not actually use the mark. *See id.* at ¶¶ 43-48 & 69-75.

### 3.3.    The Court Should Compel Plaintiff, IEP to Produce the Emails Responsive to Request for Production Nos. 70 and 71.

Requests for Production Nos. 70 and 71 ("RFP 70" and "RFP 71") read as follows:

**<u>REQUEST NO. 70:</u>** All emails sent to, received by, or created by Randy Davis, including without limitation any unsent drafts and deleted emails, from January 1, 2014 to March 10, 2021  that can be located by searching any of the following search terms:

| Search Terms |
| --- |
| 1.  trademark and (sign OR signed OR signature OR signatory) |
| 2.  (detect OR detector OR detects OR detecting) AND (explosive OR explosives) |
| 3.  trademark AND (specimen OR specimens) |

| 4. TEAS[5] |
|---|

**REQUEST NO. 71:** All emails sent to, received by, or created by John Shea, including without limitation any unsent drafts and deleted emails, from January 1, 2014 to March 10, 2021 that can be located by searching any of the following search terms:

| Search Terms |
|---|
| 1. trademark and (sign OR signed OR signature OR signatory) |
| 2. (detect OR detector OR detects OR detecting) AND (explosive OR explosives) |
| 3. trademark AND (specimen OR specimens) |
| 4. TEAS |
| 5. Incontestability |

Doc. 45-2 at 10-11.

RFPs 70 and 71 are narrowly tailored to seek emails specifically directed to Defendants' counterclaims regarding (1) Plaintiff's fraud in obtaining and maintaining the '573 Registration as a result of the forged declaration, and (2) Plaintiff's non-use of certain goods and services recited in the '573 Registration. The custodians identified in the RFPs, Randy Davis and John Shea, are the two individuals named in Defendant's Amended Counterclaims as being the purported signatories of the two declarations submitted to the USPTO as part of Plaintiff's acts of fraud on the USPTO. *See* Doc. 38 at Counterclaims ¶¶ 12-27 (alleging that Plaintiff knowingly submitted a false declaration purportedly signed by Mr. Davis), ¶¶ 28-68 (alleging that Plaintiff knowingly submitted a false declaration purportedly signed by Mr. Shea). The search terms included in each of the RFPs are also narrowly tailored to target emails relevant to Defendants' counterclaims.

### 3.3.1. *Search String #1: ("trademark and (sign OR signed OR signature OR signatory").*

---

[5] As discussed below, "TEAS" is an acronym for the USPTO's Trademark Electronic Application System, which is the system that sends emails for individuals to electronically sign declarations submitted to the USPTO.

9

Search string #1 is designed to return emails of the two custodians regarding their alleged signing of the declarations filed with the USPTO bearing their signatures. Any such emails are highly probative because, as explained in Defendants' counterclaims and described above, Mr. Shea testified during his deposition that (1) ████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████. *See supra.* In light of Mr. Shea's testimony and third party discovery produced by the USPTO indicating that the Declaration was signed at the same location (in Connecticut) where the Declaration was created by Plaintiff's attorney or the attorney's paralegal (versus Massachusetts where Plaintiff is located), it is critical that Plaintiff produce all responsive emails responsive to this search string.

### 3.3.2. Search String #2: ("detect OR detector OR detects OR detecting) AND (explosive OR explosives)").

This search string seeks highly relevant emails because it is directed to the specific issue of whether Plaintiff has ever used the mark of the '573 Registration in connection with "safety hardware systems comprised of [components] sold as a unit for use in ***detecting explosives***," as claimed in the declarations bearing the names of Messrs. Davis and Shea submitted to the USPTO. (Emphasis added). As set forth in Defendants' counterclaims, Plaintiff's '573 Registration should be cancelled because Plaintiff acquired and maintained the '573 Registration through fraud by submitting false declarations bearing the names of Messrs. Davis and Shea when it knew that Plaintiff had not and was not using the mark in connection with "safety hardware systems comprised of [components] sold as a unit for use in ***detecting explosives***." *See* Doc. 38 at Counterclaims ¶¶ 15-20, 43-48 (emphasis added). Therefore, emails of the two custodians responsive to string #2 are highly relevant to Defendants' counterclaims.

This search string #2 stems from explicit admissions by Plaintiff's President, John Shea, and Vice President of Sales, who *both* stated that ██████████████████████████████ ████████████. Specifically, Mr. Shea without equivocation admitted in deposition that ████████████████████████████████████████ in the following exchange:

████████████████████████████████████████

Ex. C, Shea Dep. Tr. at  at 136:9-11 (emphasis added).

