**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IEP Technologies, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>KPM Analytics, Incorporated f/k/a Statera Analytics Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation,<br><br>    Defendants. | Civil Action No. 1:21-cv-10417-RWZ |

## PLAINTIFF IEP TECHNOLOGIES, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' RENEWED MOTION TO COMPEL

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ........................................................................................................ 1

II.  MR. SHEA PERSONALLY SIGNED HIS DECLARATION .............................................. 2

   A.  IEP Produced Discovery Supporting Mr. Shea's Signing.............................................. 3

   B.  IEP Even Made Privileged Documents Available To KPM That Resolve Any Doubt ... 3

   C.  KPM Misrepresents The USPTO Documents, Which Are Not Evidence Anyhow ........ 4

     1. The USPTO documents have an IP address for the preparer and submitter, but <u>not</u> the

     signer of the declaration................................................................................................ 4

     2. The USPTO documents are inadmissible ................................................................... 6

III.  KPM CONTINUES ITS LITIGATION MISCONDUCT BY MISREPRESENTING

    FACTS AND VIOLATING THE PROTECTIVE ORDER.................................................... 7

   A.  KPM Is Violating The Protective Order By Arguing Waiver......................................... 7

   B.  KPM Misrepresents IEP's Attorney Statements During The Hearing, Continuing Its

     Trend Of Inventing False Narratives ............................................................................ 8

   C.  KPM Continues To Violate Rule 11 With Its Manufactured Counterclaims, And Never

     Met The High Burden To Even Make The Allegations................................................... 9

IV.  NO FURTHER DISCOVERY IS WARRANTED TO KPM........................................... 10

   A.  KPM Has Already Squandered Two Discovery Periods In Its Attempts To Delay ...... 10

   B.  IEP Has Produced Discovery For KPM's Counterclaims............................................. 11

   C.  The Email Search Strings Are Overly Broad And In Violation Of This Court's ESI

     Order ........................................................................................................................... 12

     1.  The time frames reflect a general discovery intent (all search strings) ....................... 13

     2.  The words "trademark" and "sign" are <u>not</u> directed to any specific legal issue (first

       search string)............................................................................................................. 14

     3.  The words "detect" and "explosive" are <u>not</u> directed to any specific legal issue (second

       search string)............................................................................................................. 14

     4.  The words "trademark" and "specimen(s)" are <u>not</u> directed to any specific legal issue

       (third search string)................................................................................................... 15

     5.  The word "TEAS" is <u>not</u> directed to any specific legal issue (fourth search string).... 16

     6.  The word "incontestability" is not directed to any specific legal issue (fifth search

       string) ....................................................................................................................... 16

     7.  IEP responded to KPM's improper email requests...................................................... 17

8.   KPM has not shown how its email requests are important to resolving its counterclaims .......................................................................................... 17

D.   KPM's Alleged Expert, Identified After The Close Of Discovery, Did Not Identify Any "Irregularities" .......................................................................... 18

V.   CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Est. of Leavitt Rey v. Marrero Gonzalez,*
    Civ. No. 16-2769(RAM), 2020 WL 4464467 (D.P.R. Aug. 4, 2020) ...................................... 6

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) ........................................................................... 9, 17

*Greenwood Trust Co. v. Com. of Mass.*,
    971 F.2d 818 (1st Cir. 1992) .............................................................................. 13

*In re Bose Corp.*,
    580 F.3d 1240 (Fed. Cir. 2009) ................................................................... 9, 14, 15

*Katz v. Liberty Power Corp., LLC*,
    No. 18-cv-10506-ADB, 2020 WL 3492469 (D. Mass. June 26, 2020) .................................. 17

*Koninklijke Philips N.V. v. Wangs All. Corp,*
    No. 14-12298-DJC, 2018 WL 283893 (D. Mass. Jan. 2, 2018) ............................................ 18

*Setterlund v. Potter*,
    597 F. Supp. 2d 167 (D. Mass. 2008) ....................................................................... 6

*U.S. ex rel. Touhy v. Ragen*,
    340 U.S. 462 (1951) ............................................................................................ 6

**Statutes**

15 USC § 1058 .......................................................................................................... 9

**Rules**

Fed. R. Civ. P. 26(b)(1) .............................................................................................. 17

## I.  INTRODUCTION

IEP submits this Opposition to Defendants' KPM Analytics, Inc. and KPM Analytics North America Corporation f/k/a Process Sensors Corporation (collectively, "KPM" or "Defendants") Renewed Motion to Compel. (Doc. 96, the "Motion").

