**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IEP TECHNOLOGIES, LLC,<br>    Plaintiff,<br><br>    v.<br><br>KPM ANALYTICS, INCORPORATED<br>F/K/A STATERA ANALYTICS,<br>INCORPORATED AND KPM<br>ANALYTICS NORTH AMERICA<br>CORPORATION F/K/A PROCESS<br>SENSORS CORPORATION,<br>    Defendants. | Civil Action File No.:<br>1:21-cv-10417-RWZ |

**REPLY BRIEF IN SUPPORT OF
DEFENDANTS' RENEWED MOTION TO COMPEL**

**[LEAVE TO FILE GRANTED ON FEBRUARY 16, 2023 – DOC. 109]**

# TABLE OF CONTENTS

1.  THIS IS A *DISCOVERY* MOTION AND NOT A SUMMARY JUDGMENT MOTION like Plaintiff Argues, so Defendants Need Only Show Relevancy Versus Admissibility to Warrant the Requested Discovery ..................... 1

   1.1.  Whether or Not the USPTO's Investigative Records are Admissible Evidence *at Trial* (They Are) is Immaterial to Defendants' *Discovery* Motion ................................................................................................................ 1

   1.2.  Contrary to Plaintiff's Misrepresentations, the USPTO's Investigative Records *DO* Disclose the IP Address of the Declaration's Signer, and it is the *Same* IP Address as the Person who Submitted the Filing to the USPTO ........ 3

2.  PLAINTIFF MISREPRESENTS THE COURT'S *PROVISIONAL* PROTECTIVE ORDER ON THE FOUR HEAVILY-REDACTED PDF EMAIL DOCUMENTS THAT PLAINTIFF PRODUCED ..................................................................................................... 4

3.  THAT PLAINTIFF BACKPEDALS FROM ASSERTING THAT THE FOUR PDFS CONTAIN IP ADDRESSES ONLY FURTHER SUPPORTS PRODUCTION IN NATIVE ELECTRONIC FORMAT ......................................................................................... 5

4.  PLAINTIFF HAS NO ANSWER TO DEFENDANTS' COMPUTER FORENSICS EXPERT WHO PROVIDES SEVERAL GROUNDS IN HIS TESTIMONY FOR WHY THE FOUR PDFS ARE SUSPECT AND WHY THE NATIVE ELECTRONIC VERSIONS ARE REQUIRED ............................................................................................................. 6

5.  PLAINTIFF'S REPEATED THREATS OF RULE 11 VIOLATIONS AS A LITIGATION TOOL FOR STRATEGIC GAIN ARE INAPPROPRIATE AND SHOULD THEMSELVES BE SANCTIONED ................................................................................................... 6

6.  PLAINTIFF'S FORGED DECLARATION IS FRAUDULENT AND DOES NOT QUALIFY AS A "DEFICIENT AFFIDAVIT" TO SAVE THE '573 REGISTRATION ............ 7

7.  DEFENDANTS' EMAIL REQUESTS AND SEARCH STRINGS ARE SPECIFICALLY TARGETED TO EMAILS RELEVANT TO COUNTS I AND/OR II OF DEFENDANTS' COUNTERCLAIMS ................................................................................................... 8

8.  CONCLUSION ...................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Fine v. Guardian Life Ins. Co. of Am.*, 589 F. Supp. 3d 139, 148 (D. Mass. 2022)........................2

*Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 485 (3d Cir. 1987)...............................................6

*Goguen v. Textron, Inc.*, 234 F.R.D. 13, 16-17 (D. Mass. 2006)......................................2

*In re Subpoena to United States Patent & Trademark Office*, No. 1:22-mc-14-AJT/WEF
   (E.D. Va. July 27, 2022) ........................................................................2

*Int'l Aero Prods., LLC v. Aero Advanced Paint Tech., Inc.*, 325 F. Supp. 3d 1078, 1088
   (C.D. Cal. 2018)................................................................................7

*Int'l Paper v. Rexam, Inc.*, 2013 U.S. Dist. LEXIS 84615, at *9 (D.N.J. June 17, 2013). ............2

*Netherlands Ins. Co. v. HP, Inc.*, No. 18-cv-12136-DLC, 2022 U.S. Dist. LEXIS 233567,
   at *6 (D. Mass. Dec. 30, 2022) .................................................................1

*Rush v. McDonald's Corp.*, 966 F.2d 1104, 1123 (7th Cir. 1992). ....................................6

*United States v. Chen*, 952 F. Supp. 2d 321, 331-32 (D. Mass. 2013). ...............................2

*United States v. Hubbell*, 530 U.S. 27, 36, 120 S. Ct. 2037, 2043 (2000). ..........................2

**Statutes**

15 U.S.C. § 1058.................................................................................4, 7

15 U.S.C. § 1065.................................................................................4, 7

15 U.S.C. § 1115 ...................................................................................7

**Rules**

Fed. R. Civ. P. 26(b)(1)...........................................................................1

## LIST OF EXHIBITS

Ex. A       Agreed Order, *In re Subpoena to United States Patent & Trademark Office*, Case No. 1:22-mc-14-AJT/WEF (E.D. Va. July 27, 2022).

