UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IEP Technologies, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>KPM Analytics, Incorporated f/k/a Statera Analytics Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation,<br><br>    Defendants. | Civil Action No. 1:21-cv-10417-RWZ |

**IEP TECHNOLOGIES, LLC'S REPLY TO
DEFENDANTS' RESPONSE TO THE COURT'S MAY 15, 2023 ORDER**

Plaintiff IEP Technologies, LLC ("IEP") submits this Reply to Defendants' KPM Analytics, Inc. and KPM Analytics North America Corporation f/k/a Process Sensors Corporation (collectively, "KPM" or "Defendants") Response to the Court's May 15, 2023, Order (Doc. 129, the "Response").

**I.  KPM Fails to Identify Anything to Compel and Continues to Manufacture Alleged Disputes to Avoid Discovery Ending.**

As forecasted by IEP, KPM continues to manufacture discovery disputes to needlessly delay resolution of this case. KPM has now projected that the agreed upon date of July 7th for IEP's corporate deposition is in doubt. Like the last dispute, KPM refuses to move forward with depositions based on a "dispute" regarding two emails, the unredacted text of which KPM has had since 2022. There is simply no basis for KPM continuing to refuse to take depositions.

KPM's first request is that IEP agree not to use the two emails. KPM's intent is clear. The emails disprove its baseless and salacious counterclaim, so KPM has no choice but to "dispute" the emails else its counterclaim fails. IEP will use the emails to the extent necessary to show John Shea signed his declaration, but they may not be necessary as KPM does not have any

1

admissible contradictory evidence.

Importantly, IEP has already provided KPM the information it seeks regarding the two native emails. Nothing is being withheld. On May 15, 2023, the parties attended a hearing before this Court. The Court's order confirmed that IEP's redactions are proper as the redacted text is privileged. (Doc. 125.) The next day, KPM requested metadata information regarding the native files. IEP responded within a day informing KPM that the metadata and text had already been produced as well as both PDF and TIFF image formats. As recognized by the Sedona Conference, Best Practices guide in 2018, PDF and TIFF are "the most common way to produce ESI for more than a decade." The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 1 (2018) at 172. Not hearing from KPM, IEP assumed this issue was resolved.

On June 5, 2023, nearly three weeks later, KPM claimed that the information already provided was insufficient and provided an example of a screenshot of email headers it wanted. The parties met and conferred, and IEP provided the requested screenshots on June 7, 2023. Nevertheless, KPM continues to manufacture a dispute by now claiming the header screenshots are deficient.

KPM's concerns are easily resolved, as the Court already has the two native emails. The Court can review those native files to resolve KPM's unfounded authenticity concerns. As cited above, TIFF and PDF are the most common format for production of ESI. KPM's argument, in essence, challenges standard production practices with respect to ESI with no factual basis. Indeed, KPM's requests go well-beyond basic principles of ESI production protocols:

> Parties should not demand forms of production, including native files and metadata fields, for which they have no practical use or that do not materially aid in the discovery process. For example, it may be excessive for a party to demand that ESI be produced in native format when the evidence needed to prove the claims and defenses of the parties is found on the face of the documents, and the information

> contained in the text and load Files will allow the requesting party to organize and search the documents.

The Sedona Principles, Third Edition, 19 SEDONA CONF. J. 1 (2018) at 173. KPM already has the unredacted text as well as the metadata and internet headers, as found in the load files, TIFF and PDF formats, privilege logs, and screenshots IEP has already produced. Indeed, most of the information is visible in the unredacted text of the emails such as to/from/subject information. KPM has failed to identify anything missing from IEP's production.

IEP notes that KPM has not even shown the relevance of IP addresses. KPM presumably wants to show that the IP addresses of the US law firm, the Austrian law firm, and the declarant are different – but this is not disputed. IEP has explained numerous times the sequence of events, including correspondence from the Whitmyer IP Group, a US law firm in Connecticut, to an Austrian law firm,[1] and then to the declarant in Massachusetts.

If the Court is inclined to allow KPM to delve further into this fishing expedition, the Court already has the native files. However, KPM should bear the costs for any independent expert appointed by the Court pursuant to KPM's request (Response at 3-4.). The independent Court expert could confirm the header information for KPM while maintaining privilege of the contents.

Finally, KPM's third request is baseless and contrary to the law. KPM has not established the applicability of the crime fraud exception[2]. The evidence shows that John Shea signed his

---

[1] KPM's request for the email from the Austrian law firm is baseless. KPM already has the identical email and thus this request is duplicative. IEP would likewise have to redact and produce as TIFF or PDF the email from the law firm.

