**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

IEP Technologies, LLC,

     *Plaintiff*,

     *v.*

KPM Analytics, Incorporated
f/k/a Statera Analytics Incorporated and
KPM Analytics North America Corporation
f/k/a Process Sensors Corporation,

     *Defendants*.

Civil Action No.
1:21-cv-10417-JEK

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# Contents

I.     Introduction ................................................................................................ 1

II.    Legal Standard for Summary Judgment ........................................................ 2

III.   Summary Judgment Should Be Granted that IEP Lacks Standing to Assert Infringement of the Four-Color Hexagon Design It Does Not Own ....................................... 3

IV.   Summary Judgment Should Be Granted Against Complaint Count I for Federal Trademark Infringement Under 15 U.S.C. § 1114 Because No Reasonable Jury Would Find a Likelihood of Confusion Under the First Circuit's *Pignons* Factors ...................... 5

A.  There Is No Similarity of the Marks … .......................................................... 5

      1.    When the "Total Effect" is Considered ...................................................... 5

      2.    According to the U.S. Patent & Trademark Office .................................... 8

B.  There Is No Similarity of Goods and Services Sold by the Parties ............................ 8

C.  The Parties Do Not Operate in the Same Channels of Trade ...................................... 11

D.  The Parties' Advertising is Not Related to One Another ............................................ 11

E.  The Parties Sell to Highly Sophisticated Classes of Prospective Purchasers ............ 13

F.  There is No Actual Confusion ...................................................................................... 15

G.  Defendants Had No Wrongful Intent in Adopting Their Mark .................................. 16

H.  The Strength of the Plaintiff's Mark Does Not Preclude Summary Judgment ........... 17

V.    Summary Judgment Should Be Granted Against Complaint Count II for Federal Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(a) ...................... 18

VI.   Summary Judgment Should Be Granted Against Complaint Count IV for Common Law Trademark Infringement and Unfair Competition ............................................................ 19

VII.  Summary Judgment Should Be Granted Against Complaint Count V Under M.G.L. c. 93A ................................................................................................................ 19

VIII. Summary Judgment Should Be Granted Against Complaint Count III for Cancellation of KPM's U.S. Trademark Registration No. 5,633,755 ....................................................... 20

IX.   Conclusion ........................................................................................................ 20

**Declarations and Exhibits**

Declaration of Eric Olson (unredacted version filed under seal)

Declaration of N. Andrew Crain, Esq.

Exhibit A.     Certificate of Registration for U.S. Trademark Registration No. 4,648,573

Exhibit B.     Official USPTO Notice of Design Search Code: U.S. Trademark SN: 86249899

Exhibit C.     Demand Letter from IEP's Counsel to KPM, Exhibit D to Complaint

Exhibit D.     Certificate of Registration for U.S. Trademark Registration No. 5,790,247

Exhibit E.     Excerpt of Specimens of Use for U.S. Trademark Registration No. 4,648,573

Exhibit F.     Excerpts of the Oct. 25, 2023 Deposition of John Shea and Exhibits 7, 11–14, 16, and 17 thereto (filed under seal)

Exhibit G.     Excerpts of the Jan. 26, 2022 Deposition of David Grandaw (filed under seal)

Exhibit H.     Excerpts of the Jul. 26, 2023 Deposition of Randy Davis and Exhibit 16 thereto (filed under seal)

Exhibit I.     Excerpts of IEP's Responses to Interrogatories

Exhibit J.     Excerpts of the Jan. 27, 2022 Deposition of John Shea and Exhibit 7 thereto (filed under seal)

Exhibit K.     Certificate of Registration for U.S. Trademark Registration No. 5,445,246

Exhibit L.     Certificate of Registration for U.S. Trademark Registration No. 3,004,020

Exhibit M.     Excerpts of the Feb. 9, 2022 Deposition of Valerie Hoffman

Exhibit N.     Webpage from KPM's Website having Bates Nos. KPM-005096–97

Exhibit O.     KPM Case Study having Bates Nos. IEP004409–12

Exhibit P.     Certificate of Registration for U.S. Trademark Registration No. 5,633,755

Exhibit Q.     Official USPTO Notice of Design Search Code: U.S. Trademark SN: 87471579

Exhibit R.     Office Action for U.S. Trademark Application No. 87471579

Exhibit S.     Excerpt of the Feb. 2022 edition of Wood Bioenergy Magazine having Bates No. IEP004431

## Table of Authorities

**Cases**

*Aktiebolaget Electrolux v. Armatron Int'l, Inc.*,
   999 F.2d 1 (1st Cir. 1993) ........................................................................................ 16

*Amstar Corp. v. Domino's Pizza, Inc.*,
   615 F.2d 252 (5th Cir. 1980) .................................................................................... 16

*Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*,
   718 F.2d 1201 (1st Cir. 1983) ............................................................................... 6, 20

*Bay State Sav. Bank v. Baystate Fin. Servs., LLC*,
   484 F. Supp. 2d 205 (D. Mass. 2007) ...................................................................... 21

*Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.*,
   376 F.3d 8 (1st Cir. 2004) .......................................................................................... 6

*Bear Republic Brewing Co. v. Cent. City Brewing Co.*,
   716 F. Supp. 2d 134 (D. Mass. 2010) ........................................................................ 5

*Black Dog Tavern Co., Inc. v. Hall*,
   823 F. Supp. 48 (D. Mass. 1993) ............................................................................ 21

*Boathouse Grp., Inc. v. TigerLogic Corp.*,
   777 F. Supp. 2d 243 (D. Mass. 2011) .............................................................. 4, 5, 12

*Borinquen Biscuit Corp. v. M.V. Trading Corp.*,
   443 F.3d 112 (1st Cir. 2006) ...................................................................................... 3

*Boston Duck Tours, LP v. Super Duck Tours, LLC*,
   531 F.3d 1 (1st Cir. 2008) ................................................................................... 18, 19

*Butcher Co. v. Bouthot*,
   124 F. Supp. 2d 750 (D. Me. 2001) .................................................................... 16, 17

*CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*,
   888 F. Supp. 192 (D. Me. 1995), *order aff'd*, 97 F.3d 1504 (1st Cir. 1996) ........................... 14

*Copy Cop, Inc. v. Task Printing, Inc.*,
   908 F. Supp. 37 (D. Mass. 1995) ............................................................................... 4

*Cue, Inc. v. GM LLC*,
   No. 1:13-cv-12647-IT, 2016 U.S. Dist. LEXIS 99624 (D. Mass. July 29, 2016) ............... 4, 21

*DeCosta v. CBS*,
   520 F.2d 499 (1st Cir. 1975), *cert. denied*, 423 U.S. 1073 (1976) ......................................... 16

