UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IEP Technologies, LLC,<br><br>        *Plaintiff*,<br><br>        *v.*<br><br>KPM Analytics, Incorporated<br>f/k/a Statera Analytics Incorporated and<br>KPM Analytics North America Corporation<br>f/k/a Process Sensors Corporation,<br><br>        *Defendants*. | Civil Action No.<br>1:21-cv-10417-JEK |

**DECLARATION OF ERIC OLSON**
**(UNREDACTED VERSION FILED UNDER SEAL)**\*

---

\* Note: Yellow highlighted text herein corresponds to redacted text in the publicly filed version.

1

I, Eric Olson, being of lawful age and capacity and familiar with the matters set forth herein, declare as follows based on my personal knowledge:

1. I make this declaration on behalf of Defendants KPM Analytics, Incorporated f/k/a Statera Analytics Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation (collectively, "KPM") in the above-captioned matter.

2. I am the Vice President of Engineering and Quality at KPM.

3. KPM—and its predecessor-in-interest—has used the PROCESS SENSORS CORPORATION mark since at least as early as 1996.

4. KPM and its predecessor-in-interest has used the following design mark since at least as early as 1998.



5. In 2017, KPM began a process of selecting a new design mark to use with the PROCESS SENSORS CORPORATION mark.

6. KPM retained Valerie Hoffman of Hoffman Design to create a new logo.

7. Ms. Hoffman created several designs for KPM, including KPM's mark.

8. Of the designs created and proposed by Ms. Hoffman, KPM selected the following as its new trademark ("KPM's mark"):



9. KPM's mark shown in the preceding paragraph has four general components, including: a hexagon comprised of three shaded gradients having an open circular center beside the underlined words "PROCESS SENSORS" and the word "CORPORATION" beneath the underline.

10. In creating its new mark, KPM sought to incorporate suggestive features related to its products into its new trademark. Specifically, the hexagon design portion of KPM's mark, when

depicted in color, was specifically designed to incorporate the colors red, green and blue as the primary colors of light, since KPM's MCT analyzers use light to detect the levels of moisture present in analyzed materials via a filter wheel design.

11. KPM had no knowledge of IEP's mark when it adopted its KPM's mark.

12. KPM does not offer any goods or services constituting safety equipment for suppression, isolation and venting of explosions or any related services.

13. KPM does not offer any goods or services constituting installation and maintenance of safety equipment for detection, prevention, and abatement of explosions or new product research and design services in the field of safety equipment and hardware.

14. KPM's line of products sold in conjunction with its Process Sensors Corporation brand are generally directed to moisture and temperature measurement for quality control of manufacturing processes.

15. KPM sells its products under its mark directly to customers and through its own and separate distributor network.

16. KPM acquired Process Sensor's Corporation in 2015 in part because Process Sensors Corporation line of process control products complemented other product quality instruments sold by KPM under other brands acquired by KPM.

17. KPM's MCT series of products are near (NIR) infrared moisture measure sensors and instruments that use light to measure the amount of absorbed infrared light that enables determination of the amount of a constituent (water, fats, etc.) in a product.

18. KPM's MCT products are primarily used in food-related applications because moisture content is relevant to the weight of the product, which may inform how long a product needs to be dried in an oven, as too much moisture can cause a product to mold, to age too early and too little moisture makes a product too dry.

19. KPM's MCT series of products do not suppress, isolate or vent explosions.

20. KPM also sells noncontact infrared (IR) cameras and pyrometers that measure temperature, both high and low temperatures.

21. Exemplary applications for these devices, which are made by others and resold by KPM, include monitoring petrochemical furnaces, vessels and tanks as well as measuring the temperature of both mechanical surfaces and liquid surface temperatures, such as the temperature of the sea's surface.

22. KPM's infrared pyrometers output a signal corresponding to a detected temperature (*e.g.*, whether the temperature is low or high).

23. The average price of KPM's infrared pyrometers is ▮▮▮▮▮▮▮.

24. Customers do not purchase KPM's IR pyrometers and thermal cameras on impulse but only after specific selection in attempt to solve a particular problem, such as component overheating.

25. KPM does not sell controlling electronics that receive the output signals from the IR pyrometers, meaning that purchasers must themselves purchase their own controllers to accomplish whatever application they seek to control with the infrared pyrometer purchased from KPM.

26. KPM is aware that a small number of purchasers of its IR pyrometers and thermal imaging cameras have used the devices to detect high temperatures on equipment parts, which the purchasers then used to take action to keep the equipment from overheating and/or causing a fire to ignite.

27. KPM is aware that the IR pyrometers can be used by purchasers for fire prevention, but only after separately acquiring control electronics to use with the pyrometer.

28. KPM has published a case study explaining how these products can prevent motor ball bearings in a sawmill from overheating and causing a fire.

29. None of the IR temperature pyrometers and thermal imaging cameras that KPM sells—all of which it buys from manufacturers and resells—suppress, isolate or vent explosions.

30. KPM's products, including specifically its IR pyrometers and thermal cameras, are *not* NFPA or ATEX compliant and do not need to be for the applications in which KPM sells them.

31. KPM regularly attends the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ trade shows.

32. KPM also attended the 2018 Bulk and Powder Solids trade show.

33. KPM has never attended any *other* trade shows also attended by IEP.

34. The design element of KPM's mark always appears with the words "Process Sensors Corporation" except in one instance: if a web user navigates to the Process Sensors Corporation website at https://www.processsensorsir.com, either while having multiple tabs open in a browser or intentionally "pinning" the webpage, such that the tri-color element appears in the webpage "tab," as shown right.



35. For this to occur, the web user already would have had to navigate to the web page.

36. In each instance, in the body of the web page, KPM's mark still is displayed with the horizontal line and the words "Process Sensors Corporation," as shown above, and the words "Process Sensors Corporation" appear when the cursor is placed over the icon.

37. KPM is not aware of any goods or services that it offers in conjunction with KPM's marks that are a substitute for any goods or services of IEP.

38. KPM is not aware of any goods or services that it offers in conjunction with KPM's marks that are competitive with any goods or services of IEP.

39. There have been no instances of actual confusion between KPM's mark and IEP or IEP's mark.

40. KPM has not lost any sales to IEP or vice versa.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 6/5/2024 .



Eric Olson

4