**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

IEP Technologies, LLC,

      *Plaintiff*,

      *v.*

KPM Analytics, Incorporated
f/k/a Statera Analytics Incorporated and
KPM Analytics North America Corporation
f/k/a Process Sensors Corporation,

      *Defendants*.

Civil Action No.
1:21-cv-10417-JEK

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO EXCLUDE GAVIN MANES**

**Contents**

I.      Introduction ................................................................................................................ 1

II.     Discovery Related to the Public Records Produced by the USPTO ................................... 2

III.    Argument and Citation to Authority ................................................................................. 7

        A.  Legal Standard for Admissibility of Expert Witness Testimony................................. 7

        B.  The Opinions in the Manes Declaration Should Be Excluded Because They Will Not
            Be Helpful to the Jury .............................................................................................. 8

                1.      Manes' First Opinion Directed to the Authenticity of Spreadsheets
                        Produced by the USPTO Should be Excluded Because It is Irrelevant as to
                        the Nature of What the USPTO Purports Them to Be ............................... 8

                2.      Manes' Second Opinion Directed to the Admissibility of the Spreadsheets
                        Produced by the USPTO Should be Excluded Because it is Directed to a
                        Legal Issue to be Decided by the Court .................................................... 10

                3.      Manes' Third Opinion as to the Admissibility of the Testimony of KPM's
                        Expert Witnesses Should be Excluded as Manes Seeks to Testify on a
                        Legal Issue to be Decided by the Court .................................................... 14

                4.      The Court Should Exclude Manes' Fourth Opinion as It Invades the
                        Province of the Jury and is Not Proper for Expert Testimony ................. 15

IV.     Conclusion ................................................................................................................... 17

**Declarations and Exhibits**

Declaration of Charles M. Landrum III

Exhibit A.      Declaration of Gavin Manes (filed under seal)

Exhibit B.      Excerpts of the Jan. 27, 2022 Deposition of John Shea and Excerpt of Exhibit 13
                thereto (filed under seal)

Exhibit C.      Subpoena to U.S. Patent & Trademark Office ("USPTO")

Exhibit D.      Cover Letter from the USPTO having Bates Nos. USPTO-000001–3 (filed under
                seal)

Exhibit E.      Documents Produced by the USPTO Having Bates Nos. USPTO-000004–44
                (filed under seal)

Exhibit F.      Signature Log Spreadsheet Produced by the USPTO Having Bates
                No. USPTO-000045 (filed under seal)

Exhibit G.      Submission Log Spreadsheet Produced by the USPTO Having Bates
                No. USPTO-000046 (filed under seal)

Exhibit H.      Documents Produced by Charter Communications Having Bates
                Nos. CHARTER-000001–3 (filed under seal)

Exhibit I.      Excerpts of the Oct. 30, 2023 Deposition of Debra M. Duguid (filed under seal)

Exhibit J.      Excerpts of the Oct. 25, 2023 Deposition of John Shea (filed under seal)

Exhibit K.      Excerpts of the May 7, 2024 Deposition of Gavin Manes (filed under seal)

## Table of Authorities

**Cases**

*Blake v. Pellegrino*,
    329 F.3d 43 (1st Cir. 2003)............................................................................. 11

*Bogosian v. Mercedes-Benz of N. Am., Inc.*,
    104 F.3d 472 (1st Cir. 1996).......................................................................... 7

*Carrelo v. Advanced Neuromodulation Sys.*,
    777 F. Supp. 2d 315 (D.P.R. 2011)............................................................. 15

*Chowdhury v. WorldTel Bangl. Holding, Ltd.*,
    746 F.3d 42 (2d Cir. 2014) ........................................................................... 10

*Cipollone v. Yale Indus. Prods.*,
    202 F.3d 376 (1st Cir. 2000).......................................................................... 8

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)........................... 7

*Dinco v. Dylex Ltd.*,
    111 F.3d 964 (1st Cir. 1997).......................................................................... 16

