**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IEP Technologies, LLC, | |
| Plaintiff, | Civil Action No. |
| v. | 1:21-cv-10417-JEK |
| KPM Analytics, Incorporated f/k/a Statera Analytics Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**EXCLUSION OF DEFENDANTS' PROFFERED EXPERTS HYLAND AND KELLEY**

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................................ i

TABLE OF AUTHORITIES ...................................................................................................... ii

I.     INTRODUCTION ............................................................................................................. 1

II.    LEGAL STANDARD........................................................................................................ 1

III.   BACKGROUND ............................................................................................................... 3

IV.    ARGUMENT ..................................................................................................................... 4

    A.   Hyland And Kelley Fail To Offer Scientific, Technical, Or Other Specialized Knowledge That Will Help The Trier Of Fact To Understand The Evidence Or To Determine A Fact In Issue ...................................................................................................................................... 5

        1.   Neither purported expert applies any specialized knowledge......................................... 5

        2.   Neither purported expert would be helpful to the factfinder because they simply repeat hearsay statements from unauthenticated excel spreadsheets................................................. 8

    B.   Hyland And Kelley's "Opinions" Are Not Based On Sufficient Facts ........................... 11

    C.   Hyland And Kelley Do Not Employ Reliable Principles And Methods But Simply Accept Inadmissible Hearsay At Face Value.......................................................................................... 11

    D.   It Follows That Hyland And Kelley Do Not Reliably Apply Principles And Methods To The Facts Of The Case............................................................................................................... 14

V.     CONCLUSION................................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)................................................................................................ 1, 2, 8

*Foley v. Town of Lee*,
   863 F. Supp. 2d 130 (D.N.H. 2012)................................................................................ 2

*Nieves-Villanueva v. Soto-Rivera*,
   133 F.3d 92 (1st Cir. 1997)........................................................................................ 2, 5

*Samaan v. St. Joseph Hosp.*,
   670 F.3d 21 (1st Cir. 2012)............................................................................................ 1

*Setterlund v. Potter*,
   597 F. Supp. 2d 167 (D. Mass. 2008).................................................................... 4, 11

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
   550 F.3d 1356 (Fed. Cir. 2008)...................................................................................... 2

*Trustees of Bos. Univ. v. Everlight Elecs. Co.*,
   141 F. Supp. 3d 147 (D. Mass. 2015)...................................................................... 2, 10

*United States v. Cormier*,
   468 F.3d 63 (1st Cir. 2006)........................................................................................ 2, 8

*United States v. Luna*,
   649 F.3d 91 (1st Cir. 2011)........................................................................................ 2, 8

*United States v. Smith*,
   869 F.2d 348 (7th Cir. 1989) ......................................................................................... 2

Rules

FRE 702 ....................................................................................................................... 1, 2
FRE 803(8)......................................................................................................................... 4
FRE 902 ............................................................................................................................. 4

## I.      INTRODUCTION

Plaintiff IEP Technologies, LLC ("IEP" or "Plaintiff") hereby moves to exclude all opinions and testimony of Amanda Hyland, an attorney and purported trademark procedure expert, and Greg Kelley, a purported forensic document expert. Hyland and Kelley have been proffered as experts by Defendants KPM Analytics, Incorporated and KPM Analytics North America Corporation (collectively, "KPM" or "Defendants").

Hyland and Kelley served reports in this matter that simply repeat hearsay statements from unauthenticated and unreliable documents. Both are classic examples of hired guns that perform no independent analysis and attempt to go around the Rules of Evidence by offering nonevidence under the guise of expert testimony. They each fail to satisfy FRE 702 in several ways: they do not offer specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue; their opinions are not based on sufficient facts or data; and they have not identified any reliable principles and methods. As a result, their opinions cannot reflect a reliable application of the principles and methods to the facts of the case.

For the foregoing reasons, both Hyland and Kelley should be precluded from offering any opinion or testimony in this matter.

