**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IEP Technologies, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>KPM Analytics, Incorporated f/k/a Statera Analytics Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation,<br><br>    Defendants. | Civil Action No.<br>1:21-cv-10417-JEK |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**<u>SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS</u>**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.     INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ......................................................................................................... 1

  A.    IEP's Trademark Filings .................................................................................... 1

  B.    KPM's Counterclaims ........................................................................................ 3

III.   LEGAL STANDARD ................................................................................................. 4

  A.    Summary Judgment ............................................................................................ 4

  B.    Trademarks ......................................................................................................... 5

IV.    ARGUMENT ............................................................................................................... 6

  A.    KPM Has Not Identified A Material Misrepresentation (Count I) ..................... 7

    1.    KPM cannot show a misrepresentation made in the 2014 application ........................... 7

    2.    John Shea personally signed the 2020 declaration. ....................................................... 12

    3.    KPM cannot show the specimen submitted in 2020 was improper ............................... 13

    4.    KPM cannot show that IEP knew a representation was false, that it intended to induce
          the USPTO to rely on a misrepresentation, or that the USPTO was deceived into registering
          the mark. ...................................................................................................................... 14

  B.    KPM Has Not Identified Any Non-Use (Count II) ............................................ 15

V.     CONCLUSION .......................................................................................................... 15

## **<u>TABLE OF AUTHORITIES</u>**

Page(s)

Cases

*Benoit v. Tech. Mfg. Corp.*,
   331 F.3d 166 (1st Cir. 2003) ........................................................................................... 4

*Dubliner, Inc. v. E. Coast Tavern Grp., Inc.*,
   No. CV 23-10567-JGD, 2023 WL 8627627 (D. Mass. Dec. 13, 2023) .................................... 6

*Great Concepts, LLC v. Chutter, Inc.*,
   90 F.4th 1333 (Fed. Cir. 2024) ................................................................................... 6, 12

*In re Bose Corp.*,
   580 F.3d 1240 (Fed. Cir. 2009) ................................................................................... 5, 7

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
   469 U.S. 189 (1985) ....................................................................................................... 6

*SoClean, Inc. v. Sunset Healthcare Sols., Inc.*,
   554 F. Supp. 3d 284 (D. Mass. 2021) ............................................................................... 5

*SonicSolutions Algae Control, LLC v. Diversified Power Int'l, LLC*,
   No. CV 21-30068-MGM, 2024 WL 1043001 (D. Mass. Mar. 8, 2024) ......................... 4, 5, 14

*Volkswagenwerk Aktiengesellschaft v. Wheeler*,
   814 F.2d 812 (1st Cir. 1987) ........................................................................................... 6

Statutes

15 U.S.C. § 1057(b) ........................................................................................................... 6
15 U.S.C. § 1058(b)(1)(C) ................................................................................................. 13
15 U.S.C. § 1064 ............................................................................................................... 6
15 U.S.C. § 1064(3) ........................................................................................................... 5
15 U.S.C. § 1115(b) ........................................................................................................... 6

Rules

Fed. R. Civ. P. 56(a) ........................................................................................................... 4

## I.      INTRODUCTION

Plaintiff IEP Technologies, LLC ("IEP" or "Plaintiff") hereby moves for Summary Judgment on the Counterclaims of Defendants KPM Analytics, Incorporated f/k/a Statera Analytics Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation (collectively, "KPM" or "Defendants"). In its Amended Answer and Counterclaims, KPM asserted two claims: "Count I [for] Cancellation of U.S. Registration No. 4,648,573 for Fraud in Obtaining and Maintaining the Registration"; and "Count II [for] Cancellation of U.S. Registration No. 4,648,573 for Non-Use of Goods and Services Identified in the Registration." ECF No. 38 at 28, 29.

From the outset, KPM's Counterclaims of fraud[1] were based on flimsy arguments and unsupported inferential leaps. While the Court afforded KPM numerous discovery opportunities to support its claims, KPM has failed to identify factual support, much less by clear and convincing evidence. No reasonable jury could find in favor of KPM's Counterclaims.

For the reasons stated, Summary Judgment in favor of IEP is therefore warranted on KPM's Counterclaims Count I and Count II.

