# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

IEP Technologies, LLC,

      *Plaintiff*,

      *v.*

KPM Analytics, Incorporated
f/k/a Statera Analytics Incorporated and
KPM Analytics North America Corporation
f/k/a Process Sensors Corporation,

      *Defendants*.

Civil Action No.
1:21-cv-10417-JEK

## RESPONSE IN OPPOSITION TO
## PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56.1 of the Local Rules of the U.S. District Court for the District of Massachusetts, Defendants KPM Analytics, Incorporated f/k/a Statera Analytics Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation (collectively, "KPM") hereby respond in opposition to the second motion for summary judgment filed by Plaintiff IEP Technologies, LLC ("IEP"). Doc. 221.

**Contents**

I.   Introduction ................................................................................................................. 1

II.  IEP Did Not Seek Leave or Confer with KPM Before Filing a Second Motion..................... 1

III. KPM's Objections to IEP's Evidence...................................................................... 2

    A. IEP's Own Unverified Interrogatory Responses Are Not Admissible ........................... 2

    B. IEP's Emails and Hearsay Documents Are Not Admissible Evidence .......................... 3

IV.  Summary Judgment Should Be Denied as to Counterclaim Count I for Cancellation of the '573 Registration for Fraud on the Trademark Office .................................................... 3

    A. There is a Genuine Dispute as to Whether IEP Made One or More Material Representations of Fact to Maintain the '573 Registration .............................................. 5

        1. There is a Genuine Dispute as to Whether IEP Made a Material Misrepresentation in its 2014 Application and 2020 Declaration of Use ................................................ 5

        2. There is a Genuine Dispute Whether IEP Submitted an Improper Specimen With the Section 8 Declaration for the '573 Registration............................................... 11

        3. There is a Genuine Dispute Whether John Shea Signed the Declaration of Use to Maintain IEP's '573 Registration........................................................................ 15

    B. A Reasonable Inference of Fraud Can Be Drawn From The Evidence ........................ 18

    C. IEP Admits that the USPTO Relied Upon Its False Representations ........................... 19

V.   Summary Judgment Should Be Denied as to Counterclaim Count II for Cancellation of the '573 Registration Due to Non-Use ....................................................................... 20

VI.  Conclusion................................................................................................................. 20

## Table of Authorities

C<small>ASES</small>

*Carballo Rodriguez v. Clark Equip. Co.*,
  147 F. Supp. 2d 66 (D.P.R. 2001)...................................................................... 2

*Clearview Software Int'l, Inc. v. Ware,,* No. 07-cv-405-JL,
  2011 U.S. Dist. LEXIS 101693 (D.N.H. Sep. 9, 2011) ...................................... 3

*Dávila v. Corporación de P.R. para la Difusión Pública*,
  498 F.3d 9 (1st Cir. 2007)................................................................................... 2

*Dubliner, Inc. v. E. Coast Tavern Grp., Inc.*, No. CV 23-10567-JGD,
  2023 U.S. Dist. LEXIS 221645 (D. Mass. Dec. 13, 2023)................................. 5

*Duffy-Mot Co. v. Cumberland Packing Co.*,
  424 F.2d 1095 (CCPA 1970) ............................................................................ 18

*Fisher v. U.S.*,
  425 U.S. 391, 96 S. Ct. 1569 (1976)................................................................. 17

*Gomez–Gonzalez v. Rural Opportunities, Inc.*,
  626 F.3d 654 (1st Cir. 2010)............................................................................... 3

*Hannon v. Beard*,
  645 F.3d 45 (1st Cir. 2011)................................................................................. 2

*In re Cowan*,
  18 U.S.P.Q.2d 1407 (Comm'r Pats. 1990) ...................................................... 15

*In re Dermahose Inc.*,
  82 U.S.P.Q.2d 1793 (TTAB 2007) ................................................................... 15

*In re Dr Pepper Co.*,
  836 F.2d 508 (Fed. Cir. 1987)....................................................................... 9, 11

*In re Locus Link USA*,
  2024 TTAB LEXIS 225 (TTAB 2024)............................................................. 15

*Mini Melts, Inc. v. Reckitt Benckiser, Inc.*, No. 4:07-cv-271,
  2009 U.S. Dist. LEXIS 148588 (E.D.T.X. Feb. 26, 2009) ................................ 4

*On-Line Careline, Inc. v. Am. Online, Inc.*,
  229 F.3d 108 (Fed. Cir. 2000)........................................................................... 18

*Pac. Indem. Co. v. Deming*,
  828 F.3d 19 (1st Cir. 2016).......................................................................7, 8, 14

*Shaw v. Davis*, No. 3:18-CV-0551-MMD-CLB,
  2021 U.S. Dist. LEXIS 164622 (D. Nev. Aug. 31, 2021) ................................. 2

*Spruce Envt. Techs., Inc., v. Festa Radon Techs., Co.*,
  248 F. Supp. 3d 316, 321 (D. Mass. 2017) ....................................................... 3

*Star Sci. Inc. v. R.J. Reynolds Tobacco Co.*,
  537 F.3d 1357 (Fed. Cir. 2008)......................................................................... 18

*Torres v. Cantine Torresella S.r.l.*,
    808 F.2d 46 (Fed. Cir. 1986) ................................................................... 4

*Zurich Am. Ins. Co. v. Watts Regulator Co.*,
    860 F. Supp. 2d 78 (D. Mass. 2012) ....................................................... 1

**STATUTES**

15 U.S.C. § 1058. Duration, affidavits and fees ............................................. 11, 14, 15

15 U.S.C. § 1064. Cancellation of registration ................................................... 3

15 U.S.C. § 1115. Registration on principal register as evidence of exclusive right to use
    mark; defenses ................................................................................... 5

15 U.S.C. § 1119. Power of court over registration ........................................... 3

**OTHER AUTHORITIES**

4 Thomas J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31.80
    (5th ed. 2023) ..................................................................................... 4

