**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IEP Technologies, LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>KPM Analytics, Incorporated f/k/a Statera<br>Analytics Incorporated and KPM Analytics<br>North America Corporation f/k/a Process<br>Sensors Corporation,<br><br>     Defendants. | Civil Action No.<br>1:21-cv-10417-JEK |

**IEP'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT ON KPM'S COUNTERCLAIMS**

Plaintiff IEP Technologies, LLC's ("IEP" or "Plaintiff") submits this Reply to Defendant KPM Analytics North America Corporation's (collectively, "KPM" or "Defendants") Opposition, ECF No. 242 (the "Opposition"), to IEP's Motion for Summary Judgment, ECF No. 221 (the "Motion").

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................................... ii

I.      INTRODUCTION ............................................................................................................. 1

II.     THERE IS NO LIMIT TO THE NUMBER OF SUMMARY JUDGMENT
MOTIONS, AND IEP'S MOTION IS PROCEDURALLY PROPER ......................................... 1

III.    TELLINGLY, KPM ATTACKS IEP'S EVIDENCE EVEN THOUGH IT IS
ITS HIGH BURDEN, AND IN DOING SO MISAPPLIES THE EVIDENTIARY
STANDARD ................................................................................................................................ 2

IV.    KPM'S ATTORNEY MISCHARACTERIZATIONS CANNOT SATISFY
THE CLEAR AND CONVINCING STANDARD FOR PROVING FRAUD ............................ 4

        A.     KPM Has Not Shown a Material Factual Dispute With Respect to the
                  Intent or Knowledge Elements of Fraud ................................................................. 4

        B.     KPM Has No Admissible Evidence That Mr. Shea Did Not Sign His
                  Declaration, nor Legal Support That an Incorrect Signature Even
                  Constitutes Fraud ..................................................................................................... 6

        C.     KPM's Attorney Argument Cannot Manufacture a Genuine Dispute
                  Regarding IEP's "Safety Hardware Systems … for Use in Detecting Explosives"8

        D.     KPM Continues Its Mere Attorney Mischaracterizations for IEP's
                  "New Product Research Or Design Services," Which Cannot
                  Manufacture a Genuine Dispute ............................................................................ 11

        E.     IEP's Specimen Was Proper as It Sold the Same Product in 2014
                  and 2020, and KPM Provides No Legal Support That an Incorrect
                  Specimen Even Constitutes Fraud ......................................................................... 12

V.     CONCLUSION .............................................................................................................. 13

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Diaz v. City of Somerville*,
   583 F. Supp. 3d 296 (D. Mass. 2022), *aff'd*, 59 F.4th 24 (1st Cir. 2023) ................................. 3

*Fisher v. United States*,
   425 U.S. 391 (1976) .................................................................................................................... 7

*Fraser v. Goodale*,
   342 F.3d 1032 (9th Cir. 2003) ................................................................................................... 2

*Great Concepts, LLC v. Chutter, Inc.*,
   90 F.4th 1333 (Fed. Cir. 2023) .................................................................................................. 5

*In re Bose Corp.*,
   580 F.3d ............................................................................................................................... 4, 5

*In re Dr Pepper Co.*,
   836 F.2d 508 (Fed. Cir. 1987) ................................................................................................. 12

*In re Locus Link USA*,
   2024 TTAB LEXIS 225 (T.T.A.B. July 1, 2024) ..................................................................... 13

*In re Valenite Inc.*,
   84 U.S.P.Q.2d 1346, 2007 WL 2253482 (T.T.A.B. 2007) ...................................................... 13

*Mini Melts, Inc. v. Reckitt Benckiser, Inc.*,
   No. 4:07-CV-271, 2009 WL 10677599 (E.D. Tex. Feb. 26, 2009) .......................................... 6

*Ossur HF v. iWalk, Inc.*,
   No. CIV.A. 12-11061-FDS, 2013 WL 4046709 (D. Mass. Aug. 8, 2013) ............................... 4

*Sandoval v. Cnty. of San Diego*,
   985 F.3d 657 (9th Cir. 2021) ..................................................................................................... 3

*SoClean, Inc. v. Sunset Healthcare Sols.*, Inc.,
   554 F. Supp. 3d 284 (D. Mass. 2021), *aff'd*, 52 F.4th 1363 (Fed. Cir. 2022) ........................ 4

