**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IEP TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 1:21-cv-10417-JEK |
| KPM ANALYTICS, INCORPORATED, | ) |
| and KPM ANALYTICS NORTH | ) |
| AMERICA CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,**
**DEFENDANTS' MOTION TO EXCLUDE STEVEN EGENOLF'S EXPERT**
**TESTIMONY, AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**KOBICK, J.**

This is a trademark infringement and unfair competition case. Plaintiff IEP Technologies,
LLC brought this action against defendants KPM Analytics, Incorporated f/k/a Statera Analytics,
Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation
(collectively "KPM") for allegedly violating IEP's trademark. The complaint asserts violations of
the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, a claim for common law trademark infringement and
unfair competition, and a violation of M.G.L. c. 93A, §§ 2, 11. Following discovery, the parties
filed competing motions for summary judgment on all of IEP's claims. KPM also moved to
exclude the report and testimony of IEP's proffered industry expert, Steve Egenolf.

For the reasons that follow, the cross-motions for summary judgment will be denied.
Genuine disputes of material fact as to the likelihood of confusion between the parties' hexagonal
marks preclude judgment for either side on the claims. While there is no evidence of actual

consumer confusion or bad faith on the part of KPM in selecting its mark, both marks are noticeably similar, and IEP and KPM sell and advertise similar products to customers in the same market. Thus, a reasonable jury could, but need not, conclude that KPM's mark creates a substantial likelihood of confusion. The motion to exclude Egenolf's testimony will be granted in part and denied in part. His report will be stricken of, and he will not be permitted to testify about, his statements that "people in the Industry would come to the same conclusion" as him on the likelihood of confusion factors, as well as his opinions regarding evidence of actual consumer confusion and KPM's intent in adopting its mark. The remainder of his testimony is sufficiently reliable and may assist the jury in deciding whether confusion is likely.

## BACKGROUND

The following facts, unless otherwise noted, are either undisputed or recounted in the light most favorable to the non-moving party. *See Roberge v. Travelers Prop. Cas. Co. of Am.*, 112 F.4th 45, 51 (1st Cir. 2024) ("This lens . . . do[es] not change where the parties file cross-motions for summary judgment.").[1]

---

[1] Each party disputes the other's compliance with Local Rule 56.1. KPM argues that IEP improperly filed only a single statement of material facts in support of IEP's cross-motion for summary judgment and in opposition to KPM's summary judgment motion. ECF 229, at 1-3; *see* ECF 205. While failure altogether "to include such a statement constitutes grounds for denial of the motion," L.R. 56.1, IEP's submission entitled "Plaintiff's Responses to Defendants' Statement of Material Facts and Additional Statement of Material Facts" is enough to satisfy the Rule, ECF 205 (capitalization and emphases omitted); *see Plourde v. Sorin Grp. USA, Inc.*, 517 F. Supp. 3d 76, 81 (D. Mass. 2021). IEP similarly contends that KPM did not file a statement of facts in response to IEP's cross-motion for summary judgment. ECF 241, at 3-4. KPM's reply brief in support of its own motion, however, adequately contests some of IEP's stated facts. *See* ECF 227, at 2. KPM also contends that IEP failed to properly contest KPM's stated facts for various reasons. *Id.* at 1-2. Ultimately, only the facts that are "genuinely controverted" are deemed disputed for purposes of the parties' summary judgment motions. *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007) (quotation marks omitted).

## I.     __The Parties' Trademarks.__

IEP has owned U.S. Trademark Registration No. 4,648,573 (the "'573 Registration") since 2013. ECF 205, ¶ 1. The '573 Registration is a mark,　⬡　, that "'consists of a hexagonal shape'" and does not claim any particular color. *Id.* ¶¶ 2-3 (capitalization and citation omitted). The Registration covers, among other things, "'safety equipment for suppression, isolation and venting of explosions, namely, explosive containment vessels and structural parts therefor; safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives; computer hardware, software, and peripherals for operating explosion safety equipment.'" *Id.* ¶ 4 (citation omitted). Non-party Hoerbiger Wien GmbH, IEP's owner, has owned U.S. Trademark Reg. No. 5,790,247 (the "'247 Registration"), which is a color version of the mark,　◉　, since 2019. *Id.* ¶¶ 7-11; ECF 193-6. IEP sometimes uses the hexagonal mark alone but often includes "IEP TECHNOLOGIES" or "HOERBIGER Safety Solutions" as well. ECF 205, ¶¶ 15, 96.

KPM—through its predecessor-in-interest, Process Sensors Corporation, acquired in 2015—has owned U.S. Trademark Registration No. 5,633,755 (the "'755 Registration") since December 2018. *Id.* ¶¶ 53, 79. KPM settled on the following trademark after hiring a designer in 2017 to create a new logo:　PROCESS SENSORS CORPORATION　. *Id.* ¶¶ 39-45. KPM's mark "consists of [a] Hexagon with [an] open circle in the middle followed by the underlined words 'PROCESS SENSORS' and the word 'CORPORATION' underneath the underline." ECF 193-18. Neither the designer nor KPM was aware of IEP's mark when KPM created and registered the mark. ECF 205, ¶¶ 46-48. In February 2018, KPM began using this mark in black, white, greyscale, and multi-color forms. *Id.* ¶¶ 77, 92. KPM's mark almost always appears with the words "Process Sensors Corporation." *Id.* ¶¶ 71-73.

Below is a reproduction of the parties' respective marks:



ECF 14, at 2; *see* ECF 205, ¶¶ 2, 10, 14-15, 23, 42, 71.

