UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IEP TECHNOLOGIES, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | No. 1:21-cv-10417-JEK |
| KPM ANALYTICS, INCORPORATED, and KPM ANALYTICS NORTH AMERICA CORPORATION, | | |
| Defendants. | | |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS, PLAINTIFF'S MOTION TO EXCLUDE, AND DEFENDANTS' MOTION TO EXCLUDE**

**KOBICK, J.**

Plaintiff IEP Technologies, LLC filed this action against defendants KPM Analytics, Incorporated f/k/a Statera Analytics, Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation (collectively "KPM") for allegedly violating IEP's trademark. KPM, in response, asserted two counterclaims against IEP, seeking cancellation of that mark due to fraud and non-use pursuant to Sections 14 and 37 of the Lanham Act, 15 U.S.C. §§ 1064 and 1119. Pending before the Court are (1) IEP's motion for summary judgment on KPM's counterclaims; (2) IEP's motion to exclude the opinions of two of KPM's experts; and (3) KPM's motion to exclude IEP's rebuttal expert to those two experts. For the reasons that follow, IEP's summary judgment motion will be granted because no reasonable jury could conclude, by clear and convincing evidence, that IEP knowingly made a material misrepresentation of fact with an intent to deceive the U.S. Patent and Trademark Office ("USPTO"). Nor could a reasonable jury conclude, by a preponderance of the evidence, that IEP's mark has not been used for the goods or

services specified in the registration. IEP's motion to exclude KPM's experts will be granted in part and denied in part. Those opinions that merely parrot the findings of two spreadsheets produced by the USPTO in the course of this litigation will be excluded, but the testimony of one of KPM's experts regarding the USPTO's general filing procedures will be allowed. KPM's motion to exclude the testimony of IEP's rebuttal expert will be denied as moot.

## BACKGROUND

The following facts, unless otherwise noted, are either undisputed or recounted in the light most favorable to KPM, as the non-moving party. *Dixon-Tribou v. McDonough*, 86 F.4th 453, 458 (1st Cir. 2023).[1]

In December 2014, IEP became the owner of U.S. Trademark Registration No. 4,648,573 (the "'573 Registration"), which is a mark that "'consists of a hexagonal shape.'" ECF 244, ¶¶ 1, 4. The '573 Registration lists goods and services in Classes 9, 37, and 42. *Id.* ¶ 2. As relevant here, Class 9 consists of "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives." *Id.* (capitalization omitted). Class 42 concerns "new product research and design services in the field of safety equipment and hardware." *Id.* (capitalization omitted).

---

[1] KPM objects that certain material cited by IEP "to support . . . a fact cannot be presented in a form that would be admissible in evidence," including unverified interrogatory responses, IEP's emails, and other documents that allegedly contain hearsay. Fed. R. Civ. P. 56(c)(2); *see* ECF 242, at 2-3. IEP has, however, met its burden "to explain the admissible form that is anticipated" for this challenged evidence by articulating that it could authenticate such material through a live witness at trial. *Grace v. Bd. of Trustees, Brooke E. Bos.*, 85 F.4th 1, 5 n.1 (1st Cir. 2023); *see* ECF 261, at 3; *Diaz v. City of Somerville*, 583 F. Supp. 3d 296, 302 (D. Mass. 2022) ("Although a sworn affidavit is unnecessary, some showing is required" to "explain the admissible form that is anticipated for trial." (quotation marks omitted)), *aff'd*, 59 F.4th 24 (1st Cir. 2023). KPM's objection is therefore rejected.