Likewise, David Grandaw, Plaintiff's Senior VP of Sales, admitted the same, also without equivocation. That is, Mr. Grandaw testified that Plaintiff, IEP does not ████████████ ████████████, specifically stating:

████████████████████████████████████████

Ex. D, Grandaw Dep. Tr. at 61:7-9 (emphasis added).

Mr. Grandaw went on to explain Plaintiff's products do not detect the presence of any solid (*e.g.*, dust), vapor, gas or other fuel. *See* Ex. D at 59:6-7 ("██████████████████████████ █████████████"), 60:5-14, 61:5-6 ("████████████████████████████████████████").

Additionally, in response to Defendants' interrogatory that asked Plaintiff to "[i]dentify and fully describe each and every good or service ever sold or offered for sale in connection with or relation to Plaintiff's Mark," Plaintiff did *not* identify anything that constitutes safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explo*sives*. *See* Doc. 28-6 at 4-7.

Further still, Plaintiff's marketing materials make clear that Plaintiff's goods and services are solely focused on detecting, preventing, and mitigating explo*ions.* To be even more precise, and in Plaintiff's VP of Sales' own words, Plaintiff, "IEP provides equipment that senses for a

11

deflagration," which he explained is "a combustion event that can occur inside a conveying line or inside a process vessel." Ex. D at 15:6-7, 60:13-14.

More specifically, as an annotated excerpt of Plaintiff's web site below depicts, Plaintiff's products include pressure sensors that respond within milliseconds to pressure increases characteristic of explosions. *See* Ex. E, https://www.ieptechnologies.com/whats-the-solution/explosion-protection. Plaintiff's web site explains that control equipment responds to the detection of an explosion and quickly activates explosion suppressors to mitigate further combustion. *See id.* Plaintiff also describes itself as ███████████████ ███████████████████████████████████████████ Ex. F, PowerPoint Excerpt (IEP000188). Nothing there or above references detecting explos*ives*. As this search string falls squarely in line with Defendants' Counterclaim Count I, this *discovery* should be permitted.



12

Plaintiff should have no problem providing this information if in fact it does make and sell products that detect explos***ives***, since that would seemingly resolve this issue conclusively. Conversely, the absence of any such emails only supports Defendants' counterclaim, which is why this *discovery* is appropriate.

### 3.3.3.   Search String #3: ("trademark AND (specimen OR specimens)").

Search string #3 seeks emails of the two custodians regarding the specimens that were filed with their declarations. As discussed in Defendant's counterclaims, the specimen filed with Mr. Shea's declaration allegedly depicting use of the mark in November 2020 is undoubtedly improper and fraudulent because it is the exact same photograph that was submitted as the specimen with Mr. Davis' declaration allegedly depicting use of the mark in April 2014 and could not possibly show use of the mark in the time period required by the statute governing Mr. Shea's declaration, 15 U.S.C. § 1058(b). *See id.* at Counterclaims ¶¶ 56-68. Defendants should be permitted to conduct discovery to determine whether Plaintiff abandoned use of the mark after registration in 2014 and before filing of the Declaration of Continuing Use and Incontestability in 2020. Thus, emails of Messrs. Davis and Shea responsive to search string #3 of RFPs 70-71 are highly relevant.

### 3.3.4.   Search String #4: ("TEAS").

Search string #4 is designed to return emails of the two custodians to and from the USPTO's Trademark Electronic Application System (TEAS)—the system that sends emails allowing a signatory to electronically sign documents filed with the USPTO. *See* https://www.uspto.gov/page/teas-help. Since the declarations bearing the names of Messrs. Davis and Shea were signed using the TEAS system, this search string will return emails relevant to Defendants' fraud counterclaims.

### 3.3.5.   Search String #5: ("Incontestability").

Search string #5 is included only in RFP 71, which is the request directed to emails of Mr. Shea. The Declaration bearing Mr. Shea's name is a "Combined Declaration of Use and Incontestability under Sections 8 & 15." *See* Doc. 38 at Counterclaims, ¶¶ 28-32. Thus, this term targets emails of Mr. Shea relating to the Declaration bearing his name. Moreover, since the word "incontestability" is uncommon, and pertains to a well-known term in trademark parlance, based on 15, U.S.C. § 1065, this string is expected to return a very few number of emails, if any.