KPM is a willful trademark infringer and continues in its attempts to delay adjudication by pursuing baseless conspiracy theories. Although IEP believes KPM is not entitled to the privileged information, IEP has made available documents that evidence Mr. Shea's signing of the declaration. IEP offered these documents to KPM back in August, (Doc. 61-8, Aug. 12 2022 letter to KPM), but KPM refused to review them. Instead, KPM continued to burden the Court with endless motion practice in an effort to avoid addressing its willful infringement. Both the Court and KPM now have those documents but nothing will satisfy KPM's desire to derail this case. The fact is that this case should have been resolved a hundred filings ago, but KPM remains unreasonable and indifferent to the facts or the law. The Court should end KPM's abusive tactics.

This should be a very simple case concerning KPM's willful infringement of IEP's incontestable trademark rights. The parties use the ***same marks***, with IEP having begun use of its trademark in 2013 ( in color) (collectively, "IEP's mark"[1]), while KPM began use of its trademark in 2018 ( in color ) (collectively, "KPM's mark"[2]). (Doc. 1 at ¶ 13; Doc. 38 at ¶ 31.) The parties have the ***same customers*** in the ***same industries*** (such as wood, paper, power, metals, chemicals, food, and grain processing industries (*see* Doc. 1-7 at 6 (KPM's website)),

---

[1] IEP's federal trademark registration has no claim of color, so its registration extends to any variation of colors. (Doc. 1-1.)

[2] KPM disclaimed the words "Process Sensors Corporation" as part of its trademark, which is generic with regard sensors used on process lines, and which both parties sell. (Doc. 1-3.)

with discovery showing an overlap of at least 48 customers. (*See* Doc. 44; Doc. 44-1 at ¶ 25.) The parties advertise at the ***same trade shows and in the same trade publications***, such as the International Powder and Bulk Solids show. (Doc. 44 at 6, 7.) And the parties sell the ***same products (such as sensors) for the same uses (such as to reduce or eliminate fire or explosion hazards)***. (Doc. 44 at 4.) This is textbook willful trademark infringement.

KPM wants to distract the Court from its infringement, but there is no support that IEP somehow defrauded the USPTO. Trademark rights are based on use, and the USPTO reviewed and approved IEP's trademark use. KPM has not even alleged the basics for fraud, such as intent, misrepresentation of a material fact, and that IEP is not eligible for its trademark protection (which was expressly granted by the USPTO). Instead, KPM's focus is that IEP somehow committed fraud because an otherwise correct declaration was signed on behalf of IEP's employee. There is no legal or factual support for this.

As discussed further below, KPM's Motion for additional discovery should be denied, and IEP respectfully requests that the Court acknowledge KPM's dilatory tactics for a future fees request.

## II.    MR. SHEA PERSONALLY SIGNED HIS DECLARATION

KPM has not identified **any evidence** that Mr. Shea did not sign his declaration. Instead, the basis for KPM's fraud claim is Mr. Shea's testimony that he signs a number of declarations for trademarks and did not recall a specific one signed years ago. (Doc. 31-3 (Shea Tr). at 128:15-18; 131:1-3 ("Q. Do you have any reason to doubt that you signed this declaration? A. I don't recall signing this declaration.").) Despite this, KPM has engaged in a fishing expedition to attack IEP and Mr. Shea's credibility.

**A.     IEP Produced Discovery Supporting Mr. Shea's Signing**

As an initial matter, Mr. Shea's electronic signature on his declaration speaks for itself, and since there is no contradictory evidence it is the best evidence of Mr. Shea's signing. However, IEP has also produced supporting discovery. This includes a declaration from Mr. Shea in response to KPM's allegation, which states he had no reason to doubt that he signed the declaration, and affirmed the accuracy of the information contained therein. (Doc. 31-1.) Still further, IEP's response to KPM's request for admission admits that Mr. Shea signed his declaration. (Doc. 65-2.) There is no discovery contradicting that Mr. Shea signed his declaration.

**B.     IEP Even Made Privileged Documents Available To KPM That Resolve Any Doubt**

Although KPM is not entitled to privileged information, IEP made available documents concerning the signing of Mr. Shea's declaration. (Docs. 63, 93.) These privileged documents show the following:

- The Whitmyer IP Group prepared the declaration for signature by a representative of IEP and sent it to IEP's legal representatives in Europe on November 18, 2020;

- IEP's legal representatives in Europe sent the declaration to Mr. Shea for his signature on the morning of November 23, 2020;

- Mr. Shea responded to IEP's legal representatives in Europe on the afternoon of November 23, 2020, informing them that he had signed the declaration on behalf of IEP;

- The Whitmyer IP Group submitted the signed declaration to the USPTO later that afternoon on November 23, 2020.

3

(Doc. 63-1.) The privileged documents put this issue to rest once and for all, as discussed during the December 7 hearing.