Ex. B       Transcript of December 7, 2022, Hearing before The Honorable M. Page Kelley, United States Magistrate Judge.

Ex. C       February 27, 2021, Notice of Acknowledgement under § 15 (Incontestability).

Ex. D       USPTO Docket Report for the '573 Registration.

Ex. E       Declaration of N. Andrew Crain re: Number of Signatures on IEP Technologies, Inc. Trademark Filings at USPTO by Shea (2) & Davis (11).

Note: Courtesy copies of Docs. 71-3, 96-14, and 96-15, which are referenced in this brief, are supplied again to the Court for convenience, since the original filings were filed pursuant to Motions to Seal (Docs. 72 & 97), which were granted by the Court (Doc. 79 & 99).

1.    THIS IS A *DISCOVERY* MOTION AND **NOT** A SUMMARY JUDGMENT MOTION LIKE PLAINTIFF ARGUES, SO DEFENDANTS NEED ONLY SHOW RELEVANCY VERSUS ADMISSIBILITY TO WARRANT THE REQUESTED DISCOVERY

Plaintiff's opposition repeatedly argues the *merits* of its trademark infringement allegations as if this were a summary judgment motion rather than the *discovery* motion it is. Plaintiff has not moved for summary judgment and did not seek to dismiss Defendants' counterclaims upon their entry by the Court. Thus, just because Plaintiff points to some facts it *believes* supports the merits of its case does not make the contradictory facts that Defendants have already obtained in discovery vanish or, more importantly, make unattainable the clearly relevant facts that Defendants still seek in support of their claims and defenses. *See Netherlands Ins. Co. v. HP, Inc.*, No. 18-cv-12136-DLC, 2022 U.S. Dist. LEXIS 233567, at *6 (D. Mass. Dec. 30, 2022) (quoting FED. R. CIV. P. 26(b)(1)) (Under Rule 26, the proper scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.").

Because Counts I and II of Defendants' counterclaims remain in the case, the Federal Rules permit Defendants to obtain the highly relevant and critical discovery sought in this motion, particularly since it is expected to support the cancellation of Plaintiff's '573 Registration. And because the targeted discovery relates to the viability of Plaintiff's '573 Registration, it is clearly proportional to the needs of the case and, thus, should be compelled.

## 1.1.    Whether or Not the USPTO's Investigative Records are Admissible Evidence *at Trial* (They Are) is Immaterial to Defendants' *Discovery* Motion

Another reoccurring attack in Plaintiff's opposition asserts that the USPTO investigative records (Doc. 71-3, 96-14 & 96-15), which support Defendants' assertion that someone other than John Shea signed his Declaration, are not authentic and, thus, will be inadmissible *at trial. See* Doc. 105, §§ II(C) & IV(D). As such—according to Plaintiff's argument—the USPTO's records should not even be considered by the Court in deciding this *discovery* motion.[1]

---

[1] Plaintiff also contends that the USPTO records should not be considered for being produced after the close of discovery. Yet, Plaintiff ignores that Defendants both subpoenaed the USPTO and moved to compel production in the E.D. Va. *before* the close of discovery, resulting in a Court Order and production in compliance therewith. *See* Doc. 96 at 19; Ex. A, Agreed Order.

First, as above, whether the USPTO's investigative records will be admissible evidence *at trial* has no bearing now on whether the information sought by Defendants *in discovery* is or is not relevant to Defendants' counterclaims or defenses. *See Int'l Paper v. Rexam, Inc.*, 2013 U.S. Dist. LEXIS 84615, at *9 (D.N.J. June 17, 2013) ("[W]hether certain documents are relevant must be viewed in light of the allegations of the complaint, not as to evidentiary admissibility.").