[2] KPM has repeatedly asserted "fraud" in this case without any basis. *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877 (8th Cir. 1994) ("Proof that false statements were made to, or that facts were withheld from, the PTO, however, is not enough to show fraud for purposes of canceling a mark because of a party's fraudulent conduct. In order to show that an applicant defrauded the PTO the party seeking to invalidate a mark must show that the applicant intended to mislead the PTO."); *Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336 (Fed. Cir. 1997) (accepting the Trademark Board's distinction between a false statement and a fraudulent statement; while statements made in the declaration may be false, they are not fraudulent unless made with the intent to mislead the PTO); *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986 (9th Cir. 2001) (§ 15 affidavit could not be fraudulent if the

declaration as confirmed by the contemporaneous email stating he completed the signature as requested. Nothing in the email relates to any fraudulent activity or concealment. Further, the unredacted information also reveals no fraudulent intent rendering the crime-fraud exception inapplicable.

KPM's invocation of this exception is also logically flawed. Notably, IEP already waived privilege with respect to the narrow issue of signing of the declaration. (Doc. 125.) And KPM already has the unredacted, previously privileged materials. There is thus no privilege to pierce with respect to the signing of the declaration. KPM's attempt to obtain the full native file was already rejected by this Court and KPM did not challenge the inability to produce a redacted native file.

In summary, KPM has identified nothing to compel.

## II.     Other Discovery Issues/Status Update

KPM's recitation of the deposition scheduling omits material facts. With respect to the scheduling of Mr. Davis's deposition, IEP informed KPM that Mr. Davis had a demanding travel schedule, and IEP suggested KPM move forward on June 13th. KPM refused and IEP subsequently offered July 21st, which KPM rejected. KPM's omission of the July 21st date in its status update is glaring. Regardless, the parties have now agreed to July 26th for this deposition.

Separately, the parties are at an impasse with respect to IEP's renewed notice for KPM's corporate deposition. KPM is refusing to provide a witness for certain topics in a continued deposition. On May 26, 2023, IEP served a renewed deposition notice. On June 1, 2023, counsel for KPM objected on the basis that the deponents had already been deposed. The parties

---

affiant had a good faith belief. Since there was no evidence of affiant's state of mind, summary judgment was proper). *See also Specialized Seating, Inc. v. Greenwich Industries, LP*, 616 F.3d 722, 728 (7th Cir. 2010) ("All a finding of fraud does is knock out the mark's 'incontestable' status, and its registration, under [15 U.S.C.A] § 1115(b)(1). It does not affect the mark's validity, because a trademark need not be registered to be enforceable.").

subsequently met and conferred, and IEP agreed to narrow the topic list to new issues. IEP served an amended notice on June 21st, identifying five narrowed topics[3]. However, KPM has refused to provide a witness on the following topics:

- Topic 4: Defendants' Goods for use in safety, including fire and explosion protection.
- Topic 5: Facts and documents supporting Defendants' counterclaims and legal theories within counterclaim.

Both topics relate to key issues raised in KPM's counterclaims, which was the sole basis for KPM seeking to reopen discovery, and cover discovery from KPM that had to be compelled by the Court (Doc. 93). Reopening the deposition is needed to allow IEP to defend itself against KPM's claims. *See Le v. Diligence, Inc.*, 312 F.R.D. 245, 246 (D. Mass. 2015) ("courts have generally allowed re-opening a deposition where, as here, new information is unearthed only after the initial deposition."). KPM cannot open discovery on its counterclaim but deny IEP reciprocal discovery.

### III.   CONCLUSION

For the foregoing reasons, IEP respectfully requests that the Court deny KPM's requested relief. To the extent the Court needs an independent expert, KPM should bear all costs for such expenditure. Further, IEP requests this Court compel KPM to provide a witness for Topics 4 and 5.

---

[3] IEP also intends to serve an additional Topic 6: Any and all changes made to KPM's websites including www.processsensorsir.com in light of recent testimony. IEP has requested that KPM first supplement a deficient interrogatory response pertaining to the removal of language about fire and explosion hazards from KPM's website during the litigation. Indeed, during a recent deposition of Mr. Scott Nagle, KPM's employee responsible for the website, could not identify who made any such changes.

|  |  |
|---|---|
| Dated: June 29, 2023 | Respectfully submitted,<br><br>*/s/ Stephen F.W. Ball, Jr.*<br>Stephen F.W. Ball, Jr. (BBO # 670092)<br>**HUSCH BLACKWELL LLP**<br>One Beacon Street, Suite 1320<br>Boston, MA 02108<br>Telephone: 617-598-6700<br>Fax: 617-720-5092<br>Stephen.Ball@huschblackwell.com<br><br>Brendan G. McDermott (*pro hac vice*)<br>**HUSCH BLACKWELL LLP**<br>8001 Forsyth Boulevard, Suite 1500<br>St. Louis, MO 63105<br>Telephone: 314-480-1500<br>Fax: 314-480-1505<br>Brendan.McDermott@huschblackwell.com<br><br>*Attorneys for Plaintiff IEP Technologies, LLC* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2023 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Stephen F.W. Ball, Jr.*

HB: 4865-6029-1436