*Diálogo, LLC v. Bauzá*,
   467 F. Supp. 2d 115 (D. Mass. 2006) ...................................................................... 19

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*,
   726 F.3d 62 (2d Cir. 2013) ........................................................................................ 3

*Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*,
 626 F.2d 193 (1st Cir. 1980)....................................................................................... 14

*Hahn v. Sargent*,
 523 F.2d 461 (1st Cir. 1975), *cert. denied*, 425 U.S. 904 (1976) ............................... 3

*Keebler Co. v. Rovira Biscuit Corp.*,
 624 F.2d 366 (1st Cir. 1980)....................................................................................... 16

*Lyons v. Gillette*,
 882 F. Supp. 2d 217 (D. Mass. 2012) ......................................................................... 19

*N. Light Tech., Inc. v. N. Lights Club*,
 97 F. Supp. 2d 96 (D. Mass. 2000) ............................................................................. 20

*Pignons S. A. de Mecanique de Precision v. Polaroid Corp.*,
 657 F.2d 482 (1st Cir. 1981)................................................................................ *passim*

*Pignons S.A. de Mecanique v. Polaroid Corp.*,
 701 F.2d 1 (1st Cir. 1983)............................................................................................. 1

*Pub. Impact, LLC v. Boston Consulting Grp., Inc.*,
 169 F. Supp. 3d 278 (D. Mass. 2016) .................................................................... 13, 14

*Q Div. Records, LLC v. Q Records*,
 No. 99-10828-GAO, 2000 U.S. Dist. LEXIS 1773 (D. Mass. Feb. 11, 2000) .......... 20

*Quabaug Rubber Co. v. Fabiano Shoe Co.*,
 567 F.2d 154 (1st Cir. 1977)................................................................................... 3, 4, 5

*R. G. Barry Corp. v. A. Sandler Co.*,
 406 F.2d 114, 116 (1st Cir. 1969) ................................................................................. 6

*R.J. Toomey Co. v. Toomey*,
 683 F. Supp. 873 (D. Mass. 1988) .............................................................................. 20

*Riverbank, Inc. v. River Bank*,
 625 F. Supp. 2d 65 (D. Mass. 2009) .............................................................................. 6

*Smartling, Inc. v. Skawa Innovation, Ltd.*,
 358 F. Supp. 3d 124 (D. Mass. 2019) .................................................................... 16, 17

*Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*,
 982 F.2d 633 (1st. Cir. 1992) ...................................................................................... 20

*Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*,
 89 F.3d 5 (1st Cir. 1996)............................................................................................... 4

*Stop & Shop Supermarket Co. v. Big Y Foods*,
 943 F. Supp. 120 (D. Mass. 1996) ................................................................................ 6

*Three Blind Mice Designs Co. Inc. v. Cyrk, Inc.*,
 892 F. Supp. 303 (D. Mass. 1995) .............................................................................. 19

*True Fit Corp. v. True & Co.*,
 No. 12-11006-GAO, 2013 U.S. Dist. LEXIS 28866 (D. Mass. Mar. 4, 2013) .......... 12

*Unleashed Doggie Day Care, LLC v. Petco Animal Supplies Stores, Inc.*,
   No. 10-10742-DJC, 2011 U.S. Dist. LEXIS 148786,
   2011 WL 681264 (D. Mass. Dec. 28, 2011) ............................................................................ 21

**Statutes**

15 U.S.C. § 1114
   Remedies; infringement; innocent infringement by printers and publishers .................... *passim*

15 U.S.C. § 1115
   Registration on principal register as evidence of exclusive right to use mark; defenses ........... 4

15 U.S.C. § 1125
   False designations of origin, false descriptions, and dilution forbidden ................... 4, 5, 19, 20

M.G.L. c. 93A
   Regulation of Business Practices for Consumers Protection ................................................... 20

**Rules**

Fed. R. Civ. P. 56. Summary Judgment ............................................................................. 3

**Treatises**

3 R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 82.3
   (3d ed. 1969) ............................................................................................................................ 16

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:53.50
   (4th ed. 2004) ........................................................................................................................... 12

I.        **Introduction**

"While summary disposition is usually inappropriate in complex infringement and unfair competition cases, it is not unheard of." *Pignons S. A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir. 1981). Then-Circuit Judge Breyer observed of the seminal *Polaroid* case: "In that case, we affirmed the district court's decision granting summary judgment for Polaroid on Pignons' various, factually complex, claims—claims that included allegations of trademark infringement, false advertising, and unfair competition." *Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1 (1st Cir. 1983) (*citing id.*, 657 F.2d at 482).

In *Pignons*, the parties used nearly identical marks—ALPA versus ALPHA—for the *same* goods—high-end photography cameras versus consumer photography cameras. 657 F.2d at 484–485. Yet the *Pignons* court recognized that the defendant's use of its house mark—Polaroid—in connection with the allegedly infringing mark (ALPHA) and the sophistication level of the consumers purchasing the plaintiff's goods demonstrated that the plaintiff would be unable to prove trademark infringement. *Id.* at 487, 489. Thus, the First Circuit affirmed the lower court's grant of summary judgment for the defendant. *See id.* at 492.

Just as summary judgment was proper in the First Circuit's seminal *Pignons* case, it is proper here. The parties have used their respective marks in the marketplace *for over six years without a single instance of any consumer actually being confused*. Under the Lanham Act, confusion must not be merely possible; it must be *likely*. While IEP contends that confusion is "likely," it has not happened *once* in over six years of the parties' peaceful coexistence only about ten miles apart in the neighboring Boston suburbs of Westborough and Marlborough. The absence of any actual confusion over the past six years is an excellent indicator that confusion is unlikely.

Upon review of the *Pignons* factors that courts in the First Circuit use for assessing a likelihood of confusion, 657 F.2d at 487, it is clear why there has been none here. The four factors that justified summary judgment in favor of the defendant in *Pignons* are present here. First, as noted above, there has not been a single instance of actual confusion. This factor alone strongly indicates that confusion is highly unlikely. Second, the marks are not similar when considering

their total effect, particularly in light of the fact that KPM's mark includes the distinctive words "PROCESS SENSORS CORPORATION." Third, the parties' respective customers are highly sophisticated purchasers of expensive and complex goods. IEP's products are substantially more expensive and require months of design and on-site coordination with purchasers before installation and activation. Fourth, KPM had no wrongful intent in adopting its mark, choosing its design as part of a corporate rebranding effort in which a graphic design consultant created KPM's mark from scratch, without any prior knowledge of IEP or its mark.