*Fisher v. United States*,
    425 U.S. 391, 96 S. Ct. 1569 (1976).............................................................. 8

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).............................. 16

*Goebel v. Denver & Rio Grande W. R.R. Co.*,
    215 F.3d 1083 (10th Cir. 2000) .................................................................... 7

*Hilsinger Co. v. Kleen Concepts, LLC*, No. 14-14714-FDS,
    2017 U.S. Dist. LEXIS 141659 (D. Mass. Sep. 1, 2017) ........................... 7

*Hochen v. Bobst Group, Inc.*,
    290 F.3d 446 (1st Cir. 2002).......................................................................... 8

*In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2187,
    2018 U.S. Dist. LEXIS 151670 (S.D. W. Va. Sep. 5, 2018) ...................... 16

*Lacaillade v. Loignon Champ-Carr, Inc.*,
    No. 10-cv-68-JD, 2011 U.S. Dist. LEXIS 139282 (D.N.H. Dec. 2, 2011) ............ 11

*Lubanski v. Coleco Indus., Inc.*,
    929 F.2d 42 (1st Cir. 1991)............................................................................ 11

*Pagliaroni v. Mastic Home Exteriors, Inc.*, Civil Action No. 12-10164-DJC,
    2015 U.S. Dist. LEXIS 126543 (D. Mass. Sep. 21, 2015) ......................... 7

*Pelletier v. Main Street Textiles, LP*,
    470 F.3d 48 (1st Cir. 2006)............................................................................ 16

*Prima Partners, LLC v. Waterhouse*, No. 16-CV-02875,
  2018 U.S. Dist. LEXIS 74737, 2018 WL 2091075 (D. Colo. May 3, 2018) ......................... 16

*Richardson v. Watco Companies, Inc.*, No. CIV-10-0047-HE,
  2011 U.S. Dist. LEXIS 158799, 2011 WL 12842517 (W.D. Okla. Apr. 29, 2011)................ 16

*Samaan v. St. Joseph Hosp.*,
  670 F.3d 21 (1st Cir. 2012)............................................................................................................ 7

*Spray v. Bd. of Cty. Comm'rs*, No. CIV-20-1252-R,
  2023 U.S. Dist. LEXIS 148041 (W.D. Okla. Aug. 23, 2023) ................................................. 16

*Tamraz v. Lincoln Elec. Co.*,
  620 F.3d 665 (6th Cir. 2010) ........................................................................................................ 7

*United States v. Duncan*,
  42 F.3d 97, 101 (2d Cir. 1994) ................................................................................................... 16

*United States v. Shay*,
  57 F.3d 126 (1st Cir. 1995)............................................................................................................ 8

**Rules**

Fed. R. Evid. 104. Preliminary Questions ........................................................................................ 15

Fed. R. Evid. 702. Testimony by Expert Witnesses ......................................................................... 7

Fed. R. Evid. 803. Exceptions to the Rule Against Hearsay ........................................................ 11

## I.      Introduction

IEP disclosed Gavin Manes as a rebuttal expert to KPM's expert witnesses, Amanda Hyland and Greg Kelley. Ex. A, Declaration of Gavin Manes ("Manes Decl."); Declaration of Charles M. Landrum III ("Landrum") ¶ 2. Manes purports to offer four opinions about documents produced in discovery by the U.S. Patent & Trademark Office ("USPTO") in response to a subpoena served by KPM:



*Id.*, ¶¶ 3–6. In his report, Manes gives no consideration and does not evaluate ███████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Instead, he opines about the nature of the USPTO-produced documents to question and attack the trustworthiness and, thus, the admissibility of the documents. However, those issues are questions to be decided by the Court, not the jury, well before evidence ever is presented to the jury.

Manes should not be permitted to speculate to the jury about the authenticity and admissibility of public records produced by the USPTO, especially when he neither contests that the public records were produced by the USPTO nor has any opinion to offer on the factors that the Court will consider in admitting the documents under Rule 803(8). Manes should not be permitted to invade the province of the jury by offering testimony that is not proper for an expert.