## II.      LEGAL STANDARD

Under Fed. R. Evid. 702, courts considering the admissibility of expert testimony must "act as gatekeepers, ensuring that an expert's proffered testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *See Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 31 (1st Cir. 2012) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). The Rules list four requirements for an expert's opinion:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)-(d). Such testimony must be based on "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

In particular, "an expert witness may not simply summarize the out-of-court statements of others as his testimony." *United States v. Cormier*, 468 F.3d 63, 73 (1st Cir. 2006) (quoting *United States v. Smith*, 869 F.2d 348, 355 (7th Cir. 1989). *See also United States v. Luna*, 649 F.3d 91, 105 (1st Cir. 2011) (The "entirety of his or her testimony cannot be the mere repetition of 'the out-of-court statements of others'."). In other words, an expert cannot merely 'parrot' the out-of-court statements of others acting merely as a "ventriloquist's dummy." *See Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 141 F. Supp. 3d 147, 149 (D. Mass. 2015) ("Rule 703 'was never intended to allow oblique evasions of the hearsay rule' or to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece" of others).

In addition, expert testimony on legal issues is rarely admissible. *See Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997). An attorney, even under the guise of an "expert witness" may not testify as to the law. *See Foley v. Town of Lee*, 863 F. Supp. 2d 130, 135 (D.N.H. 2012) ("It is not the plaintiffs' lack of need for a 'legal expert' that prevents Attorney Vogelman from testifying as to 'statutes or laws,' but the 'black-letter' rule, just stated, that it is the court, not an expert witness, who informs the jury as to the law they must apply in the case at hand."). The risk of an expert witness confusing a jury is heightened when that witness is an attorney. *See Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1365 n.8 (Fed. Cir. 2008) ("This concern is further compounded where the purported witness is an attorney. It is already difficult enough for courts to separate intricate questions of fact in patent cases from equally intricate

questions of law.").

## III.     BACKGROUND

On February 9, 2024, KPM served IEP with the expert reports of Amanda Hyland ("Hyland Report", Ex. 1) and Greg Kelley ("Kelley Report", Ex. 2). Both reports relate solely to KPM's allegations of fraud on the USPTO by IEP. IEP is concurrently moving for Summary Judgment on those claims because they lack both factual and legal support and should never have been brought.

In particular, Hyland and Kelley purport to opine on the November 23, 2020 Section 8 and Section 15 declaration signed by Mr. John Shea on behalf of IEP. Ex. 1 at ¶ 1; Ex. 2 at pg. 4. KPM has alleged fraud on the basis that Mr. Shea did not personally sign the otherwise correct[1] declaration, but that it was instead signed by a trademark paralegal. Both Mr. Shea and the paralegal testified the declaration was properly signed by Mr. Shea, contemporaneous emails support that Mr. Shea signed it, those emails were authenticated by this Court's independent expert, and KPM has not identified any legal support that such actions (even if true) would affect IEP's trademark rights. Despite this, KPM has proffered Hyland and Kelley to maintain its fraud allegations, delay resolution this litigation, and drive-up costs.

At the close of the first discovery phase in this case, KPM inundated the USPTO with requests for information including a FOIA request, two subpoenas, and a motion to compel documents regarding the Section 8 and Section 15 declaration. ECF No. 71 at 4. In response, the USPTO hurriedly produced 10 documents, including public records from the trademark file as well as two non-public excel spreadsheets that were generated in response to KPM's motion (and years after the events in question). Those two excel spreadsheets form the bases for the Hyland and Kelley reports, which simply repeat or paraphrase selected hearsay statements found therein

---

[1] KPM has not identified anything inaccurate in the declaration.

to mischaracterize the events. Ex. 1 at ¶¶ 35, 36; Ex. 2 at pp. 6-8. Hyland and Kelley conclude that Mr. Shea's declaration was signed by the paralegal based on the IP address found in the spreadsheets. Ex. 1 at ¶¶ 37, 38; Ex. 2 at p. 9 ¶¶ 1, 2. However, the USPTO only tracks the IP address of the person who prepares the submission (in this case the paralegal) and not the signer of the declaration (in this case Mr. Shea). IEP noted this to the Court and KPM in prior briefing. ECF No. 105 at 4-5.