## II.     BACKGROUND

### A.      IEP's Trademark Filings

On April 11, 2014, IEP filed an application for its hexagon mark which ultimately became Reg. No. 4,648,573 ("the '573 Registration"). SOF at ¶ 1. IEP's registration covers the following goods and services in Classes 9, 37, and 42 respectively:

> Class 009 - Safety Equipment For Suppression, Isolation And Venting Of
> Explosions, Namely, Explosive Containment Vessels And Structural Parts
> Therefor; Safety Hardware Systems Comprised Of Detectors, Electronic Control

---

[1] While Count II is styled as a claim for "non-use", it repeats the same allegations KPM has made with respect to its Count I fraud claim, i.e., that IEP allegedly defrauded the USPTO because it never used its mark with certain goods and services (discussed *infra*).

Units, Suppressors, Isolation Valves, And Vents Sold As A Unit For Use In Detecting Explosives; Computer Hardware, Software, And Peripherals For Operating Explosion Safety Equipment

Class 037 - Installation And Maintenance Of Safety Equipment For Detection, Prevention, And Abatement Of Explosions

Class 042 - New Product Research And Design Services In The Field Of Safety Equipment And Hardware

SOF at ¶ 2. IEP's first dates of use are at least as early as 2014 in Class 9, and at least as early as 2013 in Classes 37 and 42. SOF at ¶ 3. The USPTO reviewed IEP's application, including the declared statements, description of goods and services, and exemplary specimens of use, and allowed it to register as the '573 Registration on December 2, 2014. SOF at ¶ 4.

Under U.S. law, trademark registrants must file an allegation of continued use between the 5th and 6th year of registration. Accordingly, Whitmyer IP Group (IEP's former law firm[2]) duly prepared a combined Section 8 and Section 15 declaration for signature by a representative of IEP. The Section 8 portion relates to continued use[3], while the Section 15 portion relates to incontestability[4]. Each requires separate statements but are often filed together. ████████

████████████████████████████████████████████████

██████████████████████████████ SOF at ¶ 5. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██. SOF at ¶ 6. ████████████████████████████████. SOF at ¶¶ 7, 8.

---

[2] The Court granted a narrow waiver of privilege relating to documents surrounding the Section 8 and Section 15 declaration in order to allow IEP to rebut KPM's allegations. ECF No. 125 ("The court has reviewed the four unredacted emails IEP submitted pursuant to [119]. See[120]. The court finds that the redacted material is privileged, not relevant to the signature issue, and need not be produced.").

[3] https://www.uspto.gov/sites/default/files/documents/TM-TEAS-Declaration-of-Use-of-Mark-in-Commerce-Under-Section-8.pdf

[4] https://www.uspto.gov/sites/default/files/documents/TM-TEAS-Declaration-of-Incontestability-of-a-Mark-under-Section-15.pdf



. SOF at ¶ 9 (citing Ex. 6 (" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ")). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ . SOF at ¶ 10.

The USPTO reviewed the declaration, including the declared statements and exemplary specimens of use, and accepted the declaration, granting continued registration as well as incontestability for the '573 Registration. SOF at ¶11.

Mr. Shea's contemporaneous emails with IEP's representatives in Europe show he signed the declaration. At KPM's insistence, the Court appointed an independent forensic expert to evaluate these emails. ECF No. 129 at 3-4 (showing KPM's request for such review); ECF No. 132 (ordering hiring of third-party consultant). The independent forensic expert concluded "I do not see anything in these messages that indicates that there might be anything missing or suspicious about these emails." ECF No. 164-1. The Court then ruled that "neither the expert nor KPM presents any indicia of nefarious conduct on IEP's part…" ECF No. 165.

**B.      KPM's Counterclaims**

IEP filed its Complaint on March 10, 2021. ECF No. 1. KPM answered without counterclaims on May 11, 2021. ECF No. 8. The parties stipulated that discovery was scheduled to close on February 25, 2022, and the Court adopted the parties' deadlines. ECF No. 14 at 6, 21. Accordingly, this case was scheduled to end years ago.

However, KPM sought to amend its answer to include counterclaims. ECF No. 28-1. Its basis for doing so was testimony from Mr. Shea in his personal deposition that he did not recall signing the declaration. *Id*. This was not surprising as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████ *See, e.g.,* Ex. 15 at 128:15-18. The Court allowed the amendment[5] and afforded KPM more opportunity for discovery on its allegations of fraud.