**Table of Exhibits**

Exhibit A.   Excerpts from the January 26, 2022 Deposition of David Grandaw
(filed under seal)

Exhibit B.   IEP's IsoFlap and IsoFlap-M Product Manual, IEP003843–3885 (filed under seal)

Exhibit C.   IEP's Two Zone Explosion Protection Control Unit Control Unit Installation,
Operation, and Control Manual, IEP003490–3534 (filed under seal)

Exhibit D.   Excerpts from the October 25, 2023 Deposition of John Shea as Rule 30(b)(6)
Designee for IEP Technologies, Inc. and Exhibits 18 and 20 Thereto
(filed under seal)

Exhibit E.   Excerpts from the July 26, 2023 Deposition of Randal Robert Davis
(filed under seal)

Exhibit F.   Excerpts from the January 27, 2022 Deposition of John Shea (filed under seal)

Exhibit G.   USPTO Signature Log for the '573 Registration (filed under seal)

Exhibit H.   USPTO Submission Log for the '573 Registration (filed under seal)

Exhibit I.   Documents Produced by Charter Communications (filed under seal)

Exhibit J.   Excerpts from the October 30, 2023 Deposition of Debra Duguid
(filed under seal)

Exhibit K.   Cover Letter from the USPTO Pursuant to Subpoena (filed under seal)

Exhibit L.   National Fire Protection Association Glossary of Terms (2021)

Exhibit M.   IEP's HRD Suppressor Type E Brochure (IEP000013–IEP000014)
(filed under seal)

Exhibit N.   IEP's Description of MEX-3 Dynamic Explosion Pressure Detector (IEP001764)
(filed under seal)

Exhibit O.   IEP's UV/IR Flame Detector Brochure (IEP001730–IEP001731)
(filed under seal)

Exhibit P.   Enlarged Image of IEP Control Panel as Shown in Exhibit D at Ex. 18 Thereto

Exhibit Q.   Enlarged Image of IEP Control Panel as Shown in Exhibit D at Ex. 20 Thereto
(filed under seal)

## I.    Introduction

The Court should deny IEP's second motion for summary judgment filed without leave of Court and which the parties did not confer prior to IEP's filing of the motion. As for the merits of IEP's motion, much of IEP's evidence is not even admissible and cannot rightfully be considered by the Court on a motion for summary judgment. And even if the Court were to consider the remaining evidence, KPM identifies numerous genuine disputes of material fact in its accompanying response to IEP's LR 56.1 Statement of Facts. Finally, KPM as the non-movant is entitled to have all reasonable inferences drawn in its favor. As addressed herein, each of these procedural and substantive issues warrants denial of IEP's second motion for summary judgment.

## II.    IEP Did Not Seek Leave or Confer with KPM Before Filing a Second Motion

On June 27, 2024, IEP filed a cross-motion for summary judgment on its own trademark infringement claims with a brief in support but made no argument regarding KPM's counterclaims. *See* Docs. 203 & 204. Now, IEP files a second motion for summary judgment with an accompanying brief in support. Doc. 222.

Where a "first motion remained pending at the time that the second motion was filed, … the second motion might fairly be seen as merely articulating additional grounds for relief." *Zurich Am. Ins. Co. v. Watts Regulator Co.*, 860 F. Supp. 2d 78, 94 n.11 (D. Mass. 2012). With its two motions, IEP has filed thirty-five "pages of memoranda in support of its motion, in violation of L.R.7.1(b)(4), which limits memoranda in support of motions to twenty pages, without leave of court." *Id.* "The better practice would be for the party filing successive Rule 56 motions to seek the Court's permission before filing one." *Id.* IEP sought no such permission.

In this second motion, IEP states that the parties conferred as required by L.R. 7.1(a)(2). Doc. 221. This is not correct. While the parties did confer prior to the filing of each party's initial motions for summary judgment and *Daubert* motions for each party's respective experts, the parties did *not* confer about IEP filing a second motion that exceeds the bounds of permissible motion practice defined in L.R. 7.1(a)(2). IEP never raised it. Declaration of N. Andrew Crain ("Crain"), ¶ 2. Therefore, the Court should deny IEP's second motion for summary judgment.

1

## III.  KPM's Objections to IEP's Evidence

Pursuant to Rule 56(2)(c), KPM may object "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." "'It is black-letter law that hearsay evidence cannot be considered on summary judgment' for the truth of the matter asserted." *Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011) (*quoting Dávila v. Corporación de P.R. para la Difusión Pública*, 498 F.3d 9, 17 (1st Cir. 2007)). Accordingly, KPM objects as follows.

### A.  IEP's Own Unverified Interrogatory Responses Are Not Admissible

"An answer to an interrogatory must be "in writing under oath" and "may be used to the extent allowed by the Federal Rules of Evidence." Rule 33(b)(3) & (c). "The person who makes the answers must sign them, and the attorney who objects must sign any objections." Rule 33(b)(5). "Such requirement is critical because interrogatories serve not only as a discovery device but as a means of producing admissible evidence; there is no better example of an admission of a party opponent, which is admissible because it is not hearsay, than an answer to an interrogatory." *Shaw v. Davis*, 2021 U.S. Dist. LEXIS 164622, *10–11 (D. Nev. Aug. 31, 2021) (citation and internal quotation marks omitted); *see also Carballo Rodriguez v. Clark Equip. Co.*, 147 F. Supp. 2d 66, 75 (D.P.R. 2001) (interrogatory responses are admissible "because they are the admissions of a party opponent") (citation omitted).