*SonicSolutions Algae Control, LLC v. Diversified Power Int'l, LLC*,
   No. CV 21-30068-MGM, 2024 WL 1043001 (D. Mass. Mar. 8, 2024) ................................... 5

*United States v. Galindez*,
   999 F.3d 60 (1st Cir. 2021) ....................................................................................................... 4

*Zurich Am. Ins. Co. v. Watts Regul. Co.*,
   860 F. Supp. 2d 78 (D. Mass. 2012) ......................................................................................... 1

**Rules**

Fed. R. Civ. P. 56(c)(2) ......................................................................................................... 1, 2

Fed. R. Evid. 803 ................................................................................................................... 7

Fed. R. Evid. 901 ................................................................................................................... 6

Fed. R. Evid. 902 ................................................................................................................... 6

**Other Authorities**

TMEP § 1604.12(a) ............................................................................................................. 12

McCarthy on Trademarks and Unfair Competition § 6:8 (5th ed.) ............................................ 10

## I.  INTRODUCTION

KPM has failed to establish a material factual dispute and summary judgment is warranted. KPM's fraud counterclaims require **clear and convincing evidence**. Despite delaying this case for years while KPM pursued every discovery avenue, the evidence—or lack thereof—confirms there was no fraud. KPM's Opposition rests on mere attorney arguments that attempt to mischaracterize **IEP's evidence and hearsay found in two inadmissible spreadsheets** produced the USPTO, which no witness can authenticate.

IEP has proffered ample evidence showing there was no fraud and KPM has nothing to rebut it. KPM's attorney arguments are not evidence and cannot create a factual dispute to overcome summary judgment. In addition to failing to show any statement by IEP was false, KPM tacitly acknowledges it has no evidence that IEP thought any statement was false or intended to induce the USPTO. Each of these is independently fatal to KPM's counterclaims, but taken together demonstrate that KPM's real goal was to harass, unnecessary delay, and needlessly increase the cost of litigation for IEP.

## II.  THERE IS NO LIMIT TO THE NUMBER OF SUMMARY JUDGMENT MOTIONS, AND IEP'S MOTION IS PROCEDURALLY PROPER

In an effort to distract from the substantive issues, KPM raises two procedural arguments that are both meritless. **First**, there is no limit to the number of summary judgment motions and KPM does not identify one. Neither Federal Rule of Civil Procedure 56 nor this Court's local rules have such a limit. KPM's reliance on *Zurich Am. Ins. Co. v. Watts Regul. Co.*, actually supports the filing of multiple motions. 860 F. Supp. 2d 78, 81 (D. Mass. 2012). In that case, a party filed two motions on the same claim. *Id.* Nonetheless, the Court stated it is "within the Court's discretion to consider a second motion, and I recommend that the Court reach the merits of CIRCOR's second motion." *Id.* at n.11. KPM's claim that IEP is merely articulating additional grounds for relief is a

red herring as IEP's motions relate to distinct legal issues, infringement pursuant to IEP's claims, and fraud pursuant to KPM's counterclaims.

**Second**, KPM misstates the parties' agreement during their meet and confer. As admitted by KPM, the parties met and conferred regarding summary judgment and *Daubert* deadlines. ECF No. 243 at ¶ 2. The parties held that meet and confer on June 4, 2024, with IEP represented by Mr. McDermott and KPM by Mr. Crain and Mr. Landrum. Declaration of B. McDermott at ¶ 1. The Parties recognized they were at an impasse on the issues and ***agreed that the conference would cover <u>all</u> summary judgment and Daubert motions for both parties***.[1] *Id.* at ¶ 2. KPM cannot backtrack from that agreement now.

## III. TELLINGLY, KPM ATTACKS IEP'S EVIDENCE EVEN THOUGH IT IS ITS HIGH BURDEN, AND IN DOING SO MISAPPLIES THE EVIDENTIARY STANDARD

KPM blatantly attempts to distract from its lack of evidence even though it is KPM's burden to show fraud. KPM makes repeated misplaced arguments that IEP's evidence is not admissible and should not be considered. Opposition (ECF No. 242) at 2-3. However, evidence need not be admitted at summary judgment, only have an admissible form:

> But "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see* Fed. R. Civ. P. 56(c)(2). If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment.