## II.    The Parties' Products and Advertising.

IEP and KPM use their hexagonal marks to sell their products directly to consumers or through their network of distributors. *Id.* ¶¶ 27, 52. They both target customers in the powder and bulk processing industry, including the wood, paper, plastic, metal, food, and power sectors. *Id.* ¶ 99. For IEP, those customers include "'purchase agents, process engineers, project engineers, plant managers, and/or system integrators.'" *Id.* ¶ 28 (citation omitted). IEP and KPM have at least 48 customers in common. *Id.* ¶ 102.

IEP advertises its products in person at trade shows or exhibitions; in print with magazines, periodicals, and trade journals; and digitally on social media and its website. *Id.* ¶ 33. KPM similarly advertises online and on social media, including on LinkedIn and YouTube. *Id.* ¶ 104. IEP and KPM both attended the 2018 Bulk and Powder Solids trade show. *Id.* ¶¶ 34, 69, 103.

IEP and KPM sell, among other products, process sensors for preventing fire or explosion hazards. *Id.* ¶¶ 94-95, 101, 115-16. KPM's noncontact infrared cameras and pyrometers, for

example, measure high and low temperatures, which purchasers can use to keep equipment from overheating or catching fire. *Id.* ¶¶ 57, 59, 63-64. IEP has lost at least one sale to KPM. *Id.* ¶ 83.

The record lacks evidence of consumer confusion between KPM's mark and IEP's mark. *Id.* ¶ 82. IEP's regional manager and its Co-President John Shea, however, were confused by KPM's hexagonal mark, believing it to mean that KPM was affiliated with IEP. *Id.*

## II.    <u>Procedural History.</u>

IEP filed this lawsuit against KPM in March 2021. ECF 1. The complaint asserts claims under the Lanham Act for trademark infringement, 15 U.S.C. § 1114 (Count I), unfair competition and false designation of origin, 15 U.S.C. § 1125(a) (Count II), and cancellation of KPM's '755 Registration, 15 U.S.C. §§ 1119 and 1052(d) (Count III). It also alleges common law trademark infringement and unfair competition (Count IV) and unfair and deceptive practices in violation of M.G.L. c. 93A, §§ 2, 11 (Count V). One year later, in March 2022, KPM asserted a counterclaim against IEP seeking cancellation of IEP's '573 Registration under 15 U.S.C. §§ 1064 or 1119 for fraud in obtaining and maintaining the Registration (Count I) and non-use of goods and services identified in the Registration (Count II). ECF 38, at 28-30, ¶¶ 69-81.

After discovery, the parties filed cross-motions for summary judgment on all five of IEP's claims. ECF 191, 203. KPM also filed a motion to exclude the report and testimony of Egenolf, IEP's industry expert. ECF 200. These three motions are at issue here.[2]

---

[2] The parties filed three additional motions to exclude expert testimony, and IEP moved for summary judgment on KPM's counterclaim. ECF 196, 208, 218, 221. These motions will not be resolved in this decision.

## DEFENDANTS' MOTION TO EXCLUDE
## STEVE EGENOLF'S EXPERT TESTIMONY

### I.    <u>Standard of Review.</u>

Rule 702 governs the admissibility of expert opinion evidence. It provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under the rule, "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of" admissibility, not weight. Fed. R. Evid. 702, Adv. Comm. Notes 2023 Amendment.

Consistent with Rule 702, the Supreme Court's seminal decision in "*Daubert* establishes that before admitting expert testimony, the trial court must fulfill its 'gatekeeping role' by making an independent determination that the expert's proffered scientific knowledge is both reliable and relevant." *United States v. Phillipos*, 849 F.3d 464, 470 (1st Cir. 2017) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). The "'focus' of the inquiry into the admissibility of expert testimony under Rule 702 'must be solely on principles and methodology, not on the conclusions that they generate.'" *Rodriguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 70 (1st Cir. 2024) (quoting *Daubert*, 509 U.S. at 595). "This distinction means that '[w]hen the factual underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility of

the testimony' and thus 'a question to be resolved by the jury.'" *Id.* (quoting *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 22 (1st Cir. 2011)).

However, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "*Daubert* made clear that to be admissible under Rule 702, an expert's opinion 'must be supported by appropriate validation' and rest on 'more than subjective belief or unsupported speculation.'" *Rodriguez*, 91 F.4th at 70 (quoting *Daubert*, 509 U.S. at 590). Courts may conclude that an expert's opinion is not supported by appropriate validation where, "given the record at hand, 'there is simply too great an analytical gap between the data and the opinion proffered.'" *Id.* at 70-71 (quoting *Joiner*, 522 U.S. at 146).

## II.    <u>Merits.</u>

KPM contends that IEP's proffered industry expert, Steve Egenolf, should be precluded from testifying because (1) he did not use reliable principles and methods, (2) he is not qualified to opine on whether customers are likely to be confused by KPM's mark, and (3) his report and testimony will be unhelpful to the jury. The Court agrees only in part.