In November 2020, IEP submitted to the USPTO a combined declaration of continued use and incontestability under Sections 8 and 15 of the Lanham Act, respectively, for its '573 Registration. *Id.* ¶ 11; *see* 15 U.S.C. §§ 1058, 1065. The declaration bears the signature of John Shea, IEP's then-Vice President and current Co-President of its Explosion Protection Business Unit, but the parties dispute whether he actually signed it. ECF 244, ¶¶ 3, 7. IEP contends that he did, while KPM asserts that a paralegal from IEP's then-trademark counsel, Whitmyer IP Group, likely signed the declaration. *Id.* ¶¶ 7, 14; ECF 242, at 19. In addition to the signature issue, KPM also argues that (1) the declaration included an invalid specimen of IEP's trademark, and (2) both the declaration and IEP's initial application for the '573 Registration improperly claimed use for certain goods or services that it did not and does not use in commerce. ECF 244, ¶¶ 15-28; ECF 222, at 7; ECF 242, at 5.

In March 2022, one year after this lawsuit began, KPM asserted two counterclaims against IEP based on these three arguments. ECF 38, at 13-30; ECF 1. KPM seeks cancellation of IEP's '573 Registration under 15 U.S.C. §§ 1064 and 1119 for alleged fraud in obtaining and maintaining the Registration (Count I) and for alleged non-use of goods and services identified in the Registration (Count II). ECF 38, at 28-30, ¶¶ 69-81. In July 2024, IEP moved for summary judgment on the counterclaims and filed a motion to exclude the opinions of two of KPM's experts: Amanda Hyland, its trademark procedure expert, and Greg Kelley, its forensic document expert. ECF 218, 221. KPM also moved to exclude the opinion of Dr. Gavin Manes, IEP's rebuttal expert to Hyland and Kelley. ECF 208. After a hearing, the Court took these three motions under advisement. ECF 284.

**DISCUSSION**

I. **Motions to Exclude Expert Testimony.**

Federal Rule of Evidence 702 governs the admissibility of expert opinion evidence. It provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under the rule, "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of" admissibility, not weight. Fed. R. Evid. 702, Adv. Comm. Notes 2023 Amendment.

Consistent with Rule 702, the Supreme Court's seminal decision in "*Daubert* establishes that before admitting expert testimony, the trial court must fulfill its 'gatekeeping role' by making an independent determination that the expert's proffered scientific knowledge is both reliable and relevant." *United States v. Phillipos*, 849 F.3d 464, 470 (1st Cir. 2017) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). The "'focus' of the inquiry into the admissibility of expert testimony under Rule 702 'must be solely on principles and methodology, not on the conclusions that they generate.'" *Rodríguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 70 (1st Cir. 2024) (quoting *Daubert*, 509 U.S. at 595). "This distinction means that '[w]hen the factual underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility of

4

the testimony' and thus 'a question to be resolved by the jury.'" *Id.* (quoting *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 22 (1st Cir. 2011)). However, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "*Daubert* made clear that to be admissible under Rule 702, an expert's opinion 'must be supported by appropriate validation' and rest on 'more than subjective belief or unsupported speculation.'" *Rodríguez*, 91 F.4th at 70 (quoting *Daubert*, 509 U.S. at 590).

Both parties' *Daubert* motions concern expert testimony regarding two Excel spreadsheets—a signature log and a submission log—that the USPTO produced in response to a subpoena from KPM. Those spreadsheets note that the IP addresses in the signature log report and the associated submission log report are "the same," which "indicates that the person who signed the filing did so from the same IP address as the person who sent the signature request." ECF 110, at 4 (emphasis and quotation marks omitted); ECF 244, ¶ 7. Based on her review of the spreadsheets and the filing history for the '573 Registration, Hyland opines that the combined Section 8 and 15 declaration was signed and submitted by the same IP address, indicating that the same person signed and submitted the declaration. *See* ECF 219-1, ¶¶ 34, 38; ECF 219, at 3-4. Kelley similarly opines that the declaration was signed and submitted by the same IP address, which was linked with IEP's paralegal. *See* ECF 219-2, at 9; ECF 219, at 3-4. IEP contends that Hyland's and Kelley's opinions should be excluded in their entirety because they simply parrot the spreadsheets' determination about the applicable IP address to conclude that IEP's Section 8 and 15 declaration was signed by the paralegal, not Shea. The Court agrees in part.