### 3.3.6.   Plaintiff has not even looked for responsive documents and, thus, cannot claim undue breadth/burden

On June 10, 2022, the parties' counsel met and conferred on this issue. *See* Doc. 45-4. During the call, Plaintiff's counsel admitted that it had not searched emails using any of the search strings to determine how many emails would be returned. Plaintiff's counsel had no understanding of how many or few emails would be included in the results of any of the requested searches. Thus, any complaints of undue breath and burden ring hollow since Plaintiff admits it has not even bothered to search for emails and has no idea of the number of results from these targeted search terms. *See Katz*, 2020 U.S. Dist. LEXIS 112969, at *18 (D. Mass. June 26, 2020) (finding requests were not unduly burdensome where the information requested was relevant and defendants made no showing that it would be burdensome to provide the requested documents).

### 3.4.   Plaintiff Attempts to Improperly Use the Attorney-Client Privilege as a Both a Sword and a Shield by Providing Four Heavily Redacted and Cherry-Picked Emails in Defense of Defendants' Counterclaims.

"A party cannot use the attorney-client privilege as both a sword and a shield." *Thuma v. PolyMedica Corp. Liberty Med. Supply, Inc. (In re PolyMedica Corp. Sec. Litig.)*, 235 F.R.D. 28, 32 (D. Mass. 2006); *In re Lantus Direct Purchaser Antitrust Litig.*, 578 F. Supp. 3d 211, 215 (D.

Mass. 2021) ("The overarching goal of waiver … is to prevent [that] party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice."); *Koninklijke Philips Elecs. N.V. v. Zoll Med. Corp.*, No. 10-11041-NMG, 2013 U.S. Dist. LEXIS 28862, at *8 (D. Mass. Mar. 4, 2013) (citing *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24 (1st Cir. 2003) ("[F]airness prevents a party from using a privilege 'as both a sword and a shield' by selectively disclosing information subject to the privilege.").

"When confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege." *Sax v. Sax*, 136 F.R.D. 542, 543-44 (D. Mass. 1991) (quoting *United States v. Mierzwicki,* 500 F. Supp. 1331, 1335 (D. Md. 1980)). As such, "[t]he great weight of authority holds that the attorney-client privilege is waived when a litigant 'place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege against disclosure of such information would be manifestly unfair to the opposing party.'" *Sax*, 136 F.R.D. at 543-44.

After the December 7, 2022 hearing, Plaintiff produced four PDFs constituting email strings containing whole-page redactions. *See* Exs. G-3 & G-4 to Kelley Declaration (Ex. G). Plaintiff's counsel represented that these four PDFs "prove without a shadow of a doubt that John Shea signed his declaration." Dec. 7, 2022 Hearing Recording, 2:43:43-2:43:47.

However, as the authorities above make clear, Plaintiff cannot properly rely on the unredacted portions as a sword against Defendants while at the same time redacting other potentially unfavorable portions on basis of privilege as a shield. As the jurisprudence of this Court and the First Circuit make clear, Plaintiff cannot selectively waive privilege.

### 3.5.    Plaintiff Has Not Provided _All_ the Electronic Communications Related to the Signing of the Declaration of Incontestability

Just as Plaintiff cannot make selectively privilege redactions, Plaintiff also cannot make selective production of some emails related to the creation, execution and submission of the Declaration while withholding others potentially favorable to Defendants.

For example, Ex. G-2 contains an embedded TEAS email dated November 18, 2020 from the USPTO on pages IEP004586-87 that appears to have been forwarded by a paralegal of the Whitmyer IP Group to an individual in Vienna, Austria. This email should have the Internet Header information/IP address of the recipient, which is relevant to the Declaration signature issue.

Also, Ex. G-3 appears to have missing information that appears at the top of page IEP004589, as there appears to be two email transmissions. The two horizontal lines at the top of the page appear to indicate that content may have previously existed in between.

The top of page IEP004601 of Ex. G-4 depicts an email from Mr. Shea (john.shea@hoerbiger.com) back to office@pm-law.at in Austria. But there is no email from office@pm-law.at back to Whitmyer IP group, which is notable because Whitmyer IP group initiated the session with the USPTO and created the Declaration to be signed. Any emails between counsel about the Declaration cannot rightfully be withheld as non-responsive _or_ on the basis of privilege. _See Santander Holdings USA, Inc. v. United States_, 2012 U.S. Dist. LEXIS 109148, at *2 (D. Mass. Aug. 6, 2012) ("[R]eliance on an advice-of-counsel defense works as a waiver as to all privileged communications concerning the same subject matter.").