IEP notes the timing of the emails, which undermine KPM's fictitious narrative that the Whitmyer IP Group signed the declaration on Mr. Shea's behalf. First, the Whitmyer IP Group sent the unexecuted declaration to IEP's legal representatives in Europe on November 18, 2020. (IEP004585[3].) It wasn't until a week later that IEP's legal representatives in Europe sent the unexecuted declaration to Mr. Shea, at 11:09 AM on November 23, 2020. (IEP004589.) Mr. Shea responded to IEP's legal representative in Europe at 3:35 PM that day, stating that he had signed the declaration. (IEP004601[4].) The Whitmyer IP Group submitted the declaration over an hour later at 4:41 PM. (IEP004618.) It is incredulous that the Whitmyer IP Group would sign and submit the declaration on Mr. Shea's behalf over a week-long period while such correspondence was being exchanged. Instead, these contemporaneous emails confirm that Mr. Shea signed it himself, as he stated to IEP's legal representative in Europe.

## C.   KPM Misrepresents The USPTO Documents, Which Are Not Evidence Anyhow

### 1.   The USPTO documents have an IP address for the preparer and submitter, but **not** the signer of the declaration

KPM would like to confuse the Court to advance its theory about the signing of the declaration. As acknowledged by KPM, the USPTO system allows a law firm to prepare a declaration, send it to a client for signature, and then the law firm submits the signed declaration. (Motion at 21-22[5] (citing https://www.uspto.gov/trademarks/apply/trademark-electronic-

---

[3] Privileged documents IEP004585-4625 have been made available to KPM and the Court pursuant to the protective order, (Doc. 63, 93), and IEP reserves all rights.
[4] The time listed and shown in the produced image of the email is Greenwich Mean Time (GMT +000). This corresponds to 3:35PM Eastern Time in the United States.
[5] Citations are to ECF (.pdf) page numbers.

application-system-teas-1#type-browse-faqs_164065).) This is exactly what happened in this case, as shown by the privileged documents (discussed *supra*).

The transaction records produced by the USPTO confirm this. These include "20201124-8150001_A.xml," which purports to have recorded information when the declaration was submitted, and "signatures_20201124-8150001_A.xml," which purports to have recorded information when the declaration was signed. (*See* Doc. 61-4 at 2-3.) The transaction record for when the declaration was signed (signatures_20201124-8150001_A.xml) does **not** record IP address information.[6] (Doc. 65-1.) It is of no moment that the USPTO captured the IP address of the Whitmyer IP Group when the declaration was submitted, as the USPTO system is designed so that law firms can submit a signed declaration on behalf of a client.

KPM hangs its hat on a statement made in an undoubtedly inadmissible spreadsheet provided with the USPTO production. IEP notes that the spreadsheet is not a transaction record, but was instead apparently prepared by an unidentified individual using an unidentified "internal investigative tool." (Doc. 71-2.) KPM misrepresents this document, which only indicates that the person who **submitted** the signed declaration (the spreadsheet uses "signed the *filing*", e.g., not "signed the *declaration*", and refers to the "Unique account of form *submitter*") used the same IP address as the person that **prepared** the declaration[7]. (*Id*.) This accords with the privileged information made available to KPM and the Court, and as discussed above the USPTO transaction records do not record the IP address of the person that **signs** the declaration.

---

[6] KPM's purported expert never considered the underlying data from the USPTO that **does not** show the IP address for the signer, calling into question the reliability of Mr. Kelly's declaration. (Doc. 96-8 at ¶16 (only considering unauthenticated excel data and not the underlying XML files).)

[7] The spreadsheet has numerous inconsistencies that contradict undisputed facts, including that it does not list the signatory name or position (it says "NO DATA") and has a filing date of April 24, 2021, which is over a year after the declaration was submitted to the USPTO by the Whitmyer IP Group. (*Compare* IEP004622 *with* Doc. 71-2.)

There is nothing in the USPTO transaction records that contradict that: 1) the Whitmyer IP Group prepared the declaration for IEP; 2) the declaration was ultimately sent to Mr. Shea who signed it himself; and 3) the Whitmyer IP Group submitted the signed declaration.

### 2.    The USPTO documents are inadmissible

The Court should not consider the USPTO documents for at least two reasons: (1) they were produced after the close of fact discovery; and (2) they lack authenticity making them inadmissible at trial (or for consideration during summary judgment). First, the documents were undoubtedly produced after the close of fact discovery. *See Est. of Leavitt Rey v. Marrero Gonzalez,* Civ. No. 16-2769(RAM), 2020 WL 4464467, at *4 (D.P.R. Aug. 4, 2020) ("In the present case, the videos were likewise disclosed after the close of discovery. Thus, preclusion is warranted.).

Second, the USPTO documents lack authenticity due to no authenticating witness. *See Setterlund v. Potter*, 597 F. Supp. 2d 167, 172 (D. Mass. 2008) ("[KPM] has pointed to no case, and the Court has found none, where an unsworn witness statement (as opposed to a deposition or affidavit) was accepted by a court in opposition to a motion for summary judgment. The unsworn witness statements are therefore subject to being struck.") Evidence that is inadmissible at trial cannot be considered during summary judgment. *Id.* at *170. Here, not only is there no sworn declaration or deposition attesting to the USPTO documents, KPM improperly relies on a statement without establishing who even made it. KPM could have sought a witness to testify through a Touhy[8] request but did not, revealing its motives. KPM is not seeking the truth, but to manufacture a dispute to demand irrelevant, privileged discovery, all the while avoiding the consequences of its willful trademark infringement.