Second, while admissibility is irrelevant for purposes of this discovery motion, the USPTO investigative records will easily satisfy the low bar of authenticity *at trial. See Fine v. Guardian Life Ins. Co. of Am.*, 589 F. Supp. 3d 139, 148 (D. Mass. 2022) ("The authentication requirement is not demanding…."); *Goguen v. Textron, Inc.*, 234 F.R.D. 13, 16-17 (D. Mass. 2006) ("The authentication requirement is rarely onerous; in many instances, a single sentence will suffice, indicating that the document is what it appears to be.").

Pursuant to at least FRE 902(a)(1), the USPTO's August 9, 2022 letter is self-authenticating, as it bears the USPTO's seal and is signed by USPTO's Associate Counsel. *See* Doc 71-3. The self-authenticating letter identifies each document produced by the USPTO in response to an Agreed Order entered by the Eastern District of Virginia ordering the USPTO to produce records sought in Defendants' subpoena. *See* Ex. A, Agreed Order, *In re Subpoena to United States Patent & Trademark Office*, No. 1:22-mc-14-AJT/WEF (E.D. Va. July 27, 2022). The USPTO's letter identifies each produced document by name, including two spreadsheet documents (*i.e.,* Export_4648573_SN0815_submission.xlsx and Export_4648573_SN0815_signature.xlsx) that the USPTO states it created as part of its investigation. *See* Doc. 71-3 at 2-3.

Additionally, because the records were produced by the USPTO in compliance with a Court Order and pursuant to a subpoena, they are presumed authentic. *See United States v. Chen*, 952 F. Supp. 2d 321, 331-32 (D. Mass. 2013) (quoting *United States v. Hubbell*, 530 U.S. 27, 36 (2000) ("By producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were *authentic*.") (emphasis added).

2

### 1.2. Contrary to Plaintiff's Misrepresentations, the USPTO's Investigative Records *DO* Disclose the IP Address of the Declaration's Signer, and it is the *Same* IP Address as the Person who Submitted the Filing to the USPTO



The USPTO's letter identifies the spreadsheet "Export_ 4648573_SN0815_signature .xlsx" as "the signature log of the Sections 8 & 15 for serial no. 86249899" (the '573 Registration) that is sourced from USPTO-maintained logs of "signature activity." Doc. 71-3 at 2. An annotated excerpt of the signature spreadsheet showing the "IP address of [the] signer" of the Declaration is depicted in the above-left image for the Declaration signature entered at 2:56 p.m. on November 23, 2020. The USPTO produced this record in compliance with Defendants' subpoena seeking documents specifically related to Mr. Shea's purported signature of the Declaration. *See* Doc. 61-7, Req. No. 1 (emphasis added). Thus, contrary to Plaintiff's contention, the USPTO's record ***does*** contain an "IP address of the signer" of the Declaration.

Additionally, the USPTO's letter identifies a second spreadsheet produced pursuant to the Court Order: "Export_4648573_SN0815_submission.xlsx." Doc. 71-3 at 2. In describing this "submission spreadsheet," the USPTO explains that "the  USPTO  has maintained logs of information for each filing about the type of filing submitted" and that this submission "log is for the Sections 8 & 15 for serial no. 86249899 filed November 23, 2020." *Id.* The submitter (*i.e.,* filer) is identified as corresponding to the Patron ID account of "█████████."[2] Doc. 96-14.

Importantly, the IP Address of the "submitter" (presumably █████) was captured by the USPTO at 4:41 p.m. on November 23, 2020 when the signed Declaration was filed with the

---

[2] Defendants understand that █████ is a █████████ of Whitmyer IP Group—Plaintiff's *prior* counsel. As stated in Defendant's initial brief, and in addition to the other discovery sought, Defendants seek to depose █████ about who signed the Declaration. *See* Doc. 96 at § 3.7.

USPTO. This filing submission to the USPTO at 4:41 p.m. occurred from the *same IP Address* where the Declaration was signed *less than two hours earlier* at 2:56 p.m., as shown in the above-right annotated excerpt from the "submission spreadsheet."

Moreover, in *both* of the spreadsheets, the USPTO states that the IP Address in the signature log report and the submission log report is "*the same.*" See Docs. 96-14 & 96-15 ("This indicates that the person who signed the filing did so from the same IP address as the person who sent the signature request," namely, the paralegal whose account was used to create the submission.).