The four remaining factors—factors that weighed in the plaintiff's favor in *Pignons* but were nevertheless outweighed such that summary judgment was granted in favor of the defendant in that case—favor KPM here. Thus, summary judgment is even *more* appropriate here than in *Pignons*. First, the parties' goods and services are not related. IEP sells explosion protection systems; KPM offers goods and services primarily directed towards maintaining product quality. Second, the parties do not operate in the same channels of trade. The closest the parties have come to one another is a single trade show in 2018. Yet not one instance of actual confusion occurred as a result. Third, the parties' advertising is not related. Fourth, the putative strength of IEP's mark does not preclude summary judgment. There is no evidence of consumer recognition of IEP's mark and no evidence of the extent of IEP's advertising or promotion of the mark. As each factor favors KPM, disposition by summary judgment of no trademark infringement is appropriate.

Upon granting summary judgment in KPM's favor on the trademark infringement claims, it follows that summary judgment also must be granted in KPM's favor as to all remaining claims, as each claim depends upon there being a likelihood of confusion. Thus, the Court should enter summary judgment in KPM's favor and against IEP on all of IEP's claims in its Complaint.

## II.    Legal Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). "A factual dispute is material if it 'affects the outcome of the litigation,' and genuine if manifested by 'substantial' evidence 'going beyond the allegations of the complaint.' " *Pignons*,

657 F.2d at 486 (*quoting Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904 (1976)). "In passing on a summary judgment motion, the court must view the record and draw inferences most favorably to the opposing party." *Id.* (*citing Hahn*, 523 F.2d at 464).

"Before a party can succeed in an infringement action, it must demonstrate both that its mark merits protection and that the allegedly infringing use is likely to result in consumer confusion." *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006) (citation omitted). As set forth below, even when viewing the record and drawing inferences most favorable to IEP, IEP cannot show that it owns the particular four-color design, , asserted in the Complaint nor can it show that KPM's mark is likely to result in consumer confusion with the actual trademark registration owned by IEP (which is not the four-color design above).

### III. Summary Judgment Should Be Granted that IEP Lacks Standing to Assert Infringement of the Four-Color Hexagon Design It Does Not Own

"Section 32(1) of the Act, 15 U.S.C. § 1114(1)—at issue here—protects only registered trademarks. It provides a cause of action against any person who 'use[s] in commerce any . . . imitation of a registered mark . . . likely to cause confusion, or to cause mistake, or to deceive.' " *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013) (citing 15 U.S.C. § 1114). "This cause of action is available, however, only to 'registrant[s]' of the trademarks at issue, a term the Act defines as embracing the actual registrant's 'legal representatives, predecessors, successors and assigns.' " *Id.* (citing 15 U.S.C. § 1127). "In other words, only registrants—as statutorily defined—have 'statutory standing' to bring an action under Section 32(1)." *Id.* (citation omitted); *see also Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st Cir. 1977) (holding that only a "registrant" or an "exclusive licensee" has "standing to assert federal statutory trademark infringement under the Lanham Act, 15 U.S.C. § 1114"); *Copy Cop, Inc. v. Task Printing, Inc.*, 908 F. Supp. 37, 43 (D. Mass. 1995) ("To make out a claim of trademark infringement, [a plaintiff] must show … the ownership of a registered mark entitled to trademark protection…") (citation omitted).

Likewise, to prevail on a claim of trademark infringement under 15 U.S.C. § 1125(a), "the

plaintiff must demonstrate that … it owns a valid, legally protectable mark… ." *Boathouse Grp., Inc. v. TigerLogic Corp.*, 777 F. Supp. 2d 243, 248 (D. Mass. 2011) (*citing Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 9 (1st Cir. 1996)). The same is true for common law trademarks, that is, only the owner of a common law trademark can assert infringement of that common law mark. *See Quabaug*, 567 F.2d at 160.

IEP's Trademark Reg. No. 4,648,573 ("the '573 Registration") is a four-segmented open-centered hexagon, , without respect to a particular color. SOF ¶¶ 1–3. Yet in its Complaint, IEP asserts ownership of a particular *four-color* design: . *See* Doc. 1, ¶ 34. However, as IEP stated in its initial demand letter to KPM, that particular *four-color* design, , is owned by Hoerbiger Wien GmbH ("Hoerbiger") and ***not*** IEP: "Hoerbiger is the owner of International Registration No. 1406242 of *the color version* of the Hexagon Design Mark." SOF ¶¶ 7–8 (emphasis added). Indeed, Hoerbiger filed a request for protection of International Registration No. 1406242 to the United States, which was issued by the USPTO as U.S. Trademark Reg. No. 5,790,247 ("the '247 Registration"). SOF ¶ 9. The *four-color design* in IEP's initial demand letter, , is identical to the one in the Complaint and the '247 Registration. SOF ¶ 10.

Registration of a mark on the Principal Register is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce… ." 15 U.S.C. § 1115(a); *Cue, Inc. v. GM LLC*, 2016 U.S. Dist. LEXIS 99624, at *8–9 (D. Mass. July 29, 2016).

Thus, while IEP may claim ownership of *other* color variations, such as an all-white design (SOF ¶ 14), Hoerbiger—and not IEP—is the owner of the particular *four-color* design, , corresponding to the '247 Registration. SOF ¶¶ 8–9. Yet Hoerbiger is not a party to the Complaint, and Hoerbiger's '247 Registration is not identified in any count of the Complaint as being allegedly infringed by KPM. SOF ¶¶ 11–12. Therefore, IEP lacks standing to assert infringement of *Hoerbiger's registered four-color* trademark, , SOF ¶ 13, and any evidence of its use cannot support IEP's claims or any cause of action in the Complaint relating to IEP's '573 Registration for the  mark. *See Quabaug*, 567 F.2d at 160.

Accordingly, as none of these facts can be disputed, KPM moves for summary judgment as to the non-ownership by IEP of the *registered four-color* hexagon design, ⬡, corresponding to Hoerbiger's '247 Registration and, therefore, non-infringement under 15 U.S.C. §§ 1114 and 1125 and as to IEP's claims of common law trademark infringement with respect to that particular *four-color* design. While IEP may have standing to assert infringement of its ⬡ mark as shown in the '573 Registration with respect to *other* color variations, such as the aforementioned all-white design (SOF ¶ 14), summary judgment should also be granted against Counts I, II, IV & V as to any other color variations for the reasons that follow in Section IV *et seq.*

### IV. Summary Judgment Should Be Granted Against Complaint Count I for Federal Trademark Infringement Under 15 U.S.C. § 1114 Because No Reasonable Jury Would Find a Likelihood of Confusion Under the First Circuit's *Pignons* Factors

There is no likelihood of confusion of the marks under the *Pignons* factors. 657 F.2d at 487. In assessing likelihood of confusion, courts in the First Circuit "have commonly looked to the following factors: the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendants' intent in adopting its mark; and the strength of the plaintiff's mark." *Id.*

"The burden is substantial: a plaintiff alleging trademark infringement must show more than a mere 'possibility of confusion' but rather a 'substantial likelihood of confusion.' " *Boathouse*, 777 F. Supp. 2d at 252 (*quoting Bear Republic Brewing v. Cent. City Brewing*, 716 F. Supp. 2d 134, 140 (D. Mass. 2010)). Thus, a plaintiff "must demonstrate a substantial likelihood of confusion to survive summary judgment on the Lanham Act and state common law counts." *Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.*, 376 F.3d 8, 14 (1st Cir. 2004).