## II.     Discovery Related to the Public Records Produced by the USPTO

The claims set forth in IEP's complaint are predicated on the alleged infringement of U.S. Trademark Registration No. 4,648,573 ("the '573 Registration"). See Doc. 1, Complaint ¶¶ 11 *et seq.* and Doc. 1-1 (Exhibit A to the Complaint). Accordingly, KPM took fact discovery regarding the prosecution and maintenance of the '573 Registration by IEP.

As part of that fact discovery, IEP's President John Shea testified in 2022 regarding the Section 8 & 15 Declaration of Continued Use and Incontestability purportedly signed by him and filed with the U.S. Patent & Trademark Office ("USPTO") to maintain the '573 Registration. Ex. B, Jan. 27, 2022 Deposition of John Shea ("Shea 2022") at 126–134 and Exhibit 13 thereto at IEP004255 & IEP004259.  Mr. Shea  testified  that



Ex. B, Shea 2022, 129:5–16, 129:24–130:1, 131:1–3 (emphasis added); Landrum ¶ 3.

In light of Mr. Shea's surprising testimony, KPM moved to amend its answer to assert counterclaims for cancellation of the '573 Registration on grounds of fraud on the USPTO and non-use of goods and services identified in the '573 Registration, alleging in relevant part that, "[u]pon information and belief, someone other than John Shea knowingly forged John Shea's name for the Declaration in the Combined Declaration of Use and Incontestability under Sections 8 & 15 for the '573 Registration filed with the USPTO on or about November 23, 2020." Doc. 28, ECF p.20, ¶ 35. The Court granted KPM's motion and allowed "additional discovery generated by the amendment to the pleadings." Doc. 37.

As part of that additional discovery, KPM served an amended subpoena *duces tecum* on the USPTO on June 10, 2022, requesting documents regarding the '573 Registration, which issued from U.S. Trademark Application Serial No. 86249899 (*see* Doc. 1-1), and, more specifically, documents relating to the electronic signature of certain declarations and the IP address from where those declarations were actually signed:

> REQUEST NO. 1: All documents and things concerning the signature of the named signatory, John Shea, in relation to the declaration submitted with and/or in support of the Combined Section 8 and 15 Declaration, including but not limited to all documents or things identifying the Internet Protocol (IP) address, computer, or network from which the declaration was signed and/or the signature was submitted or entered.

> REQUEST NO. 2: All documents and things identifying the IP address, computer, or network from which the Combined Section 8 and 15 Declaration was submitted to and/or filed with the U.S. Patent and Trademark Office.

> REQUEST NO. 3: All documents and things concerning the signature of the named signatory, Randy Davis, of the declaration submitted on or around April 11, 2014 in support of the Trademark/Service Mark Application, Principal Register (PTO Form 1478) for the '899 Application, including but not limited to all documents or things identifying the Internet Protocol (IP) address, computer, or network from which the declaration was signed and/or the signature was submitted or entered.

> REQUEST NO. 4: All documents and things identifying the IP address, computer, or network from which the Trademark/Service Mark Application, Principal Register (PTO Form 1478) for the '899 Application was submitted to the U.S. Patent and Trademark Office on or around April 11, 2014.

Ex. C, Subpoena to the USPTO; Landrum ¶ 4. The USPTO responded by refusing to produce documents, requiring KPM to move to compel in the Eastern District of Virginia, resulting in entry of an Agreed Order by the Court. *See* Doc. 110-1 (copy of E.D.V.A. Agreed Order).