Importantly, KPM never sought to depose the USPTO to authenticate the excel spreadsheets or verify the information contained therein[2]. This is particularly egregious when those spreadsheets are the sole basis of KPM's expert reports. In fact, KPM expressly withdrew its request for a business records certification from the USPTO. Ex. 5

It cannot be reasonably disputed that no witness has the foundation or knowledge to verify the hearsay statements, authenticate the spreadsheets, or otherwise testify as to what they mean—Hyland and Kelley both repeatedly testified they could not and would have to ask the USPTO.

## IV.    ARGUMENT

KPM's purported experts represent an 11th hour effort to support baseless fraud allegations by circumventing the Federal Rules of Evidence. Neither Hyland nor Kelley has any knowledge of how the spreadsheets were created, where the information came from, or even whether they are accurate (they contain errors and other indicia of unreliability). KPM cannot use Hyland and

---

[2] There is no testimony from the USPTO verifying the accuracy or authenticity of the spreadsheets. *See Setterlund*, 597 F. Supp. 2d at 172. Importantly, they are not admissible under the FRE 803(8) public records hearsay exception at least because they are not public documents. *See* Hyland Depo at 125:2-4 (" They were created in response to KPM's motion and the USPTO produced them subject to a confidentiality order. ECF No. 72-1.

Kelley as mouthpieces to turn otherwise inadmissible information into facts. It is KPM's burden to prove its implausible fraud allegation, which has a heightened pleading and ultimate proof requirement and should never have even been brought in the first place.

> **A.    Hyland And Kelley Fail To Offer Scientific, Technical, Or Other Specialized Knowledge That Will Help The Trier Of Fact To Understand The Evidence Or To Determine A Fact In Issue**
>
> **1.    Neither purported expert applies any specialized knowledge**

Hyland, a trademark attorney, purports to offer two opinions: (1) █████████



████████ Ex. 1 at ¶ 1.

As to her first opinion, Hyland purports to be "██████████████████████

████████████ ("Hyland Depo.", Ex. 3, at 14:5-6), and confirms that the process is a legal one: █████████████████████████████████████████████████

████████████████ Hyland Report at ¶ 4 (citing the Lanham Act, the Code of Federal Regulations, and a USPTO manual). Paragraphs 5-17 of her report simply outline the legal process that she describes as "████████" and an "██████████." Hyland Report at ¶¶ 16-17. Hyland testified in her deposition that the USPTO provides publicly available forms for this process, "█████████████████████████." Hyland Depo. at 15:10-16. Accordingly, the procedure for filing a Section 8 and Section 15 Declaration is a legal issue for the Court, not KPM's expert[3].

---

[3] Nor has KPM identified any dispute between the parties with respect to the procedure, so such testimony does not even appear relevant.

*See Nieves-Villanueva*, 133 F.3d at 99.

As to her second opinion, Hyland confirmed that she did <u>not</u>, in fact, analyze "

."

Hyland Report at ¶ 1.



Hyland Depo at 32:17-33:3.

Hyland Depo at 36:16-21.

Hyland Depo at 38:15-19. Accordingly, Hyland confirmed that she did not determine whether IEP's Section 8 and Section 15 filing was properly executed and submitted:

Hyland Depo at 142:7-19.

Instead, Hyland testified she simply looked at "

Hyland Depo. at 61:1-8.

However, she confirmed she does not have expertise in evaluating the excel spreadsheets and that

her review is from the perspective of a lay person. Hyland Depo. at 126:5-8 ("███████████████

████████████████████████████████████████████████████████████████

███████████████); 137:1-12 ("██████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████"). Hyland also confirmed

she is not an expert on IP addresses. Hyland Depo. at 137:14-18 █████████████████████

████████████████████████████████████████████████████████████████

████████████████)

    Kelley, meanwhile, purports to be a forensic document expert but confirmed at his

deposition he did not do a forensic document review. Kelley Depo. at 17:6-8. The "opinions" found

in his report merely copied verbatim hearsay found in the unauthenticated excel spreadsheets.