Notably, KPM delayed until the end of fact discovery (for the third time—KPM reopened discovery twice) to take IEP's corporate deposition, having cancelled scheduled depositions multiple times and thus revealing its true intentions of dragging out this litigation in bad faith. ECF No. 154 at 2 (showing timeline of KPM's refusal to take IEP's corporate deposition as agreed); *See also* Ex. 14, Dec. 11, 2023, Hr. Tr. (Judge Kelley: "...it does kind of smack of just running up costs for tactical reasons..."). When KPM questioned Randy Davis, he unequivocally confirmed the accuracy of IEP's listing of goods and services, and identified responsive products in each trademark class (*See, infra*). SOF at ¶ 12. Further, John Shea also identified goods confirming the accuracy of his 2020 declaration to the USPTO. (*See, infra*).

## III.   LEGAL STANDARD

### A.   Summary Judgment

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact' and the moving party 'is entitled to judgment as a matter of law.'" *See SonicSolutions Algae Control, LLC v. Diversified Power Int'l, LLC*, No. CV 21-30068-MGM, 2024 WL 1043001, at *4 (D. Mass. Mar. 8, 2024) (citing *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003)). (citing Fed. R. Civ. P. 56(a)). "An issue is 'genuine' when the evidence is such that a reasonable factfinder could resolve the point in favor of the non-moving party, and a fact is 'material' when it might affect the outcome of the suit under the applicable law." *Id.*

---

[5] The Court allowed the procedural amendment, but that is not an endorsement on its substantive merits. Just because KPM *could* file its amendment does not mean it *should* have, and with no legal or actual basis (with a heightened bar for a fraud claim) it was improper for KPM to ever raise these counterclaims.

### B.       Trademarks

Pursuant to 15 U.S.C. § 1064(3), a petition to cancel a registration of a mark may be filed at any time if "its registration was obtained fraudulently." *Id*. "Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *See In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). "A party seeking cancellation of a trademark registration for fraudulent procurement bears **a heavy burden of proof**." *Id*. (emphasis added). "Indeed, 'the very nature of the charge of fraud requires that it be proven 'to the hilt' **with clear and convincing evidence**. There is no room for speculation, inference or surmise and, obviously, **any doubt must be resolved against the charging party**." *Id*. (emphasis added).

"In order to establish a claim of fraud in the procurement of a federal registration, [KPM] must prove the following by clear and convincing evidence: (1) that [IEP] made a false representation to the PTO regarding a material fact; (2) that [IEP] knew that the representation was false; (3) that [IEP] intended to induce the PTO to act in reliance on the misrepresentation; and (4) the PTO was thereby deceived into registering the mark." *SoClean, Inc. v. Sunset Healthcare Sols., Inc.*, 554 F. Supp. 3d 284, 295 (D. Mass. 2021), aff'd, 52 F.4th 1363 (Fed. Cir. 2022). "[D]eception must be willful to constitute fraud." *See In re Bose Corp.*, 580 F.3d at 1243. Intent must be shown by "clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." *Id*. at 1245. Absent the requisite intent to mislead the USPTO, even a material misrepresentation would not qualify as fraud warranting cancellation. *See In re Bose Corp.*, 580 F.3d at 1243. When there is no record evidence of intent, summary judgment is appropriate. *See SonicSolutions Algae Control*, 2024 WL 1043001, at *16 (granting summary judgment because "The court can discern no evidence of intent in the record, and SSAC advances nothing but the speculative allegations of fraud…").

5

In addition, fraud must be shown in "obtaining" the registration. Section 14 of the Lanham Act, 15 U.S.C. § 1064, does not permit cancellation relating to statement made during a Section 15 declaration. *See Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333, 1340 (Fed. Cir. 2024) ("We conclude that Section 14, which allows a third party to seek cancellation of registration when the 'registration was obtained fraudulently,' does not authorize cancellation of a registration when the incontestability status of that mark is 'obtained fraudulently.'"); *See also Dubliner, Inc. v. E. Coast Tavern Grp., Inc.*, No. CV 23-10567-JGD, 2023 WL 8627627, at *5 (D. Mass. Dec. 13, 2023).