For SOF ¶¶ 15, 16, 17, 22, 23 and 24, IEP cites its own interrogatory answers, which are _not_ verified. *See* Doc. 222-12, ECF p.11. "Here, the answers to interrogatories are signed only by Plaintiff's attorney without any supporting materials attested to by a person with personal knowledge; a change in form would not change the admissibility of these materials, as Plaintiff's attorney, who has no personal knowledge, could not testify to the substance of the answer at trial." *Fucarino v. Thornton Oil Corp.*, 1999 U.S. Dist. LEXIS 13609, at *29 (N.D. Ill. Aug. 17, 1999). "Without the verification, the answers have no evidentiary value." *Shaw*, 2021 U.S. Dist. LEXIS 164622, at *11.[1] And even if IEP were to provide a verification with its reply—which would be untimely and improper—IEP's own interrogatory responses still are inadmissible hearsay.

---

[1] KPM's motion cites IEP's interrogatory responses. *See* Doc. 193, SOF ¶¶ 27, 28 & 33. However, IEP expressly states that those facts are not disputed and does not object. *See* Doc. 205.

Accordingly, the Court cannot consider IEP's proffering of the interrogatory responses in support of its SOF ¶¶ 15, 16, 17, 22, 23 and 24.

### B.  IEP'S EMAILS AND HEARSAY DOCUMENTS ARE NOT ADMISSIBLE EVIDENCE

SOF ¶¶ 5 and 6 cite to Ex. 2 and 3, respectively, which are emails containing inadmissible hearsay. "Here, though, [IEP is] relying…on emails written by third parties who have not given sworn statements or been deposed. To the extent that those emails are being offered to prove the truth of the matters asserted in them, they are inadmissible hearsay." *Clearview Software Int'l, Inc. v. Ware*, 2011 U.S. Dist. LEXIS 101693, at *5  (D.N.H. Sep. 9, 2011); *see also, e.g., Gomez–Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 666 (1st Cir. 2010) (applying the hearsay rule to unsworn email). "Because hearsay may not be considered on motions for summary judgment, the Court [must] disregard [these] email[s]." *Spruce Envt. Techs., Inc., v. Festa Radon Techs., Co.*, 248 F. Supp. 3d 316, 321 (D. Mass. 2017) (indicating that the Court cannot rely on or consider inadmissible hearsay email(s) from a third party on motions for summary judgment).

As for SOF ¶¶ 11, 18–19, 22–24, and 27, IEP relies on various documents it produced for the truth of the matter asserted. IEP has made no efforts to authenticate these documents or to have a witness testify as to their contents. Thus, these proffered documents should be disregarded.

### IV.  SUMMARY JUDGMENT SHOULD BE DENIED AS TO COUNTERCLAIM COUNT I FOR CANCELLATION OF THE '573 REGISTRATION FOR FRAUD ON THE TRADEMARK OFFICE

In its first counterclaim, KPM asserts IEP "knowingly made one or more false, material representations of fact in connection with an application to register a trademark at the USPTO, or a post-registration document, with the intent of obtaining or maintaining" the '573 Registration, and therefore the registration should be cancelled pursuant to 15 U.S.C. §§ 1064 and/or 1119. Doc. 38, ECF pp. 38–39 ¶¶ 69–75.

"In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part…." 15 U.S.C. § 1119. "[F]raud in connection with *maintaining* a registration is actionable in a  Section 14 cancellation proceeding…." *Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333, 1338 (Fed. Cir. 2023)

(emphasis in original; *citing Torres v. Cantine Torresella S.r.l.*,808 F.2d 46, 48 (Fed. Cir. 1986) ("Fraud in obtaining renewal of a registration amounts to fraud in obtaining a registration within the meaning of section 14(c) of the Lanham Act."); 4 Thomas J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31.80 (5th ed. 2023) (hereafter "*McCarthy*") ("It is clear that if fraud is found in a Section 8 affidavit or declaration to keep a registration alive or to obtain a renewal, that is a ground for cancellation of the registration.")). This includes cases where a "registration was fraudulently maintained" via a forged signature on a Section 8 declaration. *Mini Melts, Inc. v. Reckitt Benckiser, Inc.*, U.S. Dist. LEXIS 148588, *8 (E.D.T.X. Feb. 26, 2009).

"Because the time for filing a Section 8 [D]eclaration coincides with the time for filing a Section 15 [D]eclaration of incontestability for many applicants, a combined Sections 8 & 15 form exists" and is often submitted by trademark owners. *Great Concepts*, 90 F.4th at 1338 n.4 (citing https://www.uspto.gov/trademarks/maintain). "[T]he happenstance that [the registrant] filed a *combined* declaration, which had one portion devoted to Section 8 and another to Section 15, does not render the Section 8 portion false or fraudulent, and neither does it make the Section 15 portion part of an effort to 'maintain' a registration." *Id.* at 1339.

IEP argues that 15 U.S.C. § 1064 "does not permit cancellation relating to statement (*sic*) made during a Section 15 declaration." Doc.  222, ECF p.9. However, KPM's fraud claim relates to the statements made in the Section 8 portion of the declaration relating to continued use, not the Section 15 portion of the declaration relating to incontestability. *See* Doc. 38, Counterclaims at ¶¶ 59 (alleging the requirement of a specimen showing "current use" under Section 8 and ¶¶ 60–66 (alleging IEP's failure to submit specimens showing "current use"). As noted in *Great Concepts*, 90 F.4th at 1339, it is mere "happenstance" that IEP filed a Combined Section 8 & 15 Declaration of Use and Incontestability Under Sections 8 & 15. Nowhere does KPM allege fraud in the Section 15 portion of the declaration. Accordingly, IEP's reliance on *Great Concepts* is misplaced.

IEP also argues that its mark is incontestable and that it enjoys an "even stronger" presumption of validity. Doc. 222, ECF p.9. "Unfortunately for [IEP], incontestable is not invincible; the Lanham Act lists a number of affirmative defenses an alleged infringer can use…."