---

[1] KPM's declaration is misleading in this regard, stating: "While the parties did confer prior to the filing of each  party's initial motions for summary judgment and *Daubert* motions for each party's respective experts, the parties did not confer about IEP filing a second motion for summary judgment." ECF No. 243 at ¶ 2. This does not say that the parties conferred about particular motions, only that they conferred prior to filing them.

*Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021); *Diaz v. City of Somerville*, 583 F. Supp. 3d 296, 302 (D. Mass. 2022), *aff'd*, 59 F.4th 24 (1st Cir. 2023). All of IEP's evidence is admissible, and its witnesses can authenticate and verify information to the extent needed at trial.

As an example, KPM objects to IEP's interrogatory responses. Opposition at 2. Never mind that KPM admits it also cites to IEP's interrogatory responses.[2] Opposition at 2, n.1. These are IEP's official positions and can be authenticated by an IEP witness. IEP proffered a corporate designee to testify in this case, and KPM has not even alleged that corporate witness could not authenticate the interrogatory responses.

KPM also objects to IEP facts as "hearsay" or "not admissible." For example, it objects that "IEP is in the business of providing systems for preventing/mitigating explosions." ECF No. 244 at ¶ 15. Such objections are simply not applicable at summary judgment. Moreover, KPM's own facts state similar positions regarding "IEP's explosion protection systems" and "IEP's explosion protection and mitigation systems." ECF No. 193 at ¶¶ 17 and 29.

Still further, KPM claims that IEP's emails are inadmissible hearsay. ECF No. 244 at ¶ 9. These emails were sent to or from IEP and can be authenticated by its witness. In addition, they were provided to the Court after being demanded by KPM and ***were authenticated by the Court's independent forensic expert***. ECF No. 164-1; ECF No. 165. It is incredulous that KPM now claims these emails are inadmissible after seeking to have them authenticated.

KPM's bare objections are improper and do not introduce genuine disputes. All of IEP's evidence is admissible, as IEP has witnesses that can authenticate and verify the information to the extent needed.

---

[2] KPM has not verified all of its interrogatory responses either. As trial is not yet scheduled, the parties have ample time to do so.

## IV.   KPM'S ATTORNEY MISCHARACTERIZATIONS CANNOT SATISFY THE CLEAR AND CONVINCING STANDARD FOR PROVING FRAUD

KPM has *no* admissible evidence supporting its fraud claim, but instead relies on attorney arguments mischaracterizing *IEP's evidence* and *hearsay contained in unauthenticated spreadsheets* produced by the USPTO. While IEP has witnesses to authenticate and testify about its evidence, KPM identifies no countervailing witnesses, or anyone who can testify about the spreadsheets. KPM's attorney argument is not evidence and cannot meet the clear and convincing standard. *United States v. Galindez*, 999 F.3d 60, 65 n.6 (1st Cir. 2021); *Ossur HF v. iWalk, Inc.*, No. CIV.A. 12-11061-FDS, 2013 WL 4046709, at *9 (D. Mass. Aug. 8, 2013).

### A.   KPM Has Not Shown a Material Factual Dispute With Respect to the Intent or Knowledge Elements of Fraud

"In order to establish a claim of fraud in the procurement of a federal registration, [KPM] must prove the following by clear and convincing evidence: (1) that [IEP] made a false representation to the PTO regarding a material fact; (2) that [IEP] knew that the representation was false; (3) that [IEP] intended to induce the PTO to act in reliance on the misrepresentation; and (4) the PTO was thereby deceived into registering the mark." *SoClean, Inc. v. Sunset Healthcare Sols.*, Inc., 554 F. Supp. 3d 284, 295 (D. Mass. 2021), *aff'd*, 52 F.4th 1363 (Fed. Cir. 2022). Each element requires clear and convincing evidence. *See In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). Even if KPM could show that IEP made a false representation (it can't, discussed *infra*), *KPM offers no evidence to support at least the elements (2)-(3)*.