KPM first argues that Egenolf did not use reliable methods because he failed to conduct a consumer survey. Such surveys are a "usual and accepted method of admitting expert testimony on the ultimate factual issue of likelihood of confusion." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 23:2.75 (5th ed. 2023) ("McCarthy"). But the First Circuit has made clear that consumer surveys are not required to establish a likelihood of confusion. *See Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 121 (1st Cir. 2006) ("[W]hile survey evidence would have been helpful, it was not indispensable to a finding of likelihood of confusion."); *Bos. Athletic Ass'n v. Sullivan*, 867 F.2d 22, 31 n.9 (1st Cir. 1989) ("declin[ing] to

require [surveys] as the only way of proving" actual confusion). Nor does Egenolf intend to testify about the ultimate factual issue of whether confusion is likely. Rather, his testimony primarily concerns the eight factors, known as the *Pignons* factors, that "guide the inquiry into likelihood of confusion." *Borinquen Biscuit Corp.*, 443 F.3d at 120. Expert testimony on those factors "is generally quite proper and helpful to both judge and jury." McCarthy § 23:2.75; *see Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65, 73 (1st Cir. 2008) (crediting expert testimony that the offerings of the plaintiff and the defendant "were 'very similar and have very similar outputs and results for clients'"); *Rimowa Distrib., Inc. v. Travelers Club Luggage, Inc.*, 217 F. Supp. 3d 400, 410-11 (D. Mass. 2016) (expert with industry experience qualified to opine on certain *Pignons* factors even though he had "no experience with consumer surveys").

Second, KPM argues that Egenolf is not qualified to opine on the *Pignons* factors because he is "'not a trademark expert'" and lacks experience in the relevant industry. ECF 201, at 10 (quoting ECF 201-1, ¶¶ 8, 11, 13). There are, however, "many different kinds of experts, and many different kinds of expertise." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). Egenolf has two decades of experience working with hundreds of companies in the powder and bulk processing industry and reviewing their marketing activities. ECF 226, at 4 (citations omitted). He has regularly attended industry trade shows, including the Bulk and Powder Solids trade show attended by KPM and IEP in 2018. *Id.* at 5-6 (citing ECF 193, ¶¶ 34, 69). His report draws on those experiences to analyze the likelihood of confusion factors by opining, for example, that he has never seen another hexagon logo besides IEP's and KPM's trademarks. *Id.* at 5 (citing ECF 201-1, ¶ 12). Given the depth of his experience in the powder and bulk processing industry, he need not, as KPM contends, have prior experience in other trademark cases. *See DaSilva v. Am. Brands, Inc.*, 845 F.2d 356, 361 (1st Cir. 1988) (admitting testimony of an expert who had 23 years

of experience in the relevant field); *Rimowa*, 217 F. Supp. 3d at 410-11 (admitting testimony of an expert who operated a store in the relevant industry for over 30 years and had been an active participant in trade associations for more than 20 years).[3]

Nevertheless, for Egenolf's testimony to be admissible based on his personal knowledge or experience, it must rest on a reliable foundation. *See Kumho Tire*, 526 U.S. at 150. Egenolf's experience qualifies him to opine on several of the *Pignons* factors—namely, the similarity between the two marks, the similarity of the goods, the relationship between the parties' channels of trade and advertising, the classes of prospective purchasers, and the strength of IEP's mark. *See US Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC*, 121 F.4th 339, 348 (1st Cir. 2024) (listing the factors); *Rimowa*, 217 F. Supp. 3d at 410-11 (holding that an expert with industry experience was qualified to testify to some, but not all, of the *Pignons* factors). But the Court agrees with KPM that Egenolf lacks the personal knowledge or experience to testify as to the sixth and seventh factors—namely, evidence of actual consumer confusion and KPM's intent in adopting its mark. His report discloses no basis for his opinions on those factors, and the paragraphs in his report that touch on those factors, paragraphs 40 through 44, are entirely speculative. Those paragraphs will accordingly be stricken, and he will not be permitted to testify to those topics at trial.

Egenolf's report also includes improper conjecture about what conclusions other people would draw concerning the likelihood of confusion factors that he analyzed. The report repeatedly states that "'people in the Industry would come to the same conclusion'" as him for those factors. ECF 201, at 4 (quoting ECF 201-1, ¶¶ 25, 29, 36, 39, 41, 44, 46). Absent a survey or other direct

---

[3] KPM's additional argument—that Egenolf's experience is stale because he left his position in August 2021—fares no better. IEP filed this action in March 2021 alleging that KPM has infringed on its mark since February 2018. In any event, any "weakness in [Egenolf's] analysis [is] a matter of weight rather than admissibility and thus properly a subject of argument and jury judgment." *Currier v. United Techs. Corp.*, 393 F.3d 246, 252 (1st Cir. 2004).

evidence, such testimony is nothing "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *see* McCarthy § 23:2.75 ("The expert who has not conducted such a survey must articulate and describe some other reliable methodology that forms the basis for the conclusion that confusion is or is not likely in this case."). Accordingly, those statements in Egenolf's report will likewise be stricken, and he will not be permitted to testify at trial as to what other people in the industry might conclude. *See* ECF 226, at 7 (IEP agreeing that this would be the proper remedy if such statements were found objectionable).

KPM finally contends that Egenolf's testimony will not assist the jury because laypeople can assess for themselves whether the trademarks of IEP and KPM are similar and thus likely to cause confusion. As discussed, Egenolf will not be permitted to testify about evidence of actual consumer confusion, KPM's intent in adopting its mark, or the ultimate issue of whether confusion is likely, which falls upon the jury to decide. His testimony about the remaining likelihood of confusion factors, however, could help the jury given his experience in the relevant powder and bulk processing industry. *See Visible Sys. Corp.*, 551 F.3d at 73 (crediting such testimony); McCarthy § 23:2.75 (proper for expert witness to opine on these factors).