While an expert may rely on outside sources, "'the entirety of [that expert's] testimony cannot be the mere repetition of the out-of-court statements of others.'" *United States v. Tavares*,

5

843 F.3d 1, 7 (1st Cir. 2016) (quoting *United States v. Luna*, 649 F.3d 91, 105 (1st Cir. 2011)); *see* Fed. R. Evid. 703. The expert instead "'must vouchsafe the reliability of the data on which he relies and explain how the cumulation of that data was consistent with standards of the expert's profession.'" *Zachar v. Lee*, 363 F.3d 70, 76 (1st Cir. 2004) (quoting *SMS Sys. Maintenance Servs., Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 25 (1st Cir. 1999)). Hyland and Kelley both fail to meet these basic requirements. Neither has personal knowledge about how the USPTO created the two spreadsheets, including where the underlying data came from. And their reports do not "explain whether the information . . . used in the [spreadsheets] was valid" or "whether the . . . methodology used to compile these documents corresponded to methods that might be considered legitimate in [their] discipline[s]." *SMS Sys. Maintenance Servs.*, 188 F.3d at 25. Instead, both simply assume that the spreadsheets' assessment about the IP addresses is correct in order to conclude that the paralegal must have signed IEP's declaration. Kelley conceded at his deposition that even though he was proffered as KPM's forensic expert, he did not forensically review the USPTO's spreadsheets or analyze the information contained in them. ECF 219, at 7-8, 12. Hyland similarly testified that she accepted the spreadsheets as true and merely evaluated them as a layperson. *Id.* at 7, 11. Both testified that if any questions arose about the spreadsheets, they would need to ask the USPTO. *Id.* at 10. By assuming that the spreadsheets were accurate and then repeating the spreadsheets' statements without further analysis, Hyland and Kelley did not "emplo[y] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 141 F. Supp. 3d 147, 149 (D. Mass. 2015) (because Federal Rule of Evidence "703 was never intended to allow oblique evasions of the hearsay rule," an expert "cannot merely parrot the out-of-court-statements" of others (quotation marks omitted)). The

entirety of Kelley's report, as well as Hyland's opinions on the USPTO's spreadsheets in paragraphs 18 through 38 of her report, will accordingly be excluded.

Hyland also opines on the USPTO's procedures for filing documents. ECF 234, at 1, 8-10; *see* ECF 219-1, ¶¶ 1, 5-17. IEP argues that "the procedure for filing a Section 8 and Section 15 Declaration is a legal issue for the Court, not KPM's expert." ECF 219, at 5. But as "an experienced patent attorney," Hyland "is qualified to testify as to patent office procedure generally." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361 n.2 (Fed. Cir. 2008); *see* ECF 219-1, ¶ 2; ECF 234, at 9 (collecting cases); *Transparent Energy, LLC v. Premiere Mktg., LLC*, No. 19-cv-3022-BT, 2022 WL 1078620, at *1 (N.D. Tex. Jan. 18, 2022) (allowing expert to testify about "the USPTO's general processes for granting an application" and "what should be included in a trademark application"). Accordingly, Hyland's opinions concerning the USPTO's procedures, contained in paragraphs 4 through 17 of her report, will not be excluded.

KPM separately contends that Dr. Manes' opinions about the USPTO's spreadsheets should be excluded as unhelpful to the jury. At the motion hearing, counsel for IEP acknowledged that Dr. Manes' testimony would not be necessary if Hyland's and Kelley's opinions regarding the USPTO's spreadsheets were excluded, because Dr. Manes was offered as an expert to rebut those opinions. The Court agrees and therefore will not rely on Dr. Manes' opinions in its analysis of IEP's motion for summary judgment on KPM's counterclaims. Nevertheless, the Court observes that unlike Hyland and Kelley, who assumed that the USPTO's spreadsheets were accurate and parroted their findings, Dr. Manes analyzed the spreadsheets using forensic methods typical of his field. His opinions regarding the spreadsheets' creation and reliability are not speculative, but rather the product of, among other things, an examination of the spreadsheets' metadata. ECF 230, at 4; ECF 230-1, ¶¶ 10, 16, 22-26, 37, 42. By "discuss[ing] in his report the nature of the data and