Plaintiff has also produced no email from the USPTO to the paralegal at Whitmyer IP Group indicating that the Declaration had been signed. According to the USPTO's instructions, "The requestor will receive an e-mail with a "Submit" link, to allow access to the Validation page

16

wherein the final steps of the process are completed." *See* https://www.uspto.gov/trademarks/apply/trademark-electronic-application-system-teas-1 - type-browse-faqs_164065. The native of this email would contain the Internet Header information and IP addressing data to help confirm the location of each person when the Declaration was signed. These are just examples. But the demonstrate why this motion should be granted as to RFPs 70 & 71.

### 3.6. Defendants' Computer Forensic Expert Found Several Irregularities in Plaintiff's Cherry-Picked Email Strings, But Plaintiff Refuses to Produce Native Digital Versions of the Emails in Violation of the Court's ESI Order.

On December 30, 2022, Defendants asked Plaintiff to produce the native digital version (*e.g.,* MSG file format) of the four PDFs.[6] *See* Ex. H, Dec. 30, 2022 Letter to Stephen Ball. In the request, Defendants explained that the PDFs do not "show an IP address for the signer" of the Declaration as Plaintiff expressly represented to the Court during the hearing. *See id.*; *see also* Dec. 7, 2022 Hearing Recording, 2:43:26-2:43:36. Defendants' computer forensics expert, Greg Kelley, similarly confirms that the PDFs contain no IP addresses for the alleged signer of the Declaration (or, for that matter, any anyone else). *See* Ex. G, Kelley Declaration at ¶ 15. This reason alone is sufficient to warrant production of the native versions so that Defendants can verify Plaintiff's representation, which Mr. Kelly explains is impossible in the PDFs. *See id.* at ¶¶ 13-14.

Defendants also cited the absence of any metadata in the PDFs produced by Plaintiffs, which is confirmed by Mr. Kelley. *See* Ex. H at 1; *see also* Ex. G at ¶ 14. The Court's ESI Order specifically requires ESI productions of emails to include metadata information, showing: (a) the

---

[6] IEP004585, IEP004589, IEP004601, and IEP004618, also attached as Exs. G-2 – G-5, respectively

date and time of each email was sent and received; (b) each sender and recipient of each email; and (c) all email attachments. Ex. H at 1 (citing Doc. 18 at ¶ 9). That information is missing.

Defendants also requested the native versions because Mr. Kelley identified several irregularities in the PDFs that could not be reconciled without the native files. *See* Ex. G at ¶¶ 12-13. Mr. Kelley testified that "these identified irregularities raise concerns to me about the authenticity of the emails." Ex. G at ¶ 12. Based on the identified irregularities and absence of any Internet headers and metadata, Mr. Kelley testified that "I cannot determine that the emails in each of the exhibits are true and complete copies of the emails they appear to represent." *Id.* at ¶ 14.

However, on January 17, 2023, Plaintiff expressly refused to provide the digital native versions of the emails produced as PDFs. *See* Ex. I, Jan. 17, 2023 Email from Stephen Ball. Plaintiff instead reiterated its unsubstantiated claim that "[t]he documents speak for themselves and prove without a shadow of a doubt that John Shea signed his declaration." *Id.*

Thus, the Court should grant this motion and require Plaintiffs to produce the native versions of not only the four PDF email strings produced so far, but also for *all* emails requested above, since they are relevant to Defendants' counterclaims and the underlying issues of whether or not the Declaration was forged and whether or not Plaintiff is using the mark on all of the goods and services claimed in the '573 Registration. These issues are critical to Defendants' counterclaims because they impact whether or not a proper and valid Declaration was filed on Plaintiff's '573 Registration within the statutorily allowed time, which impacts the validity of the registration pursuant to 15 U.S.C. § 1058 and/or whether Plaintiff is entitled to the legal benefits of Incontestability pursuant to 15 U.S.C. § 1065.

### 3.7. The Court has Already Recognized that Additional Limited Discovery Remains Pending Outcome of Outstanding Motions to Compel

Defendants' motion to temporarily stay pending resolution of the outstanding motions to compel, which was granted (Doc. 70), explains that resolution of the motions is "critical for the *completion* of discovery." Doc. 60 at 1 (emphasis added). Indeed, as a result of the December 7 hearing on these motions, Plaintiff is supplementing its interrogatory responses and has provided the documents discussed above. *See* Doc. 93. Yet, additional discovery is still needed. *See supra*.