---

[8] *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

IEP notes that the USPTO documents have other indicia of unreliability. For instance, the Patron ID cannot be confirmed and many of the columns from the unknown, unnamed USPTO tool are missing in their entirety. (*See* FN 7.) These indicia of unreliability further counsel against reliance on these documents.

Not only do the USPTO documents fail to support KPM's argument, but the Court has no obligation to consider them as they are inadmissible and not evidence in this case.

### III.   KPM CONTINUES ITS LITIGATION MISCONDUCT BY MISREPRESENTING FACTS AND VIOLATING THE PROTECTIVE ORDER

#### A.    KPM Is Violating The Protective Order By Arguing Waiver

Before making privileged emails available, IEP moved for a protective order. Recognizing KPM's overreaching discovery tactics, the protective order was necessary to prevent baseless intrusion into attorney-client privileged information. The Order specifically states, *inter alia*:

> b. Production of the Documents does not constitute a waiver of any claim of privilege with respect to these documents;
>
> c. Defendants may not to seek to compel the production of any other documents claimed by Plaintiff to be privileged or work product by asserting that Plaintiff's production of the Documents constitutes a waiver of any privileges;

(Doc. 63.) The Court entered this protective order on December 7, 2022. (Doc. 93.) On December 9, 2022, two days after the Court order and hearing, IEP made the privileged emails available to the Court and KPM.

Despite this, on December 30, 2022 KPM sent a letter arguing that "IEP cannot on the one hand waive privilege as a sword with regarding to some parts of the emails while also asserting privilege as a shield to prevent disclosure of other portions." (Ex. 1) Doubling down, KPM now moves to compel the privileged documents as well as additional emails, including in native format, responsive to its overbroad discovery requests. (Motion at 13-15 (arguing again in

7

violation of the protective order that "[IEP] cannot selectively waive privilege."); *see also* Motion at 2 ("[IEP] uses privilege as a sword in provisionally waiving it…").) KPM's actions blatantly contravene the protective order.

To be clear, no waiver has occurred. (Docs. 63, 93.) KPM's arguments to the contrary demonstrate an intent to seek discovery beyond the boundaries set by the Court and Federal Rules. Ignoring the attorney-client privilege would set a dangerous precedent, permitting any specious claim without evidence to pierce the privilege.[9] KPM does not contest that the documents are privileged and is not entitled to them. However, if the Court is so inclined, IEP could submit the four privileged documents for *in camera* review.

### B. KPM Misrepresents IEP's Attorney Statements During The Hearing, Continuing Its Trend Of Inventing False Narratives

KPM's December 30 letter and Motion also repeatedly misrepresent statements made by IEP's counsel. For example, the Motion states:

> "For starters, Plaintiff claims that the four PDFs 'show an IP address for the signer' of the Declaration. *See* [Dec. 7, 2022 Hearing Recording] at 2:43:26-2:43:36." (Motion at 7)

> "In the [letter] request, Defendants explained that the PDFs do not 'show an IP address for the signer' of the Declaration as Plaintiff expressly represented to the Court during the hearing. *See* [Ex. H, Dec. 30, 2022 Letter to Stephen Ball]; *see also* Dec. 7, 2022 Hearing Recording, 2:43:26-2:43:36." (Motion at 22)

IEP urges the Court to listen to the cited portions of December 7, 2022 hearing recording at 2:43:26-2:43:36. It is clear that IEP's counsel made no such representation. To the contrary, IEP's counsel stated:

> The fact of the matter is, none of this [USPTO] data actually shows the IP address for the signer.

(Ex. 6, Hr. Tr. at 33:7-8.) It is egregious for KPM to so blatantly misrepresent this statement to

---

[9] As explained *infra*, the USPTO documents do not have a percipient witness or declarant and are unauthentic. The barriers of privilege cannot be broken by such unreliable documents.

create one-liners in its brief, and KPM's continued misrepresentations of basic facts should be rejected by the Court.

### C.      KPM Continues To Violate Rule 11 With Its Manufactured Counterclaims, And Never Met The High Burden To Even Make The Allegations

IEP opposed KPM's Motion to Amend its Answer and Assert Counterclaims by arguing, *inter alia*, KPM's lack of factual and legal bases. (Doc. 31.) It is almost a year later and KPM still fails to provide either factual basis or legal basis that would affect IEP's trademark rights. To contrary, KPM refers to 15 USC § 1058. (Motion at 6 ("And now, because the statutory time for Plaintiff to submit a proper Section 8 Declaration of Use for its trademark registration has expired pursuant to 15 U.S.C § 1058, the forged declaration renders Plaintiff's trademark registration subject to cancellation for fraud.").) However, that statute specifically provides for curing any deficiency after the statutory time period:

> (c) Deficient affidavit
>
> If any submission filed within the period set forth in subsection (a) is deficient, including that the affidavit was not filed in the name of the owner of the registration, the deficiency may be corrected after the statutory time period, within the time prescribed after notification of the deficiency. Such submission shall be accompanied by the additional deficiency surcharge prescribed by the Director.