Since Defendants' expert, Greg Kelley, testified that the IP address (█████████) is in Connecticut (where Plaintiff's former law firm, Whitmyer IP Group, is located) and not Massachusetts (where Plaintiff is located), that means Mr. Shea either traveled from Massachusetts to Connecticut to electronically sign the Declaration, or—as is more likely—that it was forged by someone else. *See* Doc. 96-8 at ¶¶ 17-20. The latter supports Defendants' fraud counterclaims and subjects the '573 Registration to cancellation in violation of 15 U.S.C. § 1058. The latter also denies Plaintiff the benefits of incontestability under 15 U.S.C. § 1065. Clearly, the targeted discovery is both relevant and proportional to the needs of the case and, thus, should be compelled.

## 2. PLAINTIFF MISREPRESENTS THE COURT'S *PROVISIONAL* PROTECTIVE ORDER ON THE FOUR HEAVILY-REDACTED PDF EMAIL DOCUMENTS THAT PLAINTIFF PRODUCED

Plaintiff argues that the Court's Dec. 7 Order forever resolved Plaintiff's selective redactions for privilege in the four PDF documents produced after the hearing, and that for Defendants to argue otherwise violates that Order. Doc. 105 at 7. Plaintiff is wrong. The Court did no such thing.

In response to Plaintiff's insistence that the four PDF documents "prove beyond a shadow of a doubt that John Shea signed his declaration," the Court stated, "I think just as a preliminary matter, let's see what these documents are that plaintiff wants to show us and then I'll allow further briefing on where that is going to take us next." Ex. B, Dec. 7, 2022 Hearing Tr. at 39:9-12. With respect to redactions for privilege, the Court further stated, "I'm inclined to allow the protective order, and we'll get that entered. *But it may not be permanent once we see the documents*, but just for the

4

purpose of moving us forward here." *Id.* at 40:5-8 (emphasis added).

Plaintiff's mischaracterization aside, settled law of this Court and the First Circuit prohibits a party from selectively waiving privilege. *See* Doc. 96 at §3.4. Plaintiff cites no authority stating otherwise. Thus, if Plaintiff is going to rely on emails in defense of Defendants' counterclaims, then Plaintiff cannot selectively both waive and redact privileged content in the emails.[3]

**3.    THAT PLAINTIFF BACKPEDALS FROM ASSERTING THAT THE FOUR PDFS CONTAIN IP ADDRESSES ONLY FURTHER SUPPORTS PRODUCTION IN NATIVE ELECTRONIC FORMAT**

Plaintiff accuses Defendants of misrepresenting Plaintiff's arguments from the December 7 hearing about whether the four PDF documents it produced contain an IP address for the signer of the Declaration. *See* Doc. 105 at 8. In its brief, Plaintiff quotes one sentence from the hearing pertaining to Plaintiff's assertion that the USPTO's investigative records do not "show an IP address for the signer," even though they do, as illustrated above. *See id.; see supra* § 1.2. However, Plaintiff omits ***the very next sentence*** from the hearing where Plaintiff pivots on the exact point about the IP address to contrast how the four PDF email documents it had "prove beyond a shadow of a doubt that John Shea signed his declaration," as the following exchange shows:

> The fact of the matter is, none of this data actually shows the IP address for the signer.  ***And we actually made these documents available***.

Ex. B, Hearing Tr. at 33:7-9 (emphasis added for sentence that Plaintiff conspicuously omits).

Plaintiff was clearly conveying that its four PDF email documents contain information lacking in the USPTO's records, namely "the IP address for the signer" of the Declaration. Yet, now that Defendants' expert, Greg Kelley, has confirmed that the PDFs contain no IP addresses, Plaintiff's backpedaling only further supports production of the native versions of *all responsive emails*, since the native files *will* contain IP addresses and metadata, as required by the Court's ESI Order. *See* Doc. 18 at ¶ 9. Moreover, Plaintiff does not deny applicability of the ESI Order.

---

[3] The same applies to *all* responsive emails that Plaintiff has because there is no difference in Plaintiff selectively producing favorable emails while withholding those deemed unfavorable. That Plaintiff could so easily identify its four favorite emails warrants production of all others, as Defendants have identified (Doc. 96 at § 3.5), and Plaintiff does not dispute.

4.   **PLAINTIFF HAS NO ANSWER TO DEFENDANTS' COMPUTER FORENSICS EXPERT WHO PROVIDES SEVERAL GROUNDS IN HIS TESTIMONY FOR WHY THE FOUR PDFS ARE SUSPECT AND WHY THE NATIVE ELECTRONIC VERSIONS ARE REQUIRED**

Regarding Mr. Kelley, Defendants' computer forensics expert, Plaintiff's strongest criticism is that he failed to consider the authenticity of the USPTO's investigative records. *See* Doc. 105 at 18-19. However, as discussed above, the USPTO's records were produced in compliance with a Court Order are both presumed authentic and satisfy FRE 902. *See supra.* Thus, Mr. Kelley's testimony that the four PDFs are suspect stands unrebutted. As such, production of the natives for not only the four PDF email documents provided by Plaintiff to date but also *all emails* responsive to RFPs 70 and 71 is warranted in compliance with the Court's ESI Order.