Because IEP cannot show *any* likelihood of confusion, summary judgment is appropriate.

### A. There Is No Similarity of the Marks …

#### 1. When the "Total Effect" is Considered

In the First Circuit, mark "similarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features." *Pignons*, 657 F.2d at 487 (citation

and punctuation omitted). The *Pignons* court stressed that "[w]e and other courts have indicated that in certain circumstances otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer." *Id.; Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1205 (1st Cir. 1983) (superseded on other grounds by statute) ("It is well settled that under certain circumstances otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer.")); *Stop & Shop Supermarket Co. v. Big Y Foods*, 943 F. Supp. 120, 124 (D. Mass. 1996) (*quoting Pignons*, 657 F.2d at 487; *citing R. G. Barry Corp. v. A. Sandler Co.*, 406 F.2d 114, 116 (1st Cir. 1969)) (finding conjunction of house mark with contested trademark to be of "exceptional significance"); *see also Riverbank, Inc. v. River Bank*, 625 F. Supp. 2d 65, 71–72 (D. Mass. 2009) (finding similarity "tenuous at best" based on "different visual displays" due to font, spacing, color and shading in one mark versus consistent use of "Inc." in other mark).

Indeed, the *Pignons* court first noted that in "spelling and pronunciation, Polaroid's mark differs from Pignons' only by virtue of the letter 'h'." 657 F.2d at 487. "Marks less closely related in appearance and sound have been held to be confusingly similar." *Id.* (citation omitted). Yet the *Pignons* court found the "total effect" of the defendant's designation of its cameras "minimizes, if it does not eliminate, the possibility that" the marks might be confused:

> On the cameras themselves, and in Polaroid's advertising, the word "Alpha" always appears in close proximity with an equally prominent and uniquely identifying designation, such as "Polaroid SX-70 Land Camera Alpha 1," "Polaroid SX-70 Alpha Executive Land Camera," or "Polaroid SX-70 Land Camera Alpha Sears Special." Further, the packaging of Polaroid and Pignons cameras differs substantially.

*Pignons*, 657 F.2d at 487 (emphasis added). That is, marks that vary even in a small degree are ripe for a finding of dissimilarity on summary judgment if the "total effect" so warrants.

Here, KPM's mark, as used in commerce, is not merely a hexagon. SOF ¶ 42. It has four general components: a hexagon comprised of three shaded gradients having an open circular



center beside the underlined words "PROCESS SENSORS" and the word "CORPORATION" beneath the underline, as shown above. SOF ¶ 43. A colorized version of KPM's mark appears on KPM's web site, as shown right. SOF ¶ 71.



The design element of KPM's mark always appears with the words "Process Sensors Corporation" except in one instance: if a web user navigates to the Process Sensors Corporation website at www.processsensorsir.com, either while having multiple tabs open in a browser or intentionally "pinning" the webpage, such that the tri-color element appears in the webpage "tab," as shown above. SOF ¶ 71. For this to occur, the user already would have had to navigate to the web page. SOF ¶ 72. But even then, KPM's mark still is displayed in the body of the web page with the horizontal line and the words "Process Sensors Corporation," as shown above, and the words "Process Sensors Corporation" appear when the cursor is placed over the icon. SOF ¶ 73. Thus, any customer seeing the three-shaded hexagon, including in this specific instance, also will see the prominent words "PROCESS SENSORS CORPORATION," thus making association with KPM clear.

Similarly, IEP regularly uses its mark, ⬡, with its name, "IEP TECHNOLOGIES." SOF ¶¶ 14–15. IEP also commonly uses its mark, ⬡, in conjunction with the phrase "HOERBIGER Safety Solutions," denoting association with its parent company, as shown below. SOF ¶ 15.




The fact that KPM's mark includes the company name Process Sensors Corporation and that IEP's mark is typically used with its company name "IEP Technologies" and in association with its parent company in stating it is part of "HOERBIGER Safety Solutions" eliminates as a matter of law that any reasonable jury would find similarity supporting a likelihood of confusion.

As in *Pignons*, the marks here are easily distinguished due to respective use of the parties' names therewith. Thus, the "total effect" of the marks results in dissimilarity as a matter of law.

### 2.     According to the U.S. Patent & Trademark Office

KPM's allegedly infringing mark is a registered trademark itself. SOF ¶ 74. That is, the U.S. Patent & Trademark Office (USPTO) issued Trademark Registration No. 5,622,755 (hereinafter "the '755 Registration") to Process Sensors Corporation—now KPM—as shown right. SOF ¶ 79. The USPTO allowed KPM's mark to be registered in two of the three same classes of goods and services as IEP's mark: classes 9 and 37. SOF ¶ 78. The USPTO also assigned the same design search code for KPM's mark as it assigned to IEP's mark, specifically design search code: "26.15.21 - Polygons that are completely or partially shaded." SOF ¶¶ 6, 75.



Yet when the USPTO searched its database to determine whether it could allow KPM's mark (shown right) to be allowed for registration or whether there were instead any prior marks (*e.g.,* IEP's mark) that might conflict with KPM's mark, the USPTO did not reject KPM's mark based on IEP's prior mark. SOF ¶ 76. Instead, the USPTO stated that there were no conflicting marks as a result of its search in stating: "The trademark examining attorney has searched the Office's database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d)." *Id.* As such, the USPTO issued the '755 Registration to KPM for its mark, as shown above, SOF ¶ 79, which the USPTO would not have done had it found KPM's mark to be confusingly similar to IEP's prior '573 Registration. As such, KPM's '755 Registration issued by the USPTO is *prima facie* evidence of the validity of KPM's mark and KPM's exclusive right to use it in commerce. 15 U.S.C. § 1115(a), thereby further demonstrating the dissimilarity of the parties' marks.

### B.     There Is No Similarity of Goods and Services Sold by the Parties

In *Pignons*, the court noted that both parties' goods were "single lens reflex cameras," but still found them to be dissimilar: "Both the products in this case are single lens reflex cameras;

otherwise they have little in common." 657 F.2d at 487. The *Pignons* court then noted differences in the functional characteristics of the cameras, accessories, and pricing. *See id.* at 488. Notably, the goods here are even less similar.