In compliance with the Court's Order, the USPTO produced responsive public records, including a cover letter, (Ex. D; Landrum ¶ 5), documents related to the '573 Registration (Ex. E; Landrum ¶ 5), and two spreadsheets related to the '573 Registration, (Exs. F & G; Landrum ¶ 5), containing the following statements:



Because the USPTO documents contained ████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████ KPM subpoenaed Charter Communications in Stamford, CT and
obtained in response ████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████ Ex. H; Landrum ¶ 6. When asked in deposition, Ms. Duguid ████

 Ex. I, Oct. 30, 2023 Deposition of Debra M. Duguid ("Duguid"), 113:4–16; Landrum ¶ 7. She did admit, however, that [1]



Ex. I, Duguid, 115:18–116:3.

Interestingly, after this Court allowed KPM to amend its Answer to add counterclaims that have basis from the apparently forged declaration, Mr. Shea's recollection about the signing improved. Specifically, in a subsequent deposition in October 2023—over a year and a half after his first deposition when he testified that — Mr. Shea this time testified in amazing detail, claiming now to



<hr />

[1]



Ex. J, Shea 2023, 264:3–265:22; Landrum ¶ 8.

In view of these clear inconsistencies and contradictions, KPM disclosed Mr. Kelley and Ms. Hyland as expert witnesses in regard to the filing of the Section 8 & 15 Declaration with the USPTO, with Ms. Hyland opining on the procedural aspects of filing documents with the USPTO and Mr. Kelley opining on certain technological aspects. Both Mr. Kelley's and Ms. Hyland's opinions address the documents produced by the USPTO in response to KPM's subpoena in support of KPM's counterclaims. Thus, in rebuttal to Mr. Kelley and Ms. Hyland— and in a clear attempt to challenge the admissibility of the USPTO documents relied upon by KPM's two expert witnesses—IEP disclosed Manes and his opinions challenging the reliability of the documents produced by the USPTO.

As addressed below, Manes' opinions on the admissibility of the USPTO-produced documents is a legal issue to be raised before and decided by the Court and not by the jury, which is why Manes' testimony about trustworthiness of the documents will be unhelpful to the trier of fact.

### III.   Argument and Citation to Authority

####   A.  Legal Standard for Admissibility of Expert Witness Testimony

Under Fed. R. Evid. 702, courts considering the admissibility of scientific testimony must "act as gatekeepers, ensuring that an expert's proffered testimony 'both rests on a reliable foundation and is relevant to the task at hand.' " *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 31 (1st Cir. 2012) (*quoting Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)). "Pursuant to that gatekeeping function, a court may admit expert testimony only if three conditions are satisfied: (1) the proposed expert is qualified by knowledge, skill, experience, training, or education; (2) the subject matter of the proposed testimony properly concerns scientific, technical, or other specialized knowledge; and (3) 'the testimony [will be] helpful to the trier of fact, i.e., … it rests on a reliable foundation and is relevant to the facts of the case.' " *Hilsinger Co. v. Kleen Concepts, LLC*, No. 14-14714-FDS, 2017 U.S. Dist. LEXIS 141659, at *26 (D. Mass. Sep. 1, 2017) (*quoting Bogosian v. Mercedes-Benz of N. Am., Inc.*, 104 F.3d 472, 476 (1st Cir. 1996)).

An expert can only testify to opinions if such opinions are "the product of reliable principles and methods." Fed. R. Evid. 702(c). Such testimony must be based on "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 599; *see also Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) (*quoting Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000) ("[N]o matter how good experts' credentials may be, they are not permitted to speculate.")).

"*Daubert* established a framework that 'assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.' " *Pagliaroni v. Mastic Home Exteriors, Inc.*, Civil Action No. 12-10164-DJC, 2015 U.S. Dist. LEXIS 126543, at *17–18 (D. Mass. Sep. 21, 2015) (quoting *Daubert*, 509 U.S. at 597). "Relevant expert testimony must help the trier of fact 'understand the evidence' or 'determine a fact in issue.' " *Id.* (*quoting* Rule 702).