Kelley Report at 6-8; Ex. 4, "Kelley Depo.", at 31:3-20, 33:11-34:15 (██████████████████████

████████████████████████████████ 112:17-19. Incredibly, he took

no steps to analyze the authenticity of the very documents he relies on. Kelley Depo. at 55:22-56:5

("█████████████████████████████████████████████████████████████

███████████████████"), 111:5-16 ("████████████████████████████████

████████████████████"). Kelley repeatedly confirmed he did not do any analysis with respect

to the information contained in the excel spreadsheets. Kelley Depo. at 9:16-10:8 ("███████████

████████████████████████████████████████████████████████████████");

70:22-71:1 ("███████████████████████████████████████████████████████

██████████████████████████████████.").

Notably, Kelley admits that he was instructed by KPM to assume the documents were accurate. Kelley Depo. at 98:3-100:11 ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████ Indeed, he confirmed that he took the information at face value. Kelley Depo. at 70:13-21 ("████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████").

In sum, neither Hyland nor Kelley apply any specialized knowledge of trademark law or forensic analysis in this matter. Hyland merely summarizes standard legal procedures and then both speculate that the excel spreadsheets are true and repeat hearsay contained therein under the guise of expert opinion. Such testimony must be based on "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. For this reason alone, they should be excluded.

> ## 2. Neither purported expert would be helpful to the factfinder because they simply repeat hearsay statements from unauthenticated excel spreadsheets

As discussed above, both experts rely upon the anonymous hearsay statements made in the unauthenticated, error-filled spreadsheets produced by the USPTO. This is improper. *Cormier*, 468 F.3d at 73; *Luna*, 649 F.3d at 105. Hyland's reliance on these documents is based on the "representations of the US Patent and Trademark Office" but she testified she does not know who created them or when. Hyland Depo. at 95:4-96:11. She further confirmed she does not have

expertise in evaluating the excel spreadsheets and that her review is from the perspective of a lay

person. Hyland Depo. at 126:5-8 (" ███████████████████████████

████████████████████████████████ "); 137:1-12 (" ████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████

     Kelley confirmed he did not do any forensic analysis. Kelley Depo. at 9:16-10:8 (" ██████

████████████████████████████████

████████████████████████████████

███████████████████████ Indeed, he has no knowledge of

where the information in the excel spreadsheets came from:



Kelley Depo. at 61:3-23.

     Remarkably, Kelley admits that the excel spreadsheets contain information "that contradict

each other." Kelley Depo at 73:17-21 ███████████████████████████████

████████████████████████████████████████████████████████████

██████████████████). Nevertheless, Kelley did not take any steps to authenticate or verify the

accuracy of the information.

Both Hyland and Kelley testified they would need to ask the USPTO about the

spreadsheets. Kelley Depo. at 85:8-22 ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████")"; Hyland Depo. at 101:4-

12 ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████ Kelley Depo. at 113:24-114:6

("Q. ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████")

KPM's strategy is readily apparent and egregious—it has no witness to authenticate the

excel spreadsheets or verify the information contained therein and so is attempting to circumvent

the Federal Rules of Evidence by having "experts" rely on the documents. This is improper. *See*

*Trustees of Bos. Univ.*, 141 F. Supp. 3d at 149 ("Rule 703 'was never intended to allow oblique

evasions of the hearsay rule' or to allow a witness, under the guise of giving expert testimony, to

in effect become the mouthpiece" of others).

**B.**     **Hyland And Kelley's "Opinions" Are Not Based On Sufficient Facts**

The excel spreadsheets contain inadmissible hearsay, lack authentication, and so are not evidence. *See Setterlund v. Potter*, 597 F. Supp. 2d 167, 172 (D. Mass. 2008) ("[KPM] has pointed to no case, and the Court has found none, where an unsworn witness statement (as opposed to a deposition or affidavit) was accepted by a court in opposition to a motion for summary judgment. The unsworn witness statements are therefore subject to being struck.") KPM cannot circumvent this through its purported experts.