Still further, where a mark is on the principal register with the USPTO, the mark enjoys a statutory presumption of validity and thus is presumed to be used in commerce, non-functional, and distinctive. *See* 15 U.S.C. § 1057(b). This presumption is even stronger once a mark obtains incontestable status. *See* 15 U.S.C. § 1115(b) (an incontestable "registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark . . . Such conclusive evidence shall relate to the exclusive right to use the mark on or in connection with the goods or services specified in the affidavit."); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 200 n.6 (1985).

Finally, "the cancellation of a trademark registration does not extinguish common law rights that registration did not create. *See Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 819 (1st Cir. 1987)

## IV.   ARGUMENT

KPM's Counterclaims have no factual support and KPM cannot meet its high burden of proof. KPM has asserted two Counts: (Count I) that IEP made material representations in the obtaining and/or maintenance of the '573 Registration; and (Count II) that IEP does not use the '573 Registration with certain goods and/or services. Each count proffered by KPM is

6

demonstrably false, as shown by the USPTO's review and acceptance of IEP's filings, as well as testimony and documents from IEP and its witnesses. KPM has not identified any evidence in support of its claims. Regardless, KPM cannot show any intentional wrongdoing to support a claim for fraud. Thus, Summary Judgment is appropriate.

### A.        KPM Has Not Identified A Material Misrepresentation (Count I)

KPM never articulates any allegedly material representations in Count I of its Counterclaims. Its allegation is as follows:

> IEP has knowingly made one or more false, material representations of fact in connection with an application to register a trademark at the USPTO, or a post-registration document, with the intent of obtaining or maintaining a trademark registration from the USPTO to which it is otherwise not entitled.

ECF No. 38 ¶ 71. Based upon the "Facts" section in KPM's Counterclaims, IEP understands KPM to be making three arguments: (1) that the application that became the '573 Registration improperly claimed use for certain goods/services; (2) that Mr. Shea did not sign the combined Section 8 and 15 declaration; and (3) that a trademark specimen submitted with Mr. Shea's declaration was improper. There is no evidence to support any of these arguments.

### 1.        KPM cannot show a misrepresentation made in the 2014 application

KPM appears to contend that Mr. Randy Davis, IEP's then-CEO, falsely claimed IEP's mark was being used in connection with "safety hardware systems…for use in detecting explosives" and "new product research and design services in the field of safety equipment and hardware." ECF No. 38. This is based on nothing but mere speculation, which does not meet KPM's heavy burden. *See In re Bose Corp.*, 580 F.3d at 1243 ("There is no room for speculation, inference or surmise and, obviously, **any doubt must be resolved against the charging party.**") (emphasis added).

As an initial matter, KPM's counsel wrote to IEP on September 30, 2020, and tried to

differentiate the parties' goods/services by emphasizing that IEP's products are used in "detecting explosives": ECF No. 31-5 at 2. Accordingly, ***KPM previously reviewed publicly available information and concluded that IEP sells the very products it later claimed it does not***.

Regardless, IEP's witnesses confirmed the accuracy of its trademark filings. Mr. Davis was deposed during this case and confirmed that the goods and services listed in the 2014 application are accurate:



Ex. 9 at 173:15-25. Accordingly, IEP's listing of the goods and services in 2014 was accurate. SOF at ¶ 12. And IEP continues to sell all of these products and services today. SOF at ¶ 20.

Specifically with respect to "detecting explosives," Mr. Davis identified several IEP products that fall under that category:



Davis 121:14-21.



Davis 130:11-25.

Davis 132:17-133:2.

Davis 134:12-24.

Davis 140:15-19.

Davis 145:9-24

IEP is in the business of providing safety products and systems for preventing/mitigating

fire and explosions. SOF at ¶ 15. An explosive is anything that can explode, including material in

the process of exploding that can explode further. SOF at ¶ 16. As described in an IEP brochure, explosions occur due to "explosive materials" and "[a]s a rule, if a material can burn, under the right conditions, it can and will explode." SOF at ¶ 18. The brochure explains that explosions also occur due to "explosive environments", such as "[c]onveying, processing, pulverizing or storing of combustible materials." SOF at ¶ 19.