*Ga.-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011) (citing 15 U.S.C. § 1115(b)). Section 33 of the Lanham Act provides that incontestability "shall be subject to the following defenses or defects: (1) That the registration or the incontestable right to use the mark was obtained fraudulently…." 15 U.S.C. § 1115(b)(1). Thus, incontestability is no defense to fraud. Therefore, IEP's argument fails.[2]

### A. THERE IS A GENUINE DISPUTE AS TO WHETHER IEP MADE ONE OR MORE MATERIAL REPRESENTATIONS OF FACT TO MAINTAIN THE '573 REGISTRATION

To demonstrate that a trademark owner obtained its trademark registration via fraud, a claiming party must demonstrate "(1) that defendant made a false representation to the [USPTO] regarding a material fact; (2) that defendant knew that the representation was false; (3) that defendant intended to induce the PTO to act in reliance on the misrepresentation; and (4) the PTO was thereby deceived into registering the mark." *Dubliner, Inc. v. E. Coast Tavern Grp., Inc.*, 2023 U.S. Dist. LEXIS 221645, at *12 (D. Mass. Dec. 13, 2023).

IEP points out that KPM alleges three instances of material misrepresentations by IEP in the registration and maintenance of the '573 Registration: "(1) that the application that became the '573 Registration improperly claimed use for certain good/services; (2) that Mr. Shea did not sign the combined Section 8 and 15 declaration; and (3) that a trademark specimen submitted with Mr. Shea's declaration was improper." Doc. 222, ECF p.10. Contrary to IEP's assertion that there is "no evidence to support any of these arguments," *id.*, there is evidence for each.

### 1. There is a Genuine Dispute as to Whether IEP Made a Material Misrepresentation in its 2014 Application and 2020 Declaration of Use

#### i. *The Parties Dispute Whether IEP Sells Products for "Detecting Explosives"*

IEP's '573 Registration states, in part, that IEP sells goods constituting "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents

---

[2] IEP also argues that cancellation does not extinguish common law trademark rights. Doc. 221, ECF p.9. Whether IEP can establish common law rights is irrelevant to KPM's counterclaims, as KPM seeks to cancel IEP's trademark registration, not any putative common law trademark rights that IEP may seek to prove at trial.

sold as a unit for use in detecting explosives." Doc. 222-1. KPM has alleged that this statement is false. Doc. 38 ¶ 78. There is a genuine dispute as to this material fact.

In IEP's motion, IEP tries to massage the wording of the '573 Registration to claim that IEP sells goods that "detect explosives in order to prevent an explosion entirely and/or mitigate further explosion." IEP's SOF ¶ 17. However, that is not what the plain language of the '573 Registration states. That IEP is unwilling to assert that it sells the goods exactly as they are described in the '573 Registration warrants denial of IEP's motion for summary judgment.

But even IEP's massaged description of goods is false. On January 26, 2022, KPM deposed David Grandaw, IEP's Vice-President of Sales, who testified *unequivocally* that 

Ex. A, Grandaw, 61:7–9

). Likewise, on January 27, 2022, IEP's Co-President, John Shea[3], also testified *unequivocally* that

Ex. F, Shea 2022, at 136:9–11

).

Shortly after those depositions, and after KPM moved to add the fraud counterclaim that is the subject of this summary judgment motion (Doc. 28), IEP tried to undo the damage from Grandaw's and Shea's testimony. IEP provided a declaration from Shea on March 2, 2022 stating that "non-explosive materials" can "become explosive due to industrial processes," and, thus, "IEP's products detect…materials that can explode in given conditions." Doc. 31-1, ECF p. 2, ℙ 5.

Notably, in SOF ¶ 17, IEP cites that very paragraph of Shea's March 2022 declaration (*i.e.*, ¶ 5) in an attempt to escape KPM's counterclaims. But in doing so, IEP ignores not only the factual conflict with Grandaw's testimony and Shea's own prior contradictory testimony but also the inconsistency in Shea's March 2022 declaration: "IEP's products **do not detect the presence of inherently explosive material**" but instead detect and mitigate against **generally non-explosive material**, such as dust[.]" Doc. 31-1, ℙ 5 (emphasis added). The March 2022 Shea declaration is a

---

[3] Mr. Shea's full title is Co-President of IEP's *Explosion* Protection Business Unit and not of its **Explosive Detection** Business Unit. *See* Doc. 31-1 ¶ 2.

post hoc rationalization in attempt to avoid the consequences of IEP's '573 Registration describing goods that IEP does not sell.

IEP asserts similar claims that inherently non-explosive materials can become explosive given certain conditions. *See, e.g.*, SOF ¶¶ 18–19. In support of such scientific conclusion, IEP only points to an IEP brochure. *See* Doc. 222.11, ECF p. 6. However, such evidence is hearsay without any supporting declaration from an IEP witness, and no such declaration is provided.

IEP also cites to the deposition testimony of Randy Davis, IEP's CEO at the time of its trademark application, in which IEP claims Davis "identified several IEP products" that "detect explosives in order to prevent an explosion entirely and/or mitigate further explosion." *See* Doc. 222, ECF pp. 11–12; SOF ¶ 17. Yet Davis mischaracterizes the functionality of the identified products. SOF ¶ 17. And most importantly, IEP's citations are to piecemeal products and not to any "***systems*** comprised of detectors, electronic control units, suppressors, isolation valves, and vents ***sold as a unit*** for use in detecting explosives." SOF ¶ 2; Doc. 222-1 (emphasis added).

Here, KPM addresses each of IEP's products claimed in the motion to "detect explosives" and cites admissible evidence to show that they do not. To the extent that there is any dispute about whether IEP's or KPM's characterization of the goods is correct, the Court must "draw all reasonable inferences in favor of … the non-moving party," namely KPM. *Pac. Indem. Co. v. Deming*, 828 F.3d 19, 23 (1st Cir. 2016) (citation omitted).