Instead, KPM relies merely on a "reasonable inference." Opposition at 18. The law is clear: "There is *no room for speculation, inference* or surmise…." *See In re Bose Corp.*, 580 F.3d at 1243 (emphasis added). "[F]raud requires that it be proven 'to the hilt' with clear and convincing evidence." *Id*. Yet, KPM falsely argues it "is entitled to a reasonable inference of fraudulent intent…" Opposition at 19. KPM is entitled to nothing because intent must be shown by "clear and

4

convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." *In re Bose Corp.*, 580 F.3d at 1245. When there is no record evidence of intent, summary judgment is appropriate. *See SonicSolutions Algae Control, LLC v. Diversified Power Int'l, LLC*, No. CV 21-30068-MGM, 2024 WL 1043001, at *16 (D. Mass. Mar. 8, 2024) (granting summary judgment because "The court can discern no evidence of intent in the record, and SSAC advances nothing but the speculative allegations of fraud…").

KPM ignores this and instead cites the dissent of *Great Concepts*, arguing that "intent to deceive can be inferred from circumstances demonstrating reckless disregard." Opposition at 18 (citing *Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333, 1338 (Fed. Cir. 2023). Not only is this from a dissent, and therefore not law, but KPM identifies no circumstances demonstrating such reckless disregard.

KPM's inference argument also improperly rests on the same evidence it uses for the allegedly false statements. *See* Opposition at 19 (arguing there is a factual dispute about who signed the declaration). Absent the requisite intent to mislead the USPTO, even a material misrepresentation would not qualify as fraud warranting cancellation. *See In re Bose Corp.*, 580 F.3d at 1243. But by relying on the alleged false statements themselves, KPM implicitly recognizes it does not have evidence for the other elements[3]. Even if KPM could show there was a false statement, it still must also show by clear and convincing evidence that IEP ***knew it was false*** and ***intended to deceive*** the USPTO. *See id.* at 1245. KPM has failed to do so as a matter of law.

KPM has ***no*** evidentiary support that IEP knew it made a false representation or intended to deceive the USPTO, and summary judgment is appropriate on each of these bases alone.

---

[3] In other words, a material misrepresentation itself cannot alone constitute fraud. Otherwise, it would vitiate the other required elements.

**B.    KPM Has No Admissible Evidence That Mr. Shea Did Not Sign His Declaration, nor Legal Support That an Incorrect Signature Even Constitutes Fraud**

KPM has not identified a single case where a signature error resulted in losing trademark rights. KPM relies on *Mini Melts, Inc. v. Reckitt Benckiser, Inc.*, No. 4:07-CV-271, 2009 WL 10677599, at *8 (E.D. Tex. Feb. 26, 2009). But that ***unreported*** decision was a report from a Magistrate Judge and KPM fails to inform the Court that the District Judge in *Mini Melts* subsequently denied summary judgment. Ex. A, *Mini Melt*, ECF No. 132. Regardless, that case is easily distinguishable because "[t]he parties agree[d] that McLaughlin forged Mosey's signature on the Section 8 declaration without any authorization." Here, there is no such agreement as IEP has proffered evidence that Mr. Shea signed his Declaration. ECF No. 222, Motion at 2-3.

KPM's primary "evidence" is hearsay found in unauthenticated spreadsheets from the USPTO. Opposition at 17. But there is no witness to authenticate the spreadsheets or otherwise testify about them, they are not admissible at trial, and they cannot be considered part of the record on summary judgment. KPM's authentication arguments fall short.[4] Opposition at 17, n.5. KPM relies on Fed. R. Evid. 901 for the proposition that there is a blanket rule that documents produced in response to a subpoena are inherently authentic. *Id.* This is incorrect. The word subpoena does not even appear in FRE 901 or 902. KPM does not even identify what section of 901 it is relying on, nor has it set forth why it believes documents produced in response to a subpoena are authentic under 901.

KPM's case law is inapplicable, addressing Fifth Amendment self-incrimination that is not

---

[4] KPM has maintained in *Daubert* briefing that the admissibility of the spreadsheets are questions "not presently before the Court." ECF No. 234-1 at 16; *see also* ECF No. 209-1 at 10 ("While the question of admissibility is not presently before the Court—as KPM has not to date sought the admission of any particular statement within the USPTO spreadsheets for the truth of the matter asserted…"). KPM's prior statement are disingenuous, knowing full well it was relying on the spreadsheets.