## CROSS-MOTIONS FOR SUMMARY JUDGMENT

### I.      Standard of Review.

Summary judgment is appropriate when, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). To prevail, the moving party must show that "there is no factual

determination which a 'rational factfinder' could make as to the 'existence or nonexistence' of a fact that 'has the potential to change the outcome of the suit.'" *Gibson Found., Inc. v. Norris*, 88 F.4th 1, 5 (1st Cir. 2023) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4-5 (1st Cir. 2010)). Courts "must consider the record and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant," but "need not credit 'conclusory allegations, improbable inferences, and unsupported speculation.'" *Dixon-Tribou v. McDonough*, 86 F.4th 453, 458 (1st Cir. 2023) (quoting *Lahens v. AT&T Mobility Puerto Rico, Inc.*, 28 F.4th 325, 333 (1st Cir. 2022)). Where, as here, the parties have filed cross-motions for summary judgment, the court "review[s] each motion 'separately, drawing facts and inferences in favor of the non-moving party.'" *Roberge*, 112 F.4th at 51 (quoting *Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc.*, 977 F.3d 69, 72 (1st Cir. 2020)).

## II.    <u>Federal Trademark Infringement (Count I).</u>

IEP asserts that KPM has infringed its registered trademark, in violation of the Lanham Act, 15 U.S.C. § 1114. The statute provides a cause of action for the "registrant" against "[a]ny person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prevail on its infringement claim, IEP "must show that (1) 'its mark is entitled to trademark protection'; and (2) 'the allegedly infringing use is likely to cause consumer confusion.'" *D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 111 F.4th 125, 133 (1st Cir. 2024) (quoting *Bos. Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008)).

KPM disputes IEP's standing as a "registrant" under the statute to pursue an infringement claim as to a four-color version of its hexagonal mark. KPM also contends that, as a matter of law, consumers are unlikely to confuse its mark with IEP's mark. IEP, for its part, contends that it has standing as to all color variations of its mark and that, as a matter of law, its mark is protected and KPM's mark is likely to cause consumer confusion.[4]

A.    Standing.

KPM first argues that IEP lacks standing to assert trademark infringement as to a particular four-color version of its hexagonal mark,         . KPM points out that IEP's parent company, Hoerbiger, owns the design in the '247 Registration, and that this four-color version of the mark is otherwise the same as IEP's design in the '573 Registration.

KPM's challenge to IEP's standing is unconvincing. The parties agree that IEP owns the earlier '573 Registration, which is a hexagonal mark that "makes no claim to any particular color." ECF 205, ¶¶ 1-3. Since the Registration is "not limited to one color," it "in effect covers the mark as it appears in any color." McCarthy § 7:45.30; *see Application of Data Packaging Corp.*, 453

---

[4] KPM did not dispute in its motion for summary judgment that IEP's registered mark is entitled to protection. In opposing IEP's cross-motion for summary judgment, however, KPM asserted that IEP has not demonstrated the protectability of its mark because it has not shown that it has used its mark in commerce. ECF 229, at 6-7. The registration of a mark is, however, "prima facie evidence . . . of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(a). And viewed in the light most favorable to KPM, the summary judgment record demonstrates that IEP sells products that contain the mark, including its Ex Control Panel and explosion protection systems, and advertises those products at trade shows, in print media, and online. ECF 205-1, ¶¶ 14, 19, 23, 33, 104. IEP has, accordingly, established its mark's "use in commerce." 15 U.S.C. § 1127.

KPM further contended in opposing IEP's motion that ownership of the '573 Registration is disputed because of KPM's pending counterclaim seeking cancellation of the Registration pursuant to 15 U.S.C. §§ 1064 and 1119. ECF 229, at 5-6 (citing ECF 38, at 28-30). Because the Court will deny IEP's cross-motion for summary judgment, it need not determine, at this juncture, whether KPM's counterclaim for cancellation affects IEP's entitlement to trademark protection in connection with its '573 Registration.

F.2d 1300, 1302 (C.C.P.A. 1972) ("[T]here is no reason why an applicant should not be able to obtain a single registration of a design mark covering all the different colors in which it may appear, that is to say, not limited to a particular color."). Indeed, the U.S. Patent and Trademark Office ("USPTO") accepted several hexagon shapes submitted with IEP's application that became the '573 Registration, including the four-color hexagon. ECF 205, ¶ 88. KPM has made no argument that Hoerbiger's later obtained '247 Registration limited IEP's rights under its earlier '573 Registration. Nor has KPM made any argument that, as a matter of law, two corporations with a parent-subsidiary relationship, like Hoerbiger and IEP, cannot both be "registrant[s]" with standing to enforce trademark rights to the same mark under 15 U.S.C. §§ 1114(1) and 1127. Having failed to develop these arguments, KPM's reliance on the fact that Hoerbiger owns the color design in the '247 Registration, but is not a party to this case, is a red herring.

The Lanham Act provides that an infringer "shall be liable in a civil action by the registrant." 15 U.S.C. § 1114(1). IEP's complaint seeks relief for infringement of the '573 Registration, not the '247 Registration. As the "registrant" of the '573 Registration, IEP has "standing to assert federal statutory trademark infringement under the Lanham Act." *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st Cir. 1977).

   B.    Likelihood of Confusion.

A party asserting trademark infringement must demonstrate "a substantial likelihood of [consumer] confusion." *Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.*, 376 F.3d 8, 14 (1st Cir. 2004). Put otherwise, "trademark infringement requires 'more than the theoretical possibility of confusion'; there must be 'a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.'" *US Ghost Adventures*, 121 F. 4th at 348 (quoting *Bos. Duck Tours*, 531 F.3d at 12). "Confusion is relevant when it exists in the minds of persons in

13

a position to influence the purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner." *Dorpan, S.L. v. Hotel Melia, Inc.*, 728 F.3d 55, 64 (1st Cir. 2013).