its meaning," Dr. Manes displayed the "'intellectual rigor'" of a forensic document expert in the field. *SMS Sys. Maintenance Servs.*, 188 F.3d at 25 (quoting *Kumho Tire Co.*, 526 U.S. at 152); *see LovePop, Inc. v. Paper Pop Cards, Inc.*, No. 17-cv-11017-NMG, 2019 WL 350762, at *2 (D. Mass. Jan. 29, 2019) (allowing forensic experts to testify about metadata). Nevertheless, because Dr. Manes' testimony served only to rebut the now-excluded opinions of Hyland and Kelley, the Court will not consider his testimony, and KPM's motion to exclude Dr. Manes' opinions will be denied as moot.

## II. IEP's Motion for Summary Judgment on KPM's Counterclaims.

IEP moves for summary judgment on KPM's two counterclaims seeking cancellation of IEP's '573 Registration under 15 U.S.C. §§ 1064 and 1119.[2] Summary judgment is appropriate when, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). To prevail, the moving party must show that "there is no factual determination which a 'rational factfinder' could make as to the 'existence or nonexistence' of a fact that 'has the potential to change the outcome of the suit.'" *Gibson Found., Inc. v. Norris*, 88 F.4th 1, 5 (1st Cir. 2023) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4-5 (1st Cir. 2010)). Courts "must consider the record and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant," but "need

---

[2] KPM argues that IEP failed to seek leave to file its summary judgment motion on KPM's counterclaims, after previously cross-moving for summary judgment on its own claims, and to confer about this second summary judgment motion. The Court will not deny IEP's motion for summary judgment on these procedural grounds and will instead analyze the merits of the motion.

8

not credit 'conclusory allegations, improbable inferences, and unsupported speculation.'" *Dixon-Tribou*, 86 F.4th at 458 (quoting *Lahens v. AT&T Mobility Puerto Rico, Inc.*, 28 F.4th 325, 333 (1st Cir. 2022)). The non-moving party may not simply "rest upon mere allegation or denials," but instead must "present affirmative evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

  A. <u>Fraud.</u>

KPM's first counterclaim seeks cancellation of the '573 Registration pursuant to 15 U.S.C. §§ 1064 and 1119 because IEP allegedly committed fraud in obtaining and maintaining that Registration. Since no reasonable jury could conclude, by clear and convincing evidence, that IEP knowingly made a material misrepresentation of fact with an intent to deceive the USPTO, IEP is entitled to summary judgment on this counterclaim.

Section 37 of the Lanham Act "empowers the federal courts to 'determine the right to registration [and] order the cancellation of registrations' in civil cases in which a registered mark is at issue." *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 79 (1st Cir. 1996) (quoting 15 U.S.C. § 1119). Under Section 14 of the Lanham Act, "[a] petition to cancel a registration of a mark . . . may . . . be filed . . . by any person who believes that he is or will be damaged . . . by the registration of a mark on the principal register . . . [a]t any time if . . . its registration was obtained fraudulently." 15 U.S.C. § 1064(3). "'Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application.'" *Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333, 1337 (Fed. Cir. 2024) (quoting *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009)). "A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof." *Bose*, 580 F.3d at 1243; *accord OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1020

(9th Cir. 2018). To sustain its counterclaims of fraud, KPM must prove by clear and convincing evidence that (1) IEP made a false representation of a material fact to the USPTO; (2) IEP knew that the representation was false; (3) IEP intended to deceive the USPTO; and (4) the USPTO relied on that representation in registering IEP's mark. *SoClean, Inc. v. Sunset Healthcare Sols., Inc.*, 554 F. Supp. 3d 284, 295 (D. Mass. 2021), *aff'd*, 52 F.4th 1363 (Fed. Cir. 2022); *see Galperti, Inc. v. Galperti S.r.l.*, 791 F. App'x 905, 909 (Fed. Cir. 2019) ("A trademark applicant commits fraud when it knowingly makes false, material representations of fact with an intent to deceive the Patent and Trademark Office."); *Bose*, 580 F.3d at 1243.