Upon resolution of these discovery issues, Defendants will need to take the previously noticed 30(b)(6) depositions of Plaintiff, which were postponed due to the motions to compel. Plus, after diligently pursuing discovery from the USPTO for months (March 2022 to August 2022) via FOIA requests (Doc. 71-4) and subpoenas (Docs. 71-5 & 71-6), the USPTO finally produced documents on August 8, 2022. *See* Doc. 71-3, Letter from USPTO. In addition to indicating that the Declaration signature was forged, those documents reveal the identity of the person—a now-former paralegal of Whitmyer IP Group—who likely created the declaration and should have discoverable information about the Declaration's signature. *See* Ex. G-6, USPTO Investigative Tool Report. Defendant needs to depose this former paralegal to obtain discovery about who actually signed the Declaration.

The USPTO's document production also reveals an IP address, ███████, which the USPTO's Investigative Tool notes to be ████████████████████████ and the associated signature log report, leading the USPTO to conclude: ████████ ████████████████████████████████████████ ████ Ex. G at ¶ 18 (quoting Exs. G-6 & G-7). As Mr. Kelley explains, "This information means that the submission and signature of the application was performed by the same computer

or by two computers located in the very same office or home." Ex. G at ¶ 17.

Mr. Kelley testifies that this IP address is owned by IP service provider, "Charter Communications," and that the "actual user of the IP address is likely located in the state of Connecticut." *Id.* at ¶¶ 19-20. While Plaintiff and John Shea are located in Massachusetts, Plaintiff's firm, Whitmyer IP Group, is located in Connecticut. *See* Ex. C, Shea Dep. Tr. at 5:25-6:3; Doc. 1, Complaint at ¶ 3 & p.25. Thus, Defendant needs to subpoena the business records of Charter Communications to confirm that the actual user of the IP address at the time the Declaration was signed in 2020 was in Connecticut.

Defendant also anticipates the native version of the four PDFs to likely contain an IP address corresponding to Mr. Shea on the day that the Declaration was allegedly forged on November 23, 2020. Thus, Defendants would likely need to subpoena the IP service provider owning that IP address corresponding to Mr. Shea's location that day to determine whether or not he was in Connecticut, Massachusetts, or elsewhere.

Therefore, Defendants contemplate the need for this limited and targeted discovery described above. As previously stated, this discovery is "critical" to complete before expert discovery, dispositive motions, and, ultimately, trial.

## 4.   CONCLUSION

For the foregoing reasons, the Court should grant this motion and order Plaintiff to produce all relevant emails responsive to RFP 70 and RFP 71 (*see supra* §§ 3.3 & 3.5) without any redactions for privilege (*see supra* § 3.4) and in native form due to the irregularities and the need for Internet Headers and metadata, as Defendants' expert explains (*see supra* § 3.6).

20

Respectfully submitted this 19th day of January, 2023.

/s/ N. Andrew Crain

Michael J. Lambert (BBO No. 632053)
*mlambert@sheehan.com*
**SHEEHAN PHINNEY BASS & GREEN PA**
28 State Street
22nd Floor
Boston, Massachusetts 02109
Telephone: 617.897.5637
Facsimile: 617.439.9363

N. Andrew Crain (*pro hac vice*)
*a.crain@thip.law*
Charles M. Landrum, III (*pro hac vice*)
*c.landrum@thip.law*
**THOMAS HORSTEMEYER LLP**
3200 Windy Hill Rd SE
Suite 1600E
Atlanta, Georgia 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

*Attorneys for Defendants*

21

## <u>LOCAL RULE 7.1(A)(2) CERTIFICATION</u>

The undersigned hereby certifies that counsel for the parties conferred in a good faith attempt to resolve or narrow the issues presented by this motion but were unable to reach an agreement.

<u>/s/ N. Andrew Crain</u>
N. Andrew Crain

*Attorney for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IEP TECHNOLOGIES, LLC,<br>                    Plaintiff,<br><br>           v.<br><br>KPM ANALYTICS, INCORPORATED<br>F/K/A STATERA ANALYTICS,<br>INCORPORATED AND KPM<br>ANALYTICS NORTH AMERICA<br>CORPORATION F/K/A PROCESS<br>SENSORS CORPORATION,<br>                    Defendants. | Civil Action File No.:<br>1:21-cv-10417-RWZ |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 19, 2023, the foregoing was filed using the Court's ECF system, which will automatically send electronic notice of such filing to all attorneys of record.

/s/ N. Andrew Crain
N. Andrew Crain

*Attorney for Defendants*

23