15 USC 1058(c). There is simply no basis for cancelling any of IEP's trademark rights, much less all of them, and KPM has never even made predicate allegations for fraud's heightened pleading standard. (*See* Doc. 31 at 14.) *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009); *see also In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) ("[T]he very nature of the charge of fraud requires that it be proven 'to the hilt' with *clear and convincing* evidence. *There is no room for speculation, inference or surmise . . ..*") (emphasis added). KPM's service and maintenance of its manufactured counterclaims are violative of the Rules and entitle IEP to its fees and costs.

9

## IV.   NO FURTHER DISCOVERY IS WARRANTED TO KPM

It would be unjust to allow KPM additional discovery given its failures at pursuing

depositions and its own discovery violations. Notably, KPM told the Court it had no additional

documents to produce. (*See* Ex. 6 at 16:17-20 ("But we're not aware of any documents that Mr.

Ball thinks haven't been produced. So to that point, I am not aware of anything and nothing has

been identified that is being withheld."), 19:18-21 ("Now, again, I'm aware of none. We can

certainly go back and see if there's any others, and I'm willing to work with Mr. Ball on that. But

I worked with my client, and I am aware of no documents that are responsive at this time.").)

However, weeks later KPM produced more documentation and incredibly, documents directly

pertaining to fire safety and combustion (explosion). (*See* Ex. 2, KPM-005133 at 1 ("███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████.") (emphasis added).)[10] KPM itself recognizes that process materials such as sawdust

can be explosive. KPM's belated production (Exs. 2-4) directly contradict KPM's manufactured

claim. Indeed, these were only produced *after* a Court order.

The Court has already given KPM two discovery deadlines and no further discovery is

warranted to KPM.

### A.   KPM Has Already Squandered Two Discovery Periods In Its Attempts To Delay

KPM chose not to pursue discovery before the deadline. For example, KPM could have

---

[10] *See also* Ex. 3 (KPM-005091 at ¶ 2) ("In paper and packaging production, the sensor's condition monitoring can eliminate a fire and explosion hazard due to the dust associated with the process."); Ex. 4 (KPM-005138) (████████████████████████████████████████ ██████████")

obtained discovery through deposition testimony but chose not to. And KPM never served an expert report, unlike IEP. KPM should not be able to use its manufactured discovery issues as a reason to extend discovery a third time. KPM squandered its prior extension, and its request for further extension is being sought for improper delay.

If anything, KPM should have sought testimony from the USPTO, not IEP. IEP did not oppose the USPTO discovery process and KPM never even attempted to authenticate the USPTO documents. Now, KPM intends to further burden third parties such as Charter, but never indicates it will attempt to authenticate the USPTO documents. KPM's intent is to avoid the ramifications of its willful trademark infringement by indefinitely delaying this case through manufactured discovery disputes.

## B. IEP Has Produced Discovery For KPM's Counterclaims

There is no evidence (authentic or otherwise) contradicting that Mr. Shea signed his declaration (*discussed supra*).

KPM's other counterclaims relate to IEP's products and services. IEP's interrogatory responses resolve those manufactured issues as well. For example, they explain in detail IEP's detection of explosives as excerpted below:

> IEP submits that all of its products are "sold or offered for sale relating to Plaintiff's Mark for use in detecting explosives." IEP is in the business of providing systems for preventing/mitigating explosions and all of its products are for such systems. In addition, an explosive is anything that can explode, including material in the process of exploding that can explode further. Accordingly, IEP detects explosives in order to prevent an explosion entirely and/or mitigate further explosion.

> An IEP brochure explains that explosions occur due to "explosive materials" and "[a]s a rule, if a material can burn, under the right conditions, it can and will explode." (IEP000549 at 553.) The brochure explains that explosions also occur due to "explosive environments", such as "[c]onveying, processing, pulverizing or storing of combustible materials." (*Id.*) IEP offers, *inter alia*, venting systems that allow "explosive pressure to vent to a safe area." (IEP000549 at 555.)

> John Shea provided a declaration in March 2022, in response to KPM's allegations, stating: "IEP's products do not detect the presence of inherently explosive material,

such as TNT. However, IEP's products detect and mitigate against generally non-explosive materials, such as dust, which become explosive due to industrial processes. Accordingly, IEP's products detect explosives, or materials that can explode in given conditions." (Doc. 31-1 at ¶ 5.) For example, "IEP's IsoFlap valve has an accumulation sensor that detects the presence of dust and will send a fault signal if a certain threshold or accumulation of dust is reached/exceeded. See https://www.ieptechnologies.com/assets/images/file/Used/IsoFlap-Product-Information-Sheet-EN.pdf." (*Id*. at ¶ 7.)