5.   **PLAINTIFF'S REPEATED THREATS OF RULE 11 VIOLATIONS AS A LITIGATION TOOL FOR STRATEGIC GAIN ARE INAPPROPRIATE AND SHOULD THEMSELVES BE SANCTIONED**

"A motion for sanctions under Rule 11 is serious." *Seleylo v. Sararo*, 2013 U.S. Dist. LEXIS 20782 at *9 (M.D. Fla. 2013). "A court may impose sanctions on its own initiative when the Rule is invoked for an improper purpose." *Gaiardo v. Ethyl*, 835 F.2d 479, 485 (3d Cir. 1987).

Plaintiff's opposition marks its *second* threat of Rule 11 violations as a strategic litigation tool. The first came after Defendant sought leave to amend its Answer and Counterclaims. Plaintiff threatened Rule 11 sanctions and even filed its Rule 11 motion *as an exhibit* in support of another motion to get its Rule 11 threat before the Court without having to formally move for Rule 11 sanctions. *See* Doc. 29-1. Defendants called Plaintiff's bluff and waived the 21-day safe harbor period, enabling Plaintiff to immediately file its Rule 11 motion if desired. *See* Doc. 30-1. But as expected, Plaintiff folded because its Rule 11 threats were a strategic ploy all along.

Now, Plaintiff again uses Rule 11 as a tool for strategic gain, which is clear from Plaintiff threatening Rule 11 violations in its opposition to this motion instead of formally serving a motion pursuant to Rule 11(c)(2). If Plaintiff has a Rule 11 allegation to assert, then it should bring it. Otherwise, and as things stand, Plaintiff is *again* exposed for using Rule 11 as an improper litigation tool for attempted strategic gain, which is not well received by Defendant and should not be tolerated by the Court. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1123 (7th Cir. 1992)

("[District courts] should not tolerate turning the Rule 11 motion into a method of intimidation."); *Int'l Aero Prods., LLC v. Aero Advanced Paint Tech., Inc.*, 325 F. Supp. 3d 1078, 1088 (C.D. Cal. 2018) ("The Court further admonishes the parties against recklessly requesting Rule 11 sanctions without following any of the procedural rules.").

6.   **PLAINTIFF'S FORGED DECLARATION IS FRAUDULENT AND DOES NOT QUALIFY AS A "DEFICIENT AFFIDAVIT" TO SAVE THE '573 REGISTRATION**

As part of its Rule 11 attack, Plaintiff cites 15 U.S.C. § 1058(c) to contend that the forged Shea Declaration can be easily cured. Doc. 105 at 9. Again, Plaintiff is wrong.[4]

First, by the plain words of the statue itself, a deficient affidavit can only be corrected upon "*notification* of the deficiency" by the USPTO. 15 U.S.C. § 1058(c) & (e) (emphasis added). However, the USPTO issued no such notice of deficiency because Plaintiff concealed the forged Declaration from the USPTO. Had the USPTO known that Plaintiff intentionally filed a forged Declaration, the USPTO would not have accepted it pursuant to trademark law and in accord with its rules. *See* Doc. 96 at § 3.5. Thus, Plaintiff's fraud negates application of 15 U.S.C. § 1058(c).

Second, Plaintiff submitted the forged Declaration to the USPTO to claim incontestability status for the '573 Registration pursuant to 15 U.S.C. § 1065. *See* Doc. 1 at ¶ 24. Doing so constitutes conclusive evidence of registration of the mark, validity of the registration, ownership of the mark, and the registrant's exclusive right to use the mark in commerce. *See* 15 U.S.C. § 1065 & 1115(b). Plaintiff was acutely aware of these benefits of incontestability because Plaintiff waited until *after* the USPTO unknowingly approved the forged Declaration to file suit in this case, which it did only 11 days after gaining incontestability status. *Compare* Ex. C, Feb. 27, 2021, Notice of Acknowledgement under § 15 (Incontestability) *with* Doc. 1, Complaint, filed Mar. 10, 2021.