As described in IEP's '573 Registration, IEP's goods are for "safety equipment for suppression, isolation and venting of explosions." SOF ¶ 4. Examples of goods IEP claims to use with its mark include "explosive containment vessels and structural parts therefor; safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives; computer hardware, software, and peripherals for operating explosion safety equipment." *Id.* Still further, the services that IEP claims to offer in conjunction with its mark include "installation and maintenance of safety equipment for detection, prevention, and abatement of explosions" and "new product research and design services in the field of safety equipment and hardware." SOF ¶ 5.

In contrast, KPM does not provide any goods related to "safety equipment for suppression, isolation and venting of explosions" or any related services. SOF ¶ 49. KPM does not offer any goods or services constituting "installation and maintenance of safety equipment for detection, prevention, and abatement of explosions" or "new product research and design services in the field of safety equipment and hardware." SOF ¶ 50. Rather, KPM's line of products sold in conjunction with its Process Sensors Corporation brand are generally directed to moisture and temperature measurement for quality control of manufacturing processes. SOF ¶ 51. Indeed, KPM acquired Process Sensor's Corporation in 2015 in part because Process Sensors Corporation line of process control products complemented other product quality instruments sold by KPM under other brands acquired by KPM. SOF ¶ 53.

KPM's MCT series of products are near-infrared moisture measure sensors and instruments that use light to measure the amount of absorbed infrared light that enables determination of the amount of a constituent (water, fats, etc.) in a product. SOF ¶ 54. KPM's MCT products are primarily used in food-related applications because moisture content is relevant to the weight of the product, which may inform how long a product needs to be dried in an oven, as too much

moisture can cause a product to mold, to age too early, and too little moisture makes a product too dry. SOF ¶ 55. KPM's MCT products do not suppress, isolate or vent explosions. SOF ¶ 56.

KPM also sells noncontact infrared (IR) cameras and pyrometers that measure temperature, including both high *and* low temperatures. SOF ¶ 57. Exemplary applications for these temp sensors—which are made by others and resold by KPM—include monitoring petrochemical furnaces, vessels and tanks as well as measuring the temperature of both mechanical surfaces and liquid surface temperatures, such as the temperature of the sea's surface. SOF ¶ 58. KPM's infrared pyrometers output a signal corresponding to a detected temperature. SOF ¶ 59. KPM does not sell controlling electronics that receive the output signals from the IR pyrometers, meaning that purchasers must themselves purchase their own controllers to accomplish whatever application they seek to control with the infrared pyrometer purchased from KPM. SOF ¶ 62.

KPM is aware that a small number of purchasers of its IR pyrometers and thermal imaging cameras have used the devices to detect high temperatures of equipment parts, which the purchasers then used with separately purchased control electronics to take a predetermined action, such as preventing equipment from overheating and/or causing a fire to ignite. SOF ¶ 63. KPM is aware that the IR pyrometers can be used by purchasers for fire prevention, but only after separately acquiring control electronics to use with the pyrometer. SOF ¶ 64. KPM even has published a case study explaining how these products can prevent motor ball bearings in a sawmill from overheating and causing a fire. SOF ¶ 65. However, none of the IR temperature pyrometers and thermal imaging cameras that KPM sells—all of which it buys from manufacturers and resells—suppress, isolate or vent explosions, as required in IEP's '573 Registration. SOF ¶ 66.

IEP █████████████████████████████████████████████████████

███████████████████████████████.[1] SOF ¶ 22. In addition, IEP's systems

████████████████████████████████████████████████████████████████

█████████████████. SOF ¶ 24. Indeed, in its quotes to customers, IEP recites that █████

████████████████████████████████████████████████████████████████

---

[1] Note: Yellow highlighted text herein corresponds to redacted text in the publicly filed version.

██████████████████████████████████

████████████████████ SOF ¶ 25. IEP even touts in Internet advertising that NFPA compliance offers a "competitive advantage." SOF ¶ 26. Conversely, KPM's products, including specifically its IR pyrometers and thermal cameras, are not NFPA or ATEX compliant and do not need to be for the applications in which KPM sells them. SOF ¶ 67. As such, IEP's and KPM's products are dissimilar for this additional reason.

Moreover, KPM is not aware of any goods or services that it offers in conjunction with KPM's marks that are a substitute for or competitive with any goods or services of IEP. SOF ¶¶ 80–81. Therefore, KPM is _not_ a direct competitor to IEP. _Id._ As such, ████████ ████████████████████. SOF ¶ 83. For this added reason, KPM's products are dissimilar from IEP's.

### C.      The Parties Do Not Operate in the Same Channels of Trade[2]

IEP claims to sell its products under its mark "directly to its customers (_e.g._, end users, OEMs) or through distributors or process system integrators." SOF ¶ 27. KPM sells its products under its mark directly to customers and through its own and separate distributor network. SOF ¶ 52. ████████████████████████. SOF ¶ 85. As such, IEP and KPM do not operate in the same channels of trade.

### D.      The Parties' Advertising is Not Related to One Another

IEP claims that because both parties have an internet and social media presence upon which information is available about their respective products that the parties advertising is the same. However, "in the Twenty-First Century, the Internet has become the venue for the advertising and sale of all manner of goods and services. That the goods or services of the parties are both found on the Internet proves little, if anything, about the likelihood that consumers will confuse similar marks used on such goods or services." _True Fit Corp. v. True & Co._, No. 12-11006-GAO, 2013

---

[2] While KPM treats this factor independently, "[s]imilarities of advertising, channels of trade and prospective customers are generally considered together." _Boathouse_, 777 F. Supp. 2d at 253 (_citing Pignons_, 657 F.2d at 488).

U.S. Dist. LEXIS 28866, at *14–15 (D. Mass. Mar. 4, 2013) (*quoting* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:53.50 (4th ed. 2004)).

As for other advertising, IEP advertises its products at trade shows, exhibitions, in magazines, periodicals, trade journals press releases and digitally on social media and its web site. SOF ¶ 33. Regarding trade shows, IEP identifies only one that KPM also attended and displayed the allegedly infringing mark, specifically the Bulk and Powder Solids trade show in 2018. SOF ¶¶ 34 & 69. Setting aside that IEP and KPM has attended no other of the same trade shows since KPM adopted the allegedly infringing mark in 2018, this advertising channel is tenuous because each party regularly attends many trade shows that are not attended by the other party. Specifically, IEP attends or has attended the following trade shows that KPM has never attended: █████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████. SOF ¶¶ 35 & 70. Likewise, IEP admits that it does not attend the following trade shows regularly attended by KPM: █████████████████████. SOF ¶¶ 36 & 68. Thus, despite one single trade show—which did not result in any actual confusion, as discussed below, and which KPM has not attended since 2018—IEP and KPM do not attend the same trade shows.