"The First Circuit has held '[t]he ultimate purpose of the *Daubert* inquiry is to determine

7

whether the testimony of the expert would be helpful to the jury in resolving a fact in issue.' "
*Frabizio*, 445 F. Supp. 2d at 169 (*quoting Hochen v. Bobst Group, Inc.*, 290 F.3d 446, 452
(1st Cir. 2002); *Cipollone v. Yale Indus. Prods.*, 202 F.3d 376, 380 (1st Cir. 2000)). "Although
this inquiry is related to the question of the expert's reliability, the First Circuit has described
assistance to the trier of fact as a 'distinct' requirement of Federal Rule of Evidence 702."
*Frabizio*, 445 F. Supp. 2d at 169 (*quoting U.S. v. Shay*, 57 F.3d 126, 132 (1st Cir. 1995)).

**B.  The Opinions in the Manes Declaration Should Be Excluded Because They Will Not
Be Helpful to the Jury**

**1.      Manes' First Opinion Directed to the Authenticity of Spreadsheets
Produced by the USPTO Should be Excluded Because It is Irrelevant
as to the Nature of What the USPTO Purports Them to Be**

The first opinion in Manes' declaration is directed to the authenticity of the spreadsheets
produced by the USPTO:



Ex. A, Manes Decl., ¶ 3.

While authentication of the USPTO-produced spreadsheet documents is not an issue
presently before the Court, "Compliance with the subpoena tacitly concedes the existence of the
papers demanded and their possession or control by the [respondent]. It also would indicate the
[respondent's] belief ***that the papers are those described in the subpoena.***" *Fisher v. U.S.*,
425 U.S. 391, 410, 96 S. Ct. 1569, 1581 (1976) (emphasis added; citation omitted).

Specifically, KPM requested the following with respect to the Section 8 & 15 declaration:

REQUEST NO. 1: All documents and things concerning the signature of the
named signatory, John Shea, in relation to the declaration submitted with and/or
in support of the Combined Section 8 and 15 Declaration, including but not
limited to all documents or things identifying the Internet Protocol (IP) address,
computer, or network from which the declaration was signed and/or the signature
was submitted or entered.

REQUEST NO. 2: All documents and things identifying the IP address, computer,
or network from which the Combined Section 8 and 15 Declaration was submitted

to and/or filed with the U.S. Patent and Trademark Office.
Ex. C, Subpoena. In response, the USPTO produced public records to these requests in KPM's
subpoena, namely the cover letter, documents, and the two spreadsheets. Exs. D, E, F & G.

Thus, while the instant motion does not seek a ruling on the authenticity or admissibility
of the documents produced by the USPTO but instead is directed to whether or not Manes should
be permitted to testify on evidence admissibility at trial before the jury, it should be noted that
there is a presumption that what was produced is responsive to what was requested: documents
"identifying the Internet Protocol (IP) address, computer, or network" from which the Section 8
& 15 Declaration was signed and submitted. With respect to both spreadsheets, the cover letter
states, ███████████████████████████████████████████████████
Ex. D.[2]

Yet in a red herring that apparently seeks to attack the issue of authentication of these
documents, paragraphs 28 to 33 of the Manes Declaration claim that the spreadsheets are ██████
█████████████████████████████ Ex. A, Manes Decl. However, as noted
above, the subpoena did not request or require production of any ████████ from the
USPTO. In fact, the cover letter from the USPTO clearly explains that the spreadsheets are ██
████████████████████ Ex. D. No reference is made to ██████████

Thus, Manes' opinion that the documents are ██████████████████
██████████████ is irrelevant and has no bearing on whether the USPTO-produced
documents are what the USPTO purports them to be. *Cf.* Ex. K, Manes, 97:19–23 (██████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████

Indeed, if IEP believed that it would be helpful to have ████████████ from the USPTO,
then IEP could have sought such additional records via its own subpoena during discovery. But

---

[2] Again, as the merits of the issue of authenticity is not the subject of the instant motion, KPM
anticipates expounding on this issue at the appropriate time, if necessary, to establish that the
documents are admissible.

IEP elected to take no such discovery. As for Manes' opinion, it is irrelevant and, thus will be unhelpful to the jury on this point. Therefore, Manes' first opinion should be excluded at trial.