The excel spreadsheets have significant indicia on unreliability, as acknowledged by Kelley. Kelley Depo. at 73:17-21 ("

"). KPM challenges IEP's expert, Dr. Gavin Manes, who found the spreadsheets self-contradictory and unreliable. ECF No. 208. As will be explained further in IEP's opposition to KPM's Motion to Exclude Dr. Manes, Manes is the only witness to analyze the authenticity and reliability of these documents. When Kelley was confronted with Dr. Manes' opinion, he admitted he did not perform any analysis. Kelley Depo at 115:9-116:24

Both Hyland and Kelley lack sufficient facts because they are not relying on facts at all, and so should be excluded.

**C.**     **Hyland And Kelley Do Not Employ Reliable Principles And Methods But Simply Accept Inadmissible Hearsay At Face Value**

Hyland testified she acted in her lay capacity in reviewing the excel spreadsheets by taking them at face value. Hyland Depo. at 131:9-23

).

When asked about her expertise on USPTO processes relating to maintaining IP addresses, she confirmed she has none:



Hyland Depo at 78:2-11.

Kelley admittedly performed no analysis relating to authentication or verifying the accuracy of the data—his apparent expertise. Kelley Depo at 98:3-100:11 ("███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ ").

While the Section 8 and 15 Declaration was filed on November 23, 2020, the excel spreadsheets were not created until 2022. Kelley was not aware of how any IP addresses were stored during that period or where the information came from:



Kelley Depo. at 94:7-15.



12

Kelley Depo. at 97:16-20.



Kelley Depo. at 98:3-19; 26:1-5. Further, the USPTO made changes to its application system

during that time, but Kelley did not analyze whether those changes affected data preservation:



Kelley Depo. at 110:12-23. Kelley could not confirm that the information is accurate because he

did no analysis.



Kelley Depo. at 111:5-16. In fact, he has no firsthand knowledge of internal USPTO processes,

hasn't spoken to anyone at the USPTO, and is not aware of anyone in this case who has spoken to anyone at the USPTO.



Kelley Depo at 9:16-10:8.

Hyland and Kelley do not apply reliable methods because they merely accept the inadmissible excel spreadsheets at face value and parrot them. Accordingly, they should be excluded.

### D. It Follows That Hyland And Kelley Do Not Reliably Apply Principles And Methods To The Facts Of The Case

As discussed *supra*, KPM's purported experts do not reliably apply principles and methods to the facts of this case because no method has even been identified other than accepting the excel spreadsheets as true, and those are not facts in any event. That both experts would need to confirm the authentication and accuracy of the excel spreadsheets speaks volumes—KPM has no witness who can explain the excel spreadsheets. Any "opinions" based on them should be excluded.

## V. CONCLUSION.

For the foregoing reasons, KPM's proffered expert reports of Ms. Hyland and Mr. Kelley should be stricken in their entirety and they should be prevented from offering any opinions or testimony in this matter.

Respectfully submitted,

Dated: July 12, 2024

*/s/ Stephen F.W. Ball, Jr.*
Stephen F.W. Ball, Jr. (BBO # 670092)
HUSCH BLACKWELL LLP
One Beacon Street, Suite 1320
Boston, MA 02108
Telephone: 617-598-6700
Fax: 617-720-5092
Stephen.Ball@huschblackwell.com

Brendan G. McDermott (*pro hac vice*)
HUSCH BLACKWELL LLP
8001 Forsyth Boulevard
Suite 1500
St. Louis, MO 63105
Telephone: 314-480-1500
Fax: 314-480-1505
Brendan.McDermott@huschblackwell.com

*Attorneys for Plaintiff IEP Technologies, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 12th day of July 2024, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

<em>/s/ Stephen F.W. Ball, Jr.</em>

HB: 4892-5422-6639