During prosecution of its trademark application, IEP submitted a specimen showing its EX Control Panel product. SOF at ¶ 28. The Trademark Office reviewed and accepted this specimen. SOF at ¶ 28. Information for IEP's products, including the EX Control Panel, is also publicly available on the Internet. SOF at ¶ 28. ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ SOF at ¶ 28. The EX Control Panel is still sold by IEP today. SOF at ¶ 29.

Accordingly, IEP's products detect explosives in order to prevent an explosion entirely and/or mitigate further explosion. SOF at ¶ 17.



Davis 158:10-13.

IEP's systems[6] are customized and designed for each application. SOF at ¶ 21. For example, not only does a food processing line differ from a chemical processing line, but the equipment and layout in each food processing line differs from one another. SOF at ¶ 21. Because

---

[6] IEP sells individual products as well as design solutions ("systems") that incorporate numerous products.

IEP's explosion protection systems are specific to the application in which they are to be used, IEP provides new product research and design services to its customers. SOF at ¶ 26. For instance, IEP provides materials testing services, which allow IEP to better understand the explosion risks associated with its clients' materials and industrial processes. SOF at ¶ 26. Knowing the risks allows IEP to provide custom explosion protection system design services to its customers. SOF at ¶ 26.

As described in an IEP brochure, IEP has a Combustion Research Center and offers system design services. SOF at ¶ 22. The IEP's Combustion Research Center, using recognized test methods such as those published by ASTM, U.S. DOT, UN, and others, can conduct testing to determine the combustion properties of process material including dusts, liquids, and gases. SOF at ¶ 23. Understanding the characteristics of a material is the first step in designing a suitable protection solution. SOF at ¶ 23. IEP's engineers, using a proprietary Computer Modeled System Design, develop a protection solution that meets an individual application's needs. SOF at ¶ 24. IEP provides key support and documentation at this stage to ensure the understanding of the overall design. SOF at ¶ 24. Together with an on-site design and pre-installation meeting, IEP engineers will review the system performance when employing the recommended solution. SOF at ¶ 24.

During prosecution of its trademark application, IEP submitted specimens showing its research and design services. SOF at ¶ 27. Information on IEP's research and design services is also publicly available on the Internet. SOF at ¶ 27. The specimens included information on the "[d]evelopment of customized system drawings, manuals and after-market support [] performed daily by [a] team of professionals." SOF at ¶ 27. The specimens also included information on IEP's materials testing services, since "[u]nderstanding the characteristics of your material is the first step in designing a suitable protection solution." SOF at ¶ 27. The Trademark Office reviewed and

11

accepted these specimens. SOF at ¶ 27.

Accordingly, IEP's sells new product research and design services in the field of safety equipment and hardware. SOF at ¶ 25.

### 2.    John Shea personally signed the 2020 declaration.

KPM appears to contend that Mr. Shea did not sign his Section 8 declaration[7]. ECF No. 38 at ¶ 35. Despite the fact that KPM has not identified any legal support that this would somehow rise to a level of fraud[8], the evidence unequivocally shows that Mr. Shea did personally sign his declaration.

KPM's basis for amending its counterclaims to argue fraud (KPM also uses the word "forged" in its Counterclaims) was a bad-faith mischaracterization of Mr. Shea's deposition testimony. Mr. Shea testified that he did not remember signing his declaration back in 2020. This does not mean that he did not sign it, much less that the declaration was fraudulently made— ███. Ex. 15, Shea Tr. at 128:15-18. ██████████████████████████████████████ ████████ Ex. 15, Shea Tr. at 131:1-3 ("███████████████████████████████ ███████████████████████████.").)

In order to resolve this issue, IEP made a limited waiver of privilege with respect to emails sent between Mr. Shea and IEP's legal representatives. This included an email from Mr. Shea ███████████████████████████████████ SOF at ¶ 9 (citing Ex. 6 ("██████████████████████████")). A Court-appointed expert authenticated

---

[7] The statements made during the Section 15 declaration cannot support fraud as a matter of law. *Great Concepts*, 90 F.4th at 1340.

[8] KPM has never identified any legal support that an otherwise accurate declaration signed by another would somehow constitute fraud. KPM has never identified anything inaccurate in the declaration, providing an additional reason by Summary Judgment is appropriate.

these emails, finding no errors. ECF No. 164-1; 165.