First, Davis alleges that ████████████████████████████████████ ████████████████████████████████████████████████ Doc. 222, ECF pp.11–12 (citing IEP's Ex. 9, 121:14–21, 130:11–25); *see* Ex. E, Deposition of Randal Davis ("Davis"), 134:12–24 (indicating that ████████████████████████████████████████ ████████████████████████████████████████). But the clear purpose of these sensors from those cited materials is not to "detect explosives" but to detect the amount or volume of dust—a "generally non-explosive material" (Doc. 31-1, ¶ 5)—accumulated in the system to indicate that maintenance is required: "████████████████████████████████ ████████████████████████████████████████████████



███████████████████████████████████████████████████████
██████████████████████████." Ex. B, IsoFlap and IsoFlap-M Product Manual, IEP003865. This operation is not detecting explosives but is focused on detecting blockages that impact operation.

Davis also claims that ████████████████████████████████████████ Doc. 222, ECF p.12 (citing IEP's Ex. 9, 140:15–19). However, ████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████ Ex. C, IEP's Control Unit Manual, IEP003497. ███████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████ Ex. D, Shea 2023, 101:23–24; Ex. E, Davis, 145:21–24. Put another way, IEP's Control Units monitor a suppressor's pyrotechnic component not "in order to prevent an explosion entirely and/or mitigate further explosion" (Doc. 223, SOF ⁋ 17) but ███████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ █████████████████████████

Ex. E, Davis, 148:6–16. Again, although this unit clearly is not detecting explosives but rather the status of an explosive device used in its operation, KPM is at least permitted the factual inference of that fact at this summary judgment stage. *Pac. Indem. Co.*, 828 F.3d at 23.

Finally, IEP's SOF ¶ 17 also references IEP's Response to Interrogatory No. 23. Not only

is the interrogatory hearsay and unsworn testimony of IEP's counsel, which cannot properly be considered, IEP's response includes a list of Bates numbers for documents that IEP elected to produce pursuant to Rule 33(d). IEP does not provide these documents in support of its motion for summary judgment and therefore such vague identification of documents cannot properly be considered by the Court. Not only do none of the documents cited in IEP's response state that they are for the detection of explosives, many also expressly state that they are for the detection of other things entirely, as set forth in KPM's response to SOF ¶ 17.

Even if the Court considered these goods in isolation, IEP provides no evidence of selling the goods "as a unit for detecting explosives." Therefore, there is a genuine dispute of material fact as to whether IEP offers for sale "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives."

### ii. There is a Genuine Dispute as to Whether IEP Offers for Others "New Product Research or Design Services in the Field of Safety Equipment and Hardware"

IEP's '573 Registration also describes "new product research and design services in the field of safety equipment and hardware." Doc. 222-1. KPM has alleged that this is a false statement. Doc. 38 ¶ 80. Thus, there is a genuine dispute as to this material fact.

"Some purported services by a seller of goods simply are inherent in the goods. The service of 'designing,' 'manufacturing,' 'packaging,' or 'distribution' of one's own goods … are 'necessarily done' to have goods to sell." *Id.* "Such activities are clearly performed for one's self, not offered to others." *In re Dr Pepper Co.*, 836 F.2d 508, 511 (Fed. Cir. 1987). "Thus, even though a given term may function as both a trademark and a service mark, the service must constitute more than mere promotion and advertising of one's own goods." *Id.* at 511 (*quoting McCarthy,* § 19.30, at 940 (2d ed. 1984) (footnotes omitted in original)).

In the 30(b)(6) deposition of IEP, John Shea testified that he ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



Ex. D, Shea 2023, 93:13–24 (emphasis added). Mr. Grandaw testified likewise:



Ex. A, Grandaw, 66:18–67:4 (emphasis added).

Yet IEP now claims that because its "explosion protection systems are specific to the application in which they are to be used," IEP therefore "provides *new* product research and design services to its customers." Doc. 222, ECF pp.13–14. IEP relies on SOF ¶¶ 21–27. The only admissible evidence cited in these paragraphs is in SOF ¶ 25 (citing Doc. 222-9, IEP's Ex. 9 at 158:10–13 and 163:8–20). However, that testimony merely states that



Ex. E, Davis, 158:10–13. The second passage provides a specific example, again of IEP customizing its *own* products for a specific customer:



Ex. E, Davis, 163:8–164:11.

However, this testimony demonstrates that IEP "leaves out the key element which is that the activities being questioned here relate to promotion of its *own* goods." *In re Dr Pepper Co.*, 836 F.2d at 511 (italics in original). None of IEP's proffered evidence relates to provide these services "for others." IEP merely contends that it customizes its own products for its own customers. It does not provide new product research and design services in the field of safety equipment and hardware so that others can provide new products to their customers.

Thus, there exists a genuine dispute of material fact as to whether IEP offered for sale "new product research and design services in the field of safety equipment and hardware" at the time of its 2014 application and 2020 declaration of use for the '573 Registration.

### 2. There is a Genuine Dispute Whether IEP Submitted an Improper Specimen With the Section 8 Declaration for the '573 Registration

Section 8 of the Lanham Act states that a declaration of continued use "shall…be accompanied by such a number of specimens of facsimiles showing current use of the mark in commerce ***as may be required by the Director***[.] 15 U.S.C. § 1058(b)(1)(C) (emphasis added).[4] What is "required by the Director" is set forth in the Section 1604.12(a) of the Trademark Manual of Examining Procedure:

> The [Section 8 Affidavit] specimen must show use of the mark within the time period specified in §8 of the Act. If the specimen does not show use of the mark within the time period specified in §8, it is unacceptable to show current use of the mark in commerce. An affidavit or declaration that does not include a specimen that shows current use of the mark in commerce is deficient. *See* 15 U.S.C §1058(b).