relevant to a civil case like this. Opposition at 17, n.5; ECF No. 230-7 at 7-8. However, even this case explicitly requires "authenticating testimony." *Fisher v. United States*, 425 U.S. 391, 413 (1976) ("As for the possibility that responding to the subpoena would authenticate the workpapers, production would express nothing more than the tax payer's belief that the papers are those described in the subpoena…***The documents would not be admissible in evidence against the taxpayer without authenticating testimony***.") (emphasis added). There is no authenticating witness here, and KPM does not know who created the spreadsheets, how, or where the information even came from.[5]

In addition, the statements made in the spreadsheets are inadmissible hearsay. KPM states "the statements cited herein are admissible under Rule 803(8)(iii)." Opposition at 17, n.5. But this is incorrect, as the spreadsheets are not public records. KPM claims they "are the result of an investigation by the USPTO," but has no information about who performed the investigation, how, why, where the information came from, etc. Opposition at 17. Proving they are not public, KPM redacts them in its brief as they were produced under a confidentiality order. Opposition at 17.

Still further, KPM ignores the requirements of 803(8)(b) that "the opponent does not show that the possible source of the information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803. As explained by IEP, there are multiple errors within the spreadsheets that indicate a lack of trustworthiness and render them unreliable. ECF No. 105 at 4-6. This has been confirmed by IEP's forensic document expert (who KPM has sought to exclude on the basis his authentication testimony is irrelevant!). ECF No. 209-1 at 8-10. Testimony from Mr. Shea, the paralegal who prepared the declaration, the contemporaneous emails authenticated

---

[5] KPM attempts to circumvent this with its "experts" who testified during deposition that they have no knowledge of who created the spreadsheets, how, or where the information came from. IEP has moved to exclude them for this reason, among others. ECF No. 219.

by this Court's independent expert, and IEP's document forensic expert all indicate that the statements in the spreadsheets are unreliable. ECF No. 223-01, SOF at ¶¶ 7, 9, 10.

The only admissible evidence KPM points to is 2022 deposition testimony where Mr. Shea says he did not remember signing a declaration in 2020. Opposition at 15-16. But not remembering is a far cry from clear and convincing evidence of fraud. And as explained by IEP, Mr. Shea's memory was refreshed when KPM moved to compel privileged emails regarding the signing of the declaration. Mr. Shea confirmed in his subsequent deposition that he did sign the declaration. ECF No. 222-4 at 263:11-23. This timeline is clear, SOF at ¶¶ 5-10, the contemporaneous emails confirm Mr. Shea signed his declaration, and Mr. Shea can and will testify about them at trial if necessary.

There is simply no admissible evidence supporting KPM's allegation of fraud and summary judgement is appropriate.

### C.   KPM's Attorney Argument Cannot Manufacture a Genuine Dispute Regarding IEP's "Safety Hardware Systems … for Use in Detecting Explosives"

KPM uses misleading language by stating there is a dispute "Whether IEP Sells Products for 'Detecting Explosives.'" Opposition at 5. However, the language of the IEP's registration is "safety hardware systems…for use in detecting explosives," as later acknowledged by KPM. Opposition at 5-6. IEP submitted a product specimen showing use during prosecution of its mark. The user manual for that product states "[t]he primary function of the control panel is to continuously monitor for threatening conditions that can lead to an explosion." SOF at ¶ 28. This fact is admitted because KPM merely objects without any substantive denial.

The only "evidence" KPM cites is two deposition excerpts (2 lines each) of IEP's witnesses that it mischaracterizes. Opposition at 6. KPM's reliance of the testimony of Mr. David Grandaw is misplaced, as he testified that IEP's products detect explosives (or deflagrations). He is an

engineer, has no experience with trademarks, was not asked about IEP's trademark description of goods, and testified to his personal opinion and not as a representative of IEP. *See, e.g.*, Ex. B,



Something that can explode is an explosive, and a deflagration is an explosive.[6] *See* https://en.wikipedia.org/wiki/Deflagration ("Deflagration (Lat: de + flagrare, 'to burn down') is subsonic combustion in which a pre-mixed flame propagates through an explosive or a mixture of fuel and oxidizer") (last visited Aug. 16, 2024); https://www.ieptechnologies.com/knowledge-center/faq/deflagration-suppression-systems-available-from-iep-technologies ("Deflagration is a combustion that propagates through a gas or along the surface of an explosive at a rapid rate driven by the transfer of heat") (last visited Aug. 16, 2024).