To determine whether confusion is likely, courts examine the aforementioned eight factors, first articulated by the First Circuit in *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981): "'(1) the similarity of the marks; (2) the similarity of the goods . . . ; (3) the relationship between the parties' channels of trade; (4) the juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of the plaintiff's mark.'" *Dorpan*, 728 F.3d at 65 (quoting *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.*, 103 F.3d 196, 201 (1st Cir. 1996)). "No one factor is necessarily determinative, but each must be considered." *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1205 (1st Cir. 1983).

"Because the likelihood of confusion analysis is a particularly fact-intensive one, resolving this issue on summary judgment is disfavored." *Dorpan*, 728 F.3d at 66. This case is no exception. On balance, after weighing the *Pignons* factors, a reasonable jury could conclude that KPM's mark is likely to cause confusion, or it could conclude that KPM's mark is not likely to cause confusion. The parties' respective motions for summary judgment will therefore be denied.

      1.    *Similarity of the marks.*

To assess whether marks are similar, "'a court must examine the visual appearance of each mark in the context of its use'" with an eye toward how "the marks appea[r] to consumers." *Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Crédito Oriental*, 832 F.3d 15, 34 & n.24 (1st Cir. 2016) (quoting *Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 735 (2d Cir.

1991)). Consideration must be given to "the total effect of the designation, rather than a comparison of individual features." *US Ghost Adventures*, 121 F. 4th at 348 (quotation marks omitted).

Viewed in context and in light of the total effect of the designation, IEP's and KPM's marks are strikingly similar. The "most salient" feature of both marks is, as shown above, their hexagonal shape. *Dorpan*, 728 F.3d at 66. Where, as here, "'the most dominant feature of both marks is the same or similar, then that similarity may cause confusion.'" *Id.* at 66 (quoting *Bos. Duck Tours*, 531 F.3d at 34 (DiClerico, J., concurring)).

KPM maintains, nonetheless, that the marks are not sufficiently similar because its mark ordinarily includes the company name "Process Sensors Corporation" and a horizonal line, while IEP's mark typically contains either "IEP Technologies" or "HOERBIGER Safety Solutions." *See* ECF 205, ¶¶ 14-15, 23, 42-43, 71-73. While there are circumstances in which a company's name or logo may dispel confusion between otherwise similar marks, "[t]he addition of a suggestive or descriptive element to the dominant [feature] in a mark is generally not sufficient to avoid confusion." *Oriental Fin. Grp.*, 832 F.3d at 28 (quotation marks omitted); *see Beacon Mut. Ins.*, 376 F.3d at 18 ("If the 'dominant' portion of both marks is the same, then confusion may be likely, notwithstanding peripheral differences." (quoting McCarthy § 23:44 (4th ed. 1996))). A reasonable jury could conclude that KPM's use of the words "Process Sensors Corporation" in conjunction with the dominant hexagon element does not obviate consumer confusion, particularly since IEP and KPM both sell sensors. ECF 205, ¶¶ 45, 101. KPM also acknowledges that the words "Process Sensors Corporation" do not *always* appear with the hexagon, including in some online applications. *See id.* ¶¶ 71-73; ECF 192, at 7; *Oriental Fin. Grp.*, 832 F.3d at 34 ("context governs the similarity analysis," including how marks "appea[r] on [a] public website"). In any event, even

15

with the additional words and line, a reasonable jury could readily find that the total effect of both marks is substantially similar.[5]

       2.     *Similarity of the goods.*

The second factor likewise favors IEP because, at a minimum, both parties sell sensors for fire and explosion protection. ECF 205, ¶¶ 101, 115-16. IEP's trademark covers "safety equipment for suppression, isolation and venting of explosions, namely, . . . safety hardware systems comprised of detectors . . . and peripherals for operating explosion safety equipment." *Id.* ¶ 4. KPM acknowledges that "a few of [its infrared] products can be used in applications relating to 'fire prevention,'" and that "some [infrared] sensors can be used in fire prevention applications." ECF 227, at 6-7. Indeed, KPM's Sales Division Manager, Scott Nagle, testified that some of its products can be used to help prevent fires or explosions, including its thermal imaging cameras or sensors, and that the primary purpose of certain of those products is to avoid fires or explosions. ECF 204, at 8-11 (citations omitted). While KPM sells products other than sensors, "a factfinder could reasonably conclude that [its] other lines of business do not dispel the potential for confusion in the [powder and bulk processing] market." *Beacon Mut. Ins.*, 376 F.3d at 19.

KPM counters that the '573 Registration does not cover sensors because it fails to reference them and includes a list that, in its view, limits the covered goods to those expressly stated, which excludes sensors. The Registration can reasonably be read, however, to cover "sensors" because it identifies "detectors." ECF 205, ¶ 4. In any event, "the protection which the law gives the owner of a trade-mark is not confined to the goods upon which it is, or has been, used by the owner of it

---

[5] KPM further argues that the USPTO's issuance of its '755 Registration constitutes *prima facie* evidence of the validity of its mark because the USPTO reportedly found no conflicting marks. In this case, however, the record reveals that the marks of KPM and IEP are substantially similar.

but extends to products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Baker v. Simmons Co.*, 307 F.2d 458, 462 (1st Cir. 1962) (quotation marks omitted). Because "[t]rademark protection may extend beyond the exact product to include related products," consumers of process sensors could potentially be confused by the parties' similar marks. *Boathouse Grp., Inc. v. TigerLogic Corp.*, 777 F. Supp. 2d 243, 250 (D. Mass. 2011) (citing *Bos. Athletic Ass'n*, 867 F.2d at 28); *accord* McCarthy § 24:24.