No reasonable jury could conclude that KPM can meet this rigorous standard of proof for all four elements. With respect to the first element, KPM does not identify clear and convincing evidence of a false representation of a material fact made by IEP. KPM first argues that Shea did not sign his 2020 declaration. Under the Trademark Manual of Examining Procedure ("TMEP"), "[t]he person(s) identified as the signatory must manually enter the elements of the electronic signature," and "[a]nother person (e.g., paralegal, legal assistant, or secretary) may not sign the name of a qualified practitioner or other authorized signatory." TMEP § 611.01(c). KPM principally relies on the two spreadsheets produced by the USPTO to argue that a paralegal, not Shea, signed his declaration. Those spreadsheets state that the IP addresses in the signature log report and the accompanying submission log report are "the same," which "indicates that the person who signed the filing did so from the same IP address as the person who sent the signature request."[3] ECF 110, at 4 (emphasis and quotation marks omitted); ECF 244, ¶ 7. Since a paralegal

---

[3] IEP identifies inconsistencies in one of those spreadsheets by pointing out, for example, that "it does not list the signatory name or position (it says 'NO DATA') and has a filing date of April 24, 2021, which is over a year after the declaration was submitted to the USPTO by the Whitmyer IP Group." ECF 105, at 5 n.7; *see* ECF 261, at 7 (citing ECF 105, at 4-6). IEP also argues that the same spreadsheet "only indicates that the person who submitted the signed declaration (the

at IEP's former law firm, Whitmyer IP Group, submitted the declaration, KPM claims, that paralegal likely signed the declaration. ECF 110, at 4; ECF 242, at 17-19; ECF 244, ¶ 14. KPM also points to Shea's initial testimony on January 27, 2022 that he did not remember signing the declaration, was unfamiliar with the Whitmyer IP Group phone number listed as the signatory's, and normally capitalizes his name instead of writing it, as the declaration reflects, in lowercase. ECF 242, at 15-16; ECF 244, ¶ 7.

Weighing against KPM's evidence of an invalid signature is extensive testimony and other documentation. Shea testified on October 25, 2023, as IEP's corporate representative, that he did sign the 2020 declaration. ECF 222, at 13; ECF 244, ¶ 7; *see also* ECF 31-1, ¶ 3 (Shea averring on March 2, 2022 that he "ha[d] no reason to believe that [he] did not sign [the declaration]"). Although Shea had originally testified that he could not recall signing the declaration, he revised that testimony after reviewing emails exchanged at the time the declaration was signed. ECF 261, at 8.[4] Those emails show that, after IEP's legal representatives emailed Shea a declaration to sign on November 23, 2020, he responded that afternoon stating that he had signed the declaration and attaching a signed version. ECF 105, at 3-4; ECF 244, ¶¶ 6-9. Whitmyer IP Group then submitted Shea's declaration about an hour later. ECF 105, at 4; ECF 244, ¶ 10. For her part, the law firm's

---

spreadsheet uses 'signed the filing', e.g., not 'signed the declaration', and refers to the 'Unique account of form submitter') used the same IP address as the person that prepared the declaration." ECF 105, at 5 (emphases omitted); *see* ECF 219, at 4 (citing ECF 105, at 4-5). The spreadsheets nonetheless provide some evidence to support KPM's forged signature theory. The Court assumes in favor of KPM, without deciding, that the spreadsheets could be admissible at trial because, as explained below, KPM's evidentiary showing, including those spreadsheets, still falls short of the requisite heightened standard of proof for fraud. *See* ECF 242, at 17 n.5; *Bose*, 580 F.3d at 1243.

[4] A third-party expert who analyzed these emails did "not see anything in [them] that indicate[d] that there might be anything missing or suspicious about [them]." ECF 165 (quotation marks omitted). The Court similarly found no "indicia of nefarious conduct on IEP's part." *Id.*

paralegal testified that she has never signed a declaration filed with the USPTO. ECF 222, at 13; ECF 244, ¶ 14.