IEP notes that generally non-explosive materials may only become explosive when they explode. As discussed above, materials can become explosive and explode when certain conditions are met. Wikipedia's entry for "explosive" states that "[c]ertain materials—dusts, powders, gases, or volatile organic liquids—may be simply combustible or flammable under ordinary conditions, but become explosive in specific situations or forms, such as dispersed airborne clouds, or confinement or sudden release." (IEP004544.) However, before such conditions are met and the explosion occurs, such materials may not be considered explosive.

During prosecution of its trademark application, IEP submitted a specimen showing its EX Control Panel product. (IEP004304.) The Trademark Office reviewed and accepted this specimen. Information for IEP's products, including the EX Control Panel, is also publicly available on the Internet. The user manual for the EX Control Panel states "[t]he primary function of the control panel is to continuously monitor for threatening conditions that can lead to an explosion. Detected events are immediately processed to actuate the system to suppress and isolate the incipient explosion." (IEP003906 at 3915.) The EX Control Panel is still sold by IEP today. (Doc. 31-1 at ¶ 4.)

(Ex. 5, IEP's January 20, 2023 Response to Interrogatory No. 23.)[11] IEP has fully responded to

KPM's discovery requests and no further discovery is necessary or appropriate.

### C.   The Email Search Strings Are Overly Broad And In Violation Of This Court's ESI Order

KPM's email requests fly in the face of this Court's ESI Order of August 17th, 2021. (*See*

Doc. 19.) The ESI Order unambiguously states that "E-mail production requests shall only be

---

[11] KPM's own documents, which had to be compelled by Court order, bely its reliance on a purported difference between "explosives" and "explosions." For example, KPM recognizes sawdust as a combustible product and that KPM monitors for explosion hazards. (See Ex. 3 (KPM-005091 at ¶ 2) ("In paper and packaging production, the sensor's condition monitoring can eliminate a fire and explosion hazard due to the dust associated with the process."); Ex. 4 (KPM-005138) ("████████████████████████████████████
████████████████████").)

propounded for *specific issues, rather than general discovery of a product or business.*" (*Id.* at ¶ 4 (emphasis added).) Despite this, KPM's email requests are exhaustive, demanding all emails, including "unsent drafts and deleted emails," over more than a seven-year period using broad search terms. (Motion at 13–14.) These requests are directly antithetical to the ESI Order, as KPM has not directed the requests to any specific issues.

At the outset of this litigation, both parties were aware that email discovery had the potential to be especially burdensome. As such, the parties jointly agreed to terms in the ESI Order specifically outlining email discovery. (*See* Doc. 19 at ¶¶ 4–6.) The most fundamental of the terms is the requirement that email production requests "only be propounded for specific issues." (*Id.* at ¶ 4.) The "specific" modifier is to be interpreted according to its plain meaning, as neither the agreement is ambiguous nor has either party put forth any material which would suggest otherwise. *See Greenwood Trust Co. v. Com. of Mass.*, 971 F.2d 818, 825–26 (1st Cir. 1992) (explaining the general limitations of the plain meaning rule).

As discussed below, none of the five search strings propounded by KPM for both of IEP's witnesses are related to "specific" issues in this case.

### 1.     The time frames reflect a general discovery intent (all search strings)

KPM demands email production for a lengthy timespan: from January 1, 2014, to March 10, 2021. (Motion at 13-14.) This time span is applied to both Mr. Davis and Mr. Shea's emails, even though they have different backgrounds and responsibilities within IEP. Mr. Davis is President and CEO, while Mr. Shea is Co-President of the Explosion Protection Business Unit. Despite their manifest differences, KPM treats them identically for purposes of the email requests, even though it brings different allegations for each. (*See* Doc. 38 at ¶¶ 12–20, 22–27 (allegations naming Mr. Davis); 30–40, 42, 45, 52 (allegations naming Mr. Shea).) Treating Mr. Davis and Mr. Shea alike—especially for a period covering more than seven years—represents a

13

baseline failure to implement the ESI Order's required specificity.

### 2.  The words "trademark" and "sign" are <u>not</u> directed to any specific legal issue (first search string)

Search string #1 demands all emails relating to terms "trademark" and "sign" (and variations of the latter). These are facially overbroad terms and no specific issue is raised. KPM justifies this by reiterating its counterclaims and misrepresenting Mr. Shea's deposition testimony. KPM argues that Mr. Shea "had specific reason to doubt that he actually signed the Declaration [of November 23, 2020]." (Motion at 15.) When asked if he remembered signing it, Mr. Shea testified "Not specifically, but I sign a number of them, so --." (Doc. 31-3, Ex. A Shea Tr. at 128:15-18.) KPM provides no legal basis to support its conclusion the alleged misrepresentation would be material even if it were true, a cornerstone requirement for proving fraud on the USPTO. *See Bose*, 580 F.3d at 1243. Because there has been no baseline showing of materiality, there is no legal issue present with regards to the allegedly disputed USPTO declaration of November 23, 2020.