---

[4] If Plaintiff truly believed this course of action were available, Plaintiff would have long ago sought its refuge. Instead, Plaintiff doubled down, claiming that the Declaration was not forged and is, thus, not deficient, thereby obviating any need for 15 U.S.C. § 1058(c). *See also* Ex. C (stating: "WARNING: Your registration will be canceled if you do not file the documents below [referring to 15 U.S.C. § 1058] during the specified statutory time periods.").

7.   **DEFENDANTS' EMAIL REQUESTS AND SEARCH STRINGS ARE SPECIFICALLY TARGETED TO EMAILS RELEVANT TO COUNTS I AND/OR II OF DEFENDANTS' COUNTERCLAIMS**

Despite Plaintiff's high-level attacks on the search strings in RFPs 70 and 71, each specifically targets emails relevant to Count I (alleging fraud in obtaining and maintaining the '573 Registration) and Count II (alleging nonuse of the mark) of Defendants' Counterclaims, as set out in Defendants' initial brief. *See* Doc. 96-1 at § 3.3. Also, Plaintiff's general complaint about the time frame for RFP 70 and 71 is misplaced, as the January 1, 2014 through March 10, 2021 time frame coincides with the filing of the application that became '573 Registration on April 11, 2014 to the day the USPTO approved the Shea Declaration of Continued Use and Incontestability on March 10, 2021. *See* Ex. D, '573 Reg. Docket at USPTO. This time frame in combination with the targeted search strings is calculated to identify emails relevant to Defendants' counterclaims.

Regarding search string #1 ("trademark AND (sign OR signed OR signature OR signatory"), Plaintiff points to Mr. Shea's claim to signing "a number of them," that is, trademark filings. Doc. 105 at 14. However, of Plaintiff's six total trademark registrations, Mr. Shea has only signed *two* declarations, and one of those is the forged Declaration in dispute. Ex. E, Declaration of N. Andrew Crain at ¶5. Thus, Plaintiff's claim that RFPs 70 and 71 are overly broad based on a grand total of two declarations signed by Mr. Shea is a colossal overreach, especially when Plaintiff was able with pinpoint precision find the four email documents that Plaintiff *wanted* to produce (albeit as PDFs to hide IP addresses, metadata, and other potentially unfavorable content).

Notably, Plaintiff does not deny that it has other relevant emails, as identified in Defendants' opening brief. *See* Doc. 96 at § 3.5. Plaintiff is just refusing to produce them. Thus, production of *all emails* responsive to these targeted search strings should be compelled.

8.   **CONCLUSION**

For these reasons, the Court should compel production in native, electronic format *all relevant emails* responsive to RFP 70 and RFP 71 without redactions for privilege if Plaintiff is going to rely on them in defense of Defendants' counterclaims.

Respectfully submitted this 28th day of February 2023.

/s/ N. Andrew Crain
Michael J. Lambert (BBO No. 632053)
*mlambert@sheehan.com*
**SHEEHAN PHINNEY BASS & GREEN PA**
28 State Street
22nd Floor
Boston, Massachusetts 02109
Telephone: 617.897.5637
Facsimile: 617.439.9363

N. Andrew Crain (*pro hac vice*)
*a.crain@thip.law*
Charles M. Landrum, III (*pro hac vice*)
*c.landrum@thip.law*
**THOMAS HORSTEMEYER LLP**
3200 Windy Hill Rd SE
Suite 1600E
Atlanta, Georgia 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

*Attorneys for Defendants*

9

## <u>LOCAL RULE 7.1(A)(2) CERTIFICATION</u>

  The undersigned hereby certifies that counsel for the parties conferred in a good faith attempt to resolve or narrow the issues presented by this motion but were unable to reach an agreement.

         /s/ N. Andrew Crain
         N. Andrew Crain

         *Attorney for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| IEP TECHNOLOGIES, LLC,<br>                    Plaintiff,<br><br>            v.<br><br>KPM ANALYTICS, INCORPORATED<br>F/K/A STATERA ANALYTICS,<br>INCORPORATED AND KPM<br>ANALYTICS NORTH AMERICA<br>CORPORATION F/K/A PROCESS<br>SENSORS CORPORATION,<br>                    Defendants. | Civil Action File No.:<br>1:21-cv-10417-RWZ |

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2023, the foregoing Reply Brief in Support of Defendants' Renewed Motion to Compel [Leave to File Granted on February 16, 2023 – Doc. 109] was filed using the Court's ECF system, which will automatically send electronic notice of such filing to all attorneys of record.

/s/ N. Andrew Crain
N. Andrew Crain

*Attorney for Defendants*

11