Regarding advertising in magazines, IEP points to Wood Bioenergy magazine, citing an index of companies. SOF ¶ 84. Setting aside that the list does not even appear to be an advertisement but instead more of a list of companies, the indisputable fact is that neither party's mark is depicted in the magazine. *Id.* Specifically, only IEP's corporate name "IEP TECHNOLOGIES-HOERBIGER" is recited. *Id.*, at p.36. Similarly, the corporate name, "Process Sensors Corporation," is recited in the list *without* the graphic-design elements in the '573 Registration. *Id.*, at p.37. Even if the corporate name recitals on different pages of the Wood Bioenergy magazine were an "advertisement" rather than what they appear to be—an index list of "Machinery Manufacturers/Suppliers"—that does not obviate the reality that no reasonable jury would find this list to constitute a relationship in the advertising of the disputed marks. Therefore,

the parties' advertising is dissimilar as a matter of law.

### E.      The Parties Sell to Highly Sophisticated Classes of Prospective Purchasers

"Those most likely to buy an expensive, sophisticated [product] are also least likely to be confused by any similarities in [the parties'] marks." *Pignons*, 657 F.2d at 489. "Courts have found less likelihood of confusion where goods are expensive and purchased after careful consideration." *Id.* Accordingly, "[s]ophisticated consumers may be expected to exercise greater care." *Id.* Moreover, "[t]he likelihood of confusion may be substantially reduced when the relevant buyer class is composed of sophisticated professional or commercial purchasers of goods and services." *Pub. Impact, LLC v. Boston Consulting Grp., Inc.*, 169 F. Supp. 3d 278, 294 (D. Mass. 2016) (*citing CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 888 F. Supp. 192 (D. Me. 1995), *order aff'd*, 97 F.3d 1504 (1st Cir. 1996) (informed professional buyers "are less likely to be confused as to the source or origin of a product than ordinary consumers.")).

According to IEP, "Persons involved in making purchasing decisions for Plaintiff's goods and services include purchase agents, process engineers, project engineers, plant managers, and/or system integrators." SOF ¶ 28. Based on the undisputed fact that *each* of these types of persons is a professional, commercial purchaser, none is likely to be confused as to the source of a product purchased. *See Pub. Impact,* 169 F. Supp. 3d at 294. Plus, no evidence establishes otherwise.

The pricing of IEP's and KPM's products also make confusion unlikely. IEP's explosion protection systems and related services are very expensive. SOF ¶ 18. IEP sells its explosion detection and mitigation products and systems for ████████████████, with produced quotes of ████████████████████. SOF ¶ 19. According to IEP's Senior VP of Sales, purchases of IEP's explosion protection systems and services generally are considered to be ███████████████ which typically require multiple levels of customer approval. SOF ¶¶ 20 & 21. As for KPM, the average price of its IR pyrometers, for example, is ██████████. SOF ¶ 60.

Due to the high cost of the parties' goods, as a matter of law, purchasers will execute greater care in selecting it for acquisition. *See Fisher Stoves, Inc. v. All Nighter Stove Works, Inc*., 626 F.2d

193, 194 (1st Cir. 1980) ("The greater the value of an article the more careful the typical consumer can be expected to be[.]") (citation omitted). Plus, IEP's explosion protection systems are sold ███████████████████████ ███████████████████████ ███████████████ (see right), thus further reducing any prospect that a sophisticated purchaser like those listed above could be confused. SOF ¶ 23. Also, the sophistication level of those listed above is further understood to be high in view of the undisputed fact that IEP's products ███████████████████████ ███████████████████ SOF ¶ 24.



That purchasers of IEP's products are sophisticated is also supported by IEP's admission that ███████████████████████, SOF ¶ 16, but are instead ███████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████. SOF ¶ 29. Thus, IEP's explosion protection systems and services are ███████████████████████. SOF ¶ 17. ███████ ████████████████████████████████████████████ ███████████ SOF ¶ 29. Then, use of IEP's explosion protection detection and mitigation systems ███████████████████████████████████ ███████████████████. SOF ¶ 30. And then, before some of IEP's explosion detection and mitigation products can be used for the first time, IEP states ███████████████████ ████████████████████████████████████████████ ████████ *Id.* Likewise, in its price quotations, IEP ████████████ ███████████████████ SOF ¶ 31. In another price quote, IEP specifies that ██████████████████████████████████████████████

████████████████████████████

████████████████████████████

████████████ SOF ¶ 32.

It defies logic and common sense to suggest that IEP's customers are so unsophisticated that they could possibly be confused after such prolonged and repeated interaction with IEP personnel. The same also applies to KPM's less expensive IR pyrometers and thermal cameras, as customers do not buy them on impulse either, SOF ¶ 61, but instead after selection for pairing with separately purchased control electronics to solve a specific problem, such as for preventing component overheating or for maintaining product quality control. SOF ¶ 51, 61 & 62.

## F.    There is No Actual Confusion

"Evidence of actual confusion is not invariably necessary to prove likelihood of confusion; on the other hand, 'absent evidence of actual confusion, when the marks have been in the same market, side by side, for a substantial period of time, there is a strong presumption that there is little likelihood of confusion.' " *Pignons*, 657 F.2d at 490 (quoting 3 R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 82.3(a) at 849 (3d ed. 1969); *citing Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d 366, 377 (1st Cir. 1980); *DeCosta v. CBS*, 520 F.2d 499, 514 (1st Cir. 1975), *cert. denied*, 423 U.S. 1073 (1976)).

In *Pignons*, the court observed that "Polaroid introduced its SX-70 Alpha cameras in the fall of 1976 and the motion for summary judgment was not argued and decided until the fall of 1980." *Pignons*, 657 F.2d at 490. The court placed great weight on the prolonged absence of actual confusion, concluding:

> *Four years* is a substantial amount of time, *compare Keebler Co.* [*v. Rovira Biscuit Corp.*], 624 F.2d 366[, ] 677 [(1st Cir. 1980)] (three and one-half years without proof of actual consumer confusion), and Pignons' inability to bring forth more than this single, feeble and indirect  example of possible consumer confusion strongly indicates that Polaroid's use of the mark "Alpha" has not created a likelihood of confusion, *compare Amstar Corp.* [*v. Domino's Pizza, Inc.*], 615 F.2d [252,] 263 [(5th Cir. 1980)] (finding only three instances of consumer confusion after 15 years of sales raises a presumption against likelihood of confusion).

*Id.* at 490–91 (emphasis and internal citation added).