> **2.**    **Manes' Second Opinion Directed to the Admissibility of the Spreadsheets Produced by the USPTO Should be Excluded Because it is Directed to a Legal Issue to be Decided by the Court**

Manes' second opinion is that the two spreadsheets produced by the USPTO in response to KPM's subpoena and in compliance with the Eastern District of Virginia's Order are ███████████████████████████████████████████████████████████████ ████████████████

████████████████████████████████████████████████

Ex. A, Manes Decl. ¶ 4.

Because the putative minor "errors" have no bearing on the substantive portions of the documents that KPM would cite and rely on at trial and because Manes cannot even confirm that the putative minor "errors" are actually erroneous, his testimony is unhelpful and speculative.

> **a)**    **Manes' Opinion Cannot Help the Fact Finder, as the Jury Will Not Decide Admissibility of the USPTO Spreadsheets**

Manes' opinion that the USPTO spreadsheets are ██████████ appears directed to Rule 803(8)(B) excepting public records from the rule against hearsay if "the opponent does not show that the source of information nor or other circumstances indicate a lack of trustworthiness."

While the question of admissibility is not presently before the Court—as KPM has not to date sought the admission of any particular statement within the USPTO spreadsheets for the truth of the matter asserted—"[w]hether certain evidence is hearsay is generally a question of law… ." *Chowdhury v. WorldTel Bangl. Holding, Ltd.*, 746 F.3d 42, 54 (2d Cir. 2014) (citation omitted).

Thus, Manes' opinion—to the extent it is directed to whether the spreadsheets produced by the USPTO are admissible in view of the public records exception against hearsay—cannot

"help the trier of fact to understand the evidence or to determine a fact in issue," as required for testimony admitted under Rule 702(a). Therefore, Manes' second opinion should be excluded and he should not be permitted to testify to the jury on this issue that will be directed and resolved *by the Court*.

> **b)** **Manes Has No Opinion on the Factors Courts Consider Regarding the Admissibility of Public Records**

If or when the time comes for KPM to introduce any particular statement within the spreadsheets produced by the USPTO for the truth of the matter asserted, under Rule 803(8) the Court will consider the following four factors regarding admissibility of public records: "Factors to be considered in assessing the admissibility of an officer's report include '(1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held and the level at which conducted; and (4) possible motivation problems … .' " *Lacaillade v. Loignon Champ-Carr, Inc.*, No. 10-cv-68-JD, 2011 U.S. Dist. LEXIS 139282, at *4–5 (D.N.H. Dec. 2, 2011) (*quoting* Rule 803(8) advisory committee note (1974); *citing Blake v. Pellegrino*, 329 F.3d 43, 48 (1st Cir. 2003)). Thus, for example, "a police officer's accident report has 'an initial presumption of admissibility,' so long as it is based on his or her factual investigation." *Id.* (*quoting Lubanski v. Coleco Indus., Inc.*, 929 F.2d 42, 45–46 (1st Cir. 1991) (noting that most federal courts have adopted a "broad interpretation" of Rule 803(8)).[3]

Yet Manes concedes that he has no opinion to offer regarding *any* of the four aforementioned factors that the Court would consider if making a determination of admissibility of public records produced by the USPTO under Rule 803(8):



---

[3] As with the issue of authenticity, the issue of admissibility as non-hearsay is not the subject of the instant motion. KPM anticipates expounding on this issue at the appropriate time, if necessary, to establish that the documents are admissible as public records or under other provisions of the Federal Rules of Evidence. *See, e.g.,* Rule 807.



Ex. K, Manes, 96:1–97:2. As Manes has no testimony to offer on the relevant factors that the Court would consider in such an analysis, he has nothing to offer the Court on this question of law. *See, e.g., Chowdhury*, 746 F.3d at 54. But more importantly, Manes has nothing on this issue that would be helpful to the jury. Therefore, Manes' second opinion should be excluded and he should not be permitted to testify.