KPM even harassed the paralegal involved in preparing the declaration, subpoenaing her computer records and demanding a deposition. ████████████████████████████████ ████████████████████████████████████████████████████████████ SOF at ¶ 13. However, ████████████████████████████████████████. SOF at ¶ 14. ████████████████████████████████. SOF at ¶ 13.

When KPM finally deposed Mr. Shea as IEP's corporate representative (KPM cancelled his scheduled deposition multiple times in an effort to delay the case), he confirmed he signed his declaration. SOF at ¶ 7. This is not surprising as his recollection had been refreshed by the contemporaneous emails that were authenticated by this Court's independent expert.

Accordingly, all of the evidence shows that Mr. Shea personally signed his declaration: the declaration itself; Mr. Shea's testimony; the contemporaneous emails; and the paralegal's testimony. KPM has identified no evidence to the contrary.

### 3. KPM cannot show the specimen submitted in 2020 was improper

KPM appears to contend that Mr. Shea submitted an improper specimen with his Section 8 declaration. ECF No. 38 at ¶ 62. The Lanham Act requires submittal of a specimen "showing current use of the mark in commerce." 15 U.S.C. § 1058(b)(1)(C). The specimen shows a product bearing IEP's mark that has been continuously sold and used in commerce by IEP for years and is still sold today.

A simple review of IEP's website shows that IEP's use of its mark had not changed:



(Left, specimen from declarations dated April 11, 2014, and November 23, 2020 (ECF No. 28-3 at 10, 15); middle, picture of product from user manual dated December 10, 2020; right, picture from IEP's website (https://www.ieptechnologies.com/whats-the-solution/components)). The use of the logo on the EX Control Panel has not changed since IEP filed for its trademark application on April 11, 2014. SOF at ¶ 29. The EX Control Panel product is still sold today. SOF at ¶ 29.

As such, the specimen showed current use of the mark as required by the Lanham Act. The Trademark Office reviewed and accepted the filing without exception. SOF at ¶¶ 11, 27.

### 4.    KPM cannot show that IEP knew a representation was false, that it intended to induce the USPTO to rely on a misrepresentation, or that the USPTO was deceived into registering the mark.

It bears repeating that KPM has not even identified legal support for its contentions that these events (1) somehow rise to the level of fraud or (2) would somehow affect IEP's trademark rights. As an additional (and perhaps more straightforward) reason to grant Summary Judgment, KPM has not shown **any** intent by IEP to induce the USPTO to rely on a misrepresentation, much less that the USPTO was deceived. *See SonicSolutions Algae Control, LLC*, 2024 WL 1043001, at *16. For this reason alone, Summary Judgment is appropriate.

### B.    KPM Has Not Identified Any Non-Use (Count II)

For Count II, KPM contends the following:

78. IEP does not and/or has not used the mark of the '573 Registration in commerce in connection with safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives.

…

80. IEP has not used the mark of the '573 Registration in connection with providing new product research and design services in the field of safety equipment and hardware to others.

ECF 38 at ¶¶ 78, 80. However, these are the same arguments KPM made with respect to Count I.

As discussed *supra*, IEP has and continues to use its mark in connection with these goods and

services. KPM has not identified any evidence to the contrary.

## V.    CONCLUSION

KPM was afforded numerous opportunities in discovery to find support for its allegations.

However, after years of discovery extensions KPM has found nothing. No evidence supports

KPM's Counterclaims and Summary Judgment in favor of IEP is proper.


                                    Respectfully submitted,


Dated: July 12, 2024               */s/ Stephen F.W. Ball, Jr.*
                                   Stephen F.W. Ball, Jr. (BBO # 670092)
                                   HUSCH BLACKWELL LLP
                                   One Beacon Street, Suite 1320
                                   Boston, MA 02108
                                   Telephone: 617-598-6700
                                   Fax: 617-720-5092
                                   Stephen.Ball@huschblackwell.com

                                   Brendan G. McDermott (*pro hac vice*)
                                   HUSCH BLACKWELL LLP
                                   8001 Forsyth Boulevard
                                   Suite 1500
                                   St. Louis, MO 63105
                                   Telephone: 314-480-1500
                                   Fax: 314-480-1505

Brendan.McDermott@huschblackwell.com

*Attorneys for Plaintiff IEP Technologies, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of July 2024, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Stephen F.W. Ball, Jr.*

17