"[T]he time period specified in § 8" of the Lanham Act is the time period afforded to applicants to file a Section 8 Declaration—that is, "[w]ithin the 1-year period immediately preceding the expiration of 6 years following the date of registration[.]" 15 U.S.C. § 1058(a)(1) (titled "Time Periods for Required Affidavits"). Here, the required time period in which IEP was to file its Section 8 Declaration was between December 2, 2019 and December 2, 2020. Doc. 222-10, ECF p. p.23 ("USPTO Courtesy Reminder: Trademark Registration Maintenance Document Under Section 8 Must Be Filed Before Deadline or Registration Will Be Cancelled").

---

[4] Without indication or explanation, IEP omits the "…as may be required by the Director" language from its quotation of 15 U.S.C. § 1058(b)(1)(C). Doc. 222, ECF p. 16.

The relevant inquiry is whether the submitted specimen depicts a specific instance where IEP used the mark in commerce at some point during "the time period specified in Section 8" of the Lanham Act. TMEP § 1604.12(a). IEP incorrectly frames the question as whether "[t]he specimen shows a product bearing IEP's mark that has been continuously sold and used in commerce by IEP for years and is still sold today." Doc. 222, ECF p.16. The question is not, as IEP states, whether "the use of [IEP's] logo…[has or] has not changed since IEP filed for its trademark application on April 11, 2014." Doc. 222, ECF pp.16–17. The relevant and proper inquiry is whether the submitted specimen depicts a specific instance where IEP used the mark in commerce at some point during "the time period specified in Section 8." TMEP § 1604.12(a).

IEP has not shown or provided any facts that show the submitted specimen demonstrates use of its mark in commerce during the relevant period (*i.e.*, between Dec. 2019 and Dec. 2022). In fact, IEP's briefing on this Motion indicates the opposite. In its brief, IEP includes the photo display to the right. Doc. 222, ECF p.17. IEP indicates that this photo is the "specimen from declarations dated April 11, 2014"—IEP's initial trademark  application—"and November 23, 2020"—IEP's Section 8 Declaration. *Id.*; *see also* Doc. 222-10, ECF p.14, IEP004260 (specimen of use for IEP's Section 8 declaration) and ECF pp.58 & 64, IEP004304 & IEP004310 (specimen of use for IEP's initial application). However, it is a legal impossibility for a specimen submitted as part of a "declaration dated April 11, 2014" to its initial application to also be representative of IEP's *current* use of the mark in commerce during the relevant Section 8 period, six years later in 2020.

Additionally, John Shea confirmed that the specimen IEP submitted pursuant to the Combined Declaration in 2020 was generated for purposes of serving as IEP's original application in 2014—well before IEP's Section 8 time-period for submitting Combined Declaration. In discussing IEP's application, Shea acknowledges that he personally took the photograph used as the specimen depicted in IEP004304 and IEP004310 "on or before April 11, 2014":

████████████████████████████████████

12



Ex. D, Shea 2023, 110:2–15, 111:9–15, and 111:22–113:2. And Shea confirms that the photograph submitted as the specimen for the '573 Application (IEP004304 & IEP004310) in 2014 appeared to be *the same photograph* utilized as the specimen submitted as part of for IEP's Combined Declaration (IEP004260) in 2020:



*Id.*, 254:7–255:1. Shea's testimony outlines facts that indicate that IEP's Combined Declaration Specimen in 2020 does *not* depict a specific instance of IEP's current use of the mark covered by the '573 Registration during the relevant period in 2019–2020. Instead, all that the specimen of use depicts is use of the trademark on a product "sometime between February and April 2014." *Id.* at 111:22-113:2, 254:12–18. KPM is entitled to "all reasonable inferences" from these facts. *Pac. Indem. Co.*, 828 F.3d at 23.

Even if the Court were to accept IEP's view of the requirements of a Section 8 declaration, IEP's claim that the logo on the EX Control Panel "has not changed" is false. As shown in KPM's response to SOF ¶ 27, IEP has used multiple trademarks on its EX Control Panels since 2014:



Specimen Submitted by IEP to USPTO (2014 & 2020)

Doc. 222-10 at IEP0004304, 4310, 4260 and 4265

IEP Website (December 2014)

Ex. P

IEP Brochure (dated 2016)

Ex. Q

Therefore, there is clearly a dispute of fact as to whether IEP's "use of the logo on the EX Control Panel has not changed since IEP filed for its trademark application," because IEP did not provide a timely specimen from the relevant 2019-2022 time frame, relying instead on an image from 2014.

Finally, IEP's statement that the "Trademark Office reviewed and accepted the filing without exception," Doc. 222, ECF p.17, is not determinative nor informative of whether IEP's specimen of use is compliant with 15 U.S.C. § 1058(b)(1)(C) and TMEP § 1604.12(a). "[T]he Examining Attorney's acceptance of Applicant's identification and supporting specimens does not preclude evaluation of Applicant's use in this expungement proceeding." *In re Locus Link USA*,

2024 TTAB LEXIS 225, at *17 (TTAB 2024). "Moreover, the acceptance of specimens by the Examining Attorney does not control the ultimate question of use." *Id.* Indeed, KPM's counterclaim is predicated on IEP committing fraud on the USPTO in the submission of the specimen of use upon which the USPTO relied for purposes of maintaining the '573 Registration.

As such, there exists a genuine dispute of material fact as to whether IEP's specimen of use complies with 15 U.S.C. § 1058(b)(1)(C) and TMEP § 1604.12(a). IEP is not entitled to summary judgment on KPM's counterclaim that IEP made material representation in the maintenance of the '573 Registration based upon the submission of a non-compliant specimen.