KPM mischaracterizes Mr. Grandaw's testimony when he was asked whether IEP's products detect the "presence of" (i.e., inherent properties of) specific things. The word "presence" is not in IEP's trademark registration. Just prior to the portions of the deposition cited by KPM,

---

[6] Record evidence, as testified by John Shea, defines a deflagration ███████████ x. C, Shea Dep. Tr. at 106:17-107:5. KPM's reliance on an unproduced, and unauthentic NFPA glossary in response to facts about explosions is improper. ECF No. 243-12. To the extent the Court considers this outside evidence, the NFPA has a blog post defining deflagration "A deflagration *is an explosion* where the flame speed is lower than the speed of sound." *See* Brian O'Connor, *Explosions, Deflagrations, and Detonations,* https://www.nfpa.org/news-blogs-and-articles/blogs/2023/03/27/explosions-vs-deflagrations-vs-detonations (Last visited August 15, 2024) (emphasis added).

Mr. Grandaw was asked ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

     KPM's reliance on Mr. Shea's testimony is equally misplaced. Opposition at 6. KPM misconstrues the difference between explosives, such as TNT, and explosives as relevant to industrial processes. As explained by John Shea and IEP back when KPM moved to add these meritless counterclaims, "IEP's products do not detect the presence of inherently explosive material, such as TNT. However, IEP's products detect and mitigate against generally non-explosive materials, such as dust, which become explosive due to industrial processes. Accordingly, IEP's products detect explosives, or materials that can explode in given conditions." ECF No. 31-1 at ¶ 5. And KPM ignores that Mr. Shea also testified about ██████████████



████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

     Further, there is no requirement in trademark law that a company manufacture (i.e., make)

---

[7] To the extent KPM is arguing some semantic difference between "explosion" and "explosive," (Opposition at 6, n.3.), that distinction is not material. Trademark descriptions are not patent law claims defining exactly the boundary of the right to exclude. *See* McCarthy on Trademarks and Unfair Competition § 6:8 (5th ed.) ("An error sometimes made by both attorneys and judges unfamiliar with trademark law is to treat the infringement of a registered trademark as if it were a case of utility patent infringement."). Even KPM recognizes the explosive risk of generally inert things like dust. ECF No. 204-1 at 5091 ("In paper and packaging production, the sensor's condition monitoring can eliminate a fire and explosion hazard due to the dust associated with the process."), at 5133 (acknowledging risk that materials in bulk "can generate heat and spontaneously combust or explode")."

its own products. Although IEP does make such detectors, IEP can buy them from others. Even KPM does not "make" its detectors but they still have KPM branding. Ex. D, Nagle Dep. Tr. at 23:15-24:2 ███████████████████████████████████████████

███████████████████████████████████████████████

███

Notably, KPM acknowledges other evidence cited by IEP, including brochures, which it tries to dispose of it as hearsay. Opposition at 7. Again, that is not a proper objection at summary judgment. KPM also acknowledges deposition testimony of IEP's Mr. Randy Davis, which was in response to KPM's questions. Opposition at 7-8. KPM states incorrectly that "KPM is at least permitted the factual inference of that fact at this summary judgment stage." *Id*. But this is contrary to the law and KPM's burden for fraud. *See, supra* at 4

In view of all this evidence, KPM clings to the accusation that IEP hasn't shown "systems…sold as a unit." Opposition at 7. But IEP installs solutions with its products, as set forth in its Motion. SOF at ¶¶ 21-24.

KPM has *no* countervailing evidence, only attorney argument that mischaracterizes IEP's evidence. Attorney argument cannot introduce a genuine issue to overcome summary judgment.

### D. KPM Continues Its Mere Attorney Mischaracterizations for IEP's "New Product Research Or Design Services," Which Cannot Manufacture a Genuine Dispute

KPM alleges IEP does not offer its services. Opposition at 9. As an initial matter, this is not even relevant because IEP has shown infringement for its Class 9 goods. *See generally* ECF No. 204. Regardless, the very deposition testimony cited by KPM shows that IEP designs new vents for customers. Opposition at 9-10. KPM also acknowledges a new IR detector that IEP researched and designed for another company. Opposition at 10. IEP's Motion detailed thoroughly how IEP provides research and design services. Motion at 10-12. For example, IEP noted its

Combustion Research Center. SOF at ¶ 22. KPM does not rebut this, but merely claims it is hearsay and inadmissible. ECF No 244 at ¶ 22. IEP witnesses, however, can testify about this and with no evidence of its own KPM's allegations fail.