### 3.    *Channels of trade, advertising, and prospective purchasers.*

The third, fourth, and fifth *Pignons* factors "are often considered together because they tend to be interrelated." *Beacon Mut. Ins.*, 376 F.3d at 19. The third factor, involving channels of trade, weighs in IEP's favor because both parties sell their products either through distributors or directly to customers in the powder and bulk processing industry, they have at least 48 customers in common, and IEP has lost at least one sale to KPM. ECF 205, ¶¶ 27, 52, 83, 97-99, 102; ECF 204, at 13. That the parties currently use different distributors does not, as KPM contends, indicate that they operate in different channels of trade. *See Aircraft Radio Corp. v. Arc Sound Ltd.*, 440 F.2d 436, 439 (C.C.P.A. 1971) ("[P]resent sales and methods of distribution are not conclusive but are subject to change."). Nor does the lack of evidence that IEP's lost sale was due to actual confusion over the parties' marks, which is a separate factor.[6]

The juxtaposition of the parties' advertising favors IEP as well, albeit marginally, because KPM and IEP attended the same Bulk and Powder Solids trade show in 2018 and have advertised

---

[6] KPM also contends that there is no evidence of actual harm to IEP. But the harm is the likelihood of consumer confusion, and the record, viewed in the light most favorable to IEP, shows that IEP has lost at least one sale to KPM. *See* ECF 205, ¶ 83; *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 60 (1st Cir. 2008) (trademark holder must show, among other elements, that the alleged infringer's "use of [its] marks likely confused . . . consumers, thereby causing [it] harm (e.g., lost sales)").

their products online and on social media, including on LinkedIn and YouTube, using their similar hexagonal marks. ECF 205, ¶¶ 103-04; ECF 204, at 13. Granted, as KPM counters, "'[t]hat the goods or services of the parties are both found on the Internet proves little, if anything, about the likelihood that consumers will confuse similar marks used on such goods or services'" because "'the Internet has become the venue for the advertising and sale of all manner of goods and services.'" *True Fit Corp. v. True & Co.*, No. 12-cv-11006-GAO, 2013 WL 789213, at *5 (D. Mass. Mar. 4, 2013) (quoting McCarthy § 24:53.50 (4th ed. 2004)). In this case, however, since both parties "advertise and solicit customers in . . . similar manners" online and have "attend[ed the same] trade sho[w]," a reasonable factfinder could conclude that IEP and KPM engage in similar advertising. *Dorpan*, 728 F.3d at 66-67.

On the other hand, the factor concerning prospective purchasers supports KPM because the parties' customers, including "purchase agents, process engineers, project engineers, plant managers, and/or system integrators," are fairly sophisticated. ECF 205, ¶ 28 (citation omitted). Relying primarily on its industry expert, IEP suggests that unsophisticated administrative personnel may purchase its products. *Id.* ¶ 106 (citations omitted). But its products are ordinarily purchased after days or weeks of site visits and discussions with IEP's staff, not on a whim as "impulse" buys. *Id.* ¶¶ 16, 20-21; ECF 192, at 13-15; ECF 227, at 9; *see Pub. Impact, LLC v. Bos. Consulting Grp., Inc.*, 169 F. Supp. 3d 278, 294 (D. Mass. 2016) (finding that the "relative sophistication of plaintiff's clients," who engaged in its services not as "an 'impulse buy'" but after "some substantial degree of thought and research," "weighs heavily against finding a likelihood of confusion"). Such "customer sophistication . . . ameliorate[s] confusion," *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 40 (1st Cir. 2006), because "[s]ophisticated consumers may be expected to exercise greater care," *Pignons*, 657 F.2d at 489. Aside from replacement parts,

IEP's products are also relatively expensive. ECF 192, at 13 (citing ECF 193, ¶¶ 18-20); *see Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 194 (1st Cir. 1980) ("'The greater the value of an article the more careful the typical consumer can be expected to be[.]'" (citation omitted)). Where, as here, IEP's "goods are [generally] expensive and purchased after careful consideration," "there is . . . less likelihood of confusion." *Astra Pharm. Prod.*, 718 F.2d at 1206.

4.    *Evidence of actual confusion.*

This sixth factor—evidence of actual confusion—"is often deemed the best evidence of possible future confusion." *D'Pergo Custom Guitars*, 111 F.4th at 133 (quotation marks omitted). This factor weighs heavily in favor of KPM because the parties' marks have coexisted in the marketplace for over six years without any evidence of actual consumer confusion. Indeed, there have been no reported instances of such confusion since KPM's '755 Registration in February 2018. ECF 205, ¶¶ 42, 77, 82. Even though a "trademark holder . . . need not show actual confusion," *Visible Sys. Corp.*, 551 F.3d at 72, "'there is a strong presumption that there is little likelihood of confusion'" when "'the marks have been in the same market, side by side, for a substantial period of time'" without giving rise to actual confusion, *Oriental Fin. Grp.*, 832 F.3d at 30-31 (quoting *Pignons*, 657 F.2d at 490).