This evidence—including sworn testimony from the two individuals involved and contemporaneous emails demonstrating that Shea *did* sign the declaration—is weightier than the USPTO spreadsheets relied upon by KPM. Although the spreadsheets may be enough on the preponderance of the evidence standard to create a material dispute of fact as to whether Shea signed his 2020 declaration, KPM has not submitted enough evidence to create a material dispute of fact on a clear and convincing evidence standard. Arguing otherwise, KPM principally relies on *Mini Melts, Inc. v. Reckitt Benckiser, Inc.*, No. 4:07-cv-271, 2009 WL 10677599 (E.D. Tex. Feb. 26, 2009). But in that case, "[t]he parties agree[d] that [an attorney] forged [the] signature [of the trademark holder's president] on the Section 8 declaration without any authorization." *Id.* at *2. Here, in contrast, the weight of the evidence indicates that Shea, not the paralegal, signed the 2020 declaration. KPM has not, accordingly, demonstrated clear and convincing evidence that IEP made a false representation of a material fact to the USPTO by having a paralegal, rather than Shea, sign the declaration.

KPM next contends that Shea's declaration made a false representation because it contained an improper trademark specimen. The Lanham Act requires that a Section 8 declaration like Shea's "be accompanied by such number of specimens or facsimiles showing current use of the mark in commerce." 15 U.S.C. § 1058(b)(1)(C); *see also* TMEP § 1604.12(a) ("An affidavit or declaration that does not include an acceptable specimen for each class is deficient."). The parties agree that IEP submitted the same specimen showing its EX Control Panel product in both its initial 2014 trademark application and Shea's subsequent 2020 declaration. ECF 244, ¶¶ 27-

28;[5] ECF 242, at 12-13; ECF 222, at 14. In KPM's telling, "it is a legal impossibility for a specimen submitted as part of . . . [IEP's] initial application to also be representative of IEP's *current* use of the mark in commerce during the relevant Section 8 period, six years later in 2020." ECF 242, at 12. Shea testified, however, that the EX Control Panel product was unchanged from 2014 to 2020. ECF 261, at 12-13. IEP also provided images showing that its mark appeared on that product in 2020 and continues to appear on it to this day. ECF 244, ¶ 28; ECF 222, at 14; ECF 261, at 12; *see In re Sones*, 590 F.3d 1282, 1288 (Fed. Cir. 2009) ("[T]he test for an acceptable website-based specimen, just as any other specimen, is simply that it must in some way evince that the mark is 'associated' with the goods and serves as an indicator of source."). While KPM highlights other images of "EX 200 Control Panel" with a "Fenwal" logo rather than IEP's mark, ECF 244, ¶ 28, IEP responds that those images are irrelevant because they depict a different legal entity, ECF 261, at 13 n.8. A reasonable jury could not find, based on IEP's submission of a 2014 photo of a product still used in commerce in 2020, clear and convincing evidence that IEP made a false representation of a material fact to the USPTO in its declaration.

KPM finally asserts that IEP materially misrepresented that it sells "safety hardware systems . . . for use in detecting explosives" and offers "new product research and design services in the field of safety equipment and hardware." ECF 244, ¶ 2 (capitalization omitted). Even drawing all factual inferences in favor of KPM, the record reflects that IEP does just that. *Id.* ¶¶ 15-28. With respect to IEP's research and design services, the undisputed evidence establishes that IEP customizes its products and design solutions for each application, and that IEP has a Combustion Research Center where it offers such solutions. *Id.* ¶¶ 21-22. IEP's engineers also use

---

[5] KPM's response to IEP's statement of material facts lists paragraph 27 twice. This citation is to the second paragraph numbered 27. *See* ECF 223, ¶¶ 28-29.