Further, KPM ignores Mr. Shea's declaration of March 2, 2022, in which he expressly stated: "I have no reason to believe that I did not sign it." (Doc. 31-1 (Shea Decl. Mar. 2, 2022) at ¶ 3.) Mr. Shea ratified the appropriateness of the filing, and so the overbroad search string cannot pertain to a specific issue. Still further, IEP supplemented its response to KPM's request for admission by admitting that Mr. Shea signed his declaration. (Doc. 65-2.)

### 3.  The words "detect" and "explosive" are <u>not</u> directed to any specific legal issue (second search string)

Search string #2 demands all emails relating to terms "detect" and "explosive" (and variations of both). Again, these are facially overbroad terms and no specific issue is raised. In addition, IEP has produced evidence that its products detect and mitigate against generally non-explosive materials which become explosive due to industrial processes (discussed *supra*). (*See,*

*e.g.*, Doc. 31-4 at 58:18–61:9 (testimony of Mr. Grandaw explaining that "IEP provides equipment that senses for a deflagration or a potential ignition source . . ..."); Doc. 31-6 (IEP promotional brochure showcasing some of its products and explaining that "[a]ny facility that handles, stores or processes flammable gases, liquids or solids has some degree of explosion risk").) Yet again, KPM simply ignores IEP's interrogatory response which includes a citation to Mr. Shea's declaration of March 2, 2022 that states: "Accordingly, IEP's products detect explosives, or materials that can explode in given conditions." (Doc. 31-1 (Shea Decl. Mar. 2, 2022) at ¶ 5.)

KPM has already affirmed that IEP sells products which detect explosives, the very issue on which it bases its claims. In a September 30, 2020 letter, KPM's counsel stated that IEP's advertised detection components "*fall squarely within the associated goods and services identified in the registration for IEP's Mark*, namely . . . 'safety hardware systems comprised of [components] sold as a unit for use in detecting explosives.'" (Doc. 31-5 (Sept. 30, 2020, letter from KPM's counsel to IEP) at 2 (emphasis added).)

The terms "detect" and "explosive" are common words, particularly in IEP's business, and it is not at all clear how these overbroad search terms, standing together with nothing more, are directed to any specific legal issue.

   **4. The words "trademark" and "specimen(s)" are <u>not</u> directed to any specific legal issue (third search string)**

Search string #3 demands all emails relating to terms "trademark" and "specimen(s)." These are also overbroad search terms and no specific issue is raised. In addition, KPM has failed to show how this manufactured argument would be material to proving fraud on the USPTO. *See Bose*, 580 F.3d at 1243. Because there has been no baseline showing of materiality, there is no legal issue present with regards to the specimen submitted with the allegedly disputed

USPTO declaration of November 23, 2020. Further, Mr. Shea's declaration of March 2, 2022

nullifies any potential issue. Specifically, "The use of [IEP's]  logo on the EX Control Panel

*has not changed* since IEP filed for its trademark application on April 11, 2014. The EX Control

Panel product *is still sold today*." (Doc. 31-1 ( Shea Decl. Mar. 2, 2022) at ¶ 4 (emphasis

added).)

### 5.    The word "TEAS" is <u>not</u> directed to any specific legal issue (fourth search string)

Search string #4 demands all emails relating to the term "TEAS," an acronym for the

USPTO's online application system. This is another broad term (common word) and there is no

indication which, if any, purportedly specific legal issue this is directed to. Searching for a single

term is the broadest possible search a user can make. KPM provides nothing on this front, instead

merely stating which sorts of emails are "calculated" to fall from this term without more. Thus,

this search term is manifestly a general discovery request and unrelated to a specific issue.

### 6.    The word "incontestability" is not directed to any specific legal issue (fifth search string)

Search string #5 demands all emails relating to the term "incontestability." Again, this is

an overbroad search term and no specific issue is raised. KPM justifies this by arguing that the

word is not commonly used and "pertains to a well-known term in trademark parlance." (Motion

at 19.) Nonetheless, this request is inconsistent with the Court's ESI Order for the same reasons

that search string #4 is—a sole term cannot possibly relate to a specific issue and KPM has

provided nothing but "targeted" or "calculated" returns.

In sum, KPM has failed to provide any specific issue to which the email requests would

be used to further, instead deferring to broad portions of its counterclaim and making

unsupported arguments. Considering that KPM is alleging fraud on the USPTO, this is especially

telling, as merely pleading fraud "requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327.