> Applying this principle, the First Circuit has found that little or no evidence of actual confusion over periods of three and one-half years, *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 377 (1st Cir. 1980), four years, *Pignons*, 657 F.2d at 490–91, and six years, [*Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1, 4 (1st Cir. 1993)], strongly indicate against a likelihood of confusion.

*Smartling, Inc. v. Skawa Innovation, Ltd.*, 358 F. Supp. 3d 124, 141 (D. Mass. 2019) (*quoting Butcher Co. v. Bouthot*, 124 F. Supp. 2d 750, 758 (D. Me. 2001) (alteration in original).

Here, KPM introduced KPM's mark in 2018. SOF ¶¶ 42, 77. In the subsequent **six years** of coexistence between IEP's mark and KPM's mark, there is not a single documented instance of actual confusion. SOF ¶ 82. The absence of any actual confusion in this case is two years *longer* than the four-year period that the *Pignons* court described as "a substantial amount of time." *Pignons*, 657 F.2d at 490; *see also Aktiebolaget Electrolux*, 999 F.2d at 4 (finding the absence of actual confusion over a six year period—"twice the amount of time that we previously have found convincing" in *Pignons*—despite Weed Eaters and Leaf Eaters having coexisted in the market). As such, this factor weighs *heavily* in KPM's favor as a "strong indicat[ion] against a likelihood of confusion." *Smartling*, 358 F. Supp. 3d at 141 (*citing Butcher*, 124 F. Supp. 2d at 758).

### G.    Defendants Had No Wrongful Intent in Adopting Their Mark

Conclusory allegations of willfulness are insufficient to survive summary judgment:

> In the instant case, despite their general, conclusory allegations of "willfulness," plaintiffs have not adduced a scintilla of evidence of palming off, intent to deceive, or any effort whatsoever by Polaroid or Sears to benefit from Pignons' reputation through their use of the term Alpha. As discussed *supra*, defendants' packaging, advertising and promotional materials flatly belie any such notion.

*Pignons*, 657 F.2d at 491. Here, KPM's mark includes the words "PROCESS SENSORS CORPORATION," clearly indicating no intent to "palm off" any goodwill of IEP. SOF ¶ 71.

Additionally, when KPM sought to redesign the Process Sensors Corporation's mark in 2017 from a prior design after having acquired Process Sensors Corporation in 2015 (SOF ¶¶ 37–38), KPM sought the services of a graphic designer. SOF ¶¶ 39–40. In creating its new mark, KPM sought to incorporate suggestive features related to its products into its new trademark. SOF ¶ 44.

16

Specifically, the hexagon design portion of KPM's mark, when depicted in color, was specifically designed to incorporate the colors red, green and blue as the primary colors of light, since KPM's MCT analyzers use light to detect the levels of moisture present in analyzed materials via a filter wheel design. SOF ¶ 44. To connect the new logo design with Process Sensors Corporation's prior logo, which was all red, the graphics designer elected to color both the horizontal red line and the word "CORPORATION" in red text, leaving the words "PROCESS SENSORS" above the line in a different color, thus emphasizing that Process Sensors Corporations' products are process sensors. SOF ¶ 45.

Neither KPM nor the graphics designer KPM engaged had any knowledge of IEP or IEP's mark at the time of design and creation of what became KPM's mark in 2018. SOF ¶¶ 46–48. The graphics designer created several designs for KPM's mark (SOF ¶ 41) and did not learn of IEP's mark until after this case was filed. SOF ¶ 47. And when presented with IEP's mark in her deposition and asked by IEP's counsel what she thought about IEP's mark in comparison to KPM's mark, in addition to testifying that she was not aware of IEP's logo until this lawsuit, she testified: "I didn't think they were similar at all, and I was shocked that they were in a lawsuit." SOF ¶ 86.

Because the undisputed facts show that neither KPM nor the graphics designer had any knowledge of IEP's mark at the time that KPM created its mark that is at issue in this case, there is no genuine dispute of material fact that KPM did not have any wrongful intent in adopting KPM's mark. As such, this likelihood of confusion factor also favors KPM.

### H.  The Strength of the Plaintiff's Mark Does Not Preclude Summary Judgment

The final factor to be considered is the strength of the Plaintiff's mark, which is determined by "the length of time the mark has been used, the trademark holder's renown in the industry, the potency of the mark in the product field (as measured by the number of similar registered marks), and the trademark holder's efforts to promote and protect the mark." *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 23 (1st Cir. 2008) (citations omitted). The *Pignons* court had evidence of 50 years of trademark use, a contention that the plaintiff was a leader in its industry, and evidence of third-party recognition of its mark. 657 F.2d at 491 ("Magazine comments speak

of the mark 'Alpa' as a 'prestigious name' that has come to connote quality…"). As a result, the *Pignons* court concluded, "For summary judgment purposes, we think Pignons' mark 'Alpa' is to be viewed as a relatively strong mark." *Id.*

However, that conclusion still did not thwart summary judgment in the defendant's favor: "Notwithstanding our assumption in this regard, however, Pignons cannot prevail." *Id.* The *Pignons* court went on to state that, even assuming broad protection, the plaintiff could not prevail:

> "Strong" marks are accorded broader protection against infringement than are "weak" marks. That "Alpa" is a relatively strong mark *reduces, but does not relieve* Pignons of the burden of substantiating its trademark infringement claim by sufficient evidence of a likelihood of confusion. On the showing that has been made, Pignons has failed to demonstrate an ability to meet that burden.

*Id.* (emphasis added; internal citation omitted). Here, there is <u>no</u> corresponding evidence produced by IEP that even warrants a presumption that IEP's mark is strong in the first place. IEP's mark had only been in use for just four years at the time KPM's registration issued. IEP has produced no evidence of the extent of its advertising or third-party recognition of IEP's mark.

Even if the Court were to presume IEP's mark is strong, summary judgment still must be granted when all of the other *Pignons* factors weigh strongly against a likelihood of confusion:

> Taking everything in Pignons' favor, still none of the factors relevant to a finding of likelihood of confusion supports Pignons' position. Indeed, it is difficult to discern any likelihood that Polaroid's use of the mark "Alpha" has caused or would cause confusion among potential consumers.

*Pignons*, 657 F.2d at 492. Regardless of the strength of IEP's mark, there is no likelihood of confusion when weighing the factors here. Summary judgment should be granted in KPM's favor.