### c)  Manes' Testimony About Reliability is Mere Speculation

Even if the Court were to oblige Manes' opinion—despite it not being related to any of the factors the Court would consider when deciding admissibility—the Court would find nothing but speculation. First, Manes states the following:



Ex. A, Manes Decl. ¶ 33.[4] But when asked whether he had any understanding of whether the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ex. K, Manes, 55:11–18.

Second, Manes cites a ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ in a

---

[4] According to Manes, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ in this paragraph of his report: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ex. K, Manes, 51:13–14. When asked ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.*, 51:22–25.

specific cell of the spreadsheet:



Ex. A, Manes Decl. ¶ 34. However, when asked about his opinion, Manes ██████████

██████████████████████

Ex. K, Manes, 42:18–43:16. Manes has no basis for any opinion regarding ██████████ ██████████ Moreover, while it is unlikely that KPM would even seek to rely on the data in the ██████████ in support of its case in the first instance, thereby rendering premature— and likely wholly unnecessary for presentation to the court—any opinions about that information Manes might have. Nevertheless, despite having no basis for doing so and ignoring the prospect that the issue may never even be presented to the Court, Manes speculates: ██████████ ██████████████████████ Ex. K, Manes, 83:9–11.

But when pressed, Manes conceded that ██████████████████████ ██████████████████████



Ex. K, Manes, 84:9–25.

Based on nothing but speculation, Manes makes a colossal leap to conclude that the entire USPTO-produced spreadsheets are ███████████████████████████████████████ ███████████████████████████████████████ But the reality is that Manes admits ████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████ Therefore, his second opinion is nothing more than speculation and should be excluded.

Finally, Manes' second opinion is not relevant, as KPM does not intend to introduce for the truth of the matter asserted any of the alleged "errors" cited in the Manes declaration: ███ ███████████████████████████████████████ █████████████████████ Therefore, Manes' opinion is not relevant to any decision on admissibility that the Court would have to make in this proceeding. Accordingly, Manes' opinion should be excluded and he should not be permitted to testify.

> **3.  Manes' Third Opinion as to the Admissibility of the Testimony of KPM's Expert Witnesses Should be Excluded as Manes Seeks to Testify on a Legal Issue to be Decided by the Court**

Manes' third opinion likely goes to the heart of IEP's reliance on Manes, which is as an attack against having KPM's experts, Greg Kelley and Amanda Hyland, testify at trial in part with respect to the documents produced by the USPTO. In his third opinion, Manes concludes that ████████████████████████████████████████ ████████

14



Ex. A, Manes Decl. ¶ 5. Yet again, however, Manes attempts to testify on the admissibility of evidence, namely whether KPM's expert witnesses can rely on documents produced by the USPTO in compliance with a Court Order. However, the focus of Manes' opinions are issues for the Court. Rule 104(a) ("The court must decide *any preliminary question* about whether a witness is qualified, a privilege exists, or *evidence is admissible*.") (emphasis added).

Manes even concedes that



Ex. K, Manes, 95:14–21. Manes' admission makes clear that Manes' testimony is directed to the issue of admissibility of expert testimony, which, again, is as issue for the Court. Rule 104(a). Therefore, Manes' third opinion should be excluded and he should not be permitted to testify.

> **4.      The Court Should Exclude Manes' Fourth Opinion as It Invades the Province of the Jury and is Not Proper for Expert Testimony**

The fourth and final opinion in the Manes Declaration is that



Ex. A, Manes Decl. ¶ 6.

"A district court has broad discretion to exclude expert opinion evidence about the law that would impinge on the roles of the judge and the jury." *Carrelo v. Advanced Neuromodulation Sys.*, 777 F. Supp. 2d 315, 320 (D.P.R. 2011) (*citing Pelletier v. Main Street*

*Textiles, LP*, 470 F.3d 48, 54 (1st Cir. 2006)). "Moreover, statements that pretend to draw ultimate legal conclusions do not properly assist the trier of fact because they invade the province of the jury." *Id.* (*citing Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir.1997); other citation omitted). "Yes, the bar on 'ultimate issue' opinions has been abolished in civil cases, Fed. R. Evid. 704(a); but that is not a *carte blanche* for experts to substitute their views for matters well within the ken of the jury." *Dinco v. Dylex Ltd.*, 111 F.3d 964, 973 (1st Cir. 1997) (*citing U.S. v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).