### 3. There is a Genuine Dispute Whether John Shea Signed the Declaration of Use to Maintain IEP's '573 Registration

TMEP § 611.01(c) provides that signatures on documents submitted to the Trademark Office, including Section 8 declarations must be personally entered by the signatory:

> The person(s) identified as the signatory must personally sign the printed form or personally enter his or her electronic signature…. 37 C.F.R. § 2.193(a), (d). Another person (e.g., paralegal, legal assistant, or secretary) may not sign or enter the name of a qualified U.S. attorney or other authorized signatory. *See In re Dermahose Inc.*, 82 U.S.P.Q.2d 1793 (TTAB 2007); *In re Cowan*, 18 U.S.P.Q.2d 1407 (Comm'r Pats. 1990).

IEP's own summary judgment motion highlights the dispute of material fact regarding the propriety of the signature on IEP's Combined Declaration; as IEP writes: "Mr. Shea testified that he did not remember signing his declaration back in 2020. This does not mean that he did not sign it, much less that the declaration was fraudulently made[.]" Doc. 222, ECF p.15. Thus, as IEP's own brief acknowledges, the relevant question centers around whether there exists a dispute of material fact regarding whether Mr. Shea personally entered his signature on IEP's Combined Declaration. But in contemplation of this question, IEP's ignores evidence that directly contradicts its assertion that "the evidence unequivocally shows that Mr. Shea did personally sign his declaration." Doc. 222, ECF p. 15.

What prompted KPM's assertion of fraud relating to the signature of Mr. Shea contained in IEP's Combined Declaration was the testimony of Mr. Shea himself:



Ex. F, Shea 2022, 129:5–10 (emphasis added). But Mr. Shea's testimony does not stop there, as he testified that he has affirmative reason to doubt that he signed his declaration. Mr. Shea's doubt as to whether he personally signed the Combined Declaration stemmed from, for example, his unfamiliarity with the phone number listed as the signatory's phone number—which, in fact, is the phone number of IEP's then-trademark counsel, Whitmyer IP Group:



Ex. F, Shea 2022, 129:11–130:1, 130:14-16 (emphasis added). Similarly, as another source of his uncertainty, Shea pointed to the all-lowercase styling of his name (*i.e.*, "john shea") on the Combined Declaration, noting that such style was atypical for his electronic signatures:



*Id.* at 130:2–13 (emphasis added). These facts and "doubts" of Mr. Shea, which IEP flatly ignores and has yet to address, led KPM to amend its Answer. *See* Doc. ECF pp. 19–20, ¶¶ 31–37. Shea's

conflicting testimony alone is sufficient to deny IEP's motion for summary judgment.

The Court can stop here if it agrees that Shea's testimony creates a material fact dispute. However, there are more facts. KPM subpoenaed documents from Charter Communications, Crain ¶ 11, and from the USPTO, Crain ¶¶ 9, 10 & 13, regarding the signature on the Shea Declaration in an attempt to discover the physical location from where the declaration was signed.[5]

The USPTO's records are the result of an investigation by the USPTO and indicate that ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████. G  (showing ████████████████) & H (showing ████████████████████):

███████████████████████████████████████

The USPTO's investigation record further states that ████████████████████ ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████

Exs. G & H  (italics and underline added; bold in original).

Pursuant to this revelation by the USPTO, KPM subpoenaed documents from Charter Communications in Stamford, CT, which revealed that ████████████████████████ ███████████████████████████████████████████████████ for IEP's

---

[5] These documents are authentic under Rule 901, having been produced in response to a subpoena and a court order. *Fisher v. U.S.*, 425 U.S. 391, 410, 96 S. Ct. 1569, 1581 (1976) (producing documents responsive to a subpoena demonstrates respondent's "belief that the papers are those described in the subpoena") (citation omitted). Also, as addressed in Doc. 209, ECF p.13 *et seq.*, the statements cited herein are admissible under Rule 803(8)(iii). In fact, in SOF ¶ 8, IEP itself—calling them "USPTO records"—cites one of the documents for the truth of the matter asserted.

declaration (Exs. G & H)—to be 

*See* Ex. I, CHARTER-000002.

Ex. D,

Shea 2023, 263:11–264:2; Ex. J, Deposition of Debra Duguid ("Duguid"), 116:1–3

).

Hence, IEP's claims that "all of the evidence shows that Mr. Shea personally signed his declaration" and that "KPM has identified no evidence to the contrary" wholeheartedly misrepresent the evidentiary record. There is a quintessential question of fact for the jury to resolve at trial—whether to credit the original testimony of Mr. Shea and the documents produced by the USPTO and Charter or to credit the *revised* testimony of Mr. Shea and Ms. Duguid's testimony.

### B. A REASONABLE INFERENCE OF FRAUD CAN BE DRAWN FROM THE EVIDENCE

"Because direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence." *In re Bose Corp.*, 580 F.3d at 1245 (quoting *Star Sci. Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008))." "[A]n intent to deceive can be inferred from circumstances demonstrating reckless disregard" and/or a "cavalier attitude indicative of an intent to deceive" the USPTO. *Great Concepts*, 90 F.4th at 1347 (Reyna, J., dissenting on other grounds); *see Duffy-Mot Co. v. Cumberland Packing Co.*, 424 F.2d 1095, 1100 (CCPA 1970). And indeed, "[t]he circumstances surrounding" IEP's registration and maintenance of its '573 Registration "constitute sufficient evidence that a reasonable mind might accept as adequate to support [a] finding of reckless disregard and inference of intent to deceive." *Great Concepts*, 90 F.4th at 1347 (Reyna, J., dissenting on other grounds) (*citing On-Line Careline, Inc. v. Am. Online, Inc*., 229 F.3d 1080, 1085 (Fed. Cir. 2000)) (citation and punctuation omitted).