Even the law KPM cites does not support its position. Opposition at 9-11. In *In re Dr Pepper Co.*, 836 F.2d 508, 511 (Fed. Cir. 1987), the USPTO rejected an application and the court affirmed. *Id.* The mark was directed to "sponsorship and operation of contest services" but the applicant only did sponsorships for itself. *Id.* at 508. Here, by contrast, the USPTO approved IEP's application and IEP ostensibly does new product research and design services for others.

Again, KPM has *no* countervailing evidence, only attorney argument that mischaracterizes IEP's evidence. Summary judgement is appropriate.

### E.   IEP's Specimen Was Proper as It Sold the Same Product in 2014 and 2020, and KPM Provides No Legal Support That an Incorrect Specimen Even Constitutes Fraud

KPM cites no legal support that an incorrect specimen would be fraud. It cites to the Trademark Manual (TMEP), which simply requires a specimen show current use of the mark. Opposition at 11. And the very section cited by KPM states "[i]f the specimen is otherwise deficient, the Post Registration staff will require a substitute specimen, together with an affidavit or declaration that the substitute specimen was in use in commerce on or in connection with the goods/services/classes during the relevant period specified in § 8 of the Act." TMEP § 1604.12(a). The Post Registration staff reviewed and accepted IEP's specimen and did not request a substitute specimen.

The evidence clearly shows that the product at issue was continuously sold and is still sold the same way today. Indeed, ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████" Ex. C, Shea at 255:8-10; 255:13-14 ███████████████

████████████████████ The EX Control Panel showing current use is still on IEP's website today[8]. *See* https://www.ieptechnologies.com/assets/images/file/EX100.1-EX200-Product-Information-Sheet-426EN-19.2.pdf.

KPM tries to impute some requirement that a specimen be a picture of the actual product shipped to an actual customer during the timeframe. Opposition at 12. There is no such requirement. Indeed, webpages can be used to show use and images on a webpage may be reused for decades. *See In re Valenite Inc.*, 84 U.S.P.Q.2d 1346, 2007 WL 2253482 (T.T.A.B. 2007). KPM acknowledges that a specimen must only be "representative" (Opposition at 12), and if the same product is sold in 2014 and 2020, it follows that the same picture can show current use.

It bears repeating that the USPTO reviewed the specimen and did not find it deficient. KPM reliance on *In re Locus Link USA*, 2024 TTAB LEXIS 225, at *17 (T.T.A.B. July 1, 2024) is misplaced. In that case, the registrant agreed they did not use the mark for "evaporative air coolers" and so the marks were cancelled. Here, IEP clearly uses the mark in commerce. Mr. Shea's testimony supports that the product is sold the same way today as it was in 2014.

There was nothing false or fraudulent about the specimen and KPM cannot meet it burden of clear and convincing evidence as a matter of law.

## V. CONCLUSION

KPM has failed to identify a material factual dispute sufficient to avoid summary judgment on its counterclaims. KPM admits that its Count II is duplicative of Count I, and this Court should grant summary judgment in favor of IEP on all of KPM's Counterclaims.

---

[8] KPM's images showing the Fenwal name are irrelevant as that that was a different legal entity. Opposition at 14.

Respectfully submitted,

Dated: August 16, 2024

/s / Stephen F.W. Ball, Jr.
Stephen F.W. Ball, Jr. (BBO # 670092)
HUSCH BLACKWELL LLP
One Beacon Street, Suite 1320
Boston, MA 02108
Telephone: 617-598-6700
Fax: 617-720-5092
Stephen.Ball@huschblackwell.com

Brendan G. McDermott (*pro hac vice*)
HUSCH BLACKWELL LLP
8001 Forsyth Boulevard
Suite 1500
St. Louis, MO 63105
Telephone: 314-480-1500
Fax: 314-480-1505
Brendan.McDermott@huschblackwell.com

*Attorneys for Plaintiff IEP Technologies, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of August 2024, I caused a true and correct

copy of the foregoing to be filed through the court's CM/ECF System.

*<u>/s/ Stephen F.W. Ball, Jr.</u>*