IEP counters that its employees were confused by KPM's hexagonal mark, including its regional manager and Co-President Shea. *Id.* ¶ 82. True, "the likelihood of confusion inquiry is not limited to actual or potential purchasers, but also includes others whose confusion threatens the trademark owner's commercial interest in its mark." *Beacon Mut. Ins.*, 376 F.3d at 16. IEP has not demonstrated, however, that confusion by its employees "threatens [its] commercial interests." *Id.* Nor are they "[a]ctual [or] potential customers . . . [who] are the most obvious relevant persons in a likelihood of confusion analysis." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d

1, 11 (1st Cir. 2012) (quotation marks omitted); *see Progressive Distrib. Servs., Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 434 (6th Cir. 2017) ("[I]n a trademark infringement action, the focus rests upon the likelihood of a consumer being confused by the two marks and not an employee.").[7] Whether IEP's employees thought, based on the hexagonal mark, that KPM must be affiliated with IEP carries scant weight in the analysis.

        5.    *KPM's intent in adopting its mark.*

       Further favoring KPM, the record lacks evidence of bad faith. While KPM could have selected a non-hexagonal design for its mark, IEP has produced no evidence that KPM "decided to use [IEP's] mark . . . in order to cause market confusion or with an intent to exploit [IEP's] reputation and goodwill." *Dorpan*, 728 F.3d at 68. To the contrary, the record establishes that neither KPM nor the graphic designer it hired to create a new logo was aware of IEP's mark when it selected the hexagonal mark in 2018. ECF 205, ¶¶ 37-47. IEP responds, in part, that bad faith can be inferred from allegedly misleading statements that KPM made to the USPTO when applying for its '755 Registration. *See* ECF 204, at 18. But even if those statements were misleading, they do not suggest that KPM sought "to take advantage of [IEP's] goodwill and promotion efforts." *Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 11 (1st Cir. 1996). IEP also argues that KPM's continued use of the hexagon demonstrates wrongful intent. But this argument fares no better because the relevant inquiry is into KPM's intent in adopting IEP's mark, not its continued use of the hexagon shape. *See Pignons*, 657 F.2d at 491.

---

[7] IEP additionally contends that KPM cannot rely on the lack of actual confusion because it has removed statements from its website about fire and explosion safety marketing during this litigation. ECF 204, at 17; ECF 205, ¶ 113. Even if KPM's removal of those statements could be construed as an acknowledgment that potential confusion exists concerning the parties' goods, it would not change the fact that there is no record evidence of actual consumer confusion.

6.    *Strength of IEP's mark.*

The final factor, concerning the strength of IEP's mark, marginally favors IEP. To assess a mark's strength, courts consider "the length of time the mark has been used, its renown in the plaintiff's field of business, and the plaintiff's actions to promote the mark." *Star Fin. Servs.*, 89 F.3d at 11. Registered in 2013, IEP's mark has been in use for more than a decade, including over four years before KPM introduced its mark in 2018. ECF 205, ¶¶ 1, 77; *see Borinquen Biscuit Corp.*, 443 F.3d at 121 (finding a strong mark partially because it "had been registered for more than three decades"). Egenolf opines that IEP's mark is unique and well known in the industry, ECF 205, ¶¶ 110, 112, but IEP has not provided other evidence of its mark's strength in the market, *see Pignons*, 657 F.2d at 491 (recognizing "a relatively strong mark" in part where the plaintiff "is a leader in the photographic industry" and "[m]agazine comments speak of [its] mark . . . as a 'prestigious name'"). Nor has IEP detailed its efforts to promote the mark beyond describing generally how it advertises its products in-person at trade shows and industry exhibitions; in print with magazines, periodicals, and trade journals; and online at its website and on social media. ECF 205, ¶¶ 33, 104; *see Star Fin. Servs.*, 89 F.3d at 11 (plaintiff "expended several thousand dollars per month in advertising"). A "strong mark" is "one so arbitrary, fanciful, and unique that its use through promotion had come to symbolize the source of origin rather than a not very extraordinary description of the qualities of the product." *R. G. Barry Corp. v. A. Sandler Co.*, 406 F.2d 114, 116 (1st Cir. 1969). While IEP has not met this high standard, the evidence reveals that IEP has used its '573 Registration for over a decade, including in advertisements, and that the mark is unique in the powder and bulk processing industry. This factor thus tips slightly in IEP's favor.

*        *        *

Weighing all eight *Pignons* factors, a reasonable jury could, but need not, conclude that KPM's mark creates a substantial likelihood of confusion. The fifth, sixth, and seventh factors support KPM because the parties' customers are generally sophisticated and there is no evidence of actual consumer confusion or bad faith on its part. The other factors—particularly the first, given the striking similarity of the two hexagonal marks—favor IEP. The First Circuit has described "the first, sixth, and seventh factors" as "the three most important factors in determining the likelihood of confusion." *Oriental Fin. Grp.*, 832 F.3d at 25. Since those factors support different parties here and summary judgment is appropriate only where likelihood of confusion can be determined as a matter of law, the parties' motions for summary judgment on IEP's federal trademark infringement claim will be denied. *See Dorpan*, 728 F.3d at 64.

## III.    Federal Unfair Competition and False Designation of Origin (Count II).

IEP alleges in Count II that KPM engaged in unfair competition and false designation of origin in violation of section 43(a) of the Lanham Act. That section states, in relevant part, that "[a]ny person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1). To succeed on this claim, IEP must establish, among other elements, that KPM's "use of [IEP's] mark . . . is likely to cause confusion or to deceive purchasers concerning the source of the goods." *Quabaug Rubber*, 567 F.2d at 160.[8] This claim is thus, as KPM contends, "subject

---

[8] While an "infringement claim under section 32 requires that the mark be a federally registered trademark, . . . a section 43(a) claim . . . does not require that the mark or name be federally registered." *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 78 (1st Cir. 1996).

to the same legal standard—namely, 'likelihood of confusion'—as [IEP's] Count 1 infringement claim." *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 61 n.6 (1st Cir. 2008). KPM's motion for summary judgment on Count II is premised on there being no likelihood of confusion. Since a reasonable jury could conclude that confusion is likely, the motion is denied.