a proprietary Computer Modeled System Design to develop protection solutions tailored to the needs of individual applications. *Id.* ¶ 24. KPM's principal retort is that IEP fails to cite any admissible evidence and instead relies on IEP's interrogatory responses and other hearsay documentation. *Id.* ¶¶ 21-22, 24. The Court has already rejected that objection, however, because such evidence could be admissible at trial through a live witness. *See supra* note 1; *Grace*, 85 F.4th at 5 n.1. KPM also acknowledges that IEP "customizes its own products for its own customers," but suggests that this does not qualify as providing new product research and design services in the field "for others." ECF 242, at 11. This argument lacks merit and any evidentiary support. KPM even recognizes that IEP has designed a new infrared detector for a company and new vents for other customers. ECF 261, at 11 (citing ECF 242, at 9-10). KPM has, therefore, failed to establish that IEP's statement about offering "new product research and design services in the field of safety equipment and hardware" was false. ECF 244, ¶ 2 (capitalization omitted).

KPM similarly fails to show, by clear and convincing evidence, that IEP's statement about selling "safety hardware systems . . . for use in detecting explosives" was untrue. *Id.* (capitalization omitted). For its initial application, IEP submitted, as discussed, a specimen of its EX Control Panel product whose user manual states that "'[t]he primary function of the control panel is to continuously monitor for threatening conditions that can lead to an explosion.'" ECF 261, at 8 (quoting ECF 223, ¶ 28). This fact is undisputed because KPM fails to provide any countervailing evidence and instead, again, relies on its deficient hearsay objection. ECF 244, ¶ 27;[6] *see Grace*, 85 F.4th at 5 n.1; Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record[.]"). Shea further averred that "'IEP's products detect and mitigate against generally nonexplosive materials,

---

[6] This citation is to the second paragraph numbered 27. *See* ECF 223, ¶ 28.

such as dust, which become explosive due to industrial processes.'" ECF 244, ¶ 17 (quoting ECF 31-1, ¶ 5). IEP's brochure similarly states that explosions can occur due to "'explosive materials'" and that, "'[a]s a rule, if a material can burn, under the right conditions, it can and will explode.'" *Id.* ¶ 18. IEP's then-CEO, Randy Davis, also testified that the goods and services listed in its 2014 application were accurate. ECF 222, at 8; *see Bose*, 580 F.3d at 1246 (Because "Sullivan testified under oath that he believed the statement was true at the time he signed the renewal application," "the challenger [must] point to evidence to support an inference of deceptive intent . . . to satisfy the clear and convincing evidence standard required to establish a fraud claim.").

KPM counters that certain deposition testimony undercuts IEP's registration statement. *See* ECF 242, at 5-9. But KPM's parsing of limited deposition testimony does not satisfy its heavy burden to establish that IEP's statement about selling "safety hardware systems . . . for use in detecting explosives" was false. ECF 244, ¶ 2 (capitalization omitted). As the Federal Circuit has explained, "[t]here is no room for speculation, inference or surmise," and "any doubt must be resolved against the charging party." *Bose*, 580 F.3d at 1243 (quotation marks omitted). In light of IEP's evidence that it sells "safety hardware systems . . . for use in detecting explosives," and absent clear and convincing evidence of a material misrepresentation by IEP, KPM cannot sustain its fraud claim. ECF 244, ¶ 2 (capitalization omitted).

Nevertheless, even if there were substantial evidence that IEP made a false representation to the USPTO, KPM has not proffered any evidence—let alone clear and convincing evidence—to establish that IEP knew that the representation was false or that it intended to deceive the USPTO. *See Bose*, 580 F.3d at 1243 ("[A]bsent the requisite intent to mislead the PTO, even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation."); *SonicSolutions Algae Control, LLC v. Diversified Power Int'l, LLC*, 722 F. Supp.

3d 16, 51 (D. Mass. 2024) (granting summary judgment in favor of trademark holder where challenger "point[ed] to no record evidence indicating any specific intent to deceive"); *SoClean*, 554 F. Supp. 3d at 297 (finding trademark presumptively valid because challenger's "proof [fell] far short of establishing by clear and convincing evidence that . . . [the trademark holder] *knew* that the representation was false and *intended* to deceive the examiner by that false representation"). KPM instead relies on the same, previously discussed evidence to argue that it "is entitled to a reasonable inference of fraudulent intent on IEP's part." ECF 242, at 19. Such an inference is improper, however, because while "intent can be inferred from indirect and circumstantial evidence," "such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008). KPM's proffered evidence regarding Shea's signature and the contents of his declaration falls far short of "indicat[ing] sufficient culpability to require a finding of intent to deceive." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988).