### 7.    IEP responded to KPM's improper email requests

KPM implies that IEP has an affirmative duty to run the search terms. (*See* Motion at 19 ("Plaintiff's counsel admitted that it had not searched emails using any of the search strings").) This is a faulty proposition for at least two reasons: 1) IEP has responded to KPM's requests and explained why they are overbroad and inappropriate; and 2) IEP has no legal duty to entertain discovery requests that are facially incompatible with Court orders. It should come as no surprise that KPM fails to cite a single case which would support this notion. KPM's lone case, *Katz v. Liberty Power Corp., LLC*, No. 18-cv-10506-ADB, 2020 WL 3492469, at *5 (D. Mass. June 26, 2020), recites the general understanding that "the party resisting discovery must show specifically how each [sought request] is not relevant or how each question is overly broad, burdensome, or oppressive." IEP does not challenge this settled rule.

IEP has explained why KPM's email requests are facially incompatible with the Court's ESI Order. In addition, the requests target privileged information (*see supra*), raising the burden on IEP. Neither party disputes the enforceability or validity of the ESI Order, but KPM now waits until after the close of *an already-extended discovery* to seek burdensome eDiscovery of material which is inconsistent with said Order.

### 8.    KPM has not shown how its email requests are important to resolving its counterclaims

One of the considerations when determining the proper scope of discovery is "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). Instead of providing even the scantest legal basis for how the email requests might help it succeed on its

counterclaims, KPM could only muster conclusory statements. In fact, KPM could not cite a *single* case in this circuit or any other in support of the email requests. It is difficult to understand how a discovery request can be "highly relevant" to resolving or merely furthering an action absent any authoritative support. With allegations as severe as fraud on the USPTO, authoritative support is a minimal obligation.

KPM does, however, attempt to provide an explanation for each "search string" contained in the email requests. As KPM noted, it held the "initial burden of showing that the discovery requested is relevant." (Doc. 96-1 at 3 (quoting *Koninklijke Philips N.V. v. Wangs All. Corp*, No. 14-12298-DJC, 2018 WL 283893, at *1 (D. Mass. Jan. 2, 2018) (internal citations omitted)).) Despite this burden, KPM offered no grounded reasoning for how or why the overbroad search terms are appropriate, instead merely deferring to its counterclaims and informing the Court of its respective "target" emails. The Court is then given the impermissible burden of guessing how these emails might help KPM succeed on its counterclaims or even move this action forward. This is improper. Still further, KPM recognized at the hearing that IEP has already produced thousands of pages of discovery in response to KPM's counterclaims. (Ex. 6 at p. 44.)

### D.    KPM's Alleged Expert, Identified After The Close Of Discovery, Did Not Identify Any "Irregularities"

As Mr. Kelly admits, spaces can be attributable to converting the emails into "pdf" format. (Doc. 96-8 at ¶13.) He also notes the time zones are UTC, which he uses to support his hypothesis regarding timing. (Doc. 96-8 at ¶11.) But then he claims that a spacing error renders the document unauthentic.[12] One cannot claim the documents are reliable to show timing but otherwise unreliable. Importantly, Mr. Kelly does not contend the documents are somehow

---

[12] Mr. Kelly has no problem assuming the USPTO documents are authentic despite there being no sworn testimony and contradictory and missing information, for example, no signatory name.

fraudulent or forged due to a spacing error—nor could he—and he has failed to identify any irregularities that require clarification.

Mr. Kelly's opinions are rendered unreliable, however, by his **failure to consider** the underlying USPTO transaction files. (Doc 96-8 at ¶¶9, 16.) As discussed *supra*, they do not have an IP address for the signer. KPM could have presented Mr. Kelly with all the USPTO documents (around 10 total) but selectively chose to withhold the underlying data. Mr. Kelly, therefore, even with any metadata from emails, would not be able to compare IP addresses since the USPTO does not record the IP address for the signer.

## V.   CONCLUSION

For the foregoing reasons, IEP respectfully requests that the Court deny KPM's renewed Motion to Compel. KPM's misrepresentations, reliance on unauthenticated documents, and overzealous discovery demands should be considered when weighing the equities of KPM's willful trademark misconduct to award fees to IEP.

Respectfully submitted,

Dated: February 10, 2023

*/s/ Stephen F.W. Ball, Jr.*
Stephen F.W. Ball, Jr. (BBO # 670092)
**HUSCH BLACKWELL LLP**
One Beacon Street, Suite 1320
Boston, MA 02108
Telephone: 617-598-6700
Fax: 617-720-5092
Stephen.Ball@huschblackwell.com

Brendan G. McDermott (*pro hac vice*)
**HUSCH BLACKWELL LLP**
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone: 314-480-1500
Fax: 314-480-1505
Brendan.McDermott@huschblackwell.com

*Attorneys for Plaintiff IEP Technologies, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 10, 2023 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.


*/s/ Stephen F.W. Ball, Jr.*