## V.    Summary Judgment Should Be Granted Against Complaint Count II for Federal Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(a)

"[C]laimed violations of 15 U.S.C. § 1114 (Federal trademark infringement - Count I) [and] violation of 15 U.S.C. § 1125 (Unfair competition - Count II) … are subject to the same legal standard, namely, 'likelihood of confusion.' " *Lyons v. Gillette*, 882 F. Supp. 2d 217, 226 n.3 (D. Mass. 2012) (*citing Boston Duck Tours*, 531 F.3d at 12 (holding that confusion is an element of a Section 1114 claim); *Three Blind Mice Designs Co. Inc. v. Cyrk, Inc.*, 892 F. Supp. 303, 310

(D. Mass. 1995) (Saris, J.) (determining that confusion is an element of a Section 1125 claim); *Diálogo, LLC v. Bauzá*, 467 F. Supp. 2d 115, 125 n.9 (D. Mass. 2006) (Ponsor, J.) (noting that the common law claim is substantially similar to Federal trademark infringement claim); *Astra Pharm.*, 718 F.2d at 1209 ("[P]laintiff must support a charge of unfair competition with a showing of likelihood of confusion.")).

Thus, while a claim "under § 1125(a) is for unfair competition, not trademark infringement[,] [f]unctionally, in cases such as this, the difference is vanishingly small." *Q Div. Records, LLC v. Q Records*, No. 99-10828-GAO, 2000 U.S. Dist. LEXIS 1773, at *6 n.7 (D. Mass. Feb. 11, 2000). Accordingly, "where the basic allegation is trademark infringement, the evaluation of the Plaintiff's 15 U.S.C. § 1114(1) claim suffices to establish likelihood of success on this claim." *N. Light Tech., Inc. v. N. Lights Club*, 97 F. Supp. 2d 96, 120 (D. Mass. 2000) (*quoting Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 639–40 (1st. Cir. 1992) ("The key question … under [15 U.S.C. § 1125(a)] is whether material differences likely to confuse consumers exist… ."). As there is no likelihood of confusion that consumers will be confused with respect to IEP's claim of registered trademark infringement, summary judgment also must be granted against IEP's claim under Section 1125(a).

## VI.    Summary Judgment Should Be Granted Against Complaint Count IV for Common Law Trademark Infringement and Unfair Competition

Count IV of IEP's Complaint is for common law trademark infringement and unfair competition. *See* Doc. 1, p.19. "Because 'likelihood of confusion is … an essential element of a claim of trademark infringement, whether asserted under Massachusetts law or federal law,' evaluation of the Plaintiff's 15 U.S.C. § 1114(1) claim suffices to establish likelihood of success on this claim." *N. Light Tech.*, 97 F. Supp. 2d at 120 (*quoting Pignons*, 657 F.2d 482 at 486–87).

## VII.   Summary Judgment Should Be Granted Against Complaint Count V Under M.G.L. c. 93A

"As with [15 U.S.C. § 1125(a)], the essential element of the action under the Massachusetts Consumer Protection Act, Mass.Gen.Laws ch. 93A, §§ 2, 11, is that defendant's use of a mark caused confusion among customers as to the source of the plaintiff's product." *N. Light Tech.*,

19

97 F. Supp. 2d at 120 (*citing R.J. Toomey Co. v. Toomey*, 683 F. Supp. 873, 879 (D. Mass. 1988)). "[I]n the absence of likelihood of confusion and the absence of bad faith, Defendant is also entitled to summary judgment on Plaintiff's Chapter 93A claim (Count V), which is based on the same allegations as its unfair competition and trademark infringement claims." *Cue*, 2016 U.S. Dist. LEXIS 99624, at *34–35 (*citing Unleashed Doggie Day Care, LLC v. Petco Animal Supplies Stores, Inc.*, No. 10-10742-DJC, 2011 U.S. Dist. LEXIS 148786, 2011 WL 6812642, at *16 (D. Mass. Dec. 28, 2011) ("[Plaintiff's] Mass. Gen. L. c. 93A claim is based on the same allegations as those under the Lanham Act… . However … , [plaintiff] has failed to show … that [defendant] infringed on [its] protected mark. Thus it cannot be said that [defendant] has engaged in any actionable conduct under Mass. Gen. L. c. 93A based on those same allegations."); *Bay State Sav. Bank v. Baystate Fin. Servs., LLC*, 484 F. Supp. 2d 205, 219 (D. Mass. 2007) ("Because defendant had the legal right to use the 'Baystate Financial' mark to market its insurance and investment services and because there is no evidence that the defendant acted improperly or in bad faith, plaintiff cannot establish that the defendant's acts were 'immoral, unethical, oppressive, or unscrupulous,' or otherwise violated Chapter 93A."); *Black Dog Tavern Co. v. Hall*, 823 F. Supp. 48, 60 (D. Mass. 1993)). Thus, summary judgment should be granted to KPM on Count V of IEP's Complaint. *See* Doc. 1, p.20.

### VIII.   Summary Judgment Should Be Granted Against Complaint Count III for Cancellation of KPM's U.S. Trademark Registration No. 5,633,755

"With no surviving trademark infringement claim, Defendant is also entitled to summary judgment on Plaintiff's claim for cancellation of the registration of Defendant's … mark … ." *Cue*, 2016 U.S. Dist. LEXIS 99624, at *34. Thus, for the reasons above that dispose of IEP's trademark infringement claims, the Court also should enter summary judgment against Count III of IEP's Complaint seeking cancellation of KPM's Trademark Registration No. 5,633,755. *See* Doc. 1, p.8.

### IX.   Conclusion

For the foregoing reasons, the Court should enter summary judgment in KPM's favor and against IEP as to all claims asserted in the Complaint and addressed herein.

Respectfully submitted this 6th day of June, 2024.

/s/ N. Andrew Crain
Michael J. Lambert (BBO No. 632053)
*mlambert@sheehan.com*

**SHEEHAN PHINNEY BASS & GREEN PA**
28 State Street, 22nd Floor
Boston, Massachusetts 02109
Telephone: 617.897.5637
Facsimile: 617.439.9363

N. Andrew Crain (*pro hac vice*)
a.crain@thip.law
Charles M. Landrum III (*pro hac vice*)
c.landrum@thip.law
Paul Joseph Spina IV (*pro hac vice*)
p.spina@thip.law
Ivona Relja (*pro hac vice*)
i.relja@thip.law

**THOMAS | HORSTEMEYER LLP**
3200 Windy Hill Rd SE Suite 1600E
Atlanta, Georgia 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IEP Technologies, LLC, | |
| *Plaintiff*, | |
| *v.* | Civil Action No. |
| | 1:21-cv-10417-JEK |
| KPM Analytics, Incorporated | |
| f/k/a Statera Analytics Incorporated and | |
| KPM Analytics North America Corporation | |
| f/k/a Process Sensors Corporation, | |
| *Defendants*. | |

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 6, 2024.

/s/ N. Andrew Crain
N. Andrew Crain

*Attorney for Defendants*