Statements that there is "no evidence" are "not ordinarily proper expert testimony." *Spray v. Bd. of Cty. Comm'rs*, No. CIV-20-1252-R, 2023 U.S. Dist. LEXIS 148041, at *17–18 (W.D. Okla. Aug. 23, 2023) (*quoting Richardson v. Watco Companies, Inc.*, No. CIV-10-0047-HE, 2011 U.S. Dist. LEXIS 158799, 2011 WL 12842517, at *4 (W.D. Okla. Apr. 29, 2011) (excluding opinions that " 'there is no evidence' as to a particular fact"); *see also Prima Partners, LLC v. Waterhouse*, No. 16-CV-02875, 2018 U.S. Dist. LEXIS 74737, 2018 WL 2091075, at *3 (D. Colo. May 3, 2018) (excluding opinion that expert "has seen no evidence" of an element because "the jury does not need expert testimony to determine whether evidence exists and whether it demonstrates a party's knowledge"); *see also In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2187, 2018 U.S. Dist. LEXIS 151670, at *14 (S.D. W. Va. Sep. 5, 2018) (excluding expert "attempt[ing] to opine that because he did not see any evidence suggesting the MSDS has scientific roots, none exists. Such a speculative leap is improper for expert testimony.") (*citing Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.")).

Here, Manes opines that ███████████████████████████████████████ ███████████████ Thus, Manes' fourth opinion invades the province of the jury to decide what the evidence does and does not prove and is not proper for expert testimony. *See cases, supra.* Therefore, Manes' fourth opinion should be excluded and he should not be permitted to offer it at trial to the jury.

IV.     **Conclusion**

Manes should not be permitted to speculate about the authenticity and admissibility of public records produced by the USPTO, especially when he neither contests that the public records were produced by the USPTO nor has any opinion to offer on the factors that the Court will consider in admitting the documents under Rule 803(8). Manes also should not be permitted to testify regarding the admissibility of KPM's expert witnesses. And Manes should not be permitted to invade the province of the jury by offering testimony that is not proper for an expert.

Therefore, for the reasons herein, KPM respectfully requests that the Court grant this Motion, exclude Manes' declaration, and preclude him from testifying in this case.

Respectfully submitted this 2nd day of July, 2024.

/s/ Charles M. Landrum III

Michael J. Lambert (BBO No. 632053)
*mlambert@sheehan.com*

**SHEEHAN PHINNEY BASS & GREEN PA**
28 State Street, 22nd Floor
Boston, Massachusetts 02109
Telephone: 617.897.5637
Facsimile: 617.439.9363

N. Andrew Crain (*pro hac vice*)
a.crain@thip.law
Charles M. Landrum III (*pro hac vice*)
c.landrum@thip.law
Paul Joseph Spina IV (*pro hac vice*)
p.spina@thip.law
Ivona Relja (*pro hac vice*)
i.relja@thip.law

**THOMAS | HORSTEMEYER LLP**
3200 Windy Hill Rd SE Suite 1600E
Atlanta, Georgia 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IEP Technologies, LLC,<br><br>   *Plaintiff*,<br><br>   *v.*<br><br>KPM Analytics, Incorporated<br>f/k/a Statera Analytics Incorporated and<br>KPM Analytics North America Corporation<br>f/k/a Process Sensors Corporation,<br><br>   *Defendants*. | Civil Action No.<br>1:21-cv-10417-JEK |

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 2, 2024.

/s/ Charles M. Landrum III
Charles M. Landrum III

*Attorney for Defendants*