Mr. Shea admits that IEP's products do not detect the presence of inherently explosive material. *See* Doc. 31-1, ⁋ 5. Despite this understanding, IEP points to a sworn declaration bearing Shea's signature stating that the '573 Registered Mark is used "in commerce on or in connection with the goods/services" identified in the Combined Declaration, including products that "detect explosives." *See* Doc. 222-10, ECF p.13, IEP004259. Additionally, Shea admits that he personally

took the photo used as the Combined Declaration specimen *over six years prior* to the submission of the Combined Declaration in 2020. *See* Section IV(A)(2) *supra*. But despite knowing the specimen did show a product bearing the '573 Registration during the relevant Section 8 period (*i.e.*, 2019-2020), Shea and IEP still point to the declaration bearing Shea's signature, declaring under oath that the specimen depicts current use of the mark (in 2020). *See* TMEP § 1604.12(a).

But those circumstances presuppose that John Shea *even signed* the Combined Declaration, which evidence supports that he did not. KPM is entitled to a reasonable inference of fraudulent intent on IEP's part in light of that evidence, including cited Shea testimony, the subpoenaed USPTO and Charter Communications documents, which the jury may find establishes that ███████████████████████████████████████████████████.

IEP contends the declaration was not forged, as Ms. Duguid was an experienced trademark paralegal that was "responsible for handling trademarks" and preparing "declarations of continued use, renewals, [and] trademark application" while at Whitmyer IP and would have been fully aware that Mr. Shea not personally signing the declaration violates TMEP § 611.01(b). TMEP § 611.01(b) ("All documents must be personally signed or bear an electronic signature that was personally entered by the named signatory. ***Another person (e.g., paralegal, legal assistant, secretary) may not sign or enter the name of an attorney or other authorized signatory***.") (emphasis added); *see* Ex. J, Duguid, 13:24–14:13. However, the jury does not need to expressly find that Ms. Duguid herself signed the declaration. The jury simply needs to find ***that Mr. Shea did not***, invalidating the declaration and demonstrating IEP's reckless disregard of or cavalier attitude toward USPTO rules. Irrespective, at this juncture, the Court need not resolve this genuine dispute of material fact. It is for the jury.

## C.  IEP ADMITS THAT THE USPTO RELIED UPON ITS FALSE REPRESENTATIONS

IEP's argument that KPM has failed to show that the "USPTO was deceived" stands in direct contradiction with IEP's own briefing and Statement of Material Facts. IEP confesses via its own briefing and statement of material facts that the "USPTO[] review[ed] and accept[ed]  IEP's filings." Doc. 222, ECF p. 10. IEP acknowledges that "[t]he USPTO reviewed IEP's application,

including the declared statements, descriptions of goods and services, and exemplary specimens of use and allowed it to register as the '573 Registration[.]" Doc. 223, ⁋ 4. IEP also admits that "[t]he USPTO reviewed the [combined] declaration, including the declared statements and exemplary specimens of use, and accepted the declaration, granting continued registration as well as incontestability." *Id.* at ⁋ 11. And, IEP admits that "[t]he Trademark Office reviewed and accepted [the Combined Declaration] specimen. *Id.* at ⁋ 28. Thus, as IEP indicates, the UPSTO reviewed and relied upon the representations made by IEP in its initial application, Combined Declaration, and materials submitted therewith and, unbeknownst of IEP's perpetrated fraud, granted initial and continued registration of the '573 Registration.

## V.   SUMMARY JUDGMENT SHOULD BE DENIED AS TO COUNTERCLAIM COUNT II FOR CANCELLATION OF THE '573 REGISTRATION DUE TO NON-USE

In its second counterclaim, KPM alleges that IEP "does not and/or has not used the mark of the '573 Registration in commerce in connection" with (i) "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives"; and (ii) "providing new product research and design services in the field of safety equipment and hardware to others." Doc. 38, ECF p.30, ⁋⁋ 78, 80. KPM asserts that because of this non-use "the '573 Registration is invalid and should be canceled pursuant to 15 U.S.C. §§ 1064 and/or 1119." *Id.* at ⁋ 81. Under those sections of the Lanham Act, a court is permitted to order the cancellation of a federal trademark registration "if the registered mark … has been abandoned" and is no longer used by its owner. 15 U.S.C. §§ 1064(3) & 1119.

KPM's arguments regarding IEP's non-use of the mark in the '573 Registration in relation to the aforementioned goods and services are the same as those detailed Section IV(A)(1)(a)–(b), *supra*. Accordingly, KPM "has…identified [] evidence" that demonstrates IEP has not and no longer "continues to use its mark in connection with these goods and services." Doc. 222, ECF p.18. Summary judgment should be denied as to Counterclaim Count II.

## VI.   CONCLUSION

For the foregoing reasons, the Court should deny IEP's motion for summary judgment.

Respectfully submitted this 2nd day of August, 2024.

/s/ N. Andrew Crain

Michael J. Lambert (BBO No. 632053)
*mlambert@sheehan.com*

**SHEEHAN PHINNEY BASS & GREEN PA**
28 State Street, 22nd Floor
Boston, Massachusetts 02109
Telephone: 617.897.5637
Facsimile: 617.439.9363

N. Andrew Crain (*pro hac vice*)
a.crain@thip.law
Charles M. Landrum III (*pro hac vice*)
c.landrum@thip.law
Paul Joseph Spina IV (*pro hac vice*)
p.spina@thip.law
Ivona Relja (*pro hac vice*)
i.relja@thip.law

**THOMAS | HORSTEMEYER LLP**
3200 Windy Hill Rd SE Suite 1600E
Atlanta, Georgia 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

IEP Technologies, LLC,

     *Plaintiff*,

     *v.*

KPM Analytics, Incorporated
f/k/a Statera Analytics Incorporated and
KPM Analytics North America Corporation
f/k/a Process Sensors Corporation,

     *Defendants*.

Civil Action No.
1:21-cv-10417-JEK

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 2, 2024.

/s/ N. Andrew Crain
N. Andrew Crain

*Attorney for Defendant*

22