While IEP has cross-moved for summary judgment on this claim, its briefs in support of that motion fail to meaningfully press any of its claims other than Count I. Rather than affirmatively argue why it is entitled to summary judgment on Counts II through V, IEP contends that "KPM has not shown that IEP's other claims live or die based on the federal trademark claim" because "they have different legal bases." ECF 204, at 20 (capitalization and bold omitted). IEP's motion for summary judgment on this Count and those that follow will, accordingly, be denied. *See Harley-Davidson Credit Corp. v. Galvin*, 807 F.3d 407, 411 (1st Cir. 2015) ("When the movant bears the burden of proof at trial, he must demonstrate every element of his case such that 'no reasonable trier of fact could find other than for [him].'" (citation omitted)).

## IV.    Cancellation of the '755 Registration (Count III).

Count III seeks cancellation of KPM's '755 Registration under 15 U.S.C. §§ 1052(d) and 1119 because, in IEP's view, it is "likely to cause confusion or mistake or to deceive potential consumers and others into believing mistakenly that [KPM] or their goods and/or services are affiliated with, related to, or sponsored by [IEP] or its goods and/or services." ECF 1, ¶¶ 92-95. The "Lanham Act bars the registration of 'a mark which so resembles [another's] mark . . . as to be likely . . . to cause confusion, or to cause mistake, or to deceive.'" *Vidal v. Elster*, 602 U.S. 286, 299 (2024) (quoting 15 U.S.C. § 1052(d)). It also provides that "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of

registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119.

The Lanham Act thus authorizes courts to "cancel registrations during infringement litigation," using the same likelihood of confusion standard applicable for purposes of infringement. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154-55 (2015). Since the question whether confusion is likely must be determined by a jury, this claim must be assessed by a jury as well. *See Smartling, Inc. v. Skawa Innovation Ltd.*, 358 F. Supp. 3d 124, 138 n.7 (D. Mass. 2019) (applying the likelihood of confusion standard "uniformly" to claims for infringement, unfair competition, false designation, and cancellation). The parties' respective motions for summary judgment on Count III are denied.

## V.    Common Law Trademark Infringement and Unfair Competition (Count IV).

Count IV alleges common law infringement and unfair competition. "In Massachusetts, the test for common law trademark infringement is the same as under the Lanham Act." *United Oil Heat, Inc. v. M.J. Meehan Excavating, Inc.*, 95 Mass. App. Ct. 579, 581-82 (2019); *see Bose Corp. v. Ejaz*, 732 F.3d 17, 26 n.7 (1st Cir. 2013) (common law trademark claims in Massachusetts "require the same elements as the federal claim" (citing *Jenzabar, Inc. v. Long Bow Grp., Inc.*, 82 Mass. App. Ct. 648, 654 n.11 (2012))). Thus, "likelihood of confusion is 'an essential element of a claim of trademark infringement,' whether it arises under state or federal law." *Astra Pharm. Prod.*, 718 F.2d at 1205 (quoting *Pignons*, 657 F.2d at 486-87). Similarly, in Massachusetts, "the gravamen of an unfair competition claim is the likelihood of consumer confusion as to the source of the goods or services." *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 769 (1986). Since a reasonable jury may or may not find a likelihood of confusion, the parties' motions for summary judgment on Count IV are denied.

**VI.**    **Chapter 93A (Count V).**

IEP's final count alleges that KPM engaged in unfair and deceptive conduct in violation of M.G.L. c. 93A, §§ 2, 11. Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 2(a). To prevail on a Chapter 93A claim, IEP "must establish (1) that [KPM] engaged in an unfair method of competition or committed an unfair or deceptive act or practice . . . ; (2) a loss of money or property suffered as a result; and (3) a causal connection between the loss suffered and [KPM's] unfair or deceptive method, act, or practice." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 820 (2014). While the statute does not define what constitutes an unfair or deceptive act or practice, Massachusetts courts have held that "an act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; and 'causes substantial injury to consumers.'" *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (quoting *PMP Assocs. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)).

Where, as here, a plaintiff's Chapter 93A theory of liability is premised on claims of trademark infringement and unfair competition, the Chapter 93A claim rises and falls with those underlying claims. *See Studio Method, LLC v. Nantucket Studio, LLC*, No. 21-cv-11763-FDS, 2023 WL 5179199, at *15 (D. Mass. Aug. 11, 2023); *Castricone v. Mical*, 74 Mass. App. Ct. 591, 601 (2009). Since no party is entitled to summary judgment on IEP's other statutory and common law claims, the parties' cross-motions are denied as to the Chapter 93A claim as well.

## CONCLUSION AND ORDER

For the foregoing reasons, KPM's motion for summary judgment, ECF 191, is DENIED. IEP's cross-motion for summary judgment, ECF 203, is similarly DENIED. KPM's motion to

exclude the expert testimony and report of Steve Egenolf, ECF 200, is GRANTED in part and DENIED in part. The report is stricken of, and Egenolf may not testify about, his opinions (1) that "people in the Industry would come to the same conclusion" as him regarding the *Pignons* factors, (2) regarding evidence of actual confusion, and (3) concerning KPM's intent in adopting its mark.

   SO ORDERED.

               /s/ Julia E. Kobick     
               JULIA E. KOBICK
Dated: December 23, 2024       UNITED STATES DISTRICT JUDGE