Drawing all inferences in favor of KPM, a reasonable jury could not find, by clear and convincing evidence, that IEP committed fraud on the USPTO. IEP is therefore entitled to summary judgment on KPM's first counterclaim.

B.   Non-Use.

KPM's second counterclaim requests cancellation of IEP's '573 Registration under 15 U.S.C. §§ 1064 and 1119 due to non-use. According to KPM, "IEP does not and/or has not used the mark of the '573 Registration in commerce in connection with" either (1) "safety hardware systems comprised of detectors, electronic control units, suppressors, isolation valves, and vents sold as a unit for use in detecting explosives" or (2) "providing new product research and design

16

services in the field of safety equipment and hardware to others." ECF 38, at 30, ¶¶ 78, 80. Because no reasonable jury could conclude, by a preponderance of the evidence, that IEP's mark has not been used for the goods or services specified in that Registration, IEP is entitled to summary judgment on this counterclaim as well.

Section 37 of the Lanham Act, as explained, permits courts to "determine the right to registration [and] order the cancellation of registrations." 15 U.S.C. § 1119. Section 14 of the Lanham Act, in turn, allows "any person who believes that he is or will be damaged . . . by the registration of a mark on the principal register" to file a "petition to cancel a registration of a mark at "any time if the registered mark . . . has been abandoned." *Id.* § 1064(3). "A registration may be cancelled on grounds of abandonment when the mark has not been used for the goods or services specified in the registration for at least three years and there is no showing of an intent to resume use of the mark for those goods or services." *In re Jobdiva, Inc.*, 843 F.3d 936, 940 (Fed. Cir. 2016) (citing 15 U.S.C. § 1127). "Since service mark registrations are presumed valid, the party seeking cancellation of such registration must rebut this presumption by a preponderance of the evidence." *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000); *accord Cervejaria Petropolis SA v. Ambev S.A.*, 787 F. App'x 727, 728 (Fed. Cir. 2019).

KPM fails to meet this standard. Indeed, KPM makes no affirmative effort to show that IEP has not used its mark for the challenged goods and services for three consecutive years. KPM instead acknowledges that its arguments to support this counterclaim "are the same as those" that it previously raised, and the Court rejected, for the first counterclaim. ECF 242, at 20; *see* ECF 222, at 15. These arguments—about whether IEP's initial 2014 application for the '573 Registration and Shea's subsequent 2020 declaration claimed use for certain goods or services that it did not use—fail for the reasons already explained. And IEP has, in any event, produced

17

sufficient evidence of having "used the mark during the statutory period." *On-Line Careline*, 229 F.3d at 1087. The undisputed record establishes that, consistent with Shea's 2020 declaration, IEP has sold and continues to sell the goods and services listed in its 2014 trademark application. ECF 244, ¶ 20; *see* ECF 222, at 8-11. IEP is accordingly entitled to summary judgment on KPM's second counterclaim.

## CONCLUSIONS AND ORDERS

For the foregoing reasons, IEP's motion for summary judgment on KPM's two counterclaims, ECF 221, is GRANTED. IEP's motion to exclude the opinions of KPM's experts, Amanda Hyland and Greg Kelley, ECF 218, is GRANTED in part and DENIED in part. Kelley's opinions are excluded in their entirety. Hyland's opinions concerning the spreadsheets produced by the U.S. Patent and Trademark Office are excluded, but her opinions regarding that agency's general filing procedures are not. KPM's motion to exclude IEP's rebuttal expert, Dr. Gavin Manes, ECF 208, is DENIED as moot.

SO ORDERED.

Dated